AAS:DKK
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                               MEMORANDUM OF LAW

    - against -                                                              18-CR-457 (AMD)

HUAWEI TECHNOLOGIES CO., LTD., et al.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A PRETRIAL CONFERENCE PURSUANT TO
THE CLASSIFIED INFORMATION PROCEDURES ACT

                                              RICHARD P. DONOGHUE
                                              United States Attorney
                                              Eastern District of New York

Alexander A. Solomon
Julia Nestor
David K. Kessler
Kaitlin T. Farrell
Sarah M. Evans
Assistant United States Attorneys
      (Of Counsel)

**PRELIMINARY STATEMENT**

On January 24, 2019, a grand jury sitting in the Eastern District of New York returned a thirteen-count second superseding indictment charging the defendant Huawei Technologies Co., Ltd. ("Huawei") with (1) two counts of conspiracy to commit and substantive bank fraud, in violation of 18 U.S.C. §§ 1344 and 1349; (2) conspiracy to commit and substantive wire fraud, in violation of 18 U.S.C. §§ 1343 and 1349; (3) conspiracy to defraud the United States, in violation of 18 U.S.C. § 371; (4) violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701 - 1705; (5) money laundering conspiracy, in violation of 18 U.S.C. § 1956(a)(2)(A); and (6) conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512, and charging Huawei Device USA, Inc. ("Huawei USA") with one count of conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512. (See Dkt. No. 19).[1]

The government has been searching its classified holdings for items that could potentially be discoverable in this matter and will continue to do so. The government now requests that the Court schedule a conference pursuant to Section 2 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. III, to be held within two weeks of the Court's resolution of the government's pending motion to disqualify James M. Cole, Esq. as defense counsel in this case ("Cole Motion").[2] (See Dkt. No. 49.) The government also requests that this Court authorize the

---

[1] Another Huawei subsidiary, Skycom Tech. Co. Ltd., and Huawei's Chief Financial Officer, Wanzhou Meng, were also charged.

[2] In light of the conflicts described in the Cole Motion, the government respectfully submits that discussion of classified discovery and classified motion practice should begin after the motion is resolved.

2

government to make any motion to the Court for an order pursuant to Section 4 of CIPA in camera and ex parte.

The government submits this Memorandum of Law in Support of its Motion for a CIPA Section 2 Conference and requests authorization to file any CIPA Section 4 motion in camera and ex parte. The Memorandum describes for the Court the applicability of CIPA to matters relating to classified information that may arise in connection with the prosecution, both before and during trial.

## BACKGROUND

As in all cases that may implicate classified information, the government herein provides the Court with a detailed description of the procedures mandated by CIPA for protecting such classified information.

I.  THE CLASSIFIED INFORMATION PROCEDURES ACT

"CIPA, which establishes certain procedures for the handling of classified information in criminal cases, is designed 'to protect[ ] and restrict[ ] the discovery of classified information in a way that does not impair the defendant's right to a fair trial.'" United States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010) (quoting United States v. Aref, 533 F.3d 72, 78 (2d Cir. 2008)); see also In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 93, 115 (2d Cir. 2008) ("CIPA establishes rules for the management of criminal cases involving classified information."). CIPA defines "[c]lassified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or

3

regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. III, § 1(a).

## II.   PRETRIAL CONFERENCES, PROTECTIVE ORDERS AND DISCOVERY

### A.   Pretrial Conferences

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution."  18 U.S.C. app. III, § 2.  After such a motion is filed, Section 2 states that the district court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]."  Id.

### B.   Protective Orders

Section 3 of CIPA requires the Court, upon the request of the United States, to issue an order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case. . . ."  18 U.S.C. app. III, § 3.  The key Senate Report on CIPA, issued by the Senate Committee on the Judiciary, provides that the terms of a protective order may include, but need not be limited to, provisions:

> (1) prohibiting the disclosure of the information except as authorized by the court; (2) requiring storage of material in a manner appropriate for the level of classification assigned to the documents to be disclosed; (3) requiring controlled access to the material during normal business hours and at other times upon reasonable notice; (4) requiring the maintenance of logs recording access by all persons authorized by the court to have access to the classified information in connection with the preparation of the defense; (5) requiring the making and handling of notes taken from material containing

4

>classified information; and (6) authorizing the assignment of government security personnel and the provision of government storage facilities.

S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299 (1980).

### C. Discovery of Classified Information by the Defendant

Section 4 of CIPA provides, in pertinent part, that "[t]he court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting the relevant facts that classified information would tend to prove." 18 U.S.C. app. III, § 4. Like Rule 16(d)(1) of the Federal Rules of Criminal Procedure, Section 4 of CIPA provides that the United States may demonstrate that the use of such alternatives is warranted through an in camera, ex parte submission to the Court, and the Second Circuit has repeatedly affirmed district court decisions entering protective orders based on such submissions. See Abu-Jihaad, 630 F.3d at 142-143 (recognizing that "a district court's decision to conduct ex parte hearings manifests no abuse of discretion"); Aref, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); United States v. Ying Lin, No. 15 CR 601 (DLI), Memorandum and Order (ECF No. 71) at 4 (E.D.N.Y. April 6, 2017) (granting government's motion to submit CIPA § 4 brief ex parte and under seal); United States v. Velentzas, No. 15 CR 213 (SJ), 2016 WL 4250304, at *3 (E.D.N.Y. Aug. 10, 2016) (same); see also United States v. Yunis, 867 F.2d 617, 622-23 (D.C. Cir. 1989); United States v. Sarkissian, 841 F.2d 959, 965 (9th Cir. 1988); United States v. Pringle, 751 F.2d 419, 427 (1st Cir. 1984).

5

"CIPA 'overlays the framework appearing in Fed. R. Crim. P. 16, which itself authorizes district courts to restrict discovery of evidence in the interest of national security.'" Velentzas, 2016 WL 4250304, at *2 (quoting United States v. Zazi, No. 10 CR 60 (JG), 2011 WL 2532903, at *1 (E.D.N.Y. Jun. 24, 2011)); see also Aref, 533 F.3d at 78. Indeed, CIPA's legislative history makes clear that the Court may take national security interests into account in determining whether to permit discovery to be denied, restricted or deferred. See S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300 (1980) (citing "the protection of information vital to the national security" as one consideration justifying limitations on discovery); see also Abu-Jihaad, 630 F.3d at 140 (making clear that district courts have the power under Federal Rule of Criminal Procedure 16(d)(1) "to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security" (quoting United States v. Stewart, 590 F.3d 93, 130 (2d Cir. 2009))); Aref, 533 F.3d at 78 (same).

As the Second Circuit has observed, "CIPA does not itself create a government privilege against the disclosure of classified information; it presupposes one." Stewart, 590 F.3d at 130. "The privilege it presupposes has its origins in the common-law privilege against disclosure of state secrets . . . which 'allows the government to withhold information from discovery when disclosure would be inimical to national security.'" Abu-Jihaad, 630 F.3d at 140-41 (internal citations omitted, quoting Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991)). "CIPA's framework for nondisclosure provides a means for applying the state-secrets privilege to classified information which, in ordinary circumstances, would be discoverable. Proper application of that privilege requires balancing of the government's need to protect national security with the right of a defendant to mount a full defense." United States v. Boulos, No. 13-CR-612

6

(ENV), 2015 WL 502170, at *1 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted). "First, the district court must determine whether the material in dispute is discoverable, and if so, whether the state-secrets privilege applies." Stewart, 590 F.3d at 131. If the material in dispute is discoverable, "the state-secrets privilege applies if '(1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.'" Abu-Jihaad, 630 F.3d at 141 (quoting Aref, 533 F.3d at 80). "If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful to counter the government's case or to bolster a defense." Aref, 533 F.3d at 80 (internal quotation marks omitted).

In determining whether deletion or substitution of classified information is appropriate, a court must balance the government's national security interest against the defendant's right to present his defense. For example, under CIPA, a court may permit the government to produce exculpatory or helpful information "in a form that will preserve its sensitivity," including summaries that omit classified information that is "not helpful to the defense." United States v. Muhanad Mahmoud Al Farekh, No. 15-CR-268 (BMC), 2016 WL 4444778, at *2-3 (E.D.N.Y. Aug. 23, 2016); see also United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"). The fact that defense counsel possesses a security clearance does not itself entitle him to receive classified information in discovery. As courts in this Circuit have repeatedly recognized "clearances do not mandate . . . access to immaterial classified information

for which counsel has no legitimate need." United States v. Babafemi, No. 13-CR-109 (JG), 2014 WL 1515277, at *3 (E.D.N.Y. Apr. 18, 2014) (citing Exec. Order No. 13,526, 75 Fed. Reg. 707, 720 (Dec. 29, 2009) ("A person may have access to classified information provided that . . . the person has a need-to-know the information.")); Ying Lin, Memorandum and Order at 5 (same); Zazi, 2011 WL 2532903, at *3 (same); see also United States v. Libby, 429 F. Supp. 2d 18, 24 n.8 (D.D.C. 2006) ("It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses.").

### III. NOTICE OF DEFENDANT'S INTENT TO DISCLOSE AND PRETRIAL EVIDENTIARY RULINGS

There are three critical pretrial steps in the handling of classified information under CIPA after such information has been provided to the defendant through discovery. First, the defendant must specify in detail the precise classified information he reasonably expects to disclose at trial. Second, the Court, upon motion of the government, shall hold a hearing pursuant to Section 6(a) to determine the use, relevance, and admissibility of the proposed evidence. Third, following the Section 6(a) hearing and formal findings of admissibility by the Court, the United States may move to substitute an admission of relevant facts or summaries for classified information that the Court rules admissible.

#### A. The Requirement to Provide Notice of Disclosure

The linchpin of CIPA is Section 5(a), which requires a defendant who intends to disclose (or cause the disclosure of) classified information to provide timely pretrial written notice of his intention to the Court and the government. Section 5(a) expressly requires that such notice "include a brief description of the classified information," and the leading case under Section 5(a)

8

holds that such notice "must be particularized, setting forth specifically the classified information which the defendant reasonably believes to be necessary to his defense." United States v. Collins, 720 F.2d 1195, 1199 (11th Cir. 1983) (emphasis added); see also Yunis, 867 F.2d at 623 ("a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused'"); United States v. Smith, 780 F.2d 1102, 1105 (4th Cir. 1985) (en banc). This requirement applies to both documentary exhibits and oral testimony, whether it is anticipated to be brought out on direct or cross-examination. See United States v. Hitselberger, 991 F. Supp. 2d 91, 95 (D.D.C. 2013) (CIPA's disclosure requirement applies "regardless of the witness or the document through which that information is to be revealed.") (quoting United States v. Poindexter, 725 F. Supp. 13, 33 (D.D.C. 1989)).

If a defendant fails to provide a sufficiently detailed notice far enough in advance of trial to permit the implementation of CIPA procedures, Section 5(b) authorizes the Court to "preclude disclosure of any classified information." 18 U.S.C. app. III, § 5(b); see also United States v. Badia, 827 F.2d 1458, 1464-66 (11th Cir. 1987) (upholding preclusion of disclosure of classified information at trial because defendant failed to comply with notice requirements of CIPA § 5). Similarly, if the defendant attempts to disclose at trial classified information that is not described in his Section 5(a) notice, preclusion is the appropriate remedy under Section 5(b) of CIPA. See United States v. Pappas, 94 F.3d 795, 799 (2d Cir. 1996) ("[A] defendant shall not disclose classified information 'in connection with a trial or pretrial proceeding' until the required notice has been given."); United States v. Smith, 780 F.2d 1102, 1105 (4th Cir. 1985) ("defendant is forbidden from disclosing any such information absent the giving of notice"); see generally United States v. North, 708 F. Supp. 399 (D.D.C. 1988).

9

B. The Pretrial Hearing on Disclosure

Prior to trial, pursuant to Section 6(a) of CIPA, upon motion of the government, the Court must hold a hearing "to make all determinations concerning the use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding." 18 U.S.C. app. III, § 6(a). The statute expressly provides that if the Section 6(a) motion is filed before trial or the relevant pretrial proceeding, "the court shall rule [on the use, relevance, or admissibility of the classified information at issue] prior to the commencement of the relevant proceeding." Id. (emphasis added).

Section 6(b) of CIPA requires that before any hearing is conducted under Subsection (a), the United States must notify the defendant of the hearing and identify the classified information which will be at issue. If the information was not previously made available to the defendant, the United States may, with the Court's approval, provide a generic description of the material to the defendant. Thus, as Congress recognized in enacting CIPA, "the Government would not have to disclose the identity of an undercover intelligence agent not previously disclosed to the defendant; instead, the Government would describe the information as 'the identity of an undercover intelligence agent' if this meets with court approval." S. Rep. No. 96-823, at 6, reprinted in 1980 U.S.C.C.A.N. 4294, 4301 (1980).

At the Section 6(a) hearing, the Court hears the defense proffer and the arguments of counsel, then rules whether the classified information identified by the defense is relevant under

10

Rule 401 of the Federal Rules of Evidence.[3] Smith, 780 F.2d at 1106; see generally Yunis, 867 F.2d at 622. The Court's inquiry does not end there, however, for under Rule 402 of the Federal Rules of Evidence, "[n]ot all relevant evidence is admissible at trial." Id. The Court must also determine whether the evidence is cumulative, "prejudicial, confusing, or misleading," so that it should be excluded under Rule 403 of the Federal Rules of Evidence. United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984). At the conclusion of the Section 6(a) hearing, the Court must state in writing the reasons for its determination as to each item of classified information.

    C.      Substitution in Lieu of Disclosure

In the event that the Court rules that one or more items of classified information are admissible, the United States has the option of proposing a "substitution" for the classified information at issue, pursuant to Section 6(c) of CIPA. 18 U.S.C. app. III, § 6(c). The United States may move for permission to provide the defense either a substitute statement admitting relevant facts that the classified information would tend to prove, or substitute a summary of the classified information that would otherwise be disclosable. See In re Terrorist Bombings, 552 F.3d at 116. The Court must grant the motion for substitution "if it finds that the [substituted] statement or summary will provide the defendant with substantially the same ability to make his defense as would disclosure of the specific classified information." Id.

---

[3] CIPA does not change the "generally applicable evidentiary rules of admissibility." United States v. Wilson, 750 F.2d 7, 9 (2d Cir. 1984); accord Babafemi, 2014 WL 1515277, at *1. Rather, CIPA alters the timing of rulings concerning admissibility, so as to require them to be made before trial. United States v. Poindexter, 698 F. Supp. 316, 318 (D.D.C. 1988); accord Zazi, 2011 WL 2532903, at *1; Smith, 780 F.2d at 1106.

11

If the Court determines that the item of classified information at issue is relevant and admissible and denies the government's motion for substitution, Section 6(e)(1) of CIPA permits the government to object to the classified information's disclosure. 18 U.S.C. app. III, § 6(e)(1). In such cases, the Court "shall order that the defendant not disclose or cause the disclosure of such information." Id. Section 6(e) then sets forth a sliding scale of remedies that the Court may impose in such a case. Id. at § 6(e).

IV. OTHER RELEVANT CIPA PROCEDURES

A. Interlocutory Appeal

Section 7(a) of CIPA provides for an interlocutory appeal by the United States from any decision or order of the trial judge "authorizing the disclosure of classified information," imposing sanctions on the United States "for nondisclosure of classified information," or for "refusing a protective order sought by the United States to prevent the disclosure of classified information." 18 U.S.C. app. III, § 7(a). The term "disclosure" relates both to information which the court orders the United States to divulge to the defendant as well as to information already possessed by the defendant which he or she intends to make public. Section 7(b) requires the Court of Appeals to give expedited consideration to any interlocutory appeal filed under Subsection (a). Id. § 7(b).

B. Rules Governing Introduction of Classified Information

In order to prevent "unnecessary disclosure" of classified information, Section 8(b) permits the Court to order admission into evidence only a part of a writing, recording, or photograph. Alternatively, the Court may order into evidence the entire writing, recording, or photograph with all or part of the classified information contained therein excised. Excision of

12

such classified information may not be authorized, however, if fairness requires that the whole document, recording, or photograph be considered.

Section 8(c) establishes a procedure for addressing the problems that may emerge during the taking of testimony from a witness who possesses classified information not previously found to be admissible. If the defendant knows that a question or a line of inquiry would result in disclosure of classified information, CIPA mandates that she give the United States immediate notice under Section 5 of the Act; Section 8(c), in effect, serves as a supplement to the Section 6(a) procedures, addressing circumstances that might not have been anticipated in advance of the taking of testimony. Thus, upon objection of the United States to a defense question or line of inquiry not covered in a Section 6(a) proceeding, the Court must take suitable action to avoid the improper disclosure of classified information by a witness.

  C. Security Procedures

Section 9 of CIPA required the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of federal courts. On February 12, 1981, Chief Justice Burger promulgated these procedures.

**ARGUMENT**

As noted above, the thirteen-count indictment charges Huawei and Huawei Device USA variously with conspiracy to commit and substantive bank fraud, conspiracy to commit and substantive wire fraud, conspiracy to defraud the United States, violations of the IEEPA, money laundering conspiracy, and conspiracy to obstruct justice. The government has been reviewing its classified holdings to identify items that may be discoverable in this case and is continuing to review such material. Based on that review, the government has identified classified material that could

be subject to disclosure in advance of trial under applicable rules, statutes, or case law. The disclosure of such material would raise issues of national security that need to be addressed under CIPA. Accordingly, the government moves for a pretrial conference pursuant to Section 2 of CIPA to set a briefing schedule for the government to file any motion pursuant to CIPA Section 4. Given the issues raised in the Cole Motion, the government requests that conference be scheduled approximately two weeks after the Cole Motion is resolved.

Because of the classified nature of any such information identified by the government, the government will not be able to describe or discuss the information in open court at the Section 2 conference. Accordingly, should the government identify potentially discoverable classified information, the government seeks authorization pursuant to Section 4 of CIPA to make an in camera, ex parte submission regarding classified materials that the government believes should be subject to deletion, substitution, or disclosure pursuant to a protective order. Id. As detailed above, courts in this Circuit have consistently held that in camera, ex parte submissions to a district court in matters involving national security are proper, particularly when such submissions involve classified information. See, e.g., United States v. Dan Zhong, 16-CR-614 (AMD) (E.D.N.Y. Nov. 26, 2018) (granting government's motion to file CIPA Section 4 in camera and ex parte); United States v. Adis Medunjanin, 10-CR-019 (S-3) (RJD) (E.D.N.Y. Jan. 31, 2011) (government's CIPA Section 4 motion filed ex parte with court's permission); Abu-Jihaad, 630 F.3d at 140; Aref, 533 F.3d at 78.

14

**CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court schedule a CIPA Section 2 conference approximately two weeks after the resolution of the Cole Motion and that the Court authorize the government to make any motion to the Court for an order pursuant to Section 4 of CIPA in camera and ex parte.

Dated:	Brooklyn, New York
	June 17, 2019

                        RICHARD P. DONOGHUE
                        United States Attorney
                        Eastern District of New York

By:	     /s/ David K. Kessler
	Alexander A. Solomon
	Julia Nestor
	David K. Kessler
	Kaitlin T. Farrell
	Sarah M. Evans
	Assistant U.S. Attorneys
	(718) 254-7000

	DEBORAH L. CONNOR
	Chief
	Money Laundering and Asset Recovery Section
	Criminal Division, U.S. Department of Justice

	Laura M. Billings
	Christian J. Nauvel
	Trial Attorneys

	JAY I. BRATT
	Chief
	Counterintelligence and Export Control Section
	National Security Division, U.S. Department of Justice

	Thea D. R. Kendler
	David Lim
	Trial Attorneys