# SIDLEY

# JENNER&BLOCK LLP

February 10, 2020

**VIA ECF AND ELECTRONIC MAIL**

Alexander A. Solomon
David K. Kessler
Julia Nestor
Sarah Evans
Kaitlin Farrell
Assistant United States Attorneys
United States Attorney's Office
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

Laura Billings
Christian Nauvel
Trial Attorneys
Money Laundering and Asset Recovery Section
U.S. Department of Justice, Criminal Division
1400 New York Ave., NW, 10th Floor
Washington, D.C. 20005

Thea Kendler
David Lim
Trial Attorneys
Counterintelligence and Export Control Section
U.S. Department of Justice, National Security
Division
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Re:  *United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457 (S-2) (AMD)
     **(EDNY) – Huawei Defendants' Follow-up Requests for *Brady* Material**

Dear Counsel:

This letter follows up on our meet-and-confer regarding exculpatory material and other discovery in the above-referenced matter on January 23, 2020.  In that call, the government

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 2

informed us that it expected to have substantially completed discovery by March 4, 2020.  With specific reference to the requests of Huawei Technologies Co., Ltd. and Huawei Device USA Inc. (collectively, "Huawei") for materials required to be produced pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, you asked that we memorialize our request in writing.

As we explained on our call, it is of great concern that the government has not yet produced the central documents in this case, which include the results of Latham & Watkins's investigation of HSBC ("the Latham investigation") and the reports of Michael Cherkasky, the independent monitor for HSBC.  Although we have not had access to them, both sets of items appear certain to directly contradict the allegations in the indictment and to be in the government's possession.  In particular, we believe that those documents, taken together, establish the falsity of the government's allegations that Huawei misled HSBC about its relationship with Skycom and its business activities in Iran, and that Huawei engaged in fraud to convince HSBC to undertake Iran-related transactions on Huawei's or Skycom's behalf.

It is well known that HSBC willfully and repeatedly violated U.S. sanctions laws involving Iran and other countries during the time period covered by the Huawei indictment.[1]  It now appears from public reports and the discovery that we have received that even after obtaining a deferred prosecution agreement ("DPA") from the government in 2012, HSBC *continued* to process Iran-related transactions through its New York branch and concealed that conduct from DOJ until it was discovered by Mr. Cherkasky.[2]  Moreover, at the same time, HSBC utterly failed, *as late as 2017*, to implement and adhere to the compliance measures it had promised in order to secure the DPA.[3]  The government then seized the opportunity to advance its years-long but fruitless investigation of Huawei by exploiting HSBC's continuing misconduct.  The government agreed to overlook HSBC's continued misconduct, electing not to punish the bank, prosecute its executives, or even extend the monitorship.  In return, as we believe the Latham investigation and monitorship reports establish, HSBC agreed to cooperate in the government's efforts to depict Huawei as the mastermind of HSBC's sanctions violations and supply witnesses to the

---

[1] Statement of Facts at 18-26, *U.S. v. HSBC Bank USA, N.A. et al.*, 12 CR 763 (AMD) (EDNY).

[2] *See, e.g.*, *How a National Security Investigation of Huawei Set Off an International Incident*, N.Y. Times, Dec. 14, 2018 (attached hereto as Exhibit A); *HSBC Monitor Flagged Suspicious Huawei Transactions to Prosecutors*, Wall Street J., Dec. 6, 2018 (attached hereto as Exhibit B).

[3] *See, e.g.*, Letter to the Honorable Anne M. Donnelly at 3, *U.S. v. HSBC Bank USA, N.A. et al.*, 12 CR 763 (AMD) (EDNY) (Mar. 31, 2017) ("As a result of the Monitor's foregoing concerns and others, he remains unable to certify that the bank's compliance program is reasonably designed and implemented to detect and prevent violations of AML and sanctions laws.  Nor can the Monitor currently certify that HSBC has implemented and adhered to all of the remedial measures outlined in paragraph 81 of Attachment A of the DPA.").

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 3

government's stalled investigation of Huawei, falsely claiming among other things that HSBC was misled about the relationship between Skycom and Huawei and about the business those companies did in Iran. For its part of this wrongful bargain, the government agreed to recommend termination of HSBC's monitorship and portray HSBC as a "victim financial institution." When, as here, the government possesses documents and information that establish that its allegations are false, it must disclose them to the defense immediately.

Accordingly, Huawei requests that the government disclose the results of the Latham investigation—including any reports and any communications with and presentations made to the government[4]—and Mr. Cherkasky's monitor reports because they reveal HSBC's complicity in or indifference to sanctions risk and violations during the period of the indictment; knowledge of the facts about which Huawei purportedly misled it; dysfunctional or ineffective sanctions compliance; affirmative desire to secure and service Huawei business or the business of other foreign or multinational companies doing business in Iran; and other indicia of lack of relevance, reliance, or materiality with respect to the allegedly false statements. Along with any reports themselves, Huawei requests disclosure of the underlying source documents cited therein. In addition Huawei requests disclosure of those materials because they reveal the pressure put on HSBC by the government to assist in the investigation or prosecution of Huawei or to terminate Huawei as a customer, and efforts by HSBC to seek the government's favor by doing the same.

The indictment and the government's *Brady* obligations are not limited to allegations about HSBC. We are also concerned that the government has not produced investigative reports or independent monitor or compliance consultant reports for any *other* financial institutions referenced in the indictment. For clarity, therefore, Huawei requests pursuant to *Brady* any internal or external investigative reports, presentations to the government regarding such investigations, and reports by any independent monitors and compliance consultants engaged by the financial institutions referenced in the indictment as part of or in relation to any plea agreement, deferred prosecution agreement, non-prosecution agreement, consent order, or other resolution with the U.S. government or state regulators related to sanctions violations, money laundering, or Bank Secrecy Act violations, between 2007 and the present.[5] Along with the reports themselves, Huawei requests disclosure of the underlying source documents cited therein.[6] We believe that such

---

[4] News reports indicate that "[a]t least four presentations were made to the Justice Department between February and July 2017" by HSBC. *See Exclusive: HSBC probe helped lead to U.S. charges against Huawei CFO*, Reuters, Feb. 26, 2019 (attached hereto as Exhibit C).

[5] Similarly, to the extent they are different investigations, Huawei requests such information related to any such investigation regarding HSBC's business or relationship with Networkers International, Gattaca plc, Matchtech Group, or any affiliated entity.

[6] Huawei is specifically aware from public records of the following: reports of the independent monitor for HSBC from 2013 to the present, under the terms of the bank's deferred prosecution agreement with the Justice Department, and reports by compliance consultants or monitors for HSBC submitted to the Federal Reserve Board of Governors from 2012 to the

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 4

documents also contain exculpatory evidence relating to the banks' complicity in or indifference to sanctions risk and violations during the period of the indictment; knowledge of the facts about which Huawei purportedly misled them; dysfunctional or ineffective sanctions compliance; affirmative desire to secure and service Huawei business or the business of other foreign or multinational companies doing business in Iran; other indicia of lack of relevance, reliance, or materiality with respect to the allegedly false statements; pressure put on the banks by the government to assist in the investigation or prosecution of Huawei or to terminate Huawei as a customer; and efforts by the banks to seek the government's favor by doing the same.

Additionally, Huawei requests the immediate production of the following documents:

1.   Records Pertaining To Accounts: For any accounts that the financial institutions referenced in the Indictment held for Huawei (and any affiliates), or for Skycom and Canicula (and any affiliates), Huawei requests that the government disclose:

   a.   The complete due diligence, Know-Your-Client (KYC), account-opening, and account-closing files, including any sanctions risk assessments or questionnaires;

   b.   For institutions that held accounts for Skycom or Canicula—including at least HSBC and Standard Chartered Bank—records from the institutions' internal systems showing how, and in what group or "mastergroup," each institution organized each account;

   c.   All records relating to the internal compliance review processes related to each account; and

   d.   All internal summaries, talking points, preparatory documents, calendar entries, or other internal bank documents relating to calls, meetings, or discussions

---

present; reports of the independent monitor for Standard Chartered Bank from 2012 to the present, under the terms of the bank's initial and amended deferred prosecution agreements with the Justice Department and its Consent Order with the New York Department of Financial Services ("DFS"), and reports by compliance consultants or monitors for Standard Chartered Bank submitted to the Federal Reserve Board of Governors from 2012 to the present; reports of the independent monitor for BNP Paribas from 2013 to 2019 under the terms of the bank's Consent Order with DFS and reports from compliance consultants or monitors for BNP Paribas submitted to the Federal Reserve Board of Governors from 2014 to 2019 (both of which were required to be provided to the Justice Department pursuant to the bank's 2014 guilty plea); and reports from Citibank's independent consultant for Bank Secrecy Act and anti-money laundering compliance under the terms of Citibank's 2017 settlement with the U.S. Office of the Comptroller of the Currency.

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 5

> between the institutions and Huawei, Skycom, or Canicula, or associated personnel.[7]

2. <u>Indictment Transactions Documents</u>: Huawei requests that the government identify the specific purportedly unlawful transactions alleged in the Indictment and disclose all related documents, including, as applicable, payment instructions, contracts, invoices, bills of lading, shipping records, and related emails.

3. <u>Iran-Related Transactions Documents</u>: Discovery has revealed ████████ ████████████████████████████████████████████████████. Huawei requests that the government disclose all documents related to Iran-related transactions, including, as applicable, payment instructions, contracts, invoices, bills of lading, shipping records, and related emails exchanged between HSBC (or the other financial institutions referenced in the Indictment), Skycom, and/or Huawei employees. For any such transactions flagged by the financial institution's compliance department, Huawei requests all documents indicating how these particular transactions were flagged and reviewed, the internal process for reviewing such transactions, including elevation to other employees for further review, and how the individual transactions were reviewed and released.

4. <u>Financial Institutions' Risk Committee Documents</u>: Huawei requests that the government disclose all documents related to the meetings and deliberations of the risk committees of HSBC and each of the other financial institutions referenced in the Indictment from 2012 through 2017 in relation to those institutions' risk assessments of Huawei and their repeated decisions to maintain Huawei as a client during that period. This request includes, but is not limited to, meeting notices, talking points, preparatory documents, calendar entries, supporting documents, conference call records, investigative reports, internal communications between the financial institutions' employees, protocols related to the functions of each risk committee, a list of members of the relevant risk committees, and a description of the roles and responsibilities of the relevant committees.

5. <u>Financial Institutions' Internal Compliance Policy Documents</u>: For HSBC and each of the other financial institutions referenced in the Indictment, Huawei requests that the government disclose all documents related to internal compliance requirements, protocols, policies and procedures regarding sanctions compliance and legal and reputational risk from 2012 to the end of 2018.

---

[7] This request includes, in particular, all internal summaries or other documents related to the August 2013 meeting between Wanzhou Meng and former HSBC executive Alan Thomas.

[8] The Discovery Materials cited in this paragraph are attached hereto as Exhibit D.

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 6

      6.    <u>Reuters Article Communications</u>: For HSBC and each of the other financial institutions referenced in the Indictment, Huawei requests that the government disclose all documents concerning Huawei or Skycom related to the Reuters articles of December 2012 and January 2013 referenced in the Indictment.

      7.    <u>HSBC Relationship Termination Documents</u>: Huawei requests that the government disclose all documents and communications related to the termination of the banking relationship between Huawei and HSBC in 2017, including any statement by HSBC personnel or others as to the reason or reasons for the termination; as well as documents and witness statements reflecting statements made by HSBC employees to other financial institutions, and by personnel of those other institutions, regarding the reason or reasons for the termination of the relationship.

      8.    <u>Witness Statements</u>: To the extent any of the above exculpatory information derives from a witness statement or testimony rather than another document, Huawei requests that the government disclose records of such statements or testimony. In addition, on our call the government reaffirmed that it was aware of its responsibility under Rule 16(a)(1)(C) to provide witness statements by employees and agents of Huawei. As you are aware, the Rule requires the government to produce in principal discovery relevant oral, written, and recorded statements, as well as grand jury testimony, of employees and agents the government alleges were legally able to bind Huawei.

*      *      *

      Each of these requests is continuing in nature and calls for supplementation as soon as the government discovers additional relevant material, pursuant to its obligations under *Brady* and its progeny. To the extent there are materials in the above categories in the government's possession, custody, or control or otherwise known to the government which you do not intend to make available, we also request that you notify us in writing, specifically and promptly, regarding such materials so that we are able to file timely and appropriate motions to permit the court to rule on any disagreements. Of course, it remains at all times the government's responsibility to immediately disclose any and all *Brady* materials, whether or not specifically known to or identified by the defense.

      Finally, Huawei also respectfully takes this opportunity to refer the government to its overarching set of discovery and bill of particulars requests made on March 26, 2019, which is attached hereto as Exhibit E, and to which the government has not responded.

      Thank you for your attention to this matter.

*United States v. Huawei Technologies Co., Ltd., et al.*
February 10, 2020
Page 7

Sincerely,

SIDLEY AUSTIN LLP

By: /s/ Michael A. Levy
    Thomas C. Green
    Mark D. Hopson
    *pro hac vice* motions pending
    Michael A. Levy
    787 Seventh Avenue
    New York, NY 10019
    Tel.: 212-839-7341
    Email: mlevy@sidley.com

JENNER & BLOCK LLP

By: /s/ David Bitkower
    David Bitkower
    Matthew S. Hellman
    1099 New York Avenue, NW
    Washington, D.C. 20001-4412
    Tel: 202-639-6048
    Email: dbitkower@jenner.com

*Counsel for Defendants Huawei Technologies Co., Ltd. and Huawei Device USA Inc.*