FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y

★ FEB 25 2020 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

**UNITED STATES OF AMERICA,**

         – against –

**HUAWEI TECHNOLOGIES CO. LTD.,** *et al.*,

                   Defendants.

------------------------------------------------------------- X

  :
  :
  :   **MEMORANDUM**
  :   **DECISION AND ORDER**
  :
  :   18-CR-457 (S-2) (AMD)
  :
  :

**ANN M. DONNELLY,** United States District Judge:

On May 2, 2019, the Government moved to disqualify one of the defendants' attorneys, James M. Cole of Sidley Austin LLP. Mr. Cole was Deputy Attorney General of the United States ("DAG")—the second-in-command at the Department of Justice—from December of 2010 to January of 2015. During that period, the Department of Justice, under Mr. Cole's supervision, was investigating matters involving [REDACTED]. I heard oral argument on September 4, 2019.[1] Based on my review of the entire record, including classified materials, the Government's motion to disqualify Mr. Cole is granted.

## BACKGROUND

Mr. Cole has practiced at the highest levels of the legal profession both as a federal prosecutor and private attorney. He served as DAG between December of 2010 and January of 2015 and as one of the Justice Department's most senior officials, oversaw the day-to-day operations of the Department—the litigation divisions of Main Justice, the United States Attorneys' offices, investigative agencies, and project and administrative offices. (ECF No. 51-1 ¶¶ 1-2.) After leaving public service, Mr. Cole joined Sidley Austin LLP in Washington, D.C., where he is a "global co-lead" of the firm's White Collar: Government Litigation and

---

[1] A portion of the argument was closed to the public, because it involved a discussion of classified information.

Investigations practice.  James M. Cole Online Profile, Sidley Austin LLP, (Dec. 2, 2019), https://www.sidley.com/en/people/c/cole-james-m.

The Government's motion centers on Mr. Cole's work as DAG and his current representation of Huawei Technologies Co., Ltd. and Huawei Device USA, Inc. (collectively, "Huawei").  The Government asserts that Mr. Cole "personally supervised and participated in" an investigation that is "directly implicated" in this case [REDACTED] and that "he ha[d] access to privileged (and classified) factual information as a Department attorney that would give him an improper advantage in representing his current clients."  (ECF No. 62-1 at 3-5.)  The defendants respond that Mr. Cole's prior and current representations "do not share 'identical' or 'essentially the same'" material facts, and are thus not "substantially similar" even if the factual issues are related.  (ECF No. 72 at 7-8.)  The defendants also assert that the Government has waived any conflict, because it did not move to disqualify Mr. Cole until after the indictment was unsealed.  (ECF No. 72 at 14.)

The defendants have not seen most of the information upon which the Government relies, because it is classified.[2]  The Government gave Mr. Cole limited one-time access to some classified material: [REDACTED].

I have examined the entire record, including classified materials, and conclude that disqualification is required.

I.    **The Government's Investigation**

[REDACTED]

---

[2] I reject the defendants' suggestion that their lack of access to the classified information might be a reason "on its own" to deny the Government's motion. (ECF No. 72 at 6.)  There is little, if any, precedent addressing this particular set of facts.  Yet the issue of limited access is not atypical in disqualification cases.  "A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."  N.Y. R. Prof'l Conduct, r. 1.9, cmt. 3.

## II.     The Criminal Case

In April of 2017, the United States Attorney's Office for the District of Columbia served a grand jury subpoena on Huawei Technologies USA, seeking documents related to conduct in countries under United States sanctions, including Iran.[3]  (ECF No. 72 at 9.)

Huawei Technologies USA, through counsel at Sidley Austin LLP, made its first productions to the Government in the summer of 2017.  (*Id.* at Exs. B-E.)  Mr. Cole was copied on each production and the related correspondence.  (*Id.*)  When the matter was transferred to the United States Attorney's Office for the Eastern District of New York, Mr. Cole met with the prosecutors to discuss the status of the investigation.  (ECF No. 72 at 5.)

On August 22, 2018, the Government filed a sealed indictment, charging the defendants with various crimes.  Five months later, on January 28, 2019, the Court unsealed a superseding indictment that charged Huawei with conspiracy to commit bank fraud, conspiracy to commit wire fraud, bank fraud, wire fraud, conspiracy to defraud the United States, conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), violations of the IEEPA, money laundering conspiracy, and conspiracy to obstruct justice.  (ECF Nos. 13, 19.)

[REDACTED]

## III.    Motion to Disqualify

About a week before the Court unsealed a superseding indictment against Huawei, and after Ms. Wanzhou's arrest, the Government informed Mr. Cole that he had a conflict of interest in the case.  (ECF No. 72 at 6; Class Gov't Mot. at 14.)  On January 29, 2019, the Government met with Mr. Cole and disclosed [REDACTED].

---

[3] Media outlets reported that the Government's case against Huawei stemmed in part from a late 2016 and 2017 internal investigation at HSBC.  (ECF No. 72 at Ex. A.)

3

Mr. Cole obtained counsel to assist him in reviewing and analyzing the claimed conflict. Based on the information available to him, he decided that he would not withdraw as counsel. On May 2, 2019, the Government moved to disqualify Mr. Cole from representing any of the defendants in this case.  (ECF No. 49.)

## LEGAL STANDARD

The Sixth Amendment guarantees a criminal defendant the right to the assistance of counsel for his defense.  U.S. CONST. amend. VI.  The Amendment's "essential aim" is to provide "an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citations omitted).  While a defendant has the right to "be defended by the counsel he believes to be best," *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006), "the right to choose one's own counsel is not absolute." *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat*, 486 U.S. at 159 and *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993)).  Courts have the "inherent power to preserve the integrity of the adversary process" and may disqualify an attorney when his "conduct tends to taint the underlying trial."[4] *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 267 (E.D.N.Y. 2015) (citing *Hempstead Video Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005)) (internal quotation marks and citations omitted).

The decision to disqualify an attorney in a criminal case is not made lightly.  The district court makes the disqualification determination "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly[,]" and "[t]he likelihood and dimensions of nascent conflicts of interest

---

[4] State bar disciplinary rules and American Bar Association standards also may inform the analysis of a motion to disqualify, though "not every violation of a disciplinary rule . . . require[s] disqualification." *Norwind v. Rowland*, 584 F.3d 420, 435 (2d Cir. 2009) (citation omitted).

4

are notoriously hard to predict." *Wheat*, 498 U.S. at 162. The Court "must balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *HLP Properties, LLC v. Consol. Edison Co. of N.Y.*, No. 14-CV-01383, 2014 WL 5285926, at *3 (S.D.N.Y. Oct. 16, 2014); *see also In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2006 WL 6846702, at *6 n.7 (E.D.N.Y. Aug. 7, 2006) (distinguishing analyses of disqualification motions between civil and criminal cases). Motions for disqualification are subject to "fairly strict scrutiny" and "are generally disfavored." *Giambrone*, 117 F. Supp. 3d at 267 (citations omitted). Nevertheless, "[w]hile the burden required to merit disqualification is a high one, the Second Circuit has cautioned that any doubt is to be resolved in favor of disqualification." *Id.* (citing *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975)). Courts have the discretion to disqualify counsel because of their independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession, and that legal proceedings "appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

## DISCUSSION

Disqualification is most commonly ordered when "an attorney is . . . potentially in a position to use privileged information concerning the other side" that was gained "through prior representation." *Giambrone*, 117 F. Supp. 3d at 268 (citing *HLP Properties*, 2014 WL 5285926, at *3) (internal quotation marks and alterations omitted). When the moving party is a former client of the adverse party's counsel,[5] the challenged attorney may be disqualified if (1) there is a substantial relationship between the subject matter of his prior representation of the moving party and the issues in the current lawsuit; and (2) he had access to, or was likely to have had access to,

---

[5] The parties do not dispute that Mr. Cole, as former DAG, represented the Government and has a continuing duty of loyalty to the Government as his former client.

relevant privileged information in the course of his prior representation of the client. *United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 239 (2d Cir. 2016) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). The question is whether the attorney "could use a client's privileged information against that client." *Id.* at 241; *see also Giambrone*, 117 F. Supp. 3d at 269 ("The test focuses on identifying situations in which there exists the *potential* that confidential information obtained during representation of an adverse party could be used in the present action.") (emphasis in original) (collecting cases).

Disqualification of an attorney based on his former government service can "create an unwarranted disincentive to government service" if former government employees are overly restricted in future private practice. *In re Payment Card*, 2006 WL 6846702, at *6-7 (citations omitted). At the same time, "the public is generally more concerned about government improprieties than about private improprieties." *United States v. Philip Morris Inc.*, 312 F. Supp. 2d 27, 44-45 (D.D.C. 2004). [6]

## I.   Substantial Relationship

The parties dispute the standard to be applied in determining whether Mr. Cole's prior work as DAG is "substantially related" to this case. The defendants cite *Government of India v. Cook Industries, Inc.* for the proposition that "the relationship between issues in the prior and present cases" must be "patently clear[:]" in other words, that "the issues involved [are] 'identical' or 'essentially the same.'" 569 F.2d 737, 739-40 (2d Cir. 1978) (citations omitted).

---

[6] The associations responsible for "implementing the 'comprehensive disciplinary machinery' of the legal profession have not been insensitive" to the unique challenges faced by former government attorneys. *In re Payment Card*, 2006 WL 6846702, at *7. For example, 18 U.S.C. § 207, a criminal statute governing former government employees, prohibits lawyers from working on matters that they "personally and substantially" participated in as government officials. *United States v. Clark*, 333 F. Supp. 2d 789, 793 (E.D. Wisc. 2004). Additionally, the New York Rule of Professional Conduct 1.11(a)(2) similarly prohibits a former government lawyer from representing persons "in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee," absent the government's consent.

The Government relies on more recent Second Circuit precedent, *United States v. Prevezon Holdings Ltd.*, in which the court ruled that a substantial relationship exists when "facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation."  839 F.3d at 239 (citing *Agilent Techs., Inc. v. Micromuse, Inc.*, No. 04-CV-3090, 2004 WL 2346152, at *10 (S.D.N.Y. Oct. 19, 2004)).  Some courts have continued to apply the *Government of India* standard, while other courts have applied *Prevezon.  Compare Jose Luis Palaez, Inc. v. McGraw-Hill Global Educ. Holdings, LLC*, 366 F. Supp. 3d 567, 573 (S.D.N.Y. 2019) (applying *Gov't of India*), *with Tour Tech. Software, Inc. v. RTV, Inc.*, No. 17-CV-05817, 2018 WL 3682483, at *5 (E.D.N.Y. Aug. 2, 2018) (applying *Prevezon*).  Other courts cite both cases to define the substantial relationship prong.  *See, e.g., Bakken Resources, Inc. v. Edington*, No. 15-CV-08686, 2017 WL 1184289, at *2 (S.D.N.Y. Mar. 29, 2017).

Under either test, however, Mr. Cole's prior representation of the Government disqualifies him from representing the defendants.  Both inquiries turn not on "whether the legal claims or underlying theories are similar, but rather whether the successive representations share common material factual issues." *Giambrone*, 117 F. Supp. 3d at 272-73; *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.*, 687 F. Supp. 2d 381, 392 (S.D.N.Y. 2010) ("It is the congruence of *factual* matters, rather than areas of law, that establishes a substantial relationship between representations for disqualification purposes.") (emphasis in original) (collecting cases).  Subsequent representations are substantially related "if the witnesses, testimony, and other evidence germane to one action are likely to be similar to the other." *New York v. Monfort Tr.*, No. 12-CV-3755, 2014 WL 5018607, at *5 (E.D.N.Y. Oct. 7, 2014) (citations omitted).  Knowledge of "confidential information regarding any direct evidence [the Government] will adduce at trial" is grounds for disqualification.  *United States v. Escobar-Orejuela*, 910 F. Supp.

7

92, 100 (E.D.N.Y. 1995).  There is a conflict if "an attorney's representation of the defendant is impaired by loyalty owed to a prior client," or his interests "diverge" from his client's interests "with respect to a material factual or legal issue or to a course of action."  *United States v. DiScala*, No. 14-CR-399, 2017 WL 6623985, at *2 (E.D.N.Y. Dec. 24, 2017) (citation omitted).

[REDACTED]

The defendants' discovery requests, [REDACTED], illustrate one area of conflict: [REDACTED].  Both may be reasonable strategies in a criminal case, but in these circumstances would put Mr. Cole in [REDACTED].

The defendants cite *United States v. Escobar-Orejuela*, where the court rejected the government's motion to disqualify the defendant's lawyer, a former prosecutor who had prosecuted the defendant twenty years earlier.  910 F. Supp. 92, 98-99 (1995).  The court concluded that there was no substantial relationship between the two prosecutions given the passage of time and the nature of the information to which the attorney was privy.  *Id.* at 99.  This case is a far cry from *Escobar-Orejuela*.  Mr. Cole left government service in 2015, [REDACTED].

Nor does the record support the defendants' characterization of Mr. Cole as an administrative functionary [REDACTED].  The record shows that Mr. Cole was [REDACTED].  "While a series of peripheral involvements may be insubstantial, the single act of approving or participation in a critical step may be substantial."  *Clark*, 333 F. Supp. 2d at 794 (citation omitted).

[REDACTED].  Mr. Cole's personal involvement [REDACTED] demonstrates his "closer and more direct relationship" with information potentially relevant to this matter.  *Twin Labs., Inc. v. Weider Health & Fitness*, No. 89 Civ. 0949, 1989 WL 496368, at *17 (S.D.N.Y.

8

May 4, 1989). High-level government officials have "significant responsibility" even when their function "is more often to oversee and approve than to execute." *In re Payment Card*, 2006 WL 6846702, at *18 (citation omitted).

Citing a news report from February of 2019, the defendants say that the investigation that forms the basis for the charges did not begin "at least in any material sense" until after Mr. Cole left public service. (ECF No. 72 at 9.) [REDACTED]. Mr. Cole's work as DAG is substantially related to this matter. [REDACTED].

## II.   Access to Confidential Information

Because there is a substantial relationship between the two representations, the Government is entitled to a presumption "that confidences were shared" with Mr. Cole. *See Prevezon*, 839 F.3d at 240. A court "should not require proof that an attorney actually had access to or received privileged information while representing the client in a prior case." *Gov't of India*, 569 F.2d at 740. Instead, a substantial relationship serves as a "substitute for [such] proof." *Revise Clothing Inc.*, 687 F. Supp. 2d at 394-95 (citation omitted). Accordingly, the Court need not "inquire into the nature and extent" that information was actually disclosed. *Prevezon*, 839 F.3d at 241 (citing *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 570 (2d Cir. 1973)). In any event, the record demonstrates that Mr. Cole had immediate access to [REDACTED] classified and confidential information substantially related to this case.

The fact that Mr. Cole currently has "no recollection of the matters" (ECF No. 51-1) does not change the analysis. "Memory is not so fixed and absolute[,]" and Mr. Cole's memory about the details of the investigation he supervised might very well be refreshed as the case progresses. *United States v. Uzzi*, 549 F. Supp. 979, 982 (S.D.N.Y. 1982) ("[A] court should

not base its decision whether or not to disqualify on [the challenged attorney's memory] but rather should rely on the inference of retained knowledge that arises from his contact with the case."). The Court's duty is to "preserve the integrity of the adversary process." *Hempstead Video Inc.*, 409 F.3d at 127.

### III. Waiver

The defendants make two waiver claims, but neither is persuasive. First, they assert that the Government waived the conflict because it did not move to disqualify Mr. Cole when he first appeared in the case. (ECF No. 72 at 9.) They also argue that they are aware of the conflict, and have waived their right to conflict-free counsel. (*Id.* at 25.)

The length of delay in bringing a disqualification motion is an important consideration, but is "not determinative." *KLG Gates v. Brown*, 506 B.R. 177, 192 (E.D.N.Y. 2014) (citation omitted); *see also Anderson v. City of New York*, No. 16-CV-2583, 2017 WL 4382163, at *4 (S.D.N.Y. Sep. 29, 2017) (a motion to disqualify "should be made within a reasonable time of discovering a possible conflict of interest, or a waiver will be presumed.") (collecting cases). Courts should also consider "[w]hen the movant learned of the conflict; whether the movant was represented by counsel during the delay; why the delay occurred, and, in particular, whether the motion was delayed for tactical reasons; and whether disqualification would result in prejudice to the nonmoving party." *KLG Gates*, 506 B.R. at 192 (citation omitted).

The Government claims [REDACTED]. The Government represents that bringing a disqualification motion before the indictment was unsealed could have jeopardized [REDACTED]. The Court agrees. Requiring the Government to inform a lawyer of a conflict during an active grand jury investigation is not only premature, but could compromise an entire investigation. *See In re Grand Jury Subpoena Served Upon Doe*, 781 F.2d 238, 245 (2d Cir.

1986) ("Before disqualification can even be contemplated . . . the grand jury must indict; the government must go forward with the prosecution of the indictment . . . .").[7]

Since the Government did not waive Mr. Cole's conflict, it does not matter whether the defendants have waived their right to conflict-free counsel. However, it is not obvious to me that the defendants' waiver can be truly informed. Informed consent to waive a conflict requires that the current clients have adequate information about "the material and reasonably foreseeable ways that the conflict could adversely affect the[ir] interests[.]" *See Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, 722 F. Supp. 2d 295, 311 (E.D.N.Y. 2010) (citing N.Y. R. Prof'l Conduct, r. 1.7, cmt. 18). Mr. Cole cannot apprise his clients of his conflict not only because the information is privileged, but because it is classified. As the defendants concede in their opposition brief, "[t]he factual basis for the Government's disqualification motion [is] a mystery to Huawei." (ECF No. 72 at 9.) District courts have "substantial latitude" in refusing or accepting waivers. *Wheat*, 486 U.S. at 153. Because the defendants have so little information about the source of the conflict, their waiver cannot be knowing or intelligent.

## CONCLUSION

Mr. Cole is disqualified from representing any of the defendants in this matter. The Government does not seek to disqualify Mr. Cole's law firm, Sidley Austin LLP, from representing the defendants, and thus the Court does not reach the issue of conflict imputation. Sidley Austin LLP should take prompt and reasonable steps to address Mr. Cole's conflict under New York Rule of Professional Conduct 1.11.

---

[7] This is not a situation in which disqualifying Mr. Cole will require the defendants to retain new counsel, who would then need to familiarize themselves with the case. Mr. Cole is one of a large team of able lawyers, some of whom are former prosecutors, from respected law firms.

**SO ORDERED.**

s/Ann M. Donnelly
_____

Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
     December 3, 2019
     Redacted – February 19, 2020