**SIDLEY**                                                                                    **JENNER&BLOCK**LLP

May 21, 2020                                                                    **UNREDACTED VERSION**
                                                                                **FILED UNDER SEAL**

**VIA ECF**

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, NY 11201

Re:   *United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457 (S-3) (AMD);
      <u>Reply in Support of Application re Sensitive Discovery Material</u>

Dear Judge Donnelly:

      Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "the Huawei Defendants") respectfully submit this reply in further support of their application for the Court's authorization to redesignate as "Discovery Materials" ("DM") a limited subset of the hundreds of thousands of documents that the government has designated as "Sensitive Discovery Material" ("SDM").[1]

      As this Court explained when it addressed the Huawei Defendants' prior motion on SDM designations, the key inquiry is whether the documents at issue are "really sensitive" in the first place. *See* Sept. 4, 2019 Status Conference Tr., at 35–39. In the ensuing negotiations between the parties, the government conceded that a small subset consisting of several hundred documents could be downgraded. *See* Gov't Opp'n to Appl. re Sensitive Discovery Material ("Gov't Opp'n") at 3, ECF No. 157. Yet the government refused to revisit the vast majority of its designations—or even to explain the basis for many of those designations to the defense team.

---

[1] Capitalized terms and acronyms have the meaning given to them in the protective order entered by the Court on June 10, 2019 ("Protective Order"), *see* ECF No. 57, and in the Huawei Defendants' application, *see* Defs.' Appl. re Sensitive Discovery Material ("Mot."), ECF No. 143. The Huawei Defendants have respectfully requested oral argument on this application. *Id*.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 2

Now, for the first time, the government has identified certain sensitivities in its productions that it says warrant SDM status. The government's response provides information that the Huawei Defendants have been seeking for nearly a year, and it represents a step in the right direction.

At the same time, it has taken far too long to reach this point. Notwithstanding months of attempted negotiations and multiple rounds of briefing in this Court, the government has provided only limited information about the asserted sensitivities in the Application Materials and even then only for broad and amorphous categories of documents. Furthermore, the government's proposed path forward—to deny the Huawei Defendants' application outright or force them to divulge defense strategy to the Prosecution Team without use of Firewall Counsel—is not the right one. It relies on a misunderstanding and misapplication of the "good cause" standard that the government must meet to justify the unusually restrictive conditions that attend SDM designations, and a total disregard of the Huawei Defendants' countervailing interests in fully participating in their defense.

The Court should grant the Huawei Defendants' application with respect to this subset of SDM. But in the event the Court is not prepared to grant the application in full at this time, any remaining disputes should be referred to a magistrate judge or special master for resolution. As part of the referral order, the government should also be required to make a final decision on the "more than 1,000 SDM documents" it says it is "still considering downgrading" but has not yet addressed, Gov't Opp'n at 3 n.4, so that the government's delay does not tax judicial and defense resources any more than it already has.[2]

**I.     The Government Fails To Demonstrate Good Cause For These SDM Designations.**

This dispute arose after the government designated more than half of its first 14 productions as SDM. Rather than challenging each improper designation, the Huawei Defendants have taken the time (as reflected in Appendix A to their application) to identify the specific documents that are not only improperly designated but also believed to be vital to their defense. They constitute less than 9% of the documents designated as SDM in the government's first 14 productions, and less than 4.5% of the overall discovery in those productions.

Now that the Huawei Defendants have lodged and explained these objections, it is black letter law and black letter text of the Protective Order that the government must demonstrate "good cause" for the restrictions that accompany SDM status. Yet the government does not come close. The government exaggerates the volume of designations at issue and misstates the applicable legal standard. Its specific arguments about good cause fare no better. While those arguments might support the need for targeted redactions within certain documents, they do not justify blanket

---

[2] The government does not explain why it remains unable to decide the proper designation for this tranche of documents, months after it agreed in principle to downgrade them and more than eight months after this Court directed the parties to resolve their disputes to the greatest extent possible.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 3

designations of entire documents, much less entire *categories* of documents, as SDM—a designation that seriously impairs the Huawei Defendants' ability to prepare their defense. *See* Mot. at 2.

*First*, the government mischaracterizes the number of documents at issue and its practices in designating them. As the Huawei Defendants have made clear from the start, this application concerns SDM designations in the government's first 14 productions. Mot. at 2, 5. The fact that the government has since made additional productions with fewer SDM designations is beside the point (and hardly reassuring given that those productions appear to contain an enormous number of documents that are not relevant to the charged offenses).³ Within the first 14 productions at issue here, which constitute the core discovery as to the charges in the Second Superseding Indictment, the government did in fact designate *more than half* of the documents as SDM—specifically, 256,804 SDM documents out of 476,313 total documents. And the Huawei Defendants' application challenges less than 9% of those designations (or 21,259 out of 256,804). The government's claim that it designated far fewer documents as SDM, *see* Gov't Opp'n at 2–3 & n.2, is premised on its dubious decision to count an ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Thus, although ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ referenced by the government constitute just six documents by the government's count, *see* Gov't Opp'n at 2–3, in reality they contain ▓▓▓▓▓▓ documents between them.

*Second*, the government misconstrues *In re Terrorist Attacks on September 11, 2001*, 454 F. Supp. 2d 220 (S.D.N.Y. 2006), to hold that a "loosened standard" applies to the good cause showing required of the government here. *See* Gov't Opp'n at 4. Not so. That decision addressed the standard for defense counsel in civil litigation to obtain "an initial protective order based upon a general showing of good cause." *In re Terrorist Attacks*, 454 F. Supp. 2d at 222. It did not suggest that a particular designation decision made *under* that protective order would be subject to anything other than the traditional good cause standard. Yet those are the circumstances presented here. The Huawei Defendants are not attempting to litigate the propriety of the Protective Order to which they previously agreed (albeit with the government's assurance that SDM designations would be rare, *see* Mot. at 2). The Huawei Defendants are instead challenging whether the government has made proper designations under the Protective Order's framework. In this context, there is no basis for the government's argument that this Court should apply a watered-down version of the familiar good cause standard. *See* Protective Order ¶ 19 (government may "seek to establish good cause"); Fed. R. Crim. P. 16(d)(1); *United States v. Smith*, 985 F. Supp. 2d 506, 521–24 (S.D.N.Y. 2006).

---

³ The government's fifteenth production was made approximately one week after the government and the Huawei Defendants held a meet-and-confer regarding over-designation of materials as SDM. Coincidentally or not, less than 4% of the materials in the fifteenth and subsequent productions have been labeled as SDM.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 4

*Third*, the government's efforts to meet that standard fall short. Much of the government's response relates to protection ▌. *See, e.g.*, Gov't Opp'n at 6–8. For example, the government complains that ▌. *Id*. at 8. The Huawei Defendants have already stated that they have no objection to treating ▌ in the Application Documents as sensitive. *See* Mot. at 11. Yet that does not justify designating the *entire* document as SDM and thus severely restricting the Huawei Defendants' ability to view, discuss, and investigate the rest of its contents. Rather, in circumstances in which this concern is genuine, it can be addressed through targeted redactions in documents otherwise designated as DM. *Id*. To the extent the Huawei Defendants believe that ▌ should not be withheld on a particular document for a specific reason, the parties or the magistrate judge can address that issue on a case-by-case basis as needed.

The government's arguments about ▌ are also unpersuasive. Gov't Opp'n at 4, 8. The government has not mustered any authority for the proposition that ▌ is a legitimate basis for sensitivity with respect to large corporations that are already very publicly part of a criminal prosecution. Its only citation for the claim that redesignation "could lead to undue pressure ▌" comes from a decision finding good cause for a protective order in the prosecution of the individual defendants involved in the Bunkerville standoff with federal officers. *See id.* at 8 (citing *United States v. Bundy*, No. 2:16-CR-046-GMN-PAL, 2016 WL 7030431, at *1 (D. Nev. Nov. 30, 2016)). In that case, the government came forward with 22 specific examples of "social media and online posts sharing personal identifying information of the law enforcement and other witnesses in this case including names, pictures, phone numbers and addresses—some encouraging defendants' supporters to contact them in way that could be construed as threatening or intimidating." *Id*. at *3. The court also noted that one supporter had already pled guilty to transmitting a threatening communication, and that specific prosecutors had been named "in a post calling for a lone wolf attack and exclaiming the joy it will be to see the prosecutor hang or burn for treason." *Id*. The government's suggestion that the circumstances here are remotely analogous to the circumstances in *Bundy* is nonsense. Huawei, one of the largest corporations in the world, has diligently complied with the terms of the Protective Order, including its restrictive conditions for *all* discovery materials, *see* Mot. at 4, and the government does not claim otherwise. There is simply no basis for the government's insinuation that Huawei will disclose the Application Documents, much less perpetrate or incite ▌. *See* Mot. at 11 (citing, *inter alia*, *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007), for the basic proposition that good cause requires "specific examples or articulated reasoning").[4]

---

[4] For much the same reasons, the government's lengthy discussion of an article published last month in *The New York Times* is a non sequitur. That article contains "allegations" (the

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 5

Nor do the government's concerns about ▇▇▇▇▇▇▇ justify its blanket SDM designations of ▇▇▇▇▇▇▇. *See* Gov't Opp'n at 7. The Huawei Defendants certainly acknowledge that ▇▇▇▇▇▇▇ might be sensitive in certain circumstances. Yet the government's indiscriminate designations of large swaths of documents belie any legitimate concern. For example, the government categorically asserts that ▇▇▇▇▇▇▇ reveal ▇▇▇▇▇▇▇ and that:

> [s]hould such information fall into the wrong hands, it could be used to negatively affect ▇▇▇▇▇▇▇ in a number of ways, including by ▇▇▇▇▇▇▇

Gov't Opp'n at 7. This reasoning is illustrative of the government's approach. The articulated concern may be credible to the extent that documents marked as SDM actually reveal ▇▇▇▇▇▇▇. If that is the case, the government should then proffer redactions for those documents, or, where it believes redaction is not possible, defend its designations on a case-by-case or tailored categorical basis with the particularized showing required.[5]

But the government's assertion that such materials were, and remain, sensitive *en masse* demonstrates that its approach to the Protective Order is not properly calibrated to the good cause

---

government's word choice, *see* Gov't Opp'n at 6) that the People's Republic of China ("PRC") arrested former Huawei employees in December 2018. Even if these allegations are true, which the government itself does not contend, they do not show any wrongdoing on the Huawei Defendants' part, and they certainly do not support the government's far-fetched claim of a "significant likelihood" that the Huawei Defendants will violate the Protective Order and feed information to the PRC so that it can "take actions to intervene on behalf of Huawei in the context of a criminal case." *Id*.

[5] In service of its argument, the government also misstates the Protective Order and misremembers its prior briefing. The Protective Order does not provide that certain categories, including "proprietary or sensitive information of a victim financial institution," "merit[] extra protections." Gov't Opp'n at 6. Rather, the Protective Order requires that documents meet that threshold in order to permit the government to make its preliminary *unilateral* designation as SDM. The Protective Order goes on to provide that actual determinations of sensitivity are made by the Court under the traditional "good cause" standard. Protective Order ¶ 19; Gov't Letter to Hon. Ann M. Donnelly, Aug. 1, 2019, at 2, ECF No. 81("the government may make an application to the Court to establish good cause to maintain the SDM designation").

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 6

standard. A cursory review shows that even within the subset of



[6]

[7]

In sum, the government has not carried its burden under the law and the Protective Order to demonstrate good cause.

## II.     The Government's Arguments About Prejudice Are Unavailing.

The Huawei Defendants have detailed the substantial and unwarranted burdens that flow from these over-designations. *See* Mot. at 7–10. The government's response is rife with contradictions. While insisting that "Huawei employees in the United States can review [SDM] materials freely," Gov't Opp'n at 10, the government acknowledges that the company is headquartered in China, *id*. at 5. Despite claiming that a single meeting in Japan several months ago was ample opportunity for "PRC-based employees" to view "a significant volume of SDM," *id*. at 10, the government contends that it "would likely take several months" for Firewall Counsel to review the very same documents, *id*. at 13.[8] And although the government boasts of its agreement to provide safe passage to Huawei employees for the Japan meeting and for future trips

---

[6] This is particularly so because the government has certified to federal courts that  *See, e.g.,*  .

[7] Copies of exemplar documents discussed in this Reply are attached hereto as Appendix A.

[8] Indeed, Firewall Counsel claims that it would take "several months" to review just 9% of the SDM. These claims may well be overstated, but they certainly demonstrate the inadequacy of special government-approved meetings as a means of reviewing those documents.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 7

to the United States, *id*. at 3, 10 n.15, it concedes that such accommodations are no use to Huawei unless or until "the instant health crisis abates," *id*. at 12 n.16— an indeterminate point in the future that none of the parties or the Court can reliably predict.

Even setting those contradictions aside, the government's arguments lack merit. The bottom line is that the government's over-designations have severely impaired the Huawei Defendants' ability to review and discuss hundreds of thousands of documents, including over 21,000 documents believed to be highly relevant to their defense. The government's rejoinder— that Huawei is able to review *other* discovery materials or have "more generalized discussions with counsel" about defense strategy—does not diminish the prejudice to the Huawei Defendants. Gov't Opp'n at 10.[9] And the government's offer that the Huawei Defendants can "review [] the documents outside the PRC," *id*., ignores both rational concerns among Huawei personnel about international travel, and travel restrictions due to the ongoing global COVID-19 pandemic.[10]

The central problem is that client personnel and defense counsel cannot discuss the Application Documents over the phone or by email, client personnel cannot create or possess work-product or even orally discuss the Application Documents among each other, and neither client personnel nor defense counsel can make use of the Application Documents in China to verify facts, interview witnesses, or conduct follow-up investigation. As one straightforward example, many of the Application Documents ████████████████████████████████████████████████████████████████████████████████████████████████████████

---

[9] The government has marked as SDM—and thus largely precluded the client from discussing— many of the key documents in the case, including ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

[10] Even assuming those restrictions will be lifted and the risks will abate, travel by client personnel to the United States, or by client personnel *and* defense counsel to a third country approved by the government on an ad hoc basis, is not a viable solution given the quantity of SDM at issue. Client personnel cannot take their own work product from the meeting back to China or discuss the SDM once home. Nor can defense counsel follow-up with client personnel about matters discussed at the meeting or work product that comes out of the meeting. *See* Mot. at 2, 9. This concern is no hypothetical: counsel's inability to make use of work product from the Japan meeting permitted by the government last year has hampered multiple lines of potential defense investigation.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 8

██████████████████████████████████████████████████████████████████████████████████
████████████████████████████████. To prepare the defense, client personnel and defense counsel need to discuss the potential relevance of ████████████████████████████████████████████████████████████████████████████████████████████████████. Not only the potential witnesses, but also the relevant Huawei personnel who might be able to identify and locate the witnesses in the first instance, are likely to be located in China. The government's apparent solution—that the Huawei Defendants and their lawyers memorize thousands of pages of ████████████████████████████████████—is no solution at all. The Huawei Defendants agreed to this format when they believed, based on the government's representations, that SDM designations would be rare. But it is not workable for a volume of material that, by the government's own estimate, would take "several months" to review. Gov't Opp'n at 13.

The government's contention that these restrictions do not prejudice the Huawei Defendants' ability to prepare their defense cannot be taken seriously. If a U.S. company of comparable size to Huawei were to be prosecuted in China, no one would dispute that the restrictions at issue here—requiring all review of tens of thousands of pages of key discovery materials to take place in China or another foreign country at the PRC's discretion, and imposing a judicial gag order on even discussing that evidence outside of China—would impair its ability to prepare its defense. That is true regardless of the company's resources or the size of its legal team. *Contra* Gov't Opp'n at 11. And those criticisms would be correct. After all, the good cause standard does not require the defendant to prove beyond a reasonable doubt that it is financially or logistically *impossible* to prepare and present a full defense given the restrictions; it asks whether and to what degree the restrictions might impact the defendant, and whether those harms are reasonable and necessary. *See* Mot. at 7. The impact in this case is undeniable and unwarranted.[11]

Finally, the government asserts that the Application Materials (which the Prosecution Team has not seen) cannot possibly be as important as the Huawei Defendants claim. This assertion seems to be based in large part on the government's substantive disagreement with part of the Huawei Defendants' defense strategy, which the government describes as "blam[ing] the victims" by "arguing that the financial institutions knew, among other things, that Huawei actually operated Skycom as an unofficial subsidiary." Gov't Opp'n at 12. The government then attempts

---

[11] The Huawei Defendants have also proposed, as a potential compromise, an agreement to review SDM in Hong Kong, which is relatively convenient to reach from Huawei's offices in Shenzhen, China. A comparable solution was approved in another recent federal criminal prosecution involving a defendant corporation headquartered in China. *See* Transcript of Oral Argument, *U.S. v. United Microelectronics Corp. et al.*, 3:18-cr-00465 (N.D. Cal.) (Oct. 23, 2019), at 42:17–18 ("I really can't find that Hong Kong is in the same category as Mainland China."). The government, however, has rejected this proposal.

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 9

to litigate whether the evidence and the law in fact support this defense strategy. *Id*. at 12 n.17. These attempts are misguided for two reasons.

To begin, the government is wrong on the law. While reliance is not an element of bank or wire fraud, materiality is. *Neder v. United States*, 527 U.S. 1, 25 (1999). Materiality turns on context; it asks whether a false statement has a natural tendency to influence, or is capable of influencing, the decision-maker to which it is addressed. *Id*. at 16. Here, that context includes ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Mot. at 7–8. Likewise, it is implausible that Huawei sought to defraud banks by not telling them something that Huawei had openly disclosed. The Application Documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Finally, the Third Superseding Indictment expressly and repeatedly alleges that the banks relied on the Huawei Defendants' purported misstatements, presumably in an effort to bolster the government's contention that these statements were material. Third Superseding Indictment at ¶¶ 71, 74, 75, 79, 85. In other words, the defense strategy that the government tries to pass off as "blam[ing] the victims" in fact exposes a fatal flaw in the foundation of the government's case.

But that is a debate for another day. More to the point, the government's disagreement with the Huawei Defendants' defense strategy (which is hardly surprising) does not alter the good cause standard that the government must meet. The government has not met that standard, and given the severe prejudice to the Huawei Defendants from these unwarranted SDM designations, redesignation of this limited subset is proper.

**III.     This Court Should Grant The Huawei Defendants' Application Or, In The Alternative, Refer The Matter For Further Proceedings On Disputed Designations.**

For the reasons set forth above, the government has failed to justify SDM status for the Application Documents, which should be downgraded to DM. To the extent the Court is not prepared at this time to downgrade all of these materials, the Huawei Defendants respectfully request that the Court refer this matter to a magistrate judge or special master to resolve remaining disputes.

While the parties have made some progress in the right direction, including the government's decision to downgrade several hundred documents and to finally identify certain sensitivities within other documents or categories of documents, it has taken too long to get here. The government does not dispute that it told the Huawei Defendants in negotiating the Protective Order that it would use SDM designations only rarely. Yet it has marked hundreds of thousands of documents for these highly restrictive conditions. What's more, rather than justify these designations, the government has sought to shift the burden to the defense to come forward with

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
May 21, 2020
Page 10

specific needs, and insisted that the defense reveal those needs to the Prosecution Team without use of Firewall Counsel as the Protective Order contemplates.

Given the government's approach, further negotiations will not be productive. Thus, to the extent this application is not granted in full, any remaining disputes should be referred to a magistrate judge or special master for resolution. If the Prosecution Team maintains that it should handle those disputes rather than Firewall Counsel, then the Prosecution Team should abide by the Court's Protective Order and provide justifications for all of its SDM designations so that the Huawei Defendants are not placed in a position of disclosing which materials they regard as key to their defense.

Alternatively, if the government demands that the Huawei Defendants come forward (as they have) with a specific selection of documents, then Firewall Counsel must litigate these disputes. The Huawei Defendants seriously doubt that the burden on Firewall Counsel will be as great as the government claims, given that the government is obviously capable of identifying sensitivities in the Application Documents categorically. To the extent this process is burdensome, though, it is a product of the government's over-designations in the first instance, and it is all the more reason to proceed without further delay.

\*\*\*

For the foregoing reasons, the Huawei Defendants respectfully ask this Court to redesignate the Application Documents as Discovery Materials or, alternatively, refer remaining disputes to a magistrate judge or special master for resolution.

Respectfully submitted,

| /s/ Thomas C. Green | /s/ David Bitkower |
|---|---|
| Thomas C. Green | David Bitkower |
| Mark D. Hopson | Matthew S. Hellman |
| Michael A. Levy | JENNER & BLOCK LLP |
| SIDLEY AUSTIN LLP | 1099 New York Avenue, NW |
| 1501 K Street, NW | Washington, D.C. 20001 |
| Washington, D.C. 20005 | Tel.: 202-639-6048 |
| Tel.: 202-736-8069 | Email: dbitkower@jenner.com |
| Email: tcgreen@sidley.com | |

*Counsel for Defendants Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*