UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

       - v. -                              18 CR 457 (S-3) (AMD)(CLP)

HUAWEI TECHNOLOGIES CO.,
LTD., *et al.*,

              Defendants.

_____

## DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S <u>REPLY IN SUPPORT OF THEIR MOTION FOR A BILL OF PARTICULARS</u>

| | |
|---|---|
| Thomas C. Green | David Bitkower |
| Mark D. Hopson | Matthew S. Hellman |
| Michael A. Levy | JENNER & BLOCK LLP |
| Joan M. Loughnane | 1099 New York Avenue, NW |
| Douglas A. Axel | Washington, D.C. 20001 |
| Brian J. Stretch | |
| SIDLEY AUSTIN LLP | |
| 1501 K Street, NW | |
| Washington, D.C. 20005 | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT .............................................................................................................................1

I. The Government Overstates Its Prior Disclosures And Misstates Its Obligations. ............2

II. This Court Should Order The Government To Provide The Requested Particulars. ..........5

    A. The Government Should Identify The Transactions At Issue. ....................................5

    B. The Government Should Identify The Relevant Statements And Omissions. ...............6

    C. The Government Should Identify The Alleged Co-Conspirators................................7

    D. The Government Should Identify The Wires At Issue. ..............................................9

CONCLUSION ........................................................................................................................10

## TABLE OF AUTHORITIES

**CASES**

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) .......................................................... 3, 6

*United States v. Chalmers*, 410 F. Supp. 2d 278 (S.D.N.Y. 2006) ........................................ 2, 3, 8

*United States v. Concord Management & Consulting LLC*, 385 F. Supp. 3d 69 (D.D.C. 2019) .... 9

*United States v. Feola*, 651 F. Supp. 1068 (S.D.N.Y. 1987) .......................................................... 9

*United States v. Gammarano*, No. CR-06-0072 (CPS), 2007 WL 2077735 (E.D.N.Y. 2007) ....... 9

*United States v. Hawit*, 15-cr-252 (PKC), 2017 WL 663542 (E.D.N.Y. 2017) ............................. 6

*United States v. Kahale*, 789 F. Supp. 2d 359 (E.D.N.Y. 2009) .................................................... 8

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ......................................... 6, 7, 9

*United States v. Rajaratnam*, No. 09 CR 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. 2010) ......... 6

*United States v. Shkreli*, No. 15-637 (S-1) (KAM), 2016 WL 3362485 (E.D.N.Y. 2016) ........... 10

*United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651 (S.D.N.Y. 2017) ...................... 10

**ARGUMENT**

The Huawei Defendants seek basic information about the allegations in the Indictment that is commonly provided by the government or required by the courts: namely, (1) the statements and omissions the governments contends are fraudulent, (2) the transactions they contend are illegal, (3) the wires they contend are illegal, and (4) the identities of Huawei's supposed co-conspirators. The defense is entitled to these items, and not merely a statement that the government has identified "some" of the required information, leaving the defense to guess as to the rest.

In its response, the government attacks strawmen. The government insists, for example, that it need not furnish "witness lists," "witness statements," "trial exhibits," or a "roadmap for the government's case at trial." The Motion does not seek those materials. Nor does it ask the Court to freeze the government's case or forbid further investigation. The Motion requests only disclosure of the government's current allegations: allegations that the government could seek to prove in any number of ways and which the defense does not seek to limit through this motion.

The government repeatedly tells the Court that it need not identify the statements it contends are fraudulent because it has identified the "core" of the scheme, that it need not identify the full list of transactions it contends are illegal because it has provided illustrative examples that "may" be proved by the government, that it need not identify all of the wires it contends were unlawful because it has identified "various means" used in the alleged wire fraud scheme, and so on.

As explained in the Huawei Defendants' opening motion, and further detailed below, the courts in this Circuit have consistently rejected that kind of partial disclosure. There is the obvious unfairness of the government keeping to itself basic information about what it is alleging that is not possible to divine from millions of pages of discovery. If, for example, the government is alleging that a given transaction is illegal, it should say so rather than coyly tell the defense that the allegedly illegal transactions may (or may not) be found in a list of hundreds of transactions.

1

The government's position also has real consequences for the efficient administration of the case. Absent easily supplied specificity, it is likely that the parties will needlessly brief numerous discovery disputes and dispositive motions over issues that are irrelevant to the charges that the government intends to prove. The Indictment's charges are serious and sprawling but it would be the work of an afternoon for the government to compile the basic information that the Huawei Defendants seek, and that case law and common sense require to be disclosed.

Finally, the government has no legitimate interest in concealing the information the Huawei Defendants have requested. If there were any plausible showing that a particular disclosure implicated sensitive information—a showing the government invariably prefers to make in this case by insinuation or through secret filings—those sensitivities could be easily protected through existing means under the Protective Order rather than concealment.

### I. The Government Overstates Its Prior Disclosures And Misstates Its Obligations.

The government makes three principal responses to the Motion, each without merit.

*First*, the government repeatedly insists that supplying the requested information would restrict its ability to develop and present its case. Opp'n 1, 13, 16, 18, 19–20, 24. But particulars furnished in good faith now could be updated as trial approaches, and would not constrain the government to particular witnesses or exhibits at trial. The government's contrary view relies on a misreading of *United States v. Chalmers*, 410 F. Supp. 2d 278 (S.D.N.Y. 2006), the most-cited authority in the government's opposition. In *Chalmers*, the prosecution *voluntarily* made highly detailed disclosures in a fraud case—including "roadmaps" describing which documents produced in discovery corresponded with the charges in the indictment, as well as "a subset of documents, culled from voluminous records, that it believe[d] support[ed] the charges and m[ight] be used in its case-in-chief." *Id.* at 285. Those disclosures—which greatly exceed what the government has provided here—forced the defense to acknowledge that its motion for a bill of particulars was

"largely moot," but it nonetheless asked the court to prohibit the government from making any changes to its case before or during trial. *Id.* at 283–85. Here, the government seizes on the court's denial of that request. But the Huawei Defendants are not asking this Court to constrain the government's flexibility to develop and refine its presentation for trial; rather, they are asking to learn what the present Indictment contends is illegal. Put simply, the Huawei Defendants would gladly have this Court follow *Chalmers* and instruct the government to make disclosures while allowing it to make changes in the future as needed (with reasonable notice to the defense).

*Second*, the government claims its disclosures are sufficient because the Indictment and other materials provide "a tremendously detailed explanation of the charges." Opp'n 11. The government's brief uses the word "detailed" 14 times to describe its disclosures ("detailed disclosure," "painstaking detail," "detailed narrative," "tremendously detailed," etc.), but the government is pointedly *not* saying that those supposed details provide the particulars that the Huawei Defendants seek. The specific deficiencies in the government's disclosures are discussed below, but in every case those "details" are, at best, *examples* of what it contends was unlawful. The government for example refers to its allegations concerning supposed fraud in a 2013 presentation, but it expressly leaves open the possibility that it is prosecuting other unknown supposed misstatements and omissions as well. The government responds that its illustrations are enough because the Huawei Defendants are capable of sifting through the discovery to learn the rest. *Id.* at 11, 22. But the government cannot bury particulars in millions of pages of discovery. *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987). Indeed, no amount of searching the discovery can reveal what is in the government's mind, particularly given that the charges here concern *intentional* and *willful* misconduct. It is not enough for the government to prove that the Huawei Defendants made a misstatement or even engaged in an unlawful transaction; the government must prove intentional misstatements and willful violations. Reviewing every aspect of 1,000,000 emails would

3

still not identify the 10, or 100, or 1,000 statements (let alone omissions) that the government contends were fraudulent. Likewise, reviewing every aspect of 1,000,000 transactions would still not reveal the 10, or 100, or 1,000 transactions the government contends are willfully illegal. Quantity is not quality when it comes to discovery and bills of particulars.[1]

*Third*, the government contends that certain protective orders in this case excuse it from supplying particulars at this time. *See* Opp'n 5 n.1, 20, 24. In fact, this is the government's only real response to two categories of particulars sought in the Motion: those regarding the identity of Employee-1[2] and *any* description of the witnesses and other evidence allegedly put out of the government's reach to form the obstruction of justice charge. *Id.* 20, 24. But the government's argument is circular. Nothing about identifying those individuals would remotely suggest their cooperation. Only by invoking the protective orders has the government *now* needlessly suggested cooperation. The government has, in effect, created its own exigency.

In any event, the government's reliance on the protective orders is misplaced. A protective order safeguards the dissemination and use of information. It does not absolve the government from furnishing information to which the Huawei Defendants are otherwise presently entitled under law. In the case of Employee-1, for example, the government is literally taking the position that it need not identify the individual whose employment by Skycom constituted a violation of U.S. sanctions law. *Id.* at 20. Huawei cannot prepare a defense to a charge that it illegally employed an unknown person. Likewise, the government contends it can charge the Huawei Defendants with concealing witnesses and destroying documents without giving any indication of what witnesses and documents it is talking about. *Id.* at 25. Again, no defendant can defend against the unknown. To the extent

---

[1] The government repeatedly contends that the Huawei Defendants must understand the allegations against them because they have identified relevant documents in other motion practice. Whatever the Huawei Defendants have been able to learn about the illustrative particulars the government *has* provided, they certainly have not learned about the particulars the government has not provided.

[2] "Employee-1" is the U.S. citizen who the Indictment alleges was employed in Iran. Indictment ¶ 70.

4

the government has justifiable safety concerns, there are numerous options for addressing those concerns without depriving the defense of the requisite particulars. But a protective order addressing *evidence* cannot serve as a blanket ban on the provision of essential *allegations*.

## II. This Court Should Order The Government To Provide The Requested Particulars.

### A. The Government Should Identify The Transactions At Issue.

Although the government "reserves the right to supplement or narrow the transactions [at issue] in advance of any future trial date," it nonetheless refuses to disclose the transactions of which it is presently aware, claiming that doing so would "limit the transactions" for trial. Opp'n 19, 19 n.4. If the government intends the charges to encompass transactions other than the five examples in the Indictment (totaling $313,961.67), Indictment ¶¶ 113(d)–(h), or the additional examples in its spreadsheet, it should say so.[3] Disclosing this basic information does not prejudice the government or restrict its trial presentation, and the government does not cite any authority to indicate otherwise. The government is free to pursue newly discovered particulars at trial provided it gives reasonable notice. But withholding information *currently* known severely prejudices the Huawei Defendants, who are left to guess which of the millions of transactions in discovery are alleged to be illegal.

The government urges that the illegal transactions are the ones that provided "banking and other financial services from the United States to Iran and the Government of Iran," Opp'n 20 n.5, but it refuses to say which of Skycom's (or any other entity's) transactions those are, and there is no way to identify them from the face of the transactions because *every* transaction produced in discovery went from one place *outside of* Iran to another place *outside of* Iran. Which of the millions of transactions the government contends were, beneath the surface, for the benefit of Iran is something the government contends it is permitted to leave as a mystery.

---

[3] Notably, the ROC asserts that HSBC cleared approximately $100 million in dollar-denominated Skycom transactions through the U.S. ROC ¶ 75(b). That figure far exceeds the examples the government provided in the Indictment or its spreadsheet.

5

The law rejects that approach. As seen in cases like *Hawit* and *Nachamie*, which the government does not attempt to distinguish, courts in this Circuit have repeatedly held that "allegedly tainted transactions" should be disclosed in a bill of particulars. *United States v. Hawit*, 15-cr-252 (PKC), 2017 WL 663542, at *11 (E.D.N.Y. Feb. 17, 2017); *see also United States v. Nachamie*, 91 F. Supp. 2d 565, 571 (S.D.N.Y. 2000) (requiring government to identify all claims alleged to be false). The government does not explain why it has provided such anemic disclosures as compared to those provided in other prosecutions in this District where the charges were *less* complex and yet the disclosures were far more detailed. *See* Mot. 18 (citing *Shkreli* and *Shteyman*). Most tellingly, the government's response does not acknowledge this Circuit's leading case, *Bortnovsky*, which held that a court commits reversible error when it denies particulars as to which transactions are allegedly illegal. 820 F.2d at 574–75. This Court should reject the government's invitation to commit the same error that required reversal in *Bortnovsky*.

      **B.**      **The Government Should Identify The Relevant Statements And Omissions.**

The government cannot withhold basic information about the allegedly fraudulent statements and omissions—such as the content, speaker, date, and location—based on its assertion that the Huawei Defendants are not "ignorant of the core alleged fraud." Opp'n 14. That is not the standard, unless the government only plans to allege that "core" at trial; rather, this Court must assess whether the Huawei Defendants have sufficient particulars to "advise [them] of the specific acts of which [they are] accused." *United States v. Rajaratnam*, No. 09 CR 1184 (RJH), 2010 WL 2788168, *1 (S.D.N.Y. July 13, 2010). The generalities in the government's disclosures fall short of that standard, and the vast discovery only underscores the need for further particularity.

Courts in this Circuit have repeatedly ordered precisely the particulars that the Huawei Defendants seek, including the specific statements or representations at issue and the government's basis for asserting that they are false or misleading. Mot. 14 (citing *Vaid*, *Scully*, and *Schlegel*).

6

Similarly, courts have confirmed that the government cannot wait until trial to supply this information, which deprives defendants of the time they need to understand the charges and prepare their defense. Mot. 15 (citing *Rajaratnam* and *Kahale*). The government offers no response to that authority. Instead, the government strains to distinguish *Nachamie* and *Holmes*, Opp'n 13–14, just two of the several cases compelling the relief that the Huawei Defendants seek.

Those cases are directly on point. The indictment in *Nachamie* identified five distinct ways in which the defendants allegedly committed fraud. 91 F. Supp. 2d at 571. In other words, the government identified the "core" of the fraud, but it failed to inform the defendants *which* of 2,000 claims produced in discovery were alleged to be false. *Id.* The court granted the bill of particulars, confirming the defendants were entitled to know the specific claims at issue and what about each was fraudulent, and not just the core of what the government was alleging. *See id.* at 571–72. The government's argument for distinguishing *Holmes* is even weaker. The government says a bill of particulars was justified in *Holmes* because it involved "implicit" misrepresentations as well as explicit ones. Opp'n 14. Yet here the government is charging omissions in addition to statements, *e.g.*, Indictment ¶ 85, meaning the Huawei Defendants must guess not only what statements the government charges as materially misleading but also what statements the government thinks should have been made but were not. As in *Holmes*, this theory vastly "expands the scope of possible misrepresentations," *United States v. Holmes*, No. 5:18-CR-00258-EJD, 2020 WL 666563, at *9 (N.D. Cal. Feb. 11, 2020), at issue in this case and, together with the other factors considered in *Holmes*—including the duration and scope of the scheme, the number of employees, and the volume of the discovery—requires the particulars sought in this case. *Id.* at *10.

### C.  The Government Should Identify The Alleged Co-Conspirators.

Each conspiracy count alleges that a combination of corporate and individual defendants acted "together with others" to conspire in violation of federal law. *E.g.*, Indictment ¶ 92. Yet the

7

government refuses to identify the "others" with whom the Huawei Defendants allegedly conspired. The government blithely asserts that "nothing about the government's evidence *should* be a surprise," Opp'n 21 (emphasis added), and, on that basis, urges this Court to disregard the well-established factors that guide this analysis, *id*. 20 n. 6, 20–22. But those factors apply with full force, and they require the government to identify these alleged co-conspirators, including the employees for whose conduct the government seeks to hold the Huawei Defendants vicariously liable.

Courts in this Circuit "routinely" weigh six factors to determine whether the circumstances warrant disclosure of these particulars. *United States v. Kahale*, 789 F. Supp. 2d 359, 372 (E.D.N.Y. 2009). The government asks the Court to ignore this authority based on its claim—refuted by the very cases the government cites—that Second Circuit law excuses prosecutors from identifying alleged co-conspirators. *See, e.g.*, *Chalmers*, 410 F. Supp. 2d at 286 (explaining that courts "regularly grant" requests for these particulars, citing seven examples). But the Court cannot disregard these factors based on the government's say-so that they "are not a concern here." *See* Opp'n 21. To the contrary, the factors underscore why this request should be granted.

As to the first and second factors, the government does not dispute the substantial number of co-conspirators or the significant duration and breadth of the alleged conspiracy. *Kahale*, 789 F. Supp. 2d at 372. It does not even try to distinguish *Kahale* and *Oruche*, where courts granted motions for these particulars based on less expansive conspiracy charges. *See* Mot. 19–20. The government instead responds with non-sequiturs, claiming that the charges are "straightforward" and that the defendants are "sophisticated" parties with "immense means." Opp'n 21. Even accepting those assertions as true, they have nothing to do with the factors *actually* relevant to this Court's analysis—the number of co-conspirators and the duration and breadth of the alleged conspiracy—to which the government has no real response.

8

The government also misunderstands the third and fourth factors. The third factor does not ask whether the defendants have notice of *some* co-conspirators. Opp'n 21. And, on the fourth factor, the volume of the discovery is precisely what requires particulars in this case. *See Nachamie*, 91 F. Supp. 2d at 573 (government's "substantial" production did not obviate need for particulars); *United States v. Feola*, 651 F. Supp. 1068, 1133–34 (S.D.N.Y. 1987) (same).[4]

The government then reverses course, arguing in response to the fifth and sixth factors that the Huawei Defendants cannot learn the identities of the alleged co-conspirators because it would imperil those individuals and the ongoing investigation. Opp'n 22–23. This argument confirms what the Huawei Defendants have been saying all along: that the existing disclosures are insufficient to identify the alleged co-conspirators. In any case, the government's assertions are baseless both in fact and law. It cites literally nothing in the record to justify them, nor does it cite any case where a court found a "potential danger" that weighed against disclosure based on the types of allegations at issue here. *United States v. Gammarano* proves the point; it involved various charges of violence by members of the Gambino crime family. No. CR-06-0072 (CPS), 2007 WL 2077735, at *1–2 (E.D.N.Y. July 18, 2007). Even if the government's vague and unsupported concerns about safety are genuine, then they can be addressed through other restrictions; they are no reason to withhold the particulars entirely when every other factor of the required analysis favors disclosure.

### D. The Government Should Identify The Wires At Issue.

The government's response only confirms the immensity of the communications and transactions potentially at issue. Per the government, the relevant wires include both "email communications [and] written communications" involving "misrepresentations" (which the

---

[4] The government attempts to distinguish *United States v. Concord Mgm't & Consulting LLC*, 385 F. Supp. 3d 69, 75–76 (D.D.C. 2019), arguing that the limitations on discovery were far more onerous there. Opp'n 23. But the government cannot seriously dispute that it has sought "strict limitations … on the large volume of discovery" in this case. 385 F. Supp. 3d at 76. Even after the partial downgrade of SDM to DM, vast amounts of discovery remain restricted. *See generally* Appl. Sens. Disc. Mat., ECF No. 143 (describing restrictions).

9

government refuses to specify) "to the financial institutions through various means." Opp'n 17. Moreover, the government suggests that the potentially relevant wires include not only communications by the Huawei Defendants themselves (through their hundreds of thousands of employees) but also communications by various media outlets and financial institutions disseminating the alleged (but unspecified) misrepresentations. *Id*. Even beyond these communications, the universe also includes U.S.-dollar transactions, though the government concedes it has provided only "examples" of the transactions it deems relevant. *Id*. at 18.

This is not the type of "detailed guidance" that courts have found sufficient to supplant a bill of particulars. *See* Mot. 17. The government argues that its "non-exhaustive examples" of one subset of the wires at issue—financial transactions—are adequate. Opp'n 18 (citing *United States v. Shkreli*, No. 15-637 (S-1) (KAM), 2016 WL 3362485 (E.D.N.Y. June 3, 2016)). Yet the government cites an indictment, rather than a court opinion. And the detailed allegations in that indictment, which identify the specific dates and amounts of the wire transfers at issue, are a far cry from the broad and non-exhaustive examples provided here.[5] The government must meet that standard and identify particulars as to the wires.

## CONCLUSION

For the foregoing reasons, the Huawei Defendants' Motion should be granted.

---

[5] *United States v. Wey* is likewise distinguishable: there, the indictment provided at least one "specific example [of] each of Wey's wire communications in furtherance of the alleged scheme." No. 15-CR-611 (AJN), 2017 WL 237651, at *20 (S.D.N.Y. Jan. 18, 2017). Even with that level of detail, and in a far less complicated prosecution against an individual rather than a massive corporation, the court described the government's disclosures as relatively scarce. *Id.* at *22. It thus ordered "early identification of certain subsets of the Government's trial exhibits," including "all documents which it intends to introduce at trial to demonstrate a misstatement, omission, or wire communication." *Id*.

Dated: October 12, 2020                                      Respectfully submitted,

<div style="display: flex;">

/s/ Thomas C. Green                                          /s/ David Bitkower
Thomas C. Green                                              David Bitkower
Mark D. Hopson                                               Matthew S. Hellman
Michael A. Levy                                              JENNER & BLOCK LLP
Joan M. Loughnane                                            1099 New York Avenue, NW
Douglas A. Axel                                              Washington, D.C. 20001
Brian J. Stretch                                             Tel: 202-639-6048
SIDLEY AUSTIN LLP                                            Email: dbitkower@jenner.com
1501 K Street, NW
Washington, D.C. 20005
Tel: 202-736-8069
Email: tcgreen@sidley.com

</div>

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*

11