

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AAS:JN/DKK/SME                    *271 Cadman Plaza East*
F. #2017R05903                       *Brooklyn, New York 11201*

October 21, 2020

By ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    United States v. Huawei Technologies Co., Ltd., et al.
              Criminal Docket No. 18-00457 (S-3) (AMD)

Dear Judge Pollak:

        The government respectfully submits this letter in response to the motion (the "Motion" or "Mot.") by Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd., Huawei Device USA, Inc. ("Huawei USA"), and Futurewei Technologies, Inc. ("Futurewei") (collectively, "Huawei" or the "defendants") for discovery pursuant to Rule 16(a)(1)(C) ("Corporate Discovery"). Huawei seeks an order compelling Corporate Discovery (1) within 30 days, with respect to bank fraud- and sanctions-related charges ("S-2 Corporate Discovery") and (2) within 120 days, with respect to charges later included in the third superseding indictment ("S-3 Corporate Discovery"). (Mot. at 6-7). Huawei further seeks an order compelling the government to disclose information about or statements by or materials taken from individuals that the government contends can bind the defendants pursuant to Rule 16(c)(1)(C), but which the government has concluded are not discoverable.[1] (Mot. at 2). The government has already produced extensive materials responsive to Huawei's discovery requests, and continues to prepare and produce remaining Rule 16 discovery for production. As a result, Huawei's motion should be denied.

---

        [1] The Motion pertains only to unclassified materials, and the government's response herein addresses only such unclassified materials. Classified discovery will be addressed in the classified discovery process pursuant to the Classified Information Procedures Act, 18 U.S.C. App. III. Nor does the Motion seek Corporate Discovery covered by the protective orders previously entered in this matter. (Mot. at 3, n. 2); see (ECF Nos. 65, 197); see also (ECF Dkt. Sept. 25, 2020 (sealed)). The government does not further address those categories of materials in this response.

1

I.      Background

        In January 2019, Huawei Tech and other Huawei entities, including Huawei USA, were charged in a thirteen-count superseding indictment in the Eastern District of New York. The charges included bank and wire fraud related to Huawei's operation of Skycom Tech Co., Ltd. ("Skycom"), an unofficial subsidiary in Iran; bank fraud related to misrepresentations made by Huawei regarding the termination of its relationship with a financial institution; conspiracy to defraud the United States by, among other things, making misstatements about Huawei's business in Iran; violations of the International Emergency Economic Powers Act ("IEEPA") and the accompanying Iran Transaction and Sanctions Regulations ("ITSR"); obstruction of justice; and money laundering.  See (ECF No. 19).

        Many of the fraud and IEEPA charges center on Huawei Tech's misrepresentations to global financial institutions and the U.S. government about the nature of Huawei Tech's business in Iran—including Huawei Tech's fraudulent claim that Skycom was a business partner, and not a subsidiary controlled by Huawei Tech—and the use of U.S. banks to conduct financial transactions related to the provision of telecommunications services in Iran in violation of applicable U.S. law.  In addition, one set of bank fraud and bank fraud conspiracy charges relate to Huawei Tech's misrepresentations beginning in or about 2017 to global financial institutions in order to mislead the victim institutions into maintaining and expanding their relationships with Huawei.  The obstruction of justice charge relates to Huawei Tech and Huawei USA's efforts to obstruct the government's investigation.

        In February 2020, a grand jury returned a sixteen-count superseding indictment (the "Third Superseding Indictment" or "Ind.") that included the aforementioned charges, as well as charges against certain corporate defendants for conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspiring to steal trade secrets, and an additional wire fraud conspiracy.  See (ECF No. 126).

        The theft of trade secrets and the additional wire fraud charges relate to ongoing efforts to steal trade secrets and obstruct justice in the United States in order to obtain commercial advantage for Huawei.  Specifically, the government alleges a scheme by Huawei to grow its global business through the misappropriation of intellectual property of companies operating in the United States and abroad.  The Third Superseding Indictment describes Huawei's efforts to misappropriate the intellectual property of six victim companies, including by implementing corporate policies that promoted such misappropriation and incentivized employees to steal from competitors.  Additionally, the Third Superseding Indictment details Huawei's efforts to obstruct civil proceedings and law enforcement inquiries in order to further its misappropriation scheme.  The RICO charge alleges a conspiracy to invest the proceeds of the criminal activity described herein in the use or establishment of Huawei's business in the United States.

        The Third Superseding Indictment also identifies certain additional misrepresentations by Huawei to financial institutions and the U.S. government.  Specifically, Huawei Tech falsely represented that it had not assisted the Iranian government in efforts to conduct domestic surveillance, and misrepresented the nature of its business in North Korea.

II.  <u>Rule 16 Discovery</u>

The government has produced extensive discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure ("Rule 16").  In total, the government has made over 30 productions, including approximately seven million pages and more than one million documents, as well as the contents of various electronic devices and email accounts.

Beginning with the government's first production in June 2019, the government has produced a significant volume of materials responsive to Huawei's Corporate Discovery requests.  For example, the government has produced:[2]



The government has produced all of the S-2 Corporate Discovery that it has identified to date.  In doing so, the government has conducted a review ███████████ ████████████████████████████ and it has produced █████████████ that are discoverable pursuant to Rule 16(A)(1)(C).  The government continues to review its files in good faith and, to the extent the government identifies additional Corporate Discovery in its files, or obtains additional materials in the future, it will produce them.

The government has also produced an extensive volume of S-3 Corporate Discovery and will continue to produce additional materials in its possession to Huawei on a rolling basis.  Some of those materials constitute Corporate Discovery.  For example, the government is in possession ████████████████████████████████████████████

---

[2] This list is not exhaustive, and the items pertain to both the fraud-related allegations and the more recent racketeering and theft of trade secret allegations.

███████████ and has produced and will continue to produce those documents in discovery.

III.    Applicable Law

Rule 16(a)(1)(A) and (B) of the Federal Rules of Criminal Procedure govern the pre-trial disclosure of relevant oral and written statements of the defendant.  See United States v. Scarpa, 897 F.2d 63, 70 (2d Cir. 1990) ("Rule 16 thus does not cover oral statements unrelated to the crime charged or completely separate from the Government's trial evidence.") (quoting United States v. McElroy, 697 F.2d 459, 464 (2d Cir.1982)).  The rule reads, in relevant part:

> **(A) Defendant's Oral Statement.** Upon a defendant's request, the government must disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial.

> **(B) Defendant's Written or Recorded Statement.** Upon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

>> (i) any relevant written or recorded statement by the defendant if:

>>> • the statement is within the government's possession, custody, or control; and
>>> • the attorney for the government knows--or through due diligence could know--that the statement exists;

>> (ii) the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent; and

>> (iii) the defendant's recorded testimony before a grand jury relating to the charged offense.

Fed. R. Crim. P. 16(a)(1)(A)-(B).

In the case of an organizational defendant, Rule 16 imports the provisions of Rule 16(a)(1)(A) and (a)(1)(B) to the corporate context.  Specifically, Rule 16(a)(1)(C) reads:

> **(C) Organizational Defendant**. Upon a defendant's request, if the defendant is an organization, the government must disclose to the defendant any statement described in Rule 16(a)(1)(A) and (B) if the government contends that the person making the statement:

>> (i) was legally able to bind the defendant regarding the subject of the statement because of that person's position . . .; or

4

(ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct . . . .

Thus, under Rule 16(a)(1)(C), two classes of individuals can make statements that may constitute admissions against the corporation: (1) "representatives, or individuals who," at the time of the statement, had "the power to bind an organization by virtue of their authority to make statements on the subject on behalf of the organization" and (2) "employees who engage in illegal conduct within the scope of their jobs and then make some statement about having done so."  United States v. Maury, 695 F.3d 227, 253 (3d Cir. 2012); see also United States v. Chalmers, 410 F. Supp. 2d 278, 292 (S.D.N.Y. 2006); United States v. Jacques Dessange, Inc., No. 99 CR. 1182 (DLC), 2000 WL 257155, at *2 (S.D.N.Y. Mar. 7, 2000).

Importantly, the Rule 16 discovery requirements "apply equally to individual and organizational defendants.'"  Chalmers, 410 F. Supp. 2d at 291 (quoting Rule 16 Advisory Committee Notes to 1994 Amendment) (emphasis added); Dessange, 2000 WL 257155, at *2 (corporate defendant is entitled to "statements made by persons whose statements or actions could be binding on the defendant" because an organizational defendant "may not know what its officers or agents have said or done in regard to a charged offense") (quoting 1994 Advisory Committee Notes).  In other words, Rule 16(a)(1)(C) is designed to place a corporate defendant in the same position—not a better position—as an individual defendant by informing the corporation of statements that the government may use to bind the defendant at trial.

As a result, not every relevant statement by an employee of a corporate defendant is discoverable under Rule 16(a)(1)(C).  Rather, Rule 16

> recognizes the dueling identities of an organization's average employee: first, as a situational agent of the Company and second, as an average, run-of-the-mill fact witness.  The further a general employee's statements diverge from admissions about [the employee's] having engaged in a form of conduct on behalf of the Company, the more they begin to resemble general, fact-based, witness statements.  Such statements are not discoverable to individual defendants prior to the witness's trial testimony and until the Government's Jencks [Act, 18 U.S.C. § 3500] obligations kick in.

Maury, 695 F.3d at 254; see also Dessange, 2000 WL 257155, at *8-9 (Rule 16 does not require the government to disclose even "highly relevant" statements of a corporate defendant's employees where the statements were not "admissions" that "bind" the corporate defendant); United States v. Lin Lyn Trading, Ltd., 911 F. Supp. 494, 497 (D. Utah 1996) (rejecting "defendants' claim that the rule requires production of statements by present or former agents of a corporation concerning anything which might be relevant to the case"); United States v. Bhutani, No. 93–585, 1995 WL 632069 (N.D. Ill. Sept. 1, 1995) (rejecting defendant's claim that Rule 16 entitles it to statements of any present or former employee concerning any matter relevant to the case, and holding that "the statement of a person who merely observed the offense conduct and did not participate in it (with or without knowledge of its illegality) is not discoverable under the rule.")  To hold otherwise would "give organizational defendants a

substantial advantage in criminal proceedings," inconsistent with the purpose of Rule 16(a)(1)(C). <u>Maury</u>, 695 F.3d at 254.  In other words, Rule 16(a)(1)(C)(ii) applies to statements of a current or former employee who participates in misconduct and whose actions the government will use to bind the defendant, but not to the statements of an employee who merely witnesses misconduct by others and will testify about having done so.

Furthermore, with respect to employees whose conduct the government contends binds the defendant under Rule 16(a)(1)(C)(ii), only those specific statements regarding misconduct in which the employee participated are discoverable.  <u>See Maury</u>, 695 F.3d at 254 (collecting cases, and holding that, "where a statement itself is being used to bind the Company, Rule 16 affords an organizational defendant the opportunity to access that statement—and only that binding statement—prior to trial").  That approach avoids giving a corporate defendant a "windfall" beyond what a similarly situated individual defendant would receive.  <u>Id.</u>[3]

Finally, Rule 16 exempts from discovery attorney or agent work product made "in connection with investigating or prosecuting the case" and "statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."  Rule 16(a)(2).[4]

IV.     <u>The Government Has Complied with Discovery Obligations Pursuant to Rule 16(a)(1)(C)</u>

The government has complied with its discovery obligations, including its obligations pursuant to Rule 16(a)(1)(C).  Specifically, the government has produced extensive Corporate Discovery, as discussed above, and continues to do so.

The government addresses below each of the defendants' corporate discovery requests, in order to identify for the Court what disagreement (if any) there may be about the contours of the government's Rule 16 disclosure obligations.  Further, because the government has and continues to comply with its discovery obligations, the arbitrary deadlines sought in the

---

[3] In <u>Chalmers</u>, the district court stated that the government must disclose "all statements" of any agent or employee who it alleges was (1) personally involved in the conduct at issue and (2) capable of binding the defendant with that conduct—a holding that, on its face, appears to be in tension with the view articulated in <u>Maury</u>.  <u>Chalmers</u>, 410 F. Supp. 2d at 291.  However, the issue before the Court in <u>Chalmers</u> was whether the government must produce only contemporaneous statements or both contemporaneous and post-conduct statements of an employee whose conduct binds the corporate defendant.  <u>Chalmers</u> held that post-conduct admissions to law enforcement, as well as contemporaneous statements, were discoverable.  <u>Id.</u> at 291-292.  <u>Chalmers</u> does not stand for the proposition that an employee's statements about irrelevant matters, or unrelated misconduct committed by the employee (which would constitute <u>Giglio</u> material), or other misconduct at the company merely observed (and not participated in) by the employee must be disclosed at this procedural juncture.

[4] The government is not taking the position that statements by the defendant which otherwise would be discoverable under Rule 16(a)(1)(C) are not discoverable by virtue of having been said by a prospective government witness.

defendants' motion should be denied.  Following a comprehensive review of its holdings, the government has already provided responsive materials pertaining to the fraud charges and will produce any additional materials it may identify or receive.  The government has also produced responsive materials pertaining to the Third Superseding Indictment and is in the process of preparing further S-3 Discovery for production.

A.     Corporate Discovery Sought by the Huawei Defendants

The government addresses each of Huawei's specific requests below.

1.     **Request 1.a through 1.c – Substance of / Written Records of Oral Statements to the Government (Rule 16(a)(1)(A) and (a)(1)(B)(ii))**

The government has produced all the S-2 Corporate Discovery it has identified, and is in the process of producing remaining materials related to the more recent charges.[5]

The government possesses additional statements to law enforcement and/or the grand jury ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ but has not produced those because they are not discoverable under Rule 16.  Specifically, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

are statements by "run-of-the-mill fact witness[es]," to which the defendants are not entitled under Rule 16.  Id. at 254.[6]

---

[5] The defendants specifically request that the government include statements by current or former Skycom employees, "to the extent that the government contends that [Skycom employees] were de facto or de jure directors, officers, employees, or agents of any Huawei Defendant." (Mot. at 8).  Because, as alleged, Huawei controlled Skycom, the government has treated purported employees of Skycom as employees of Huawei.  Notably, Huawei counsel has not appeared on behalf of Skycom in this litigation, and Huawei has not formally conceded that Skycom is indeed a Huawei entity.

[6] The government also possesses reports of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ For example, the government has report ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Huawei does not appear to seek such statements as Corporate Discovery, and is not entitled to them under Rule 16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The government has attached a sample of these statements to the Court for <u>ex parte</u>, <u>in camera</u> review, and briefly describes portions of those statements below:



2.    **Request 1.d – All Written or Recorded Statements (Rule 16(A)(1)(B)(i))**

With respect to the fraud charges, records responsive to this request include ███████ ████████████████████████████████████████████ As the government has informed Huawei, its production of these materials is substantially complete, and the government will produce any other responsive documents if it identifies them.

As part of this request, Huawei seeks written or recorded statements of the defendant "referenced" in the reports of the corporate monitor for ███████████ ██████ or other independent monitors of victim financial institutions, or "identified" for the government as part of any presentation by ██████████████████████, or another presentation on behalf of a victim institution. These requests are ambiguous. To the extent Huawei seeks statements provided by Huawei employees to an independent monitor or law firm that made a presentation on behalf of a victim institution to the government, the government is not aware of any such statements ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ government has similarly endeavored to produce all such statements (and has produced hundreds of thousands of documents from such institutions), and will continue to review its files for any other responsive materials.

With respect to the S-3 Corporate Discovery, as described above, the government has already produced hundreds of thousands of documents of discovery relating to the Third Superseding Indictment, and is producing more in the ordinary course of its rolling discovery productions.  Because the bulk of the remaining Corporate Discovery constitutes files produced in discovery in the underlying civil litigations, it is impracticable to require the government to sort through those large civil productions to identify a subset of materials authored by Huawei.  Instead, the government is preparing and producing such materials comprehensively, organized by victim company or document source.  Notably, Huawei is already aware of and in possession of virtually all of this discovery, since it was a party to each civil litigation.

3.  **Request 2 – Documents and Objects (Rule 16(A)(1)(E)(iii))**

This request is not encompassed within "Corporate Discovery," given that it is not referenced within Rule 16(a)(1)(C).  Nonetheless, the government has produced as Rule 16 discovery the responsive materials pertaining to the fraud-related charges that it has identified.  Should the government receive or identify any additional materials, it will produce them.  As for the more recent charges in the Third Superseding Indictment, as noted above, the government is in possession of materials that constitute documents under Rule 16(A)(1)(E) and is producing such materials in the ordinary course.

B.  <u>The Defendant's Motion Should Be Denied with Respect to the Fraud Charges</u>

The government has produced all S-2 Corporate Discovery that it has identified to date.  As a result, the defendant's request that this Court order the government to produce such discovery within 30 days should be denied.  <u>See</u> e.g., <u>United States v. Battaglia</u>, No. S9 05 CR. 774 (KMW), 2008 WL 144826, at *2 (S.D.N.Y. Jan. 15, 2008) (denying motion for Rule 16 discovery as moot where government had already provided such discovery).

Huawei apparently takes issue with the government's assertion that, as in every case, the government will continue to review its files for any additional Corporate Discovery materials with respect to the fraud charges.  <u>See</u> Mot. at 7 (characterizing the government's response as a "refusal to answer counsel's questions").[7]  The government's investigation is

---

[7] Huawei faults the government's recent disclosure of a "small handful" of statements to law enforcement.  Mot. at 3.  As an initial matter, the government had previously made clear that it had not produced all discovery related to Rule 16(a)(1)(C).  Moreover, the government has disclosed all Rule 16(a)(1)(C) of which it is aware as to the financial fraud charges.  Finally, the government's production of a small number of statements in response to Huawei's specific Corporate Discovery request demonstrates the government's responsiveness to that request and underscores the fact that, prior to recent correspondence on this matter, the government had already provided the vast majority of Corporate Discovery on the bank fraud charges, beginning with the government's first production of discovery in 2019.  Notably, Huawei has identified no prejudice to it in this case from the timing of the production.

Furthermore, Huawei asserts that the government inappropriately "withheld" a statement by former Futurewei employee ████████████ while relying on it <u>ex parte</u> in a "separate

10

ongoing, and the government continues to receive materials from third parties, to interview potential witnesses, and to review its files. Should the government identify or obtain additional Corporate Discovery, it will produce it. Such a standard representation is consistent with the government's obligations under Rule 16, which requires "[a] party who discovers additional evidence or material before or during trial [to] promptly disclose its existence to the other party or the court." Rule 16(c); see also United States v. Thomas, 239 F.3d 163, 166 (2d Cir. 2001) (noting that Rule 16 requires the government to disclose material when the prosecutor becomes aware of it). In other words, Rule 16 contemplates that the parties may identify and produce additional Rule 16 materials well after indictment and before, or even during, trial. In sum, the government will continue to endeavor to disclose discoverable materials once it becomes aware of them.

      C.    <u>The Defendant's Motion with Respect to the Most Recent Charges Should be Denied</u>

      As noted above, the government is in the process of producing S-3 Corporate Discovery. The relevant conduct includes the misappropriation or attempted misappropriation of intellectual property from various victim companies, certain of which engaged in civil litigation with Huawei. Rule 16 discovery for these matters is voluminous; it will likely comprise millions of pages of documents, some of which contain Corporate Discovery. ████████████████████ ██████████████████████████████████████████████████████████████████ Such discovery also includes ██████████████████████████████████████████████

      Huawei's request that the government produce all Corporate Discovery for these charges within 120 days is impractical, given the volume of relevant materials. That is particularly the case given that the government is also applying sensitivity designations to its productions, pursuant to the protective order governing discovery in this case. See (ECF No. 57). It would take far longer for the government to segregate each statement by Huawei within the millions of pages of discovery than it would to continue the process of producing the government's Rule 16 discovery in the regular course. Notably, the fact that Rule 16(a)(1)(C) requires disclosure "upon request" of the defendant is not a mechanism for instantaneous production of all corporate discovery, where, as here, the government has been acting in good faith to produce such discovery promptly. Moreover, as discussed, the bulk of the "Corporate

---

proceeding." Mot. at 3. That assertion is highly misleading. Specifically, that proceeding, which Huawei does not describe, is the ███████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Discovery" related to the charges in the Third Superseding Indictment consists of information produced in civil discovery to or from Huawei; the "Corporate Discovery" within those materials should come as no surprise to Huawei.[8]

        The government has been working in good faith to produce discovery in this matter; indeed, the sheer volume produced evidences the government's diligence in this regard. Further, the government anticipates producing a significant amount of Rule 16 discovery, including Corporate Discovery on the newer charges, in the coming weeks and months. An order requiring the remaining Corporate Discovery to be produced within the requested timeframe would, in practice, mandate the immediate production of all the files from those civil litigations without application of sensitivity designations, an issue that is neither before this Court for resolution, nor warranted by the circumstances. The government has offered to confer with the defendants regarding whether they wish the government to prioritize any particular categories for purposes of discovery. Huawei has failed to respond, but the government remains willing to discuss this issue or otherwise address discovery matters with the defendants without unnecessarily involving the Court.

_____

[8] █████████████████████████████████████████████████

V.     Conclusion

For the foregoing reasons, the government respectfully submits that the defendants' Motion should be denied.

Respectfully Submitted,

SETH D. DUCHARME
Acting United States Attorney
Eastern District of New York

By:      /s/ Sarah M. Evans
Alexander A. Solomon
Julia Nestor
David K. Kessler
Sarah M. Evans
Assistant U.S. Attorneys

| | |
|---|---|
| DEBORAH L. CONNOR | JAY I. BRATT |
| Chief | Chief |
| Money Laundering and Asset Recovery Section | Counterintelligence and Export Control |
| Criminal Division | Section |
| U.S. Department of Justice | National Security Division |
| | U.S. Department of Justice |
| Laura M. Billings | |
| Christian J. Nauvel | Thea D. R. Kendler |
| Trial Attorneys | David Lim |
| | Trial Attorneys |

13