**SIDLEY**                                                                 **JENNER&BLOCK**LLP

April 21, 2021

BY ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Courtroom 4GN
Brooklyn, NY 11201

Re:   *United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457 (S-3) (AMD)(CLP) (E.D.N.Y.)

Dear Judge Donnelly:

We write in response to the government's letter of April 14, 2021, ECF No. 272 (the "Motion"), accusing Huawei of violating the Protective Order and asking the Court to require the defense to seek clearance from the government before publicly filing "any" document that may touch on "any discovery materials." Motion at 4.

Defendants ("Huawei") have fully complied with the Protective Order. The Motion does not identify any specific discovery material that was supposedly disclosed or used wrongfully. The defendants have never improperly shared a single page of discovery material with Meng Wanzhou or her counsel, *id.* at 2, and the defendants' February 7 and April 8 letters, as redacted, do not disclose the substance of any discovery material to anyone. The government's accusations and its request to transform the Protective Order into a gag order are meritless. The Motion should be denied.

*First*, the Motion creates the misimpression that defendants disclosed *unredacted* versions of its February 7 or April 8 letters to counsel for Ms. Meng or others not entitled to view them. *E.g.*, *id.* (accusing Huawei of "providing Meng's Canadian counsel with access to the April 8 Letter"). That is categorically false. Huawei has never provided unredacted versions of the letters to anyone not authorized to view them.

*Second*, to the extent the government complains that the heavily redacted versions of the letters violate the Protective Order, its complaints are inconsistent with the Protective Order and the government's own conduct. Nothing in the Protective Order prohibits the defendants from stating that the evidence provided in discovery contradicts the government's allegations. Indeed, the publicly filed version of *the government's own Motion* contains equivalent—if not more detailed—statements arguing that the evidence supports its view of the case. *E.g.*, *id.* at 3-4

*United States v. Huawei Technologies Co., Ltd., et al.*, 18 CR 457
April 21, 2021
Page 2

(publicly asserting that "[t]here is no evidence showing that [alleged victims] knew that Huawei used Skycom as a cutout entity to evade sanctions compliance or that Huawei's 'sale' of Skycom was a sham sale to another entity").

*Third*, the government is wrong that defendants violated the Protective Order by *using* discovery other than "for the purposes of defending against the charges in the above-captioned case." *See id.* at 2. So long as it does not share discovery outside the parameters of the Court's orders, Huawei is permitted to aid its co-defendant, Huawei Tech's Chief Financial Officer, in defending against inaccurate claims and allegations. Moreover, the government is incorrect to argue that Huawei does not advance its own defense when it attacks the allegations involving Ms. Meng. The government has accused Huawei of crimes premised on the corporate defendants' vicarious liability for Ms. Meng's alleged conduct as Chief Financial Officer and as an alleged co-conspirator. *See* Letter from A. Solomon to T. Green (Mar. 11, 2021) (Ex. A). Not only are counsel for Huawei allowed to challenge the case against Ms. Meng in service of Huawei's defense, they are affirmatively *obligated* by their ethical duties as counsel to do so where possible.

*Finally*, because the defense has not violated the Protective Order, the government's request for censorship rights over defendants' filings should be rejected. Indeed, the government's motion that it be appointed to supervise defense filings is a straightforward invitation to constitutional error. Unsurprisingly, the government does not cite a single source of authority to support its novel request, which would impose unconstitutional restraints on Huawei and on the public's right of access. Nor does the government provide any valid basis for its request for the Court to take any *Brady* litigation back from Magistrate Judge Pollak.

## I.      Background

The government cites two provisions of the Protective Order as relevant here: First, the Protective Order provides that all discovery "and any and all copies, notes, transcripts, documents and other information and materials derived or prepared from the Discovery Materials, may be *used* by the defendants … only for the purposes of defending against the charges [in this case] …." Protective Order, ECF No. 57, at ¶ 2 (emphasis added). Second, the Protective Order provides that "no Discovery Materials shall be *disclosed* to co-defendant Meng or her counsel" except as permitted by supplemental agreement. *Id.* at ¶ 1 n.1 (emphasis added).[1] "[I]n determining what degree of protection is appropriate [under these provisions], courts should ensure that a protective order 'is no broader than is necessary' to serve the intended purposes." *United States v. Smith*, 985 F. Supp. 2d 506, 545 (S.D.N.Y. 2013) (quoting *United States v. Lindh*, 198 F. Supp. 2d 739,

---

[1] On March 12, 2020, the Court entered another protective order, the "Supplemental Protective Order," that authorizes Huawei to disclose certain materials to Ms. Meng for the purpose of defending itself in this case. *See* ECF No. 139. Because the redacted February 7 and April 8 letters do not disclose any discovery, this Order is not implicated here.

*United States v. Huawei Technologies Co., Ltd., et al., 18 CR 457*
April 21, 2021
Page 3

742 (E.D. Va. 2002)).

The history of the two letters at issue is as follows:

- *February 7 Letter.* Huawei's February 7, 2021 letter was sent to the prosecution team. It asserted that the government was not complying with *Brady* and reiterated Huawei's request for certain exculpatory materials. The publicly-filed version of the letter was redacted to hide any reference to any document provided in discovery. The government initially objected to Huawei's redactions and the Court sealed the letter pending negotiations between the parties. During those negotiations, the government requested (and Huawei accepted in the spirit of compromise) slight alterations to only a handful of lines in the 10-page letter. Huawei re-filed the letter with the agreed upon changes. *See* ECF No. 259. Accordingly, the version of the February 7 Letter that the government now complains about already contains all of the redactions that the government requested.

- *April 8 Letter.* Huawei sent the April 8, 2021 letter to DOJ officials, copying the prosecution team. It expressed the defense's concern that DOJ had provided inaccurate or misleading information to the Canadian authorities in its efforts to extradite Ms. Meng. The letter explained that the prosecution team had produced information in discovery that directly contradicted the government's representations in Canada. Huawei provided an unredacted version of that letter *only to DOJ*. It also provided Ms. Meng's counsel a redacted version of the letter stripped of any reference to any discovery material. Counsel for Ms. Meng subsequently relied on the redacted letter to argue to the Canadian Justice Department that it ought to determine if in fact there is such a contradiction between the DOJ's assertions in the Canadian proceedings and the evidence in the DOJ's possession. Neither counsel for Ms. Meng nor the Canadian authorities have ever been provided with a copy of the unredacted letter containing discussion of what that evidence is.

**II.     The February and April Letters Comply with the Court's Protective Orders**

Contrary to the government's allegations, the redacted versions of the February 7 and April 8 letters comply with the "letter and spirit" of the Protective Orders. Motion at 2.

Initially, it is extraordinary that the government now argues that the redacted February 7 letter violates the Protective Order when the *government expressly agreed* to those same redactions. After the government in February objected to Huawei's redactions, the parties conferred and Huawei agreed to make the government's additional alterations.[2] Thereafter, the government "agree[d] [Huawei's] redactions address[ed] [its] specific concerns" and did "not object to [Huawei] filing the letter" on the public docket. Email from J. Nestor to M. Levy (Feb.

---

[2] For example, Huawei agreed to change ████████████ to "the banks were not victims." *Compare* Original February 7 Letter at 2 (Ex. B) *with* ECF No. 259 at 2.

*United States v. Huawei Technologies Co., Ltd., et al.,* 18 CR 457
April 21, 2021
Page 4

10, 2021) (Ex. C). The parties briefly discussed this letter with the Court during the next status conference, *see* Tr. 8:8-10:4 (Feb. 18, 2021) (Ex. D), and the government raised no additionally concerns. Had the government believed that the redacted version of this letter disclosed protected information, it surely would not have consented to its public filing.

Huawei similarly redacted the April 8 Letter to omit any reference to information covered by the Protective Order. What remains visible is materially indistinguishable from what was included in the February 7 Letter and other publicly filed documents to which the government has never raised any objection. Compare, for example, statements from (a) the April 8 Letter, (b) the February 7 Letter approved by the government, and (c) a defense filing from 2020 to which the government has never raised any objection:

  a. *April 8 Letter*: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. E at 3.[3]

  b. *February 7 Letter*: "In the face of substantial evidence that Huawei was transparent with HSBC about its relationship with Skycom, the ROC retreats to a back-up position: that although 'some more *junior* HSBC employees' were aware of the alleged misrepresented facts, these 'more *junior* employees did not report information regarding the HSBC Skycom account ... to [the HSBC Managing Director, Deputy Head of Banking Asia Pacific] or other senior HSBC executives.' ROC ¶ 31 (emphases added.) The *Brady* Letters show that these contentions are misleading and inaccurate in several ways." ECF No. 259 at 3 (ellipses and alterations in original).

  c. *April 3, 2020 Motion*: "[N]ot only are the [SDM documents] relevant to Huawei's defense, many of them undermine the Indictment's allegations that Huawei sought to mislead and that the banks were misled." ECF No. 143 at 9.[4]

---

[3] Given the Motion, defendants are redacting any quotations from the April 8 Letter in the public version of this response. Defendants do not believe redactions beyond those already in the heavily redacted version of the April 8 Letter provided to Ms. Meng's counsel are necessary. Defendants will provide the relevant versions of the letter to the Court under seal.

[4] As another example, Huawei has long publicly maintained that the record undermines the claim that any misstatements were material. *E.g.*, ECF No. 159 at 9 (May 21, 2020) ("Materiality turns on context ... Here, that context includes [redacted] ... [which] exposes a fatal flaw in the foundation of the government's case."). The government (rightly) did not complain about that statement in May 2020. Yet the February 7 and April 8 letters say nothing more than that. *See* ECF No. 259 at 4 ("[Redacted] tends to support Huawei's expected defense that it did not conceal material facts.") *with* Ex. E at 3 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

*United States v. Huawei Technologies Co., Ltd., et al., 18 CR 457*
April 21, 2021
Page 5

In short, Huawei did not say anything more—let alone violate the Protective Order—in the April 8 Letter. What is different is that Huawei made its April 8 statement in the context of criticizing the government's candor with the Canadian courts. The government may dislike criticism, but criticism does not violate the Protective Order.

Moreover, litigating publicly about how the evidence supports or does not support topline conclusions is standard practice in federal court, has long been *both* parties' practice throughout the case, and doing so fully complies with the Protective Order. The government has repeatedly made statements about the evidence in this case that are at least as detailed as what Huawei has said in the letters at issue and would thus violate its own proffered interpretation of the Protective Order. For example, in the public version of *this very Motion*, the government asserted: "[T]here is no evidence showing that [redacted] knew that Huawei used Skycom as a cutout entity to evade sanctions compliance or that Huawei's 'sale' of Skycom was a sham sale to another Huawei entity." Motion at 3. Similarly, the government has repeatedly shared its view publicly of what it believes the evidence shows about the banks' knowledge of the Huawei-Skycom relationship and the plausibility of the government's theory that the banks were misled by Huawei. For example:

> "Huawei suggests that this evidence contradicts the allegations in the indictment that Meng 'misled' a financial institution about Huawei's relationship with Skycom. *However, the evidence does not actually show that* [redacted]." ECF No. 156 at 5 n.4 (May 7, 2020) (emphasis added).

> "Huawei's defense strategy is to blame the victims, arguing that the financial institutions knew, among other things, that Huawei actually operated Skycom as an official subsidiary. ... *[T]he evidence does not support this defense*." ECF No. 158 at 12 & n.17 (May 11, 2020) (emphasis added).[5]

---

[5] The inconsistency reflected in the government's motion is further underscored by its repeated public statements in other fora about the merits of Huawei's defense and the charges in this case. By way of illustration, in its sentencing memorandum for a *different* defendant in a *different* case, the government made detailed and gratuitous accusations against Huawei—referencing Huawei nearly 100 times and noting, for example, that "the defendant's role in [Huawei's] overarching, multiyear scheme was minor compared to the actions of [Huawei]," which was "motivated by direct financial gain through improperly obtained technology." Sentencing Memorandum, *United States v. Mao*, No. 19-cr-392 (PKC), ECF No. 82 at 10 (E.D.N.Y. Dec. 10, 2020). The commentary was irrelevant to the offense of conviction—a separate false statements violation—or the sentence, which had been previously agreed upon pursuant to Fed. R. Crim. P. 11(c)(1)(C).

*United States v. Huawei Technologies Co., Ltd., et al., 18 CR 457*
April 21, 2021
Page 6

Apparently, the government believes that it alone may comment on the evidence without violating the Protective Order. But general assertions about what the evidence does or does not support—whether made by the government or the defense—do not violate the Protective Order.

Despite its complaints, even the government cannot actually point to any protected material disclosed in either of Huawei's two letters. The Motion itself does not identify a *single* specific statement in any unredacted portion of the February 7 or April 8 Letters that purportedly contains protected discovery material. Upon receiving the Motion, the defense emailed the government, asking it to identify any discovery material it believed has been improperly disclosed. The government refused to cite anything specific except ▉▉▉▉▉▉▉▉▉▉ with respect to the April 8 Letter. But ▉▉▉▉▉▉ are nowhere referenced in the redacted version of that letter. Email from A. Solomon to M. Levy (Apr. 16, 2021) (Ex. F).

Finally, the government's argument that Huawei improperly *used* discovery is wrong. Even if the Protective Order's requirement that discovery material be used only "for the purposes of defending against the charges in [this] case," ECF No. 57 ¶ 2, could be read to apply to Huawei's sharing of the redacted April 8 Letter with Ms. Meng's counsel (which, because the redacted letter did not disclose any discovery materials, it does not), the use of that letter was in fact part of Huawei's defense. The government has charged Huawei with crimes based on Ms. Meng's purported actions. Promoting lawful objections to Ms. Meng's extradition and prosecution is—rather obviously—helpful to Huawei's defense. Moreover, the government has adopted the Record of the Case in Canada as part of its case against the Huawei defendants here. *See, e.g.*, ECF No. 209 at 6 (Sept. 21, 2020). To the extent that defendants' letter to DOJ leadership, or transmission of the redacted version of that letter to the Canadian DOJ, results in the correction or amplification of the Canadian record, that is plainly beneficial to the Huawei defendants.[6]

If adopted, the government's interpretation of the Protective Orders would amount to a gag order not because there is any legitimate need for one, but simply because the government would prefer that Huawei not contradict the specifics of its charges in public or otherwise communicate with Ms. Meng or her counsel in a way that might support her legal objections to the Canadian extradition proceedings. This Motion should be rejected.

---

[6] The government repeatedly labels Ms. Meng a "fugitive" (even though she does not live in the United States and was not in the United States when the alleged crimes were committed) and suggests that the fugitive disentitlement doctrine somehow informs the scope of the protective orders. This is a red herring. The fugitive disentitlement doctrine may be relevant to Ms. Meng's ability to seek relief in the United States while raising lawful objections to her extradition. It does not implicate, much less restrict, the rights of the Huawei defendants who have appeared in Court.

*United States v. Huawei Technologies Co., Ltd., et al., 18 CR 457*
April 21, 2021
Page 7

### III. The Court Should Reject The Government's Proposed Relief.

The government's requested relief is improper.

First, the government asks the Court to modify the Protective Order so that "filings referencing, discussing, or derived from any discovery materials" must be cleared by the government before going on the public docket. Motion at 4.[7] Because there has been no violation of the Protective Order, this Court need go no further to reject the government's request.

In any event, this request is contrary to law. If the government had its way, the government's sign-off would be necessary for any filing of substance to be made public. This censorship power flies in the face of bedrock First Amendment principles and black letter access law.[8] The government cites zero authority to even suggest otherwise, and we are unaware of any American court ever giving the government *carte blanche* to control the defense's submissions in this way. With good reason: the proposed amendment would inflict a one-sided presumption of *sealing* on all substantive defense submissions. Even if the government had shown some violation of the Protective Order, that remedy would be extraordinary. As the government has shown none, it should be summarily rejected.

Second, the government requests that any *Brady* litigation be reassigned away from Magistrate Judge Pollak. This is a non-sequitur. In any event, the Court need not address it here. If and when the defendants file a motion pursuant to *Brady*, the government is free to argue why that motion should not be heard by Judge Pollak, and the Court is of course entitled to make whatever determination it wishes.

\*\*\*

---

[7] The government's amendment would also encompass "documents that Huawei causes to be shared with Meng in Canada that in any way reference the government's discovery outside of the terms of the Supplemental Protective Order." Motion at 4.

[8] The Second Circuit has long held that a presumption of access attaches to judicial documents—including pre-trial motions—under both the First Amendment and common law. *See, e.g.*, *United States v. Wolfson*, 55 F.3d 58, 60-61 (2d Cir. 1995). To that end, "the decision to allow documents to be filed under seal in connection with motions and court proceedings is a wholly separate inquiry governed by a different standard than whether to maintain documents disclosed in discovery in confidence." *Uni-Systems, LLC v. U.S. Tennis Ass'n, Inc.*, No. 17 CV 147 (KAM) (CLP), 2019 WL 3753780, at *2 (E.D.N.Y. Aug. 8, 2019) (Pollak, J.). The party seeking sealing must show there is a substantial probability that disclosure will cause the harm being asserted. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124-26 (2d Cir. 2006).

*United States v. Huawei Technologies Co., Ltd., et al., 18 CR 457*
April 21, 2021
Page 8

      The Motion is factually incorrect and legally baseless. The Court should find that there has been no Protective Order violation and should deny the government's requested relief.

      Given the government's objection to public filing of certain material herein, and in an abundance of caution, defendants respectfully seek authorization to file the unredacted version of this letter and accompanying exhibits under seal. Consistent with the government's practice, defendants will also publicly file a redacted version of this letter, without exhibits.

      Respectfully submitted,

By: /s/ Thomas C. Green
    Thomas C. Green
    Mark D. Hopson
    Michael A. Levy
    Joan M. Loughnane
    Douglas A. Axel
    Brian J. Stretch
    SIDLEY AUSTIN LLP
    1501 K Street, NW
    Washington, D.C. 20005
    Tel.: 202-736-8069
    Email: tcgreen@sidley.com

By: /s/ David Bitkower
    David Bitkower
    Matthew S. Hellman
    JENNER & BLOCK LLP
    1099 New York Avenue, NW
    Washington, D.C. 20001
    Tel: 202-639-6048
    Email: dbitkower@jenner.com

*Counsel for Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*

cc:    Government counsel (by ECF)