# SIDLEY                                    JENNER & BLOCK LLP

June 10, 2021

**BY ECF**

The Honorable Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     ***United States v. Huawei Technologies Co., Ltd. et al.* No. 18-457 (S-3)
        (AMD) (CLP); Huawei Defendants' Redacted *Brady* Motion**

Dear Judge Pollak:

On June 7, 2021, Defendants Huawei Technologies Co., Ltd., Huawei Device USA
Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "Defendants")
submitted a Motion for *Brady* Material (the "Motion"), along with a request to file it under
seal because it contained information that may not be filed publicly under the terms of the
Protective Order in the case.  Defendants informed the Court that they had prepared for
public filing a redacted version of the Motion that complied with the requirements of the
Protective Order, but that the government had indicated that it believed additional
information might need to be redacted from the public filing.  Defendants agreed in this
particular instance to permit the government to review Defendants' proposed public version
before Defendants filed it.  Defendants informed the Court that if there were disagreements,
they would address them as appropriate to ensure that a public version of the Motion was
filed promptly as required by law.

Although Defendants had already proposed significant and sufficient redactions, the
government has now proposed many more.  Defendants disagree that these redactions are
consistent with the Protective Order or permitted by Second Circuit law under Lugosch v.
Pyramid Co. of Onondaga, 435 F.3d 110 (2d Cir. 2006) (describing strong presumption of
access to judicial documents).  Nonetheless, to avoid delay, Defendants are submitting
herewith for public filing a redacted version of the Motion that includes both the sufficient
redactions made by Defendants (in black) and the disputed additional redactions made by the
government (in red).  Defendants intend to meet and confer with the government about its
redactions to see if the parties' disagreement about them can be resolved.  If the disagreement
cannot be resolved, Defendants will ask the Court to rule on the redactions at an appropriate
time.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

269582586v.1

# SIDLEY

**JENNER&BLOCK** LLP

Page 2

Respectfully submitted,

/s/ Thomas C. Green
Thomas C. Green
Mark D. Hopson
Michael A. Levy
Joan M. Loughnane
Douglas A. Axel
Brian J. Stretch
Melissa Colón-Bosolet
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-7341
Email: tcgreen@sidley.com

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
Tel: 202-639-6048
Email: dbitkower@jenner.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc.,
Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

CC:   Government counsel (by email and ECF)
       Clerk of Court (by ECF)

269582586v.1

# SIDLEY

## JENNER&BLOCK LLP

June 7, 2021

**PUBLICLY FILED WITH
DISPUTED REDACTIONS**

**BY ECF**

The Honorable Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:    *United States v. Huawei Technologies Co., Ltd. et al.* No. 18-457 (S-3)
(AMD) (CLP); Motion for *Brady* Material

Dear Judge Pollak:

The central fraud allegation in this case is that Defendant Huawei Technologies Co.,
Ltd. ("Huawei Tech") sought to defraud HSBC Holdings plc ("HSBC") by falsely telling
HSBC that Defendant Skycom Tech Co., Ltd. ("Skycom")—the company through which
Huawei Tech openly did business in Iran—was as an arm's length business partner rather
than a supposed "unofficial subsidiary" of Huawei Tech. Although this distinction was
irrelevant to the amount of business that Huawei Tech acknowledged doing in Iran, the
Indictment alleges that it mattered to HSBC in evaluating whether Huawei Tech's potential
for violating U.S. sanctions laws was too great to justify keeping Huawei Tech as a customer.
But ████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████, despite Huawei's repeated requests for these materials,
████████████████████████████████████████████████████████
████████████████████████████████████████ the government still refuses to produce the
reports ██████████, and refuses to identify and produce all of the source material for the
reports. The government also refuses to produce exculpatory information presented to the
government by HSBC's outside counsel, Latham & Watkins LLP ("Latham"), which was
enlisted by the bank to conduct an internal investigation into the relationship between HSBC
and Huawei, apparently ██████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████
████████████████████████████████ is insufficient to satisfy the government's obligations
under *Brady v. Maryland*, 373 U.S. 83 (1963), and Rule 16 of the Federal Rules of Criminal
Procedure. Accordingly, Defendants Huawei Tech, Huawei Device USA Inc., Huawei

**SIDLEY**                                    **JENNER&BLOCK** LLP

Page 2

Device Co., Ltd., and Futurewei Technologies, Inc. (collectively, "Huawei," "Defendants," or the "Company") move for an order requiring the government to produce:

> (1) ███████ reports written by the Monitor discussing HSBC's dealings with Huawei;
>
> (2) any original source material underlying such reports that is in the government's possession, custody, or control; and
>
> (3) any exculpatory information presented to the government by HSBC or its counsel—including Latham—concerning HSBC's dealings with Huawei.

The government has a constitutional obligation under *Brady* to produce this evidence (collectively, the "Requested Evidence") because it is exculpatory, and it has a separate and broader obligation under Rule 16 to produce it because it is material to preparing the defense, *see* Fed. R. Crim. P. 16(a)(1)(E)(i) (documents material to the defense).



. Accordingly, the government should be ordered to comply with its *Brady* and Rule 16 obligations and produce the Requested Evidence to Defendants.[1]

## FACTUAL BACKGROUND

### A.      The Fraud Charges

At the center of this case is the allegation that Huawei sought to defraud HSBC (identified in the Indictment as "Financial Institution 1") and three other "victim" banks by concealing that Skycom, a Hong Kong company doing business in Iran, was controlled by Huawei, instead misleading the banks into believing that Huawei's relationship with Skycom was arm's length. *See, e.g.,* S3 Indictment ¶ 4 ("HUAWEI falsely claimed that SKYCOM was one of HUAWEI's local business partners in Iran, as opposed to one of HUAWEI's subsidiaries or affiliates."). In particular, the Indictment focuses on a meeting in 2013 in Hong Kong between HSBC executive ███████ and Huawei Chief Financial Officer (and now co-defendant) Meng Wanzhou ("Ms. Meng"), in which Ms. Meng purportedly described Huawei's relationship with Skycom (both of which were HSBC customers) as one of "normal business cooperation"; a phrase the government contends was intended to misrepresent that Huawei did not control Skycom. *Id.* ¶¶ 77, 78.

---

[1] Judge Donnelly has referred disputes over the government's compliance with its *Brady* obligations to Your Honor. *See* Feb. 18, 2021 Tr. 7–10 (Ex. G). This is not the only issue that has arisen concerning *Brady*, but it is one that is ripe for court resolution. The parties are working in good faith to narrow or avoid litigation over other *Brady* disputes.

**SIDLEY**                                    **JENNER&BLOCK** LLP

Page 3

U.S. sanctions have never prohibited foreign corporations like Huawei or Skycom from operating in Iran. *See* 31 C.F.R. § 560.206. But according to the Indictment, U.S. banks and U.S. affiliates of foreign banks may not "export" banking services from the United States to Iran by providing services that facilitate a customer's operations in Iran. *See* S3 Indictment ¶¶ 70, 117. As the government tells it, although the banks knew that Huawei operated in Iran, the difference between whether Huawei controlled or merely worked closely with Skycom in conducting those operations would have been important to the banks in deciding whether to maintain Huawei's banking business, *see id.* ¶ 79, even though, legally, that distinction had no bearing on whether a banking transaction was permitted or prohibited by U.S. sanctions.[2]

The above-described allegations provide the foundation for five counts of the Indictment. Counts Six and Nine charge Huawei Tech and Ms. Meng with wire fraud and conspiracy to commit wire fraud. S3 Indictment ¶¶ 103–104, 109–110. Counts Four and Seven charge Huawei Tech and Ms. Meng with bank fraud charges and conspiracy to commit bank fraud. *Id.* ¶¶ 99-100, 105-106. Finally, Huawei is charged in Count One with participating in a racketeering conspiracy of which the fraud offenses are alleged objects. *Id.* ¶¶ 88-93.

**B.    The Defense**

In its defense, Huawei intends to show that the government's charge founders on at least two elements relevant here: (1) intent to defraud and (2) materiality. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—demonstrates that:

**1.    HSBC already knew that Huawei controlled Skycom because Huawei was candid about it with HSBC.**

HSBC was well aware that Huawei controlled Skycom because, over the years of HSBC's banking relationship with both Huawei and Skycom, Huawei was candid about the relationship. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And although evidence of a victim's deep knowledge of the fact supposedly concealed does not render a fraud scheme legally impossible, it does render it nonsensical. In the context of Huawei's history of candor and ▮▮▮▮▮▮▮▮▮▮, the idea that Huawei would intentionally try to mislead HSBC about its control of Skycom makes as little sense as the idea that someone would intentionally lie about the weather to a person standing outside.

---

[2] The government asserts that HSBC was particularly sensitive to sanctions risk because HSBC had only recently resolved a criminal investigation with DOJ in which it acknowledged that for the better part of three decades it had willfully and systematically engaged in sanctions and money-laundering violations involving Iran, Sudan, and Mexican drug cartels. *See* Record of the Case ¶ 18 (Ex. E).

**SIDLEY**                                 **JENNER & BLOCK** LLP

Page 4

Among other evidence showing HSBC's longstanding awareness from Huawei that Skycom was controlled by Huawei:

- Skycom was itself an HSBC customer, [4]

- Skycom held an account at HSBC, and HSBC routinely took direction from Huawei employees about decisions relating to that account.  In fact, apparently *all* of HSBC's communications regarding the account were directed to Huawei employees who had @huawei.com email addresses.[5] [6] [7] and allowed [8] [9] Eventually, [10]

- [11] Consistent with this understanding,

---

[3] Exs. H-6 to -9, -16, -22, -28, -31.

[4] Exs. H-8, -28.

[5] *See, e.g.,* Ex. H-3

[6] *E.g.,* Ex. H-4.

[7] Exs. H-29 to -30.

[8] Exs. H-2 to -3.

[9] Ex. H-19.

[10] Ex. H-5

Ex. H-1.

[11] *See, e.g.,* Ex. H-21.

# SIDLEY

# JENNER&BLOCK LLP

Page 5



### 2.   In evaluating sanctions risk, whether or not Huawei controlled Skycom was not material to HSBC.

Contrary to the government's allegations, for purposes of evaluating sanctions risk, HSBC had no particular reason to care whether Huawei controlled or merely worked closely with Skycom.  The sanctions compliance issue for HSBC—that it could service Huawei generally, but needed to avoid using its U.S. facilities to service Huawei's or Skycom's Iran-related business—turned on the well-understood fact that Huawei operated in Iran and did so through Skycom.  It did not make any material difference whether Huawei controlled Skycom or merely partnered with Skycom.  *See* Expert Aff. of John Bellinger, III ¶¶ 5–9 (Aug. 7, 2020) (Ex. F); *see id.* ¶ 20 (Ms. Meng's presentation to ███████ made clear that there was "Iran sanctions risk in processing Skycom-related payments, since Ms. Meng clearly confirmed that Skycom operated in Iran. Whether Skycom was an affiliate, distant relative, or stranger of Huawei was at all times irrelevant.").[16]

Consistent with that, the evidence shows that HSBC *did not* care about the precise relationship between Skycom and Huawei, not just because it did not matter but because Huawei was a hugely important customer relationship for HSBC.  Huawei began banking with HSBC in 2000.  As Huawei grew to become the world's largest telecommunications equipment manufacturer, HSBC came to view Huawei as a very important client



[12] *See, e.g.,* Ex. H-14

[13] *See, e.g.,* Ex. H-15

[14]

[15] Exs. H-24 to -25.

[16] Mr. Bellinger is a former State Department, Justice Department, and White House official with experience on issues relating to U.S. sanctions on Iran who was retained by Ms. Meng's defense team to submit an expert report in connection with her extradition proceedings in Canada.

[17] Ex. H-18, at 1.

**SIDLEY**                                    **JENNER&BLOCK** LLP

Page 6



### C.   The Government's Longstanding Refusal to Disclose Evidence Relating to HSBC's Independent Monitor

In December 2012, unrelated to Huawei, HSBC admitted to facilitating hundreds of millions of dollars in sanctions-violating transactions, concealing those transactions from regulators, and failing to maintain an effective anti-money laundering program.  *See* Deferred Prosecution Agreement, Dkt. No. 3-2, *United States v. HSBC Bank USA, N.A.*, No. 1:12-cr-00763-AMD (E.D.N.Y. Dec. 11, 2012).  As part of a deferred prosecution agreement with the Department of Justice, HSBC paid nearly $2 billion in forfeiture and penalties and agreed to the appointment of a corporate compliance monitor for at least five years.  *Id.* ¶¶ 7, 9–13.  The Monitor was responsible for evaluating the effectiveness of internal controls, policies, and procedures relating to HSBC's anti-money laundering and sanctions control programs, and documenting its findings in annual reports.  *See* Corporate Compliance Monitor Terms, Dkt. No. 3-4, *United States v. HSBC Bank USA, N.A.*, No. 1:12-cr-00763-AMD (E.D.N.Y. Dec. 11, 2012).  The Monitor's reports were non-public, but HSBC was advised that the Department of Justice would disclose the Monitor's reports "in furtherance of the Department's discharge of its duties and responsibilities or [a]s otherwise required by law." *Id.* ¶ 9.

From the outset of this case, Huawei has consistently demanded that the government produce information generated by the Monitor, which Huawei anticipated would support its arguments that HSBC knew about the relationship between Huawei and Skycom and that Huawei's alleged misrepresentations on that subject were not material to HSBC's decision to continue to bank Huawei.  In particular, within weeks of the Indictment being unsealed, Huawei served a request for all material required to be produced under Rule 16 and *Brady*, including specifically "[a]ll documents, including but not limited to reports or assessments, of

---

[18] Ex. H-13, at 4; Ex. H-10, at 8.

[19] Ex. H-10, at 8.

[20] *Id.*; Ex. H-22.

[21] Ex. H-12.

[22] *See* Exs. H-11, -17, -20.

# SIDLEY

# JENNER&BLOCK LLP

Page 7

any monitors, independent consultants, or compliance experts appointed in relation to any investigation or resolution of any investigation regarding [the victim financial institutions]." *See* Mar. 26, 2019 Ltr. at 5 (Ex. C). Huawei thereafter requested information from the Monitor in a meet-and-confer on January 23, 2020; a follow-up letter on February 10, 2020; another meet-and-confer on April 8, 2020; and another letter on July 17, 2020.[23] Despite this, ███████████████, the government refused to disclose *anything* relating to the Monitor or his findings.

### D. The Government's Belated and Insufficient Disclosures ███████████



███████████, in December 2020, the government

More than three months later, on March 17, 2021, the government provided another disclosure

---

[23] The February 10 and July 17, 2020 letters are attached as Exhibit D.

[24] The government had previously made two minor *Brady* disclosures in August and October 2020 ██████████████████████████████████████████████████████████████████ Those disclosures are inadequate and the defense is in the process of meeting and conferring with the government about them.

[25] Canicula is another Huawei affiliate and former HSBC customer that, like Skycom, ████████████ ████████████████. *See* Ex. H-7.

[26] The government has provided the two disclosures to counsel, but has provided the defendants, themselves, with only limited access. The government initially designated the December 2020 letter as "Attorney's Eyes Only," but eventually agreed to downgrade it to "Sensitive Discovery Material," while permitting representatives of the defendants to access the letter for several hours on a single occasion ████████████, and allowing defense counsel to discuss the disclosure with the defendants only if counsel does not quote from it. (Defendants have supplied the downgraded, January 29 SDM version of the letter as the exhibit to this Motion.) The government designated the March 2021 letter as a "Sensitive Discovery Material" from the outset, allowing the same one-time access to representatives of the defendants and permitting discussion between defense counsel and the defendants only with the same restrictions.

**SIDLEY**                                              **JENNER&BLOCK** LLP

Page 8



     Why the government suppressed this exculpatory information for nearly two years ███
██████████████████████ is a mystery. Why it suddenly decided to reveal it
may be less so. Specifically, the government's belated attention to its *Brady* obligations
came shortly after federal prosecutors in the Southern District of New York (i) were forced to
agree to the post-trial dismissal of a conviction in a similar Iran-sanctions-related case due to
admitted *Brady* violations involving suppressed evidence that—like here—undermined the
element of materiality, and (ii) were the subject of several highly-publicized opinions issued
by the presiding judge, strongly criticizing the government's conduct. *See United States v.
Ali Sadr Hashemi Nejad*, No. 18-cr-224 (AJN) (S.D.N.Y.).[27] In particular, the first disclosure
███████████████████████████ by the Huawei prosecutors in this case came only
months after the SDNY court found that prosecutors there had engaged in "repeated[]
violat[ion] [of] their disclosure obligations" and ordered investigation, briefing on the causes,
and remedial action. *See id.*, Dkt. No. 379 (Sept. 16, 2020); *id.* Dkt. Nos. 383-87 (Oct. 23,
2020) (submitting court-ordered declarations from four members of prosecution team). And
after the otherwise inexplicable passage of another three months, the Huawei prosecutors'
decision in March 2021 to make a second, lengthier disclosure ████████████ came
mere weeks after the SDNY court issued another 25-page order detailing how "[t]he
Government's prosecution of Mr. Sadr for alleged evasion of sanctions against Iran was
marred by repeated failures to disclose exculpatory evidence." *Id.*, ECF No. 399 (Feb. 22,
2021).

     **E.**    **The Government's Continuing Refusal to Satisfy Its *Brady* Obligations**

     Whatever caused the government to pay belated attention to its disclosure obligations,
it continues to refuse to meet them. Despite further discussions with defense counsel, the
government still refuses to provide the Monitor's ████ reports. The government also
acknowledges that it has not provided all of the materials the Monitor relied upon in

---

     [27] *See* Benjamin Weiser, *U.S. Prosecutors' Bid to 'Bury' Evidence Draws Judge's Wrath*, N.Y. Times
(Sept. 16, 2020), https://www.nytimes.com/2020/09/16/nyregion/manhattan-us-attorney-evidence-bury.html;
Jack Queen, *'Bury It': Inside a Hidden Evidence Scandal that Rocked SDNY*, Law360 (Mar. 15, 2021),
https://www.law360.com/articles/1364454.

**SIDLEY**                          **JENNER&BLOCK** LLP

Page 9

█████████████████████████████████████████████████████

  The government similarly refuses to produce a related category of exculpatory evidence. ████████████████████ HSBC reportedly retained Latham in late 2016 to conduct an internal investigation of the HSBC-Huawei relationship. Latham then made a series of presentations to DOJ (and likely the Monitor) in 2017. Public reporting about those presentations indicates that they revealed that HSBC understood that Skycom was affiliated with Huawei.[28] As with the Monitor information, Huawei has made requests throughout the two years of this prosecution for any exculpatory information presented to the government by HSBC or its counsel concerning HSBC's dealings with Huawei. In a meet-and-confer on April 6, 2021, the government confirmed for the first time that it does possess some such material but took the position that it is not obligated to disclose any of it.

## ARGUMENT

  Huawei is entitled to any and all information in the government's possession, custody, or control that tends to undermine the government's allegations. That is a function not just of the government's constitutional obligations under *Brady,* but also its obligation under Rule 16 to produce documents and objects that are material to the defense. Although we believe there may be more such information that has not yet been produced, the Requested Evidence that this Motion focuses on consists of three narrow categories of material that are ripe for this Court's intervention: (1) any and all HSBC Monitor's reports (or other work-product or findings) relating to Huawei; (2) the evidence the Monitor relied upon in reaching his findings; and (3) any exculpatory material in the government's possession arising from information presented to the government by HSBC, Latham, or other counsel for HSBC. These documents are material and exculpatory ████████████████████████ ████████████████████████████████████ The government should be directed to produce these readily identifiable materials forthwith.

## I. *Brady* and Rule 16 Require the Prompt Disclosure of All Material, Favorable Evidence.

  The government has a constitutional obligation to disclose any evidence in its possession that is "favorable to an accused" and "material either to guilt or punishment." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). The government must produce *Brady/Giglio* material regardless of whether it is specifically requested by the defense, *see Kyles v. Whitley,* 514 U.S. 419, 433 (1995), and it must do so "reasonably promptly after it is discovered," DOJ, *Justice Manual* § 9-5.001(D)(1) (last updated Jan. 2000); *see also EDNY Discovery Policy* at 20 (2014) ("If the material is exculpatory, it must be disclosed promptly after it is discovered."); *United States v. Armstrong,* No. 99-cr-997, 2005 WL 1803129, at \*1 n.2

---

[28] Karen Freifeld & Steve Stecklow, *Exclusive: HSBC Probe Helped Lead to U.S. Charges Against Huawei CFO*, Reuters (Feb. 26, 2019), https://www.reuters.com/article/us-huawei-hsbc-exclusive/exclusive-hsbc-probe-helped-lead-to-u-s-charges-against-huawei-cfo-idUSKCN1QF1IA.

**SIDLEY**                    **JENNER&BLOCK** LLP

Page 10

(S.D.N.Y. July 29, 2005) ("The government must, under *Brady*, produce exculpatory evidence promptly upon its discovery.").[29]

"Favorable" evidence means the evidence is exculpatory or impeaching. *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002). Evidence is exculpatory if it is favorable regarding any count in the Indictment. *See, e.g. United States v. Johnson*, 592 F.3d 164, 171 (D.C. Cir. 2010) ("[T]he *Brady* factors must be assessed count by count."). It need not be exculpatory as to all aspects of any one count, or even entirely exculpatory in nature. *See United States v. Mahaffy*, 693 F.3d 113, 130 (2d Cir. 2012) (vacating conviction due to *Brady* violation where withheld evidence had both inculpatory and exculpatory value but "its exculpatory character harmonized with the theory of the defense case" (quoting *United States v. Triumph Capital Grp.*, 544 F.3d 149, 164 (2d Cir. 2008) (alteration omitted)); *United States v. Martinez*, 388 F. Supp. 3d 225, 230 (E.D.N.Y. 2019) ("Even if evidence has both incriminatory and exculpatory aspects, it still qualifies as *Brady* material."); *see also, e.g.*, *United States v. Nejad*, 487 F. Supp. 3d 206, 214–16 (S.D.N.Y. 2020) (finding *Brady* violation warranting dismissal where withheld document was susceptible to inculpatory and exculpatory interpretations). If evidence is exculpatory in any way or in any part, it must be produced regardless of whether it is admissible. *Gil*, 297 F.3d at 104.

Evidence qualifies as material when there is "'any reasonable likelihood' it could have 'affected the judgment of the jury.'" *Wearry v. Cain*, 136 S. Ct. 1002, 1006 (2016) (per curiam) (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)). Any questions about materiality must be resolved in favor of disclosure. *See United States v. Agurs*, 427 U.S. 97, 108 (1976); *United States v. Bundy*, 968 F.3d 1019, 1041 (9th Cir. 2020); *see also United States v. Mirilishvili*, No. 14-cr-810, 2015 WL 5820966, at *17 (S.D.N.Y. Oct. 2, 2015) (The government "acts at its peril if it fails in its *Brady* or *Giglio* obligations by taking too narrow a view of what constitutes 'exculpatory' evidence."). The government's disclosure must also be "sufficiently specific and complete to be useful." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007). It must provide the defendant with "the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982).

In addition to its constitutional obligations under *Brady*, the prosecution is required under Rule 16 to produce "[u]pon a defendant's request" all information that is "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Proving materiality under Rule 16 "is not a heavy burden; rather, evidence is material as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356–57 (S.D.N.Y. 2007); *id.* (ordering the government to produce documents within the government's legal control by virtue of a DPA); *accord, e.g.*, *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (evidence is material if it "could be used to counter the government's case or to bolster a defense"). To obtain discovery under Rule

---

[29] To underscore the importance of prompt *Brady* disclosures, Congress recently amended Rule 5 to require district judges to remind the government about *Brady* obligation and consequences of disregarding it on first court day of criminal prosecution, orally and by written order. *See* Due Process Protections Act, Pub. L. No. 116-182, 134 Stat. 894 (2020); *see* Dkt. No. 261 (reminding the government).

**SIDLEY**                                    **JENNER & BLOCK** LLP

Page 11

16(a)(1)(E)(i), courts in this District have required defendants to make an initial showing of
"what [it] is looking for in those documents, why [it] expects it to be there, and what [it]
intends to do with that information." *United States v. Ashley*, 905 F. Supp. 1146, 1170
(E.D.N.Y. 1995).

**II.     Huawei is Entitled to Disclosure of the Monitor's Reports, the Evidence on
          Which the Monitor Relied, and the Results of Any HSBC Investigation Shared
          with the Government.**

> The government has—in the form of Monitor's reports ████████████████
████████████████ and the evidence underlying those reports—evidence that tends to
exculpate Huawei. And it has now acknowledged receiving presentations by Latham on
HSBC's behalf that presumably contain similar information. ████████████████████████
██████████████████████████ This Requested Evidence should be disclosed so that Huawei can use
it in its defense. The government's efforts to suppress it violate both *Brady* and Rule 16.

**A.     Proof of HSBC's Knowledge of the Huawei-Skycom Relationship is
         Material to the Defense and Exculpatory.**

> The government must produce the Requested Evidence because it tends to prove that
HSBC was aware of the relationship between Huawei and Skycom. Such proof is undeniably
exculpatory. The Indictment's central allegation of fraud is that Huawei intentionally tried to
hide from HSBC and other banks that it controlled Skycom. S3 Indictment ¶¶ 70, 77. But it
would have been senseless for Huawei to have intended to deceive HSBC about the Huawei-
Skycom relationship in 2013, ██████████████████████████████████████████████████
███████████████████████████████████████████████████ A jury could
reasonably conclude that the fact Huawei had acknowledged its true relationship with
Skycom makes it doubtful that Huawei would intentionally seek to mislead HSBC about that
same fact.

> The government well knows that HSBC's knowledge of the Huawei-Skycom
relationship tends to undermine its ability to prove the fraud counts. In Ms. Meng's
extradition proceeding in Canada, it has taken pains to assert that HSBC's knowledge of the
Huawei-Skycom relationship was limited only to isolated "junior HSBC employees." *See*
Record of the Case ¶¶ 28–29, 31–36 (Ex. E). As described above, the government's
contention is untrue. *Supra*, 4–5. But as importantly, the government's desire to minimize
HSBC's knowledge reveals its own understanding that such knowledge—whether by juniors,
seniors, or those in the middle—is exculpatory.

> The government cannot have it both ways. It cannot tell the public and the courts that
HSBC's knowledge was minimal and confined to junior employees when it seeks to bolster
its case, but then dispute that contrary information is exculpatory and material to the defense.
Insofar as the Monitor reports or other materials in the government's possession demonstrate
HSBC's knowledge about the relationship between Huawei and Skycom, they are
exculpatory.



**SIDLEY**                                    **JENNER&BLOCK** LLP

Page 12

    Moreover, the government knows this to be true, ███████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

 The Requested Evidence may or may not be dispositive, but ██████████████
, it should be produced forthwith. *See Mahaffy*, 693 F.3d at
130 (vacating conviction due to *Brady* violation where withheld evidence had both
inculpatory and exculpatory value but its "its exculpatory character harmonized with the
theory of the defense case") (quoting *Triumph Capital*, 544 F.3d at 164) (alteration omitted);
*Nejad*, 487 F. Supp. 3d at 214–16 (S.D.N.Y. 2020) (finding *Brady* violation on the same
grounds).

### B.    Proof of HSBC's Indifference to Information about Huawei's Relationship with Skycom Is Material to the Defense and Exculpatory.

    The government also must produce the Requested Evidence because ██████████

███████████████ ████████████████████████████████████████████

██████████████████████████████████████████ Even a false statement is not
fraudulent if it is not material; *i.e.*, if it does not have "a natural tendency to influence, or is
capable of influencing, the decision of the decision-making body to which it was addressed."
*Neder v. United States*, 527 U.S. 1, 16 (1999) (alteration omitted).



---

[30] Each of the government's four disclosures since August 2020 ██████████████

███████████████████████████████████████████████████████████

[31] ████████████████████████████████████████████████████████

██████████████████████████████████.

**SIDLEY**                                                        **JENNER&BLOCK** LLP

Page 13

████████████████████████████████████████████████████████████████
████████████ ██ ████████████████████████████████████

   Although proof that HSBC did not care about or rely on the information at the center of the charged fraud is not conclusive on the issue of materiality, evidence showing that HSBC paid perfunctory attention to and did not care about the Skycom relationship certainly supports Huawei's argument that the information was immaterial.  This is particularly true where the government is attempting to show materiality by affirmatively alleging the converse—that HSBC *did* actually rely on Huawei's supposed misstatements.  *See* S3 Indictment ¶ 79 ("Based in part on the false representations made by the defendant WANZHOU MENG and others, Financial Institution 1 continued its banking relationship with HUAWEI and its subsidiaries and affiliates.").  ██████████████████████████
███████████████████████████████████████████████████████[32]

   C.   **The Government's** ████████████████████████ **Insufficient to Satisfy Its Disclosure Obligations.**

   Given the obvious exculpatory value and materiality to the defense, the government's contorted and distorted efforts to avoid producing the Requested Evidence should not be permitted.  The government has been sitting for two years on █████████████████████
████████████████████████████████████████████████, to exculpate the defendants.  The government may not suppress this evidence.  It is obliged to produce the evidence pursuant to *Brady* and Rule 16(a)(1)(E)(i) of the Federal Rules of Criminal Procedure.

   Moreover, the government is wrong that ███████████████████ satisfy its obligations.  ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

   ***Monitor Reports***.  The government's position that it need not produce the Monitor's reports because ████████████████████████████ is wrong.

   *First*, the Monitor's reports ████████ are discoverable evidence that is required to be produced under Rule 16.  They are plainly "relevant to the case and will lead to the discovery of admissible evidence," such as business records or witnesses.  *United States v.*

---

   [32] Moreover, although materiality is objective, the question of what is material turns on the standards of the particular decision-maker at issue.  As the Second Circuit has held, where a decisionmaker employs specific criteria for making decisions, those criteria—both on paper and in terms of how they are implemented in practice—bear on materiality.  *United States v. Litvak*, 808 F.3d 160, 182 (2d Cir. 2015); *United States v. Rigas*, 490 F.3d 208, 234–35 (2d Cir. 2007); *see also United States v. Binday*, No. 12 CR 152 (CM), 2013 WL 12154927, at *2 (S.D.N.Y. Sept. 16, 2013).  ████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████ █

# SIDLEY

# JENNER&BLOCK LLP

Page 14

*Holihan*, 236 F. Supp. 2d 255, 260 (W.D.N.Y. 2002) (granting defendant's motion to compel government's production of bank documents). Indeed, the Monitor's reports ███████ are presumptively admissible against the government in a criminal case because they are the product of a "legally authorized investigation." Fed. R. Evid. 803(8)(iii); *see also, e.g.*, *Harte v. Ocwen Fin. Corp.*, No. 13-cv-5410, 2018 WL 1830811, at *20 (E.D.N.Y. Feb. 8, 2018) (finding monitor reports admissible because they "are trustworthy public records, legally produced for a governmental agency, which set forth the factual findings resulting from an investigation made pursuant to the law"), *R&R adopted*, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018) (Brodie, J.); *cf. Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988) ("As long as the [report's] conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report."). Just as with other admissible documents and material documents that likely will lead to admissible documents, Rule 16 entitles the defense to the Monitor's ███ reports, ██ ███████.

The fact that the reports are non-public is no justification under Rule 16 for the government to withhold them. The policy decision to treat monitor reports generally as non-public must yield to the government's legal and constitutional obligation to produce them when they are *Brady* material. Moreover, HSBC was made aware when it agreed to the monitorship that the Department of Justice would disclose the Monitor's reports "in furtherance of the Department's discharge of its duties and responsibilities or [a]s otherwise required by law." *See* Corporate Compliance Monitor Terms, Dkt. No. 3-4, *United States v. HSBC Bank USA, N.A.*, No. 12-cr-00763-AMD (E.D.N.Y. Dec. 11, 2012) at ¶ 9. It is required by DOJ policy and by law here. Moreover, there is a protective order in place to address any concerns about confidentiality. It takes significantly more than a general policy of confidentiality to permit the government to ███████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████

*Second*, ███████████████████████████ inadequate under *Brady* because ██ █ ███████████████████████████. A *Brady* disclosure must provide the defendant with all "essential facts." *Vaknin v. United States*, No. 08-CV-02420 DGT, 2010 WL 3394659, at *12 (E.D.N.Y. Aug. 23, 2010); ███████████████████████████ ███████████████████████████████████████████████████████ ███████████████ fall well short of the mark.

For example, a critical issue relating to Huawei's defense is *which* HSBC employees knew specific facts about the Huawei-Skycom relationship (*i.e.*, junior or senior employees) and *when* they knew them (*i.e.*, before or after Huawei's alleged misrepresentations or omissions). ███████████████████████████████████████████████████



**SIDLEY**                                        **JENNER&BLOCK** LLP

Page 15



█████████████████████████████████████████████████████████████.

    *Finally*, the government's unilateral decision ████████████████████████████████████ is contrary to the law of this Circuit. As the Second Circuit and judges of this Circuit have recognized, a document may contain information that is both exculpatory and inculpatory (or neutral). *See, e.g.*, *Mahaffy*, 693 F.3d at 130. Nonetheless, the entire document is *Brady* material if it contains "exculpatory aspects." *See, e.g.*, *Martinez*, 388 F. Supp. 3d at 230. Accordingly, the government had no basis to exercise its unilateral, self-interested judgment about ████████████████████████████████████ The government has unquestionably *not* provided Huawei ███████████████████████, and it therefore has not met its *Brady* obligations.

    ***Underlying Monitor Material.*** The government has also improperly refused to identify and produce all of the material the Monitor relied upon ████████████████ ████████████████. In a meet-and-confer on April 6, 2021, the government stated that it does not have all of the materials that the Monitor collected and relied upon, and that, of whatever it has, it has produced or will produce what it deems to be discoverable under Rule 16. But it has not committed to produce all of the Monitor's investigative materials, has not identified what if anything it has produced from those materials so far, has not stated when it

---

**SIDLEY**                                        **JENNER & BLOCK** LLP

Page 16

will produce whatever additional material it intends to produce, and has not explained the basis on which it would hold back any of the evidence relied upon by the Monitor.

None of this comports with the government's *Brady* obligations. ███████████ ████████████████████████████ Huawei is entitled to the reports themselves ███████████████ the evidence the Monitor reviewed and relied on in creating the reports. To the extent the government has already produced some of that it should identify it as such, not bury it in other non-*Brady* discovery. And to the extent the government has additional evidence that it has not yet produced, it should produce it, and on a fixed timeline. In sum, the Court should require the government to provide and identify all evidence that the Monitor relied upon ████████████████████████████████.

**Presentation Material.** After numerous defense requests for any exculpatory information presented to the government by Latham or some other representative of HSBC about HSBC's dealings with Huawei, the government has recently acknowledged for the first time that it does have information from one or more such presentations. But the government refuses to produce any of it. Again, the government's response is inconsistent with its obligations. Public reporting indicates that the information presented by Latham is exculpatory to Huawei, revealing, for example, that Huawei was open about its relationship with Skycom. In particular, Latham reportedly presented to the government that: (1) Skycom and Canicula had accounts at HSBC that were part of the Huawei Mastergroup; (2) Canicula documents listed a Huawei address; and (3) following closure of the Skycom account at HSBC, Huawei requested that the remaining funds be transferred to a Huawei HSBC account.[34] The government should be ordered to review the information presented to it and produce any exculpatory portions of it.

\*   \*   \*

There is significant question why Huawei had to wait two years to receive from the government, in halting and piecemeal fashion, ███████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████ that is presumptively admissible as defense evidence at trial and would lead to other admissible evidence. Huawei should not be forced to wait months or years longer to see what information the government chooses to share with Huawei next. Huawei has a constitutional right to all material, exculpatory evidence in the government's possession, custody, or control, including the Requested Evidence. The government's belated, partial disclosures fall far short of this standard. Accordingly, Huawei respectfully requests an order from this Court compelling the government to produce the material it has improperly withheld.

---

[34] Freifeld & Stecklow, *supra* n.28.

**SIDLEY**                                            JENNER & BLOCK LLP

Page 17

Respectfully submitted,

/s/ Thomas C. Green                    /s/ David Bitkower
Thomas C. Green                        David Bitkower
Mark D. Hopson                         Matthew S. Hellman
Michael A. Levy                        JENNER & BLOCK LLP
Joan M. Loughnane                      1099 New York Avenue, NW
Douglas A. Axel                        Washington, D.C. 20001
Brian J. Stretch                       Tel: 202-639-6048
Melissa Colón-Bosolet                  Email: dbitkower@jenner.com
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Tel: 212-839-7341
Email: tcgreen@sidley.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc.,*
*Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

CC:    Government counsel (by email and ECF)
       Clerk of Court (by ECF)