**SIDLEY**                                                        **JENNER&BLOCK**LLP

June 14, 2024

**VIA ECF**
The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *United States v. Huawei Technologies Co. Ltd.*, No. 1:18-cr-00457 (S-3) (AMD) (CLP)

Dear Judge Donnelly:

      We write on behalf of Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc. (collectively, "Huawei") to seek the Court's assistance in remediating the U.S. government's unwarranted restrictions on Huawei's access to approximately 536,000 discovery documents (1.2 million pages), in violation of the Protective Order (Dkt. 57) ("P.O.") and in derogation of both the government's discovery obligations and Huawei's Fifth and Sixth Amendment rights. As described below, these restrictions result, in part, from the fact that the Department of Commerce ("Commerce") in 2019 placed Huawei and certain of its non-U.S. affiliates—including two Defendants in this case—on its "Entity List." The ultimate impact of this government action was to prohibit the "export" to Huawei of any "technology," including any such technology contained in the government's discovery materials, absent a license granted by the Commerce Department's Bureau of Industry and Security ("BIS"). Defense Counsel have tried for over two years to obtain a BIS license that would permit Defense Counsel to provide the government's discovery to Huawei in accordance with this Court's P.O. Despite Defense Counsel's diligent and repeated efforts, BIS refuses to grant the requested license and the Department of Justice ("DOJ") likewise refuses to provide meaningful assistance. This Court's assistance is therefore requested in order to help alleviate this unwarranted burden on Huawei's access to discovery.

**I.**     **INTRODUCTION AND SUMMARY OF ARGUMENT**

      The Court's P.O. in this case, by its own terms, is supposed to be the exclusive source of restrictions on Huawei's access to discovery materials. P.O. ¶ 4. The P.O. permits the government to designate certain discovery as "Sensitive Discovery Materials" ("SDM") to which onerous restrictions attach, but only on a document-by-document basis supported by a "good-faith belief" that such designation is necessary to protect a legitimate governmental or third-party interest. *See id.* ¶ 19. In connection with its productions, the government purports to have conducted such a review and made its designations in accordance with the standards prescribed by the P.O.

      In May 2019—before the Court entered the P.O.—BIS added Huawei to its Entity List. The practical effect of Huawei's inclusion on the Entity List was to impose additional restrictions on Huawei's access to discovery materials containing technology, restrictions well in excess of

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 2

those established by this Court's P.O. As a consequence, the DOJ and all other parties, including Defense Counsel, are prohibited by law from providing to Huawei any of the government's discovery produced in this case that may contain "technology" subject to the Export Administration Regulations ("EAR") absent a license or other authorization from BIS.

Despite the fact that it is obligated to make its discovery available to Huawei in accordance with the P.O., DOJ failed to seek or obtain the required license from BIS, leaving to Defense Counsel the task of securing the requisite license to transmit the government's discovery to Huawei. Beginning in January 2022, Defense Counsel, on behalf of Huawei, diligently communicated with and sought such a license from BIS to release the government's discovery materials. After extensive efforts by Defense Counsel, yielding only an incomplete patchwork of ad hoc or limited authorizations from BIS, in October 2023 BIS issued an interim license authorizing Huawei's partial access to discovery that may contain technology, but only under the P.O.'s SDM restrictions as amended (the "Interim Authorization"). *See* Ex. B. This did have the effect of making substantial portions of the discovery available to Huawei for the first time. But Huawei's access to such documents continues to be restricted to the P.O.'s SDM provisions, *even for approximately 536,000 documents that DOJ determined did not merit such restrictions and designated only as Discovery Materials ("DM") under the P.O.*

By effectively redesignating approximately 536,000 documents as SDM without any particularized determination that such protections are necessary to meet any governmental interest, the government has violated the express terms of the P.O., its own obligations under Rule 16, and Huawei's Fifth and Sixth Amendment rights to meaningfully participate in and prepare for its own defense. Huawei accordingly requests the Court's assistance in resolving these issues at the next appearance.

## II.     BACKGROUND

### A.     The Protective Order

Discovery produced by the government in this criminal proceeding is governed by this Court's P.O. *See* P.O. Subject only to the restrictions of the P.O. itself, the P.O. provides that "Defendants, Defense Counsel, and Defense Staff may use [all discovery produced in the case] without consent of the government or further order of the Court." P.O. ¶ 4.

The P.O. allows the government to designate its discovery as subject to one of three possible levels of protection—DM, SDM, or Attorneys' Eyes Only ("AEO") material. *See id.* ¶¶ 1, 11, 16. By default, all discovery is deemed at least DM. *See id.* ¶ 2. A DM designation imposes a number of restrictions on who can see such materials and how those materials can be used. *See id.* ¶¶ 2–10. The government may designate discovery materials as SDM "only upon a good-faith belief" that such materials contain specific sensitive information (including "national security" information) meriting the additional onerous restrictions reserved for SDM documents. *Id.* ¶ 19. Discovery designated as SDM, including "any and all copies, notes, transcripts, documents and other information and materials derived or prepared from" same, "shall not under any circumstances be taken, transmitted or accessed, in whole or in part, outside of the United

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 3

States of America, except as otherwise provided in this Protective Order" or agreed to by the government. *Id*. ¶ 11. Additionally, "defendants may review the Sensitive Discovery Material only in the presence of Defense Counsel or Defense Staff" and "are prohibited from having possession, custody, or control of" such material. *Id*.. If the parties disagree on the government's designation of specific materials, the government bears the burden of bringing the dispute to the Court and demonstrating that there is good cause for the restrictions it has imposed. *See id*. ¶¶ 19–20.

      **B.**      **The EAR and Negotiations with BIS**

The EAR administered by BIS imposes controls on certain exports to "serve [certain] interests of the United States," including national security and foreign policy interests. 15 C.F.R. §§ 730.1, 730.6. On May 16, 2019—shortly before the Court entered the P.O. in this case—BIS added multiple Huawei entities, including defendants Huawei Technologies Co., Ltd. and Huawei Device Co., Ltd., to the EAR "Entity List." *See* 15 C.F.R. § 744, supp. no. 4. The Entity List identifies the persons and entities to whom exports of items "subject to the Export Administration Regulations" are prohibited absent a license from BIS. The Huawei entities were added to the Entity List before the P.O. was finalized, yet the government did not seek to incorporate the EAR restrictions into the P.O. or otherwise carve out any government-produced documents from the P.O.'s scope.

Among the "items" subject to EAR controls are "software" and "technology." "Technology" is defined broadly to include "[i]nformation necessary for the 'development,' 'production,' 'use,' operation, installation, maintenance, repair, overhaul, or refurbishing (or other terms specified in ECCNs on the CCL that control 'technology') of an item." *See* 15 C.F.R. § 774, supp. 1, cat. 3; 15 C.F.R. § 772.1.[1] Given this very broad definition, all types of "technical information" contained in document form cannot be transmitted to Huawei absent authorization by BIS. *See* 15 C.F.R. § 744, supp. no. 4.

A significant portion of the discovery materials produced by DOJ in this case may contain technology subject to EAR controls. Under the EAR, the "exporter" who "must determine licensing authority" and "obtain the appropriate license or other authorization" to share such discovery with Huawei is "[t]he U.S. principal party in interest." 15 C.F.R. § 758.3(a). The "principal party in interest" is the person "in a transaction that receive[s] the primary benefit, monetary or otherwise, of the transaction." *Id*. § 772.1. DOJ must produce the materials at issue to Huawei in order to satisfy its discovery obligations and proceed with its prosecution against the company. DOJ therefore receives "the primary benefit" of the production

---

[1] The Commerce Control List, or "CCL," is a list of items, including commodities, software, and technology, that the U.S. government considers dual-use (*i.e.*, civilian and military) for export control purposes. The items on the CCL are identified by an export control classification number, or "ECCN," which is a five-character alpha-numeric designation. An ECCN categorizes items based on the nature of the product and its respective technical parameters. Items not listed on the CCL are designated EAR99. Export requirements vary based on an item's classification (*i.e.*, ECCN), the country of destination, the parties to the transaction, and the end-use of the item.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 4

and is the exporter that must apply for the license. *See id.*; *see also id*. § 740.11(b) (making clear that the EAR apply to exports by the government as well as by private parties).

DOJ, however, never sought a license from BIS to make the disclosures to Huawei that are necessary for DOJ to prosecute this case and refuses to do so. Instead, DOJ transmitted the discovery to Defense Counsel and asserts that it is Huawei's and/or Defense Counsel's[2] responsibility to obtain from BIS the licenses that may be necessary for Huawei to access the government's discovery.

At earlier stages of this criminal action, Huawei's Defense Counsel requested, and received, certain ad hoc or limited authorizations from BIS to share certain discovery materials containing EAR-controlled technology with Huawei. These prior authorizations, however, do not cover the full scope of the relevant discovery, and they have required Huawei's Defense Counsel to determine on their own whether any given document produced by DOJ contains EAR-controlled technology, and, if so, whether that technology falls within the scope of an authorization. Such a determination involves reviewing each document to determine if it contains "technology" (broadly defined), and if so, then determining what "Export Control Classification Number" (of which there are many published in the EAR) applies to the technology. Based on this determination, one then assesses whether an export license is needed to share the document with the intended recipient, in this case, Huawei personnel involved in the defense of the criminal proceeding. As this criminal proceeding has advanced, the number of documents produced by DOJ has grown substantially. As of this filing, Defense Counsel has identified more than 2 million documents in the discovery (totaling 8.6 million pages) that have needed to be withheld from Huawei as they may contain technology subject to the EAR and may not be subject to any of the limited licenses issued prior to October 2023. Of this number, 536,000 documents (totaling 1.2 million pages) have been designated by DOJ as "DM" under the P.O., and approximately 1.5 million documents (totaling 7.3 million pages) have been designated as "SDM" under the P.O.

On July 8, 2022, Huawei's U.S. counsel submitted a request to BIS seeking (among other things) authorization to release to Huawei—for criminal defense purposes only—any materials produced by DOJ in this criminal proceeding, subject only to the terms of the P.O. *See* Ex. A.[3] After extended discussions—including (A) multiple emails and approximately a dozen telephone conversations with officials at the Commerce Department Office of the General Counsel and Office of Exporter Services beginning in January 2022, (B) a June 8, 2023 submission to BIS of a proposal to address the export control requirements that BIS ultimately declined to adopt, and (C) a request for an emergency license for Huawei personnel visiting the United States to prepare for the defense of this criminal proceeding—BIS issued its Interim Authorization in October

---

[2] A duly authorized U.S. agent of the foreign principal party in interest of a routed export transaction may also apply for the export license. *See* 15 C.F.R. § 758.3.

[3] Huawei's July 8, 2022 request also sought authorization to disclose other potential "technology" outside the scope of DOJ's discovery that Defense Counsel may need to disclose to Huawei as part of the defense of this case, including exculpatory exhibits and other defense materials that may be obtained from third parties. To the extent necessary, such materials will be part of a separate application and are not included as part of this Motion.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 5

2023. The Interim Authorization permitted certain discovery to be shared with Huawei but, in relevant part, only under the SDM conditions—*i.e.*, in the presence of counsel, in the United States (or an alternative approved by DOJ consistent with the P.O., such as remote review in Hong Kong), and without retaining any notes—subject to any subsequent modifications or amendments of the P.O. as to which the parties may later negotiate and agree. This Interim Authorization effectively subjects 536,000 documents—which DOJ has already determined warrant only a DM designation—to the onerous SDM restrictions, without any determination by BIS or any other government agency that such restrictions are in fact necessary to serve one of the government interests specified in the P.O. The Interim Authorization remains in place.

Given the undue restrictions imposed by the Interim Authorization, Huawei continued to pursue its July 8, 2022 request for a more manageable export authorization to comport with the P.O. and the rights afforded to Huawei to defend itself effectively in this matter. On January 19, 2024, BIS requested that Huawei re-submit its July 8, 2022 authorization request through BIS's formal online portal (called "SNAP-R"), which Huawei did on February 8, 2024. On March 29, 2024, BIS returned without action ("RWA") Huawei's re-submitted authorization request, effectively denying that request.

In BIS's RWA notice and in discussions with Defense Counsel, BIS explained that, in order for Huawei to obtain BIS's permission to access the government's Rule 16 discovery in accordance with the P.O., Defense Counsel would first need to review and assess the entirety of the government's discovery to (A) identify potential "technology" contained or described in each document; (B) determine whether such documents in fact contain "development," "production," or "use" technology, as defined in the EAR, that could potentially be outside the scope of existing authorizations; (C) assess and classify the technology in any such document in accordance with the EAR (which could require Defense Counsel to retain technical experts); and (D) seek specific classification-by-classification authorization from BIS. Based on Defense Counsel's efforts to undertake such review and classification on a sample of the documents at issue, Defense Counsel estimates it would take **thousands of person-hours** to complete the review that would be required to satisfy BIS's requirements, and an unknown amount of additional time to seek and hopefully obtain BIS's actual license or other approval.

Moreover, even if Defense Counsel were to undertake such review, the consequences of an error in counsel's classification of materials as EAR-controlled are significant. Any improper determination that discovery material is not EAR-controlled exposes Defense Counsel both to significant administrative penalties—including fines of up to $364,992 per violation, denial of export privileges, and revocation of export licenses—and potentially to criminal penalties— including up to 20 years' imprisonment and up to $1 million in fines per violation. *See* 50 U.S.C. § 4819(b)–(c); 15 C.F.R. §§ 764.2–3, 736.2(b)(10). The sheer scope and nature of the discovery further amplifies these risks. In the event of an error in this process, Huawei itself would potentially be exposed to civil or criminal liability for using the improperly supplied technology in its criminal defense.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 6

### C. Appeals to DOJ for Assistance

At an impasse with BIS, Defense Counsel sought DOJ's assistance in securing a BIS authorization or otherwise enabling Huawei to review the government's Rule 16 discovery consistent with the P.O. Ex. C. This seemed a logical solution, because DOJ knows the contents of its own discovery and is obligated to produce it to the defendants. Moreover, BIS is knowledgeable about this case and the government's obligations under the P.O.; among other things, the current Assistant Secretary of Commerce for Export Administration, a senior official of BIS, was a former member of DOJ's trial team in this case and was one of the signatories to the P.O. DOJ, however, has maintained that it is exclusively the responsibility of Huawei and Defense Counsel to obtain from BIS the licenses necessary for Huawei to access the government's own discovery in accordance with the P.O.

Recently, DOJ proposed a process by which the technology categorization forming the basis of the BIS license request could be limited to certain ranges of discovery and generalized descriptions of the technology at issue, rather than a page-by-page review of all discovery that may contain restricted "technology." However, DOJ refuses to provide a description of the technology to be licensed, and neither DOJ nor BIS will provide any reliable assurance that a streamlined process will not subject Defense Counsel or Huawei to administrative and/or criminal penalties in the event of an inadvertent export of unlicensed technology. In other words, while all parties are concerned about the possibility that some unknown, unlicensed technology hiding in the government's discovery may be exported to Huawei as part of the production process, the U.S. government wants to place the risk of such an occurrence on Defendants or their Defense Counsel, rather than come up with a workable solution.

### III. Argument

Absent exceptional circumstances not present here, the government does not satisfy its Rule 16 obligations by producing discovery materials solely to Defense Counsel while withholding those materials from the defendant itself. *United States v. Baker*, No. 20-cr-288-LJL, 2020 WL 4589808, at *4 (S.D.N.Y. Aug. 10, 2010). "[I]n the usual case when production is ordered, a client has the right to see and know what has been produced." *United States v. Truong Dinh Hung*, 667 F.2d 1105, 1108 (4th Cir. 1981) (per curiam) (citing *Geders v. United States*, 425 U.S. 80, 96 (1976) and *Faretta v. California*, 422 U.S. 806 (1975)). It is often the defendant alone who knows all the relevant facts, can identify whether evidence is exculpatory or inculpatory, and can appreciate the significance of a particular item of evidence. *See Baker*, 2020 WL 4589808, at *4 (there is "a value and an interest in the defendant being able to freely review the evidence against him, on his own time, and without a defense lawyer or anyone else looking over his shoulder").

Any restriction on a defendant's access to discovery must be supported by good cause. Fed. R. Crim. P. 16(d)(1). That is why the P.O. allows for the imposition of SDM restrictions on any document over the Defendants' objections only if the government determines that such designation is necessary to protect a legitimate governmental or third-party interest and can

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 7

establish "good cause regarding why the material should be treated as Sensitive Discovery Material" to the satisfaction of the Court. *See* P.O. ¶ 19.

The restrictions on Huawei's access to discovery imposed by the United States through BIS's administration of the EAR violate this Court's P.O. and Rule 16, and impose an undue burden on Huawei's rights to participate in and prepare its own defense.

*First*, the P.O. provides that "Defendants, Defense Counsel, and Defense Staff may use Discovery Materials without consent of the government or further order of the Court. . . ." P.O. ¶ 4. Yet the government—the U.S. Department of Commerce—has been denying its consent to allow Defendants and Defense Counsel to access and use Discovery Materials in accordance with the P.O. In so doing, the United States is acting in direct violation of the Court's P.O.—an order drafted by the government and to which the government expressly agreed.

*Second*, through its Interim Authorization allowing Huawei to access discovery that may contain "technology" only in accordance with the P.O.'s SDM restrictions (as those restrictions may be subsequently amended or modified by negotiation and agreement of the parties[4]), the government (BIS and DOJ) has effectively imposed SDM-level restrictions on 536,000 documents (1.2 million pages) that DOJ already determined did not merit such restrictions when it designated them as DM. In so doing, the government restricts Huawei's access to such materials without good cause, in violation of both the P.O. and Rule 16 itself. These additional restrictions are significant. In addition to the protections afforded DM documents, SDM materials—including "any and all copies, notes, transcripts, documents and other information and materials derived or prepared from"—cannot be "taken, transmitted or accessed, in whole or in part, outside of the United States of America" unless expressly permitted by the P.O. or agreed to by the government.  P.O. ¶ 11. Additionally, Huawei may "review the Sensitive Discovery Material only in the presence of Defense Counsel or Defense Staff" and is "prohibited from having possession, custody, or control of" such material. *Id.*. As noted in Huawei's letter requesting modification of the P.O.—filed alongside the present letter—SDM restrictions are particularly onerous in the context of the innumerable crucial fact witnesses located in Mainland China who may be unable or unwilling to travel outside of their country. The government cannot discharge its Rule 16 obligations while, at the same time, unduly restricting Huawei's access to those same materials without good cause.

*Third*, the restrictions the government imposes on Huawei's access through BIS's administration of the EAR—on top of all of the other restrictions on Huawei's access to discovery that have been imposed in this matter—further impede Huawei's ability to meaningfully participate in and prepare its own defense, in violation of its rights under the Fifth and Sixth Amendments. This case presents numerous challenges—including allegations extending back more than twenty years; involving complex technologies; with many of the

---

[4] For example, as explained in a contemporaneously filed motion, the parties have agreed to a modification of the Protective Order whereby SDM may be reviewed in Hong Kong under a technological solution whereby SDM stored in the United States may be viewed remotely in Hong Kong without any SDM actually leaving the United States.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 8

defense witnesses located overseas. In order to be able to effectively defend itself, Huawei must have ready access to all of the government's discovery, including the evidence on which the government may rely and materials that are relevant to the defense. Severely circumscribing Huawei's access to hundreds of thousands of pages of such discovery without good cause unduly interferes with Huawei's rights to participate in and prepare its own defense.

It is not enough for the government to say that it may grant a license to provide Huawei access to these materials in accordance with the P.O., but only if Defense Counsel first conducts a review of the discovery materials, attempts to determine which contain "technology" and are not covered by an existing authorization, categorizes such technology according to BIS's complex "ECCN" categorization scheme, and seeks further authorization from BIS. As described above, Defense Counsel estimates that such a process would take *thousands of person-hours* to complete, and (because of possible process errors) still could subject Defense Counsel and potentially Huawei itself to, at a minimum, strict liability civil penalties for any errors along the way. Defense Counsel's obligation in this matter is to provide zealous advocacy in support of Huawei's defense; it cannot effectively discharge such obligation while also serving as BIS's technology categorizer and being exposed to potential civil or criminal penalties for any erroneous export control classification or mis-categorization.

The United States government decided to prosecute Huawei while, at the same time, placing the company on the Commerce Department's Entity List. Having chosen to maintain its prosecution against Huawei, DOJ has a clear obligation to produce its discovery to the company in accordance with this Court's P.O. In order to do so, DOJ can and must apply to BIS to obtain the requisite authorizations. It should not be hard for DOJ to do so: DOJ knows what technology is in its own discovery because it has already conducted a page-by-page review and has purported to make individualized determinations about the sensitivity of information in each document. BIS, for its part in administering the EAR, has an established process to review technology for export control classification purposes. Therefore, DOJ, in consultation with BIS, is able to provide whatever technological ECCN categorization is necessary to enable BIS to grant a license that authorizes the disclosures to Huawei that are necessary for DOJ to maintain its prosecution of the company.

*United States v. Huawei Technologies Co. Ltd.*,
No. 1:18-cr-00457 (S-3) (AMD) (CLP)
June 14, 2024
Page 9

## CONCLUSION

For the foregoing reasons, Huawei respectfully seeks the Court's assistance in resolving these issues at the next appearance.

Respectfully submitted,

| | |
|---|---|
| /s/ Douglas A. Axel | /s/ David Bitkower |
| Douglas A. Axel | David Bitkower |
| Michael A. Levy | Matthew S. Hellman |
| Jennifer Saulino | JENNER & BLOCK LLP |
| Daniel Rubinstein | 1099 New York Avenue, NW |
| Ellyce R. Cooper | Washington, D.C. 20001 |
| Melissa Colón-Bosolet | Tel: 202-639-6048 |
| SIDLEY AUSTIN LLP | Email: dbitkower@jenner.com |
| 787 7th Avenue | |
| New York, NY 10019 | |
| Tel.: 212-839-5300 | |
| Email: daxel@sidley.com | |

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*

CC: Clerk of the Court (AMD) (by ECF)