UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    - v. –

HUAWEI TECHNOLOGIES CO., LTD,
*et al.*,

              Defendants.

18 CR 457 (S-3) (AMD) (CLP)

██████████████

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW #1 IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE RICO CONSPIRACY CHARGE (COUNT 1)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 5

ARGUMENT ...................................................................................................................... 7

    I.     Count One Should Be Dismissed Because Huawei Tech Cannot Conspire
          with Itself. ............................................................................................. 8

          A.    Huawei Tech Cannot Conspire with Its Wholly Owned
               Subsidiaries or Commonly Owned Affiliates. ........................................... 8

          B.    ██████████████████████████████████. ........................ 12

    II.    Count One Should Be Dismissed for Failure to Allege a Conspiracy that
          Involved Use or Investment Within the United States of Racketeering-
          Derived Funds. ......................................................................................... 13

          A.    Federal Law Presumptively Does Not Apply to Purely
               Extraterritorial Conduct. ........................................................................... 13

          B.    Section 1962(a) Does Not Contain a Clear Rebuttal of the
               Presumption of Extraterritoriality. ............................................................ 14

          C.    Count One Does Not Involve a Domestic Application of § 1962(a). ........ 16

    III.   Count One Also Fails Because There Is No Pattern of Racketeering
          Activity. .................................................................................................... 18

    IV.   Count One Should Be Dismissed For Multiple Reasons Related to the
          Alleged "Enterprise." ............................................................................... 22

CONCLUSION ................................................................................................................. 23

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abitron Austria GmbH v. Hetronic Int'l, Inc.*,
    600 U.S. 412 (2023)................................................................................16

*Am. Needle, Inc. v. NFL*,
    560 U.S. 183 (2010)..................................................................................9

*Attia v. Google LLC*,
    2019 WL 1259162 (N.D. Cal. 2019) .......................................................21

*Boneta v. Rolex Watch USA, Inc.*,
    232 F. Supp. 3d 354 (S.D.N.Y. 2017).....................................................10

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)................................................................................22

*Ciminelli v. United States*,
    598 U.S. 306 (2023)................................................................................21

*Copperweld Corp. v. Indep. Tube Corp.*,
    467 U.S. 752 (1984).....................................................................8, 9, 10, 11

*Detrick v. Panalpina, Inc.*,
    108 F.3d 529 (4th Cir. 1997) ....................................................................9

*Doctor's Assocs., Inc. v. Distajo*,
    66 F.3d 438 (2d Cir. 1995).......................................................................12

*Fogie v. THORN Ams., Inc.*,
    190 F.3d 889 (8th Cir. 1999) ....................................................................9

*Friedman v. Ariz. World Nurseries Ltd.*,
    730 F. Supp. 521 (S.D.N.Y. 1990) .........................................................16

*Girard v. 94th St. & Fifth Ave. Corp.*,
    530 F.2d 66 (2d Cir. 1976)...................................................................9, 10

*Hartline v. Gallo*,
    546 F.3d 95 (2d Cir. 2008), *abrogated on other grounds by*
    *Murphy v. Hughson*, 82 F.4th 177 (2d Cir. 2023)..................................10

*Heller Fin., Inc. v. Grammco Comput. Sales, Inc.*,
    71 F.3d 518 (5th Cir. 1996) .....................................................................19

*Ideal Steel Supply, Co. v. Anza,*
    652 F.3d 310 (2d Cir. 2011)................................................................16

*Johnson v. Nyack Hosp.,*
    954 F. Supp. 717 (S.D.N.Y. 1997) .........................................................9

*Merhej v. I.C.S. Int'l Custody Sys., Inc.,*
    2014 WL 104908 (S.D.N.Y. 2014).........................................................10

*Morrison v. Nat'l Australia Bank Ltd.,*
    561 U.S. 247 (2010)...........................................................................13

*N. Tankers (Cyprus) Ltd. v. Backstrom,*
    967 F. Supp. 1391 (D. Conn. 1997) ......................................................13

*Nestlé USA, Inc. v. Doe,*
    593 U.S. 628 (2021)......................................................................14, 16

*Ouaknine v. MacFarlane,*
    897 F.2d 75 (2d Cir. 1990)...................................................................16

*Panthera Rail Car LLC v. Kasgro Rail Corp.,*
    985 F. Supp. 2d 677 (W.D. Pa. 2013) ...................................................13

*United States ex rel. Reagan v. E. Texas Med. Ctr. Reg'l Healthcare Sys.,*
    274 F. Supp. 2d 824 (S.D. Tex. 2003), *aff'd*, 384 F.3d 168 (5th Cir. 2004) ..........13

*Reich v. Lopez,*
    858 F.3d 55 (2d Cir. 2017)...................................................................18

*Riquelme Valdes v. Leisure Res. Grp., Inc.,*
    810 F.2d 1345 (5th Cir. 1987) ..............................................................12

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,*
    30 F.3d 339 (2d Cir. 1994)...................................................................22

*RJR Nabisco, Inc. v. European Cmty.,*
    579 U.S. 325 (2016).........................................................6, 13, 14, 15

*Rush v. Oppenheimer & Co., Inc.,*
    628 F. Supp. 1188 (S.D.N.Y. 1985).......................................................22

*Smith v. United States,*
    568 U.S. 106 (2013)........................................................................8, 12

*U1IT4Less, Inc. v. FedEx Corp.,*
    871 F.3d 199 (2d Cir. 2017).................................................................22

*United States v. Burden*,
    600 F.3d 204 (2d Cir. 2010)............................................................18, 20

*United States v. Carrier*,
    672 F.2d 300 (2d Cir. 1982)....................................................................8

*United States v. Doherty*,
    867 F.2d 47 (1st Cir. 1989)....................................................................11

*United States v. Harris*,
    838 F.3d 98 (2d Cir. 2016)....................................................................23

*United States v. Huber*,
    603 F.2d 387 (2d Cir. 1979)..................................................................23

*United States v. Kelly*,
    609 F. Supp. 3d 85 (E.D.N.Y. 2022) ...................................................18

*United States v. Laurent*,
    33 F.4th 63 (2d Cir.), *cert. denied*, 143 S. Ct. 394 (2022) .....................18

*United States v. Payne*,
    591 F.3d 46 (2d Cir. 2010)....................................................................20

*United States v. Rosenblatt*,
    554 F.2d 36 (2d Cir. 1977)......................................................................8

*United States v. Scully*,
    108 F. Supp. 3d 59 (E.D.N.Y. 2015) .....................................................7

*United States v. Thomas*,
    274 F.3d 655 (2d Cir. 2001)....................................................................7

*United States v. Vernace*,
    811 F.3d 609 (2d Cir. 2016)............................................................18, 19

*United States v. Weisberg*,
    2011 WL 4345100 (E.D.N.Y. 2011).......................................................7

*Wm. Passalacqua Builders, Inc. v. Resnick Devs. S., Inc.*,
    933 F.2d 131 (2d Cir. 1991)....................................................................7

**Statutes**

18 U.S.C. § 1961.................................................................................20, 22

18 U.S.C. § 1962...................................................................................6, 18

## Other Authorities

*Fox & Friends Interviews Mike Pompeo* (Dec. 12, 2018),
  https://tinyurl.com/4zr9twh3 ............................................................................................3

Josh Gerstein, *Report Details Collapse of China Initiative Case*,
  Politico (Feb. 18, 2022), https://tinyurl.com/mryxdsv8 ............................................4

Kate O'Keefe & Aruna Viswanatha, *U.S. Drops Case Against Chinese Scientist at
  UVA*, Wall St. J. (Sept. 23, 2020), https://tinyurl.com/4tch65y9 ..............................3

*Mnuchin Says Trump Could Ease Up on Huawei if Trade Talks Advance*, Reuters
  (June 9, 2019), https://tinyurl.com/yrh8b2ch ...........................................................3

Shawna Chen, *FBI China Spy Probe Faces Backlash as Case against Professor
  Ends in Mistrial*, Axios (June 26, 2021), https://tinyurl.com/bdhyn7fr......................3

Steven Overly, *Trump Says Huawei Charges on the Table in China Trade Talks*,
  Politico (Feb. 22, 2019), https://tinyurl.com/ytdk3582............................................3

U.S. Dep't of Just., *Attorney General William P. Barr Delivers the Keynote
  Address at the Department of Justice's China Initiative Conference* (Feb. 6,
  2020), https://tinyurl.com/4dy6u9wn.......................................................................3

U.S. Dep't of Just., *Ass't Att'y Gen. Matthew Olsen Delivers Remarks on
  Countering Nation-State Threats* (Feb. 23, 2022), https://tinyurl.com/
  2p82bhmu ................................................................................................................4

## PRELIMINARY STATEMENT

The case against Huawei has operated backwards—not from the ordinary investigation of facts that suggest that a crime has occurred, but rather from investigation of a pre-identified target in search of any opportunity to charge a crime. In count after count, the government has stretched the law past its breaking point, bringing unprecedented charges that do not state any offense, are impermissibly extraterritorial, or violate constitutional guarantees of due process.

At its initial stage, the case was about alleged bank fraud and violation of financial sanctions on Iran. But, as explained in the simultaneously filed memoranda supporting the dismissal of those charges, (i) the supposedly sanctions-violating transactions did not touch or benefit Iran, and (ii) the fraud charges allege only that Huawei intended to maintain its commercial relationship with the banks by depriving them of information, which is not "money or property" under intervening Supreme Court precedent.

Then, apparently unsatisfied with these charges, the government unsealed a superseding indictment featuring a new and highly unusual trade secret theory. Cobbling together a half-dozen unremarkable, long-resolved allegations of trade secret misappropriation dating back two decades (none of which found that Huawei acted willfully or maliciously, nor has it been ordered to compensate for misappropriation of trade secrets), the government charged Huawei with engaging in a pair of decades-long conspiracies to commit trade secret theft and wire fraud. As explained in the simultaneously filed memorandum supporting the dismissal of these charges, these alleged *generation*-long conspiracies are, on their face, at most duplicitous accumulations of various smaller, time-barred conspiracy charges. And, on top of that, the government's decision to wait decades to charge those conspiracies has let exculpatory evidence disappear, in violation of due process.

But the most extreme example of how the government has approached Huawei as a prosecutorial target in search of a crime is its decision, eighteen months after first bringing this case, to add the RICO charge that is the subject of this motion. The charge is striking in numerous respects. It alleges a conspiracy to violate 18 U.S.C. § 1962(a), a rarely charged RICO provision that prohibits investing the proceeds of racketeering activity into a legitimate business. It posits the RICO "enterprise" as the entirety of Huawei's affiliated entities worldwide. It alleges the enterprise's "purpose" as nothing more than to grow Huawei's global brand. And it alleges this sweeping conspiracy without identifying any individuals within any of the defendant corporate entities who supposedly entered into the agreement to violate § 1962(a). In sum, the allegations could equally describe most major international businesses, exposing a wide array of legitimate businesses to prosecution for racketeering.

The reason for this late-blooming, novel charging decision is apparent on the face of the Third Superseding Indictment ("S3 Indictment"). The trade secret charges added in the S3 Indictment are entirely unrelated to the pre-existing sanctions-related charges, and ordinarily would be impossible to join together in a single indictment. So in an attempt to overcome that reality, the government has now hitched its strategic ambitions to RICO, seeking to tie the disparate allegations together into a sweeping RICO conspiracy, and hoping that by throwing every allegation it can come up with against a single wall before a single jury under the sinister rubric of "racketeering," something from this vast, unrelated multitude will stick.

The government's untenable misuse of RICO against Huawei represents the apex of the Justice Department's ill-founded "China Initiative," which had the express goal of targeting Chinese companies and Chinese nationals—including Huawei—with prosecution, sanctions, and other legal actions. Under the China Initiative, the government dramatically lowered the standard

applied to investigate and prosecute people and companies with ties to China. At the same time, competition in the global 5G marketplace and the government's intensifying trade war with China made Huawei a prime target for the Justice Department and other federal agencies.

At the time this case was brought, leading officials in the Administration, including the then-President himself, were clear that the end goal of prosecuting Huawei was to exert leverage in the United States' trade war with China. Indeed, the President went so far as to say that he would intervene *in this very prosecution* if it would serve his political ends. *See, e.g.*, Steven Overly, *Trump Says Huawei Charges on the Table in China Trade Talks*, Politico (Feb. 22, 2019), https://tinyurl.com/ytdk3582. The then-Attorney General likewise gave a speech ***five days before this RICO indictment was unsealed*** calling on the United States and its allies to "blunt Huawei's drive" and imploring that the United States had only five years to "mount sufficient competition to Huawei to retain and capture enough market share" in the arena of 5G communications technology. *See* U.S. Dep't of Just., *Attorney General William P. Barr Delivers the Keynote Address at the Department of Justice's China Initiative Conference* (Feb. 6, 2020), https://tinyurl.com/4dy6u9wn. Other Cabinet secretaries in the Administration at that time, too, drew a direct line between U.S.-China relations and this very prosecution.[1]

The China Initiative has since been recognized as a mistake. As various prosecutions under the Initiative crumbled and criticism mounted,[2] the government ultimately terminated it. In

---

[1] *See, e.g.*, *Mnuchin Says Trump Could Ease Up on Huawei if Trade Talks Advance*, Reuters (June 9, 2019), https://tinyurl.com/yrh8b2ch (reporting on statements by U.S. Treasury Secretary); *Fox & Friends Interviews Mike Pompeo* (Dec. 12, 2018), https://tinyurl.com/4zr9twh3 (Secretary of State describing President's consideration of Huawei case as part of trade negotiations to be "totally appropriate" and consistent with the "America First" agenda).

[2] *See, e.g.*, Shawna Chen, *FBI China Spy Probe Faces Backlash as Case against Professor Ends in Mistrial*, Axios (June 26, 2021), https://tinyurl.com/bdhyn7fr; Kate O'Keefe & Aruna Viswanatha, *U.S. Drops Case Against Chinese Scientist at UVA*, Wall St. J. (Sept. 23, 2020),

(*continued on next page*)

a speech announcing its end, the Department of Justice finally admitted an obvious truth: The China Initiative "helped give rise to a harmful perception that the department applies a lower standard to investigate and prosecute criminal conduct related to that country or that we in some way view people with racial, ethnic or familial ties to China differently." *See* U.S. Dep't of Just., *Ass't Att'y Gen. Matthew Olsen Delivers Remarks on Countering Nation-State Threats* (Feb. 23, 2022), https://tinyurl.com/2p82bhmu.

For some reason, the case against Huawei persists. But like the China Initiative itself, the case's signature RICO conspiracy charge suffers from several fundamental flaws. First, it fails to allege any cognizable conspiracy, instead alleging not just a non-cognizable agreement between wholly owned subsidiaries of a common parent that the law recognizes are not sufficiently distinct to conspire with one another, ████████████████████████████ ████████████████████████████████████████. Second, the charge fails to allege that Huawei's supposed crime—the investment of alleged racketeering proceeds into a legitimate entity—occurred within the United States, making the attempt to charge RICO here an extraterritorial abuse. Third, the allegations in the Indictment make clear that the required *pattern* of racketeering activity needed to sustain a RICO charge—more than just some number of RICO predicates, but that the predicate offenses are connected to one another in a coherent pattern—does not exist because the alleged racketeering activity consists of vastly disparate acts allegedly committed on at least three different continents and scattered over a period of more than two decades.[3] That theory would create profound overcriminalization risks

_____

https://tinyurl.com/4tch65y9; Josh Gerstein, *Report Details Collapse of China Initiative Case*, Politico (Feb. 18, 2022), https://tinyurl.com/mryxdsv8.

[3] In addition to these arguments, Count One should be dismissed for multiple reasons related to the alleged RICO "enterprise," as also explained below. Defendants preserve for further review

(*continued on next page*)

for corporations, particularly when combined with the government's approach here of claiming that isolated civil allegations of trade secret theft lobbed by competitors at unrelated parts of Huawei's global workforce are somehow part of a single pattern or conspiracy. If that were enough to state a criminal RICO violation, then virtually every large company would be vulnerable because commercial disputes with competitors are an unavoidable fact of life for companies.

Moreover, beyond the fact that a RICO charge cannot lie here, the government's attempt to bring one at all under the S3 Indictment's alleged circumstances puts it in an ignoble class of one. After an extensive review, Huawei has not identified even a single prior case where the government brought a criminal RICO charge against an established commercial company on *any* theory. Not companies like FTX, Theranos, Madoff Investment Securities, and Enron that collapsed under the weight of their own fraud; not the Big Tobacco companies that were civilly found to have committed numerous RICO predicates; and not the dozens of U.S. technology companies who have been the target of comparable accusations of trade secret misappropriation.

Accordingly, the RICO conspiracy alleged in Count One should be dismissed.

## BACKGROUND

Huawei Tech is a global telecommunications company that is headquartered in Shenzhen, China and operates in more than 170 countries. S3 Indict. ¶ 1. Like many large companies operating internationally, Huawei Tech and its parent, Huawei Holdings, *id*., have subsidiaries that conduct Huawei Tech's business in different parts of the world. These include Huawei

---

that Count One must be dismissed (1) because it fails to allege that the "person" and the "enterprise" are distinct entities; and (2) because a group of corporations cannot constitute an association-in-fact enterprise. In addition, under § 1962(a), the "income from a pattern of racketeering activity" must be invested in an enterprise that is different from the entity that generated that income.

Device USA and Futurewei in the United States. *See id.* ¶¶ 2–4. Although Huawei Tech and these subsidiaries are separate entities, they are commonly and wholly owned by Huawei Holdings, and operate collectively to conduct Huawei Tech's global telecommunications business. *See id.* Overall, more than 200,000 people are employed by Huawei Tech and these subsidiaries.

In August 2018, the government filed its first indictment in this case, followed by a first superseding indictment in December 2018, and a second superseding indictment in January 2019. Indict. ¶¶ 25–47, Dkt. 25 (Aug. 22, 2018); First Superseding Indict. ¶¶ 23–52, Dkt. 24 (Dec. 6, 2018); Second Superseding Indict. ¶¶ 27–56, Dkt. 19 (Jan. 24, 2019). Those indictments charged Huawei with violating economic sanctions against Iran and with committing fraud in connection with those alleged sanctions violations. On February 13, 2020, eighteen months after initiating this prosecution, the government returned the S3 Indictment, adding unrelated allegations of trade secret theft.

There is no factual or substantive connection between the original sanctions-based charges and the more recently added trade secret charges. *See* Dkt. 456. Thus, in an attempt to tie these disparate alleged offenses together, the government also added a new Count One alleging an overarching conspiracy to violate 18 U.S.C. § 1962(a)—the RICO provision that prohibits "invest[ing] income derived from a pattern of racketeering activity in an enterprise." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 330 (2016). Critically, the S3 Indictment does *not* charge Huawei or its subsidiaries under § 1962(b), which prohibits acquiring or maintaining an interest in an enterprise through a pattern of racketeering activity, or § 1962(c), which prohibits participating in an enterprise's affairs through a pattern of racketeering activity. *See* 18 U.S.C. § 1962(b)–(c); *RJR Nabisco*, 579 U.S. at 330. Rather, Count One charges three

Defendants—Huawei Tech, Huawei Device USA, and Futurewei—only with conspiring to invest income "derived, directly and indirectly, from a pattern of racketeering activity" into the operations of Huawei's global family of companies; which the indictment labels the "Huawei Enterprise." S3 Indict. ¶ 92.



. The S3 Indictment acknowledges the formal, familial relationship among the three, alleging that Huawei Device USA and Futurewei "were both subsidiaries of Huawei [Tech]," and all are subsidiaries of Huawei Tech's parent, Huawei Holding. *Id.* ¶¶ 1, 3.

## ARGUMENT

An indictment must set forth facts that, if "taken as true, are sufficient to establish a violation of the charged offense." *United States v. Weisberg*, 2011 WL 4345100, at *1 (E.D.N.Y. 2011). If an indictment, or a charge within an indictment, "fails to allege each material element of the offense, it fails to charge that offense" and should be dismissed. *United States v. Thomas*, 274 F.3d 655, 665 (2d Cir. 2001). In considering a motion to dismiss, the court must "accept all the factual allegations in the indictment as true," but should not "look beyond the face of the indictment [or] draw inferences as to proof to be adduced at trial." *United States v. Scully*, 108 F.

Supp. 3d 59, 117 (E.D.N.Y. 2015). This means that the government may not save an insufficiently pleaded charge through a bill of particulars or some other post-indictment filing. *See, e.g.*, *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982).

## I. Count One Should Be Dismissed Because Huawei Tech Cannot Conspire with Itself.

A conspiracy charge requires the government to allege and prove beyond a reasonable doubt "that two or more people agreed to commit a crime covered by the specific conspiracy statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy)." *Smith v. United States*, 568 U.S. 106, 110 (2013). A conspiracy of one is not a conspiracy at all, and an indictment alleging only a conspiracy of one must be dismissed. *United States v. Rosenblatt*, 554 F.2d 36, 39–40 (2d Cir. 1977) (overturning conviction where, other than the defendant, "no one else agreed to commit [the charged] offenses"). Nevertheless, that is what Count One alleges: that Huawei Tech conspired with itself to violate RICO's prohibition on investing the proceeds of racketeering in a RICO "enterprise."

### A. Huawei Tech Cannot Conspire with Its Wholly Owned Subsidiaries or Commonly Owned Affiliates.

Count One alleges that Huawei Tech and its subsidiaries Huawei Device USA and Futurewei—all of which are wholly owned by Huawei Holdings—conspired to violate § 1962(a). S3 Indict. ¶¶ 3, 92. That allegation is facially insufficient to state a conspiracy offense under that subsection of RICO. As the Supreme Court and federal courts of appeals have held in various contexts, sub-components of a single firm—such as a parent company and its wholly owned subsidiaries, or the various subsidiaries of a common parent company—cannot conspire with one another because they are not sufficiently distinct to strike the kind of agreement that can support a conspiracy charge. *See, e.g.*, *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752,

771 (1984) (antitrust conspiracy); *Fogie v. THORN Ams., Inc.*, 190 F.3d 889, 899 (8th Cir. 1999)

(civil RICO); *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 544 (4th Cir. 1997) (state law civil

conspiracy); *Girard v. 94th St. & Fifth Ave. Corp.*, 530 F.2d 66, 70–72 (2d Cir. 1976) (42 U.S.C.

§ 1985(3) conspiracy). This intra-corporate conspiracy doctrine recognizes the basic principle

that a defendant cannot "conspire with his right arm, which held, aimed and fired the fatal

weapon." *Fogie*, 190 F.3d at 899. Rather, a conspiracy requires that two distinct entities agree to

unlawful aims. Where juridical entities are involved, that requirement means, most obviously,

that there must be two separate corporate entities involved. But in the context of related

corporate entities, more than mere formal separation is required. Because "[a] parent [company]

and its wholly owned subsidiary have a complete unity of interest," a parent company cannot

form a conspiracy with its wholly owned subsidiary, or those subsidiaries with one another.

*Copperweld*, 467 U.S. at 771; *see also Am. Needle, Inc. v. NFL*, 560 U.S. 183, 194 (2010)

(recognizing that entities "controlled by a single center of decisionmaking" cannot conspire with

one another (quoting *Copperweld*, 467 U.S. at 769)). Thus, "the statutory requirement of a

plurality of actors is not satisfied by joint action of wholly owned subsidiaries of a single entity,

unincorporated divisions of a company, or employees of a single entity acting within the scope of

their employment." *Johnson v. Nyack Hosp.*, 954 F. Supp. 717, 722–23 (S.D.N.Y. 1997); *see,*

*e.g.*, *Fogie*, 190 F.3d at 898 (intra-corporate conspiracy doctrine precludes a civil RICO

conspiracy between "a parent corporation and its wholly owned subsidiaries").[4]

    While the Second Circuit has not had occasion to address application of the intra-

corporate conspiracy doctrine under RICO, it has recognized the principle in other contexts. *See,*

---

[4] While *Fogie* was a civil RICO case, it arose under 18 U.S.C. § 1962(d), the same statute
charged here. *See* S3 Indict. at 35.

*e.g.*, *Girard*, 530 F.2d at 70 (§ 1985 conspiracy); *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (same), *abrogated on other grounds by Murphy v. Hughson*, 82 F.4th 177, 184 (2d Cir. 2023). Moreover, district courts in this circuit have dismissed civil RICO conspiracy claims under § 1962(d) on this basis. *See Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 359 (S.D.N.Y. 2017) ("A corporation cannot conspire with itself or with its own employees or agents."); *Merhej v. I.C.S. Int'l Custody Sys., Inc.*, 2014 WL 104908, at *3–4 (S.D.N.Y. 2014) ("As a matter of law, a corporation cannot conspire with itself."), *report and recommendation adopted*, 2014 WL 948108 (S.D.N.Y. 2014).

*Copperweld*'s rationale for holding that corporations cannot conspire with their subsidiaries in the antitrust context applies with full force to the conspiracy to violate 18 U.S.C. § 1962(a) charged here. In *Copperweld*, the Supreme Court explained that, because the business units of a company have to communicate and agree with one another, it makes no sense to say that when they agree about business activity or strategy they are doing something that the antitrust laws forbid. *Copperweld*, 467 U.S. at 773. The Court emphasized that "[e]specially in view of the increasing complexity of corporate operations, a business enterprise should be free to structure itself in ways that serve efficiency of control, economy of operations, and other factors dictated by business judgment without increasing its exposure to antitrust liability." *Id*. So too here, Huawei's global subsidiaries all "act[] for the benefit of the parent, [their] sole shareholder," and thus "share a common purpose whether or not the parent keeps a tight rein over the subsidiary." *Id.* at 771. Agreeing to reinvest money among and between these related entities cannot be classified as a crime for fundamentally the same reason wholly owned subsidiaries do not violate the antitrust laws when they agree on a business strategy. Agreeing to reinvest funds, in such circumstances, is simply a reflection of the subsidiaries' common

obligation to "act in the parent's best interest." *Id.* at 772. Such an agreement thus does not implicate the "special dangers attendant to conspiracies, the dangers of 'concerted' activity and 'group association' for criminal purposes," *United States v. Doherty*, 867 F.2d 47, 61 (1st Cir. 1989).

This conclusion finds further support in *Copperweld*'s emphasis on a practical rather than formalistic approach to the law of conspiracy. Companies as a matter of course invest in their own business; indeed, such investment between business units is often necessary to a business's survival and ability to compete in the marketplace.

*Copperweld* refused to allow artificial distinctions in how a corporation is organized to determine whether a conspiracy existed, recognizing the sundry "economic, legal, or other considerations that lead corporate management to choose one structure over the other." 467 U.S. at 772. Attaching criminal liability to one corporate form but not another would not only create arbitrary distinctions in the law, but it would also allow a party to escape liability by adopting a particular corporate form. In particular, if subdividing into separate corporate subsidiaries would create the risk of a conspiracy that would otherwise not exist, "parent corporations would be encouraged to convert subsidiaries into unincorporated divisions." *See id.* at 773.

Count One alleges that Huawei Tech and its subsidiaries, Huawei Device USA and Futurewei—all of which are wholly owned by Huawei Holdings—conspired to violate § 1962(a). S3 Indict. ¶¶ 3, 92.[5] Count One thus alleges a wholly intra-corporate conspiracy and therefore is facially insufficient to state a § 1962(a) conspiracy offense.

---

[5] The S3 Indictment cursorily asserts that Huawei Tech, Huawei Device USA, and Futurewei conspired "together with others," S3 Indict. ¶ 92, but provides no indication of who those unspecified "others" might be or that any of the alleged "others" are not also intra-corporate actors. This vague allegation cannot save Count One: It is facially implausible to suggest that

(*continued on next page*)

**B.**  █████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████

█████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

---

other independent actors that are completely separate from Huawei would have joined an agreement to invest profits they obtained from racketeering activity in "the Huawei Enterprise" of which they are not a part. *Id.*

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████

## II. Count One Should Be Dismissed for Failure to Allege a Conspiracy that Involved Use or Investment Within the United States of Racketeering-Derived Funds.

Count One also should be dismissed for a second, independent reason: It relies on the theory that Huawei sought to "use and invest" alleged "income … derived, directly or indirectly, from a pattern of racketeering activity," S3 Indict. ¶ 92, yet the S3 Indictment fails to allege any *domestic* use or investment of the funds at issue. Because federal criminal statutes presumptively do not reach purely extraterritorial conduct and § 1962(a) does not displace that presumption, domestic use or investment is an essential showing for a § 1962(a) charge. The absence of any meaningful allegation to that effect requires dismissal of Count One.

### A. Federal Law Presumptively Does Not Apply to Purely Extraterritorial Conduct.

Federal courts apply a strong presumption against extraterritorial application of federal law. "It is a basic premise of [the American] legal system that, in general, United States law governs domestically but does not rule the world." *RJR Nabisco*, 579 U.S. at 335 (citing *Microsoft Corp. v. AT & T Corp.,* 550 U.S. 437, 454 (2007)). As such, "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *Id.* at 335 (citing *Morrison v. Nat'l Australia Bank Ltd.,* 561 U.S. 247,

255 (2010)). This presumption against extraterritoriality is based both on the need to "avoid the international discord that can result when U.S. law is applied to conduct in foreign countries," and on the "commonsense notion that Congress generally legislates with domestic concerns in mind." *Id.* at 335–36 (quoting *Smith v. United States*, 507 U.S. 197, 204, n. 5 (1993)).

The Supreme Court has established a two-step framework for determining whether a statute reaches extraterritorial conduct. First, a court must "presume that a statute applies only domestically, and [then] ask whether the statute gives a clear, affirmative indication that rebuts this presumption." *Nestlé USA, Inc. v. Doe*, 593 U.S. 628, 632 (2021) (quoting *RJR Nabisco*, 579 U.S. at 337). This is a high bar, and requires "a clear, affirmative indication that [a statute] applies extraterritorially." *RJR Nabisco*, 579 U.S. at 337. "[A]t the second step," if the statute does not overcome the presumption against extraterritoriality, the court must determine whether "conduct relevant to the statute's focus occurred in the United States." *Id.* The mere involvement of some domestic activity does not render a statute's application inherently domestic. Rather, the Court must identify the conduct that was "the 'focus' of congressional concern" and determine whether that conduct was domestic or extraterritorial. *See Morrison*, 561 U.S. at 266 (holding that the "focus" of the Securities Exchange Act of 1934 was the location of the sale of securities, not the location of the deception).

### B. Section 1962(a) Does Not Contain a Clear Rebuttal of the Presumption of Extraterritoriality.

Neither the Supreme Court nor the Second Circuit has resolved whether a violation of RICO's investment provision, 18 U.S.C. § 1962(a), can be predicated on extraterritorial conduct. In *RJR Nabisco*, the Supreme Court held that RICO's two other substantive provisions— § 1962(b) and (c)—could be violated based on extraterritorial conduct provided that each of the underlying racketeering offenses "violates a predicate statute that is itself extraterritorial." 579

U.S. at 340. As to § 1962(a), however, the Court recognized that the extraterritorial analysis "presents a thornier question." *Id*. at 341. Unlike §§ 1962(b) and (c), which punish the defendant's actual participation in a pattern of racketeering activity, § 1962(a) penalizes "certain uses of income derived from a pattern of racketeering, not the use of the pattern itself." *Id.* at 341 (emphasis omitted). The Court was able to avoid resolving this thorny question by "assum[ing] without deciding that respondents have pleaded a domestic investment of racketeering income," but its analysis suggests that § 1962(a) should be read as "extend[ing] only to domestic *uses* of the income." *Id.* (emphasis added).[6]

Under the first step of the Supreme Court's two-step analysis, § 1962(a) is presumed to be limited to domestic use or investment of proceeds derived from a pattern of racketeering, and there is no indication, much less an express and clear statement, that Congress intended for § 1962(a) to apply to extraterritorial investment of racketeering income. In *RJR Nabisco*, the Court held that the extraterritorial prohibition of racketeering activity was derivative of the underlying statutes. 579 U.S. at 339 (incorporation of extraterritorial predicate offenses "gives a clear, affirmative indication that § 1962[(b) and (c)] applies to foreign racketeering activity—but only to the extent that the predicates alleged in a particular case themselves apply extraterritorially"). In other words, because some RICO predicates apply to conduct wherever it occurs in the world (*e.g.*, assassination of U.S. government officials) while others do not (*e.g.*, wire fraud), a defendant can be punished for a pattern of foreign racketeering activity only when the alleged pattern involves violations of extraterritorially applicable statutes.

---

[6] *RJR Nabisco* assumed without deciding that the extraterritoriality of § 1962(d)'s conspiracy provision "tracks that of the provision underlying the alleged conspiracy." 579 U.S. at 341.

That rationale limits what activities can serve as the *source* of the income being invested under § 1962(a). *See id.* at 340. It does not, however, support a conclusion that § 1962(a) applies to the extraterritorial *investment* of those proceeds. Section 1962(a) does not create alternative liability for conduct that is already prohibited, but rather creates an entirely new offense: using or investing the proceeds of specified unlawful activity. Subsection (a) says nothing about extraterritorial scope, and no statute incorporated by reference addresses whether the prohibited use or investment extends extraterritorially to provide a basis to rebut the presumption against extraterritoriality.

### C.    Count One Does Not Involve a Domestic Application of § 1962(a).

Because § 1962(a) does not overcome the presumption against extraterritoriality, the government must allege a domestic application of that provision. As the Supreme Court recently reiterated in *Abitron Austria GmbH v. Hetronic International, Inc.*, this requires "establish[ing] that 'the conduct relevant to the statute's focus occurred in the United States.'" 600 U.S. 412, 418 (2023); *accord, e.g.*, *Nestlé*, 593 U.S. at 633.

By its text and structure, § 1962(a) "focuses the inquiry" on the prohibited use or investment, not "the conduct constituting the pattern of racketeering activity." *Ideal Steel Supply, Co. v. Anza*, 652 F.3d 310, 321–22 (2d Cir. 2011); *see also Friedman v. Ariz. World Nurseries Ltd. P'ship*, 730 F. Supp. 521, 549 (S.D.N.Y. 1990) (unlike §§ 1962(b) and (c), the "focus" of § 1962(a) "is not the engaging in a pattern of racketeering activity, but rather … using or investing the proceeds derived from such a pattern of activity"). As such, the statute's "plain language" shows that "[t]he essence of a violation of § 1962(a) is not commission of predicate acts but investment of racketeering income." *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d

Cir. 1990).[7] The "conduct relevant to" the statute's "focus" is accordingly the prohibited use and investment of the funds at issue. Therefore, a charge under § 1962(a) is impermissible unless it alleges a domestic use or investment of racketeering proceeds.

Count One should be dismissed because it fails to allege any conspiracy to engage in *domestic* use or investment of racketeering-related income. Count One charges Huawei with conspiring to violate § 1962(a) by using and investing income from the alleged racketeering activity "in the establishment and operation of the Huawei Enterprise," S3 Indict. ¶ 92, which is operated out of Shenzhen, China. *Id.* ¶ 1. Although the indictment alleges that this supposed enterprise "engaged in, and … affected, interstate and foreign commerce," *id.* ¶ 92, it is silent on whether the alleged investment occurred in the United States. On the contrary, given that Huawei is "headquartered in Shenzhen, Guangdong, in the People's Republic of China," *id.* ¶ 1, the most plausible inference from the government's allegations is that any income used or invested in Huawei's business was used or invested abroad. *Cf. id.* ¶ 8 (alleging use of income "to establish and operate [Huawei's] worldwide business"); *id.* ¶ 86 (alleging use of income "to operate and grow HUAWEI's business"). That is all the more true in light of the government's unlikely theory (at least in part) of how Huawei derived "income" from the alleged racketeering acts: by "saving on research and development costs," *id.* ¶ 8, and otherwise "receiv[ing] income indirectly in the form of cost savings and the value of continued banking services," *id.* ¶ 86. Even assuming such savings could constitute "income" under § 1962(a) (which they cannot), they come nowhere near alleging *domestic* use or investment of that "income." Because the government's allegations fail to meet that necessary requirement, Count One must be dismissed.

---

[7] That is likewise why plaintiffs in private § 1962(a) actions must show damages that flow from the investment of the funds at issue, not simply from the predicate racketeering acts. *Ouaknine,* 897 F.2d at 83.

### III. Count One Also Fails Because There Is No Pattern of Racketeering Activity.

Count One must also be dismissed because the S3 Indictment makes clear that the requisite pattern of racketeering activity does not exist. To establish that Huawei Tech, Huawei Device USA, and Futurewei conspired to violate RICO, the government must allege and ultimately prove that these entities agreed to use or invest in the "enterprise" income derived from "a pattern of racketeering activity." 18 U.S.C. § 1962(a), (d). To show the necessary pattern of racketeering activity, the government must prove at least two predicate racketeering acts that "amount to or pose a threat of continued criminal activity" and are "related." *United States v. Laurent*, 33 F.4th 63, 75–76 (2d Cir.), *cert. denied*, 143 S. Ct. 394 (2022); *see also United States v. Kelly*, 609 F. Supp. 3d 85, 128 (E.D.N.Y. 2022) (RICO requires a showing that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."). This relatedness requirement "protect[s] defendants from RICO charges based on isolated or sporadic criminal acts." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010).

RICO requires that the predicate acts are related both "to each other ('horizontal' relatedness), and … to the enterprise ('vertical' relatedness)." *United States v. Vernace*, 811 F.3d 609, 615 (2d Cir. 2016). To establish horizontal relatedness, the government must show that the acts have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are *interrelated* by distinguishing characteristics and are not isolated events." *Id.* The existence of a pattern of racketeering activity warrants particular scrutiny when the alleged enterprise is a legitimate business. "If every crime done by any employee of a large, ramified corporation was deemed horizontally related, it would be child's play to plead RICO actions against those companies notwithstanding that the crimes themselves might be 'isolated' and otherwise unrelated." *Reich v. Lopez*, 858 F.3d 55, 61–62 (2d Cir. 2017); *see also Vernace*, 811 F.3d at 617 ("We have noted that the question of whether acts form a pattern rarely is a problem

with a criminal enterprise, as distinct from a lawful enterprise that commits occasional criminal acts." (cleaned up)).

The mere fact that the same defendant or enterprise was involved in all of the alleged predicates is not sufficient to show relatedness. For instance, in *Reich*, the plaintiff in a civil RICO action argued that the predicate acts were sufficiently related because the alleged "purpose" of all of the acts was to "help" the enterprise. 858 F.3d at 62. The Second Circuit rejected that argument, explaining that defining "purpose" at that level of generality "would make the factor meaningless: virtually all crimes committed on behalf of an enterprise are done to help it." *Id.* As such, where the "only horizontal link between the predicate crimes is the overlap of participants" and "the enterprise in question is not primarily in the business of racketeering," the mere fact that overlapping defendants were allegedly involved in the charged predicate acts "is insufficient" to establish relatedness. *Id.*; *see also, e.g.*, *Heller Fin., Inc. v. Grammco Comput. Sales, Inc.*, 71 F.3d 518, 525 (5th Cir. 1996) (explaining that "relatedness" requires more than a mere "articulable factual nexus"). Here, the government alleges a similarly overbroad purpose—"to grow the global 'Huawei' brand into one of the most powerful telecommunications equipment and consumer electronics companies in the world." This is patently insufficient to satisfy the relatedness requirement.

The government's allegations here affirmatively demonstrate that the predicate acts on which the government relies are *not* adequately related and thus do not constitute a pattern of racketeering activity. Count One alleges the existence of a conspiracy among Huawei Tech, Huawei Device USA and Futurewei to invest the proceeds of racketeering activity into the otherwise non-criminal "enterprise" that the indictment defines as the Huawei corporate family. S3 Indict. ¶ 92. But the supposed racketeering activities on which the government relies, even if

proven, are nothing more than the sort of "isolated or sporadic criminal acts" that cannot constitute a RICO pattern. *See Burden*, 600 F.3d at 216.

At a high level, the RICO conspiracy charge fuses together categorically different alleged crimes—one group relating to the trade secret charges alleged in Counts 2–3, and another relating to the fraud and sanctions charges alleged in Counts 4–16. There is simply no connective tissue, and thus no horizontal relatedness, between these two sets of charges.

Within each of the two groups of alleged predicate acts, there is likewise no horizontal relation to satisfy the required pattern of racketeering activity. The trade secret charges in Counts 2 and 3 involve different companies, different technologies, different Huawei personnel, different methods, different locations, and different timeframes over the space of twenty years. Specifically, the indictment alleges that Defendants conspired to steal different types of trade secrets from six different companies at different times and places by different individuals employing different methods. Each alleged vignette involved different means of deception and widely varying forms of technology. For example, the vignettes involving Companies 1 and 6 occurred *sixteen* years apart and involved technologies (source code for an internet router and memory hardware architectural design, respectively) that were wildly dissimilar. *Cf.* 18 U.S.C. § 1961(5) (predicate acts must have "occurred within ten years" to constitute a pattern of racketeering activity).

The trade secret allegations involve discrete commercial disputes typical of the technology industry that lack "the same or similar purposes, results, participants, victims, or methods of commission," and are not otherwise interrelated. *United States v. Payne*, 591 F.3d 46, 64 (2d Cir. 2010) (emphases omitted). Allowing these disparate events to qualify as a pattern of racketeering activity "would set a dangerous precedent," allowing the government (and plaintiffs

in civil RICO suits) to launch RICO cases against practically any large company at will. Such companies are "sued so frequently that it is hard to imagine a scenario in which a plaintiff could not cobble together two seemingly similar lawsuits to support allegations of racketeering." *Attia v. Google LLC*, 2019 WL 1259162, at *5 (N.D. Cal. 2019), *aff'd Attia v. Google LLC*, 983 F.3d 420, 427 (9th Cir. 2020).

The alleged sanctions-related charges likewise cannot demonstrate the requisite pattern. As an initial matter, the fraud charges do not constitute federal fraud at all: they allege only a right-to-control theory of fraud that is no longer viable in light of *Ciminelli v. United States*, 598 U.S. 306 (2023).[8] And the sanctions-related charges cannot serve as predicates under § 1962(a) because they do not allege any cognizable "income" that could be invested into the alleged RICO enterprise: rather than receiving any income, Huawei *paid fees* for the banking services it received.[9] In any event, the alleged acts of wire fraud, bank fraud, and sanctions violations all involved different transactions with different banks involving different Huawei personnel. As with the trade secret charges, there is no horizontal connection between these discrete alleged offenses, and thus no pattern of racketeering activity.

In sum, the RICO charge seeks to tie together unrelated allegations about independent conduct that was carried out by different people, years apart, and thousands of miles away from each other, by asserting that all of that conduct was part of a single sprawling RICO conspiracy. Such disparate alleged conduct cannot satisfy RICO's requirement of a "pattern" of racketeering activity, and Count One should be dismissed.

---

[8] *See* Memorandum of Law #3 in Support of Motion to Dismiss Counts 4–9, at 3–10. (contemporaneously filed).

[9] *See* Motion to Sever, Dkt. 456-1, at 12–16.

**IV.     Count One Should Be Dismissed For Multiple Reasons Related to the Alleged "Enterprise."**

Finally, Count One should be dismissed for several reasons related to the alleged RICO "enterprise." First, Count One fails to satisfy the "distinctness" requirements of § 1962. Under § 1962(c), the government "must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62 (2001). Where, as here, the "person" and "enterprise" are part of the same corporate entity, the distinctness requirement is not met. *See U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 205–06 (2d Cir. 2017) ("[I]f a corporate defendant can be liable for participating in an enterprise comprised only of its agents—even if those agents are separately incorporated legal entities—then RICO liability will attach to any act of corporate wrong-doing and the statute's distinctness requirement will be rendered meaningless." (cleaned up)).

Defendants acknowledge that the Second Circuit has previously declined to apply this distinctness requirement to charges under § 1962(a), *see Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 345 (2d Cir. 1994), but preserve the issue for potential further review. The text and purpose of RICO point to a uniform requirement of a separate "person" and "enterprise" for each offense under § 1962 because the statute uses "exactly the same terms for each actor" in both sections. *See Rush v. Oppenheimer & Co., Inc.*, 628 F. Supp. 1188, 1196–97 (S.D.N.Y. 1985).

Second, Count One alleges an association-in-fact enterprise comprised entirely of corporations. S3 Indict. ¶ 89. But RICO provides only for an association-in-fact enterprise consisting of a "group of *individuals* associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (emphasis added). It does not provide for an enterprise consisting of a group of

*corporations* associated in fact. Defendants likewise acknowledge the contrary authority on this point, *see United States v. Huber*, 603 F.2d 387, 393–94 (2d Cir. 1979), but preserve this argument for further review.

Third, Count One must be dismissed because it fails to allege that the income from a pattern of racketeering activity was invested in an enterprise *other than* the entity that generated the income. The RICO statute sets forth several distinct violations. Section 1962(a) prohibits investing income from a pattern of racketeering activity in an enterprise; whereas § 1962(c) prohibits conducting an enterprise's affairs through a pattern of racketeering activity. If § 1962(a) encompassed the circumstances alleged here—that a group of corporations comprised a RICO "enterprise," that certain of those corporations engaged in racketeering activity that generated income, and then that those corporations reinvested that income back into the very same enterprise—it would eviscerate the distinction between §§ 1962(a) and 1962(c). *See United States v. Harris*, 838 F.3d 98, 106 (2d Cir. 2016) ("[C]ourts must give effect to all of a statute's provisions 'so that no part will be inoperative or superfluous, void or insignificant.'").

## **CONCLUSION**

For the foregoing reasons, Count One of the S3 Indictment should be dismissed.

Dated: November 8, 2024    Respectfully submitted,

/s/ Douglas A. Axel     /s/ David Bitkower
Douglas A. Axel       David Bitkower
Michael A. Levy       Matthew S. Hellman
Jennifer Saulino       JENNER & BLOCK LLP
Daniel Rubinstein      1099 New York Avenue, NW
Ellyce R. Cooper       Washington, D.C. 20001
Frank Volpe        Tel: 202-639-6048
Melissa Colón-Bosolet    Email: dbitkower@jenner.com
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
Tel.: 212-839-5300
Email: daxel@sidley.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co. Ltd., and Futurewei Technologies, Inc.*