NJM:AAS/MAA/RMP/MS/TGS/JSF
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

HUAWEI TECHNOLOGIES CO., LTD., *et al.*,

   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

18-CR-457 (S-3) (AMD)

MEMORANDUM OF LAW IN OPPOSITION
TO THE DEFENDANTS' MOTION TO SUPPRESS

| | | |
|---|---|---|
| JOSEPH NOCELLA, JR.<br>United States Attorney<br>Eastern District of New York | MARGARET A. MOESER<br>Chief, Money Laundering and<br>Asset Recovery Section<br>Criminal Division<br>U.S. Department of Justice | SCOTT LARA<br>Acting Chief,<br>Counterintelligence and Export<br>Control Section<br>National Security Division,<br>U.S. Department of Justice |
| ALEXANDER A. SOLOMON<br>MEREDITH A. ARFA<br>ROBERT M. POLLACK<br>MATTHEW SKURNIK<br>Assistant U.S. Attorneys<br>   (Of Counsel) | TAYLOR G. STOUT<br>JASMIN SALEHI FASHAMI<br>MORGAN COHEN<br>Trial Attorneys | CHRISTIAN NAUVEL<br>SEAN O'DOWD<br>AHMED ALMUDALLAL<br>Trial Attorneys |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

    I.    The Huawei Employees' Electronic Devices
        Should Not Be Suppressed ........................................................................................ 2

    II.   The Recorded Conversation Between Huawei Employees
        Should Not Be Suppressed ...................................................................................... 10

    III.  The Recorded Conversation of a Huawei Executive Discussing Efforts to
        Obstruct the Instant Prosecution Should Not Be Suppressed ................................. 10

REQUEST TO SEAL .................................................................................................................. 11

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bumper v. North Carolina*,
  391 U.S. 543 (1968) .................................................................................................. 4

*Cady v. Dombrowski*,
  413 U.S. 433 (1973) .................................................................................................. 4

*Florida v. Jimeno*,
  500 U.S. 248 (1992) ............................................................................................... 5, 7

*Illinois v. Rodriquez*,
  497 U.S. 177 (1990) .................................................................................................. 6

*Kansas v. Ventris*,
  556 U.S. 586 (2009) ................................................................................................ 11

*Kiss v. Torres*,
  No. 21-CV-10391 (KMK), 2023 WL 2648396 (S.D.N.Y. Mar. 27, 2023) ................. 9

*Lugosch v. Pyramid Co*,
  435 F.3d 110 (2d Cir. 2006) ............................................................................... 11, 12

*Massiah v. United States*,
  377 U.S. 201 (1964) ................................................................................................ 10

*McNeil v. Wisconsin*,
  501 U.S. 171 (1991) ................................................................................................ 11

*Rodriguez v. United States*,
  No. 13-CR-85 (PKC), 2021 WL 4078621 (E.D.N.Y. Sept. 8, 2021) ......................... 9

*Schneckloth v. Bustamonte*,
  412 U.S. 218 (1973) .................................................................................................. 4

*Texas v. Cobb*,
  532 U.S. 162 (2001) ................................................................................................ 11

*United States v. Amodeo*,
  44 F.3d 141 (2d Cir. 1995)..................................................................................................... 11

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008)..................................................................................................... 11

*United States v. Barrett*,
  750 F. App'x 19 (2d Cir. 2018) ............................................................................................ 5, 6

*United States v. Boone*,
  No. 23-CR-427 (PGG), 2024 WL 382060 (S.D.N.Y. Feb. 1, 2024) ......................................... 8

*United States v. Davis*,
  967 F.2d 84 (2d Cir. 1992)..................................................................................................... 5, 7

*United States v. Garcia*,
  56 F.3d 418 (2d Cir. 1995)......................................................................................................... 4

*United States v. Gonzales*,
  121 F.3d 928 (5th Cir. 1997) ..................................................................................................... 5

*United States v. Gradkowski*,
  502 F.2d 563 (2d Cir. 1974)....................................................................................................... 5

*United States v. Irving*,
  452 F.3d 110 (2d Cir. 2006)....................................................................................................... 4

*United States v. Isiofia*,
  370 F.3d 226 (2d Cir. 2004)....................................................................................................... 4

*United States v. Jenkins*,
  46 F.3d 447 (5th Cir. 1995) ................................................................................................... 8, 9

*United States v. Lewis*,
  386 F.3d 475 (2d Cir. 2004)....................................................................................................... 4

*United States v. Lovelock*,
  170 F.3d 339 (2d Cir. 1999)....................................................................................................... 8

*United States v. Matlock*,
  415 U.S. 164 (1974)......................................................................................................... 4, 5, 8

*United States v. McGee*,
  564 F.3d 136 (2d Cir. 2009)................................................................................................. 5, 8

*United States v. Murphy*,
  506 F.2d 529 (9th Cir. 1974) ............................................................................ 5, 8, 9

*United States v. O'Brien*,
  926 F.3d 57 (2d. Cir. 2019) .................................................................................... 4

*United States v. Ojudun*,
  915 F.3d 875 (2d Cir. 2019) ................................................................................... 9

*United States v. Snype*,
  441 F.3d 119 (2d Cir. 2006) ................................................................................ 5, 7

*United States v. Yudong Zhu*,
  23 F. Supp. 3d 234 (S.D.N.Y. 2014) ................................................................... 5, 7

*Walder v. United States*,
  347 U.S. 62 (1954) ............................................................................................... 10

**<u>Statutes</u>**

U.S. Const. amend. IV ................................................................................................ 4

## PRELIMINARY STATEMENT

The defendants Huawei Technologies Co., Ltd.; Huawei Device Co., Ltd.; Huawei Device USA Inc.; and Futurewei Technologies, Inc. (collectively, "Huawei" or the "defendants") seek to suppress three categories of evidence: (i) evidence from four electronic devices taken from two Huawei employees; (ii) an intercepted telephone call between two Huawei employees; and (iii) a recorded conversation of a Huawei executive. For the reasons below and in the accompanying *ex parte* and classified supplemental memorandum (the "Supplemental Memorandum"), the defendants' arguments lack merit.

*First*, none of the four electronic devices taken from Huawei employees is appropriately suppressed. Three of the devices were lawfully searched, as set forth below and in the Supplemental Memorandum. With respect to the fourth device—which, to the government's knowledge, does not contain relevant materials, and which the government produced to the defense in an abundance of caution—the government does not intend to rely at trial upon any contents of that device in its case-in-chief, and accordingly the defendants' motion is moot with respect to that device.

*Second*, the intercepted conversation was recorded pursuant to lawful authority, as detailed in the Supplemental Memorandum.

*Third*, the government recorded the conversation with a Huawei executive as part of an investigation of new criminal activity perpetrated by Huawei, and Huawei's Sixth Amendment right to counsel did not attach to the distinct criminal conduct under investigation. Nevertheless, the government does not intend to rely on this evidence in its case-in-chief in relation to the operative indictment, and the defendants' argument is therefore moot.

1

The Court accordingly should deny the defendants' motion to suppress in its entirety.

## ARGUMENT

I.  The Huawei Employees' Electronic Devices Should Not Be Suppressed

The defendants seek to suppress evidence from four electronic devices taken from two Huawei employees. Specifically, the defendants seek to suppress evidence from: (1) a Lenovo ThinkPad laptop seized from Huawei employee ▮▮▮▮ on January 9, 2013 (the "January 2013 Laptop"); (2) a Dell Latitude laptop seized from ▮▮ on February 12, 2018 (the "February 2018 Laptop"); (3) a Dell Latitude laptop seized from ▮▮ on April 27, 2018 (the "April 2018 Laptop"); and (4) a Dell Latitude laptop seized from Huawei employee ▮▮▮▮ on June 16, 2018 (the "June 2018 Laptop"). *See* Def. Mem. at 3.[1]

For the reasons below and in the Supplemental Memorandum, suppression of evidence from these devices is not warranted.

A.  The January 2013 Laptop

For the reasons set forth in the Supplemental Memorandum, the 2013 Laptop was lawfully searched and accordingly evidence from the 2013 Laptop should not be suppressed.

B.  The February 2018 and April 2018 Laptops

a.  Factual Background

On February 12, 2018, at approximately 9:00 a.m., ▮▮ entered the United States at Dallas-Fort Worth International Airport ("DFW") from Cairo, Egypt. At approximately

---

[1] Citations to "Def. Mem." are to the unredacted version of the defendants' motion to suppress.

2

10:00 a.m., a U.S. Customs and Border Protection ("CBP") officer, with the assistance of personnel from the U.S. Department of Homeland Security, Homeland Security Investigations ("HSI"), conducted a secondary inspection of ▇. ▇ declared that he had four electronic devices in his possession, one of which was the February 2018 Laptop. ▇ then consented, orally and in writing, to the search of his devices, including the February 2018 Laptop, which the government understands was a Huawei-issued device. The written consent form—which was signed by ▇, as witnessed by two officers—states that officers informed him of his "right to refuse to consent to a search of [his] property," that he "voluntarily and intentionally consent[ed] to allow ICE to search [his] property" and that his "consent [was] freely given and not the result of any promises, threats, coercion, or other intimidation." *See* Ex. A (Consent Form) (DOJ_HUAWEI_A_0125188618). The consent form specifically lists a "Dell Laptop" as one of the devices ▇ consented to allow officers to search. ▇ also provided officers with the passwords to unlock the devices. The officers imaged ▇'s devices and then returned them to him.

On April 27, 2018, ▇ arrived at DFW, scheduled to depart to Hong Kong. Upon his arrival, agents with the Federal Bureau of Investigation ("FBI") ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ was interviewed by law enforcement agents. During the interview, which was audio recorded, ▇ provided agents with both verbal and written consent to search his devices, which included the April 2018 Laptop that the government understands was a Huawei-issued device. *See* Ex. B (Audio Recording of Interview) (DOJ_HUAWEI_A_0125188622). Law enforcement agents subsequently imaged the April 2018 Laptop.

3

b. <u>Legal Standard</u>

The Fourth Amendment protects against "unreasonable searches and seizures," U.S. Const. amend. IV, and warrantless searches are generally unreasonable unless an exception applies. *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) (citing *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973)). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal citations omitted). "In such case, neither a warrant nor probable cause is necessary to justify the search; the government is simply required to prove by a preponderance of the evidence adequate authority to consent." *United States v. Lewis*, 386 F.3d 475, 481 (2d Cir. 2004) (citing *United States v. Matlock,* 415 U.S. 164, 171 (1974)). The authority to consent is not limited to a defendant asserting Fourth Amendment protection. *Matlock*, 415 U.S. at 171. Rather, it may be "obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Id.*

As an initial matter, consent must be given "freely and voluntarily." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). "[T]he appropriate Fourth Amendment question is 'whether a consent to search was in fact 'voluntary' or was the product of duress or coercion, express or implied.'" *United States v. O'Brien*, 926 F.3d 57, 76 (2d. Cir. 2019) (quoting *Schneckloth*, 412 U.S. at 227). Voluntariness is determined by the "'totality of all the circumstances.'" *United States v. Isiofia*, 370 F.3d 226, 231 (2d Cir. 2004) (quoting *Schneckloth*, 412 U.S. at 227). "'[T]he ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search.'" *O'Brien*, 926 F.3d at 77 (quoting *United States v. Garcia*, 56 F.3d 418, 423 (2d Cir. 1995) (internal quotation marks omitted)). Courts

4

evaluate an officer's basis for understanding a party's consent from the perspective of an objectively reasonable person. *Florida v. Jimeno*, 500 U.S. 248, 251 (1992). The government must prove voluntariness by a preponderance of the evidence. *See United States v. Snype*, 441 F.3d 119, 131 (2d Cir. 2006). The Second Circuit reviews a district court's finding of voluntariness for clear error. *See United States v. Barrett*, 750 F. App'x 19, 21-22 (2d Cir. 2018) (summary order).

With respect to third-party consent, a third party may give consent if he "'possess[es] common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *United States v. Yudong Zhu*, 23 F. Supp. 3d 234, 238 (S.D.N.Y. 2014) (quoting *Matlock*, 415 U.S. at 171). The Second Circuit has held that consent is valid when "first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access." *United States v. Davis*, 967 F.2d 84, 87 (2d Cir. 1992) (citing *United States v. Gradkowski*, 502 F.2d 563, 564 (2d Cir. 1974)); *see also United States v. McGee*, 564 F.3d 136, 139-40 (2d Cir. 2009) (citing *Davis*, 967 F.2d at 87) (same). The third party need not own the property, but rather "mutual use of the property by persons generally having joint access or control for most purposes . . . and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7.

"Even if the person giving consent in fact lacked authority to do so, the consent may nonetheless validate the search if the person reasonably appeared to the police to possess authority to consent to the search." *McGee*, 564 F.3d at 139. "The Supreme Court has explained that apparent authority to give consent 'must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the

5

consenting party had authority over the premises?'" *Id.* (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)).

  c. <u>Argument</u>

  ████ voluntarily provided consent for the searches of the February 2018 and April 2018 Laptops, and he had the requisite authority to provide such consent. Accordingly, the Court should deny the defendants' motion to suppress evidence from those laptops.

    i. <u>████'s Consent Was Voluntary</u>

  ████ voluntarily consented to the searches of the February 2018 and April 2018 Laptops. On February 12, 2018, ████ provided both verbal and written consent for officers to search his devices, including the February 2018 Laptop, during a non-custodial encounter. ████'s written consent underscores that his consent was provided voluntarily, expressly affirming that he understood his "right to refuse consent to a search" and that he nevertheless "voluntarily and intentionally consent[ed]" to the search. *See* Ex. A. On April 27, 2018, approximately two months later, ████ again voluntarily consented to the search of his devices. On that date, ████ ████████████████████████████████ spoke with agents, and consented to a search of his devices, including the April 2018 Laptop. Audio of ████'s interview reflects that his consent was voluntary and that the environment in which he provided such consent was not coercive. *See* Ex. B. ████'s ████ is a factor the Court may consider in evaluating the voluntariness of his consent, but viewed under the totality of the circumstances—including the fact of ████'s consent to search other devices just two months earlier—████'s consent clearly was voluntary.

  Notably, the Second Circuit repeatedly has upheld as voluntary an individual's consent to search under more coercive circumstances. *See, e.g.*, *Barrett*, 750 F. App'x at 21-22

6

(upholding district court's finding defendant voluntarily consented to search of his phone following a traffic stop, notwithstanding that an officer had his gun drawn when the vehicle was stopped, and the defendant was then handcuffed and frisked, not read his *Miranda* rights, and questioned at a precinct for approximately six hours when he unlocked his phone); *Snype*, 441 F.3d at 131-35 (finding defendant's girlfriend's consent voluntary after SWAT team forcibly and illegally entered her apartment, handcuffed her and the defendant, and threatened to place her young daughter in protective care, reasoning that the taint of the illegal entry had dissipated after the SWAT team had been gone for a half hour, and law enforcement officers had arrested the defendant, restored the girlfriend's liberty, and allowed her to call her sister to help care for her daughter, which was the point at which the girlfriend provided consent).

Moreover, under the circumstances of this case—including ▇▇▇'s calm demeanor in consenting to the searches, as reflected in the April 2018 audio recording—officers had a reasonable basis for believing that ▇▇▇'s consent for the searches of the February 2018 and April 2018 Laptops was voluntary. *See Jimeno*, 500 U.S. at 251.

    ii.   ▇▇▇ Possessed Authority to Consent to Search the February 2018 and April 2018 Laptops

▇▇▇ possessed the requisite authority to consent to searches of the February 2018 and April 2018 Laptops.

*First*, there can be no real dispute that ▇▇▇ "had access to the area searched." *See Davis*, 967 F.2d at 87; *United States v. Zhu*, 23 F. Supp. 3d 234, 238 (S.D.N.Y. 2014) (applying third-party consent doctrine to laptop). Huawei issued the February 2018 and April 2018 Laptops to ▇▇▇ so he could perform work for Huawei. Indeed, Huawei admitted as much in the affidavit

7

it submitted in support of the instant motion, which states that Dell Latitude laptops—seemingly referring to the February 2018 and April 2018 Laptops—were assigned to ▇ and owned by Huawei Technologies USA. *See* Def. Mem. Ex 1. ¶¶ 7(b), (c). That is, Huawei vested ▇ with unfettered access to and near absolute control over the February 2018 and April 2018 Laptops. ▇ also physically possessed the February 2018 and April 2018 Laptops when he provided consent for the searches. Moreover, ▇ provided the password for the February 2018 Laptop at the time he provided consent for the search.

*Second*, ▇ had "common authority over" the February 2018 and April 2018 Laptops, *see, e.g., United States v. Boone*, No. 23-CR-427 (PGG), 2024 WL 382060, at *11 (S.D.N.Y. Feb. 1, 2024); "a substantial interest in" the laptops, and "permission to gain access" to the laptops, *McGee*, 564 F.3d at 139-40. Any one of those alone would be sufficient to satisfy *Davis*, and here, ▇ possessed all three. As explained above, Huawei's affidavit in support of its motion indicates that the February 2018 and April 2018 Laptops were assigned to ▇ and owned by Huawei Technologies USA, which itself establishes that ▇ had shared and common authority over the two laptops with a Huawei entity. Further, as the laptops assigned to him, ▇ maintained his work materials kept in the ordinary course of business on them, thereby demonstrating his substantial interest in the laptops. Finally, as the affidavit confirms, because the laptops were assigned to ▇, he obviously had Huawei's permission to access them. In assigning the laptops to ▇, Huawei "assumed the risk that" ▇ "might permit" them to be searched. *Matlock*, 415 U.S. at 171 n.7; *see also United States v. Lovelock*, 170 F.3d 339, 345 (2d Cir. 1999); *Rodriguez v. United States*, No. 13-CR-85 (PKC), 2021 WL 4078621, at *9 (E.D.N.Y. Sept. 8, 2021).

In evaluating whether ▮ possessed the requisite authority to consent, the Fifth Circuit's decision in *United States v. Jenkins* is instructive. 46 F.3d 447 (5th Cir. 1995). There, the Fifth Circuit found that the Fourth Amendment was not violated where an employee of a distributor of obscene videotapes provided the FBI with videotapes that came into his possession as part of his employment. *Id.* at 448-53. The court reasoned that the employee's employment relationship with the distributor authorized him to open packages containing the videotapes and to view them to ensure they were functioning properly. *Id.* at 455-56. Similarly, in *United States v. Murphy*, the Ninth Circuit found an employee's consent to search a warehouse valid, "attribut[ing] special significance to the fact that [the defendant] delivered the key to [the employee,]" which "gave [the employee] sufficient dominion over the premises to enable him to grant necessary consent." 506 F.2d 529, 530 (9th Cir. 1974).

Moreover, even to the extent that the defendants now argue that ▮ did not have the authority to consent to the search of the devices, based on ▮'s possession of the February 2018 and April 2018 Laptops and representations that they were his laptops (as reflected, for example, in the written consent form for the February 2018 search), officers had a reasonable basis for believing that ▮ was authorized to consent to the searches of the laptops. *Cf. United States v. Ojudun*, 915 F.3d 875, 883-84 (2d Cir. 2019); *Kiss v. Torres*, No. 21-CV-10391 (KMK), 2023 WL 2648396, at *12 (S.D.N.Y. Mar. 27, 2023).

C. <u>The June 2018 Laptop</u>

a. <u>Factual Background</u>

On June 16, 2018, ▮ was stopped at DFW while scheduled to depart to South Korea. CBP officers, with assistance from HSI, searched ▮'s baggage and seized three devices, including

9

the June 2018 Laptop, which the government understands was a Huawei-issued device. Federal law enforcement subsequently imaged the June 2018 Laptop. The government previously notified the defense that it was not aware of relevant materials on this device. In an abundance of caution, the government nevertheless produced to the defendants the image of the June 2018 Laptop.

    b.    Argument

The government does not intend to rely at trial upon any contents from the June 2018 device in its case-in-chief, and accordingly, the government respectfully submits that the defendants' motion is moot with respect to this device. *Cf. Walder v. United States*, 347 U.S. 62, 65 (1954).

II.    The Recorded Conversation Between Huawei Employees Should Not Be Suppressed

The defendants seek to suppress a recorded conversation between two Huawei employees. *See* Def. Mem. at 10. For the reasons set forth in the Supplemental Memorandum, the recording was lawfully made and accordingly should not be suppressed.

III.    The Recorded Conversation of a Huawei Executive Discussing Efforts to Obstruct the Instant Prosecution Should Not Be Suppressed

The defendants further seek to suppress a recorded conversation between a Huawei employee described by the defendants as a government agent, ▓▓▓▓▓▓, and a Huawei executive, ▓▓▓▓▓▓, regarding Huawei's efforts to obstruct the instant prosecution by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Def. Mem. at 11-13. The defendants argue that the recording was obtained in violation of Huawei's Sixth Amendment right to counsel given that Huawei had already been indicted for conspiring to violate the Racketeer Influenced and Corrupt

10

Organizations Act ("RICO") at the time of the recording. *Cf. Massiah v. United States*, 377 U.S. 201 (1964).

This argument would fail, because at the time of the recorded conversation, the government was investigating a distinct crime by Huawei, such that Huawei's Sixth Amendment right to counsel for the charged conduct did not attach to the distinct obstruction offense under investigation. *Cf. Texas v. Cobb*, 532 U.S. 162, 173 (2001); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

Nevertheless, the Court need not reach this question, because the government does not intend to introduce evidence of this recording in its case-in-chief. Accordingly, there is no live dispute regarding this recording. *Cf. Kansas v. Ventris*, 556 U.S. 586, 593-94 (2009) (even evidence obtained in violation of *Massiah* may be used for impeachment purposes). The defendants' motion to suppress the recording therefore should be denied as moot.

## REQUEST TO SEAL

The government respectfully requests leave to file this brief under seal, with a redacted version filed on the public docket. The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal. *See, e.g., United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 119-20 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored"). However, sealing is warranted in order to protect the privacy interests of third parties and the safety of potential witnesses. *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995). As these facts constitute a sufficient basis for the Court to make the "specific, on the record findings" necessary to support

11

sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court record those findings.

The government will provide defense counsel with the unredacted version of the brief and exhibits on an Attorneys' Eyes Only basis. The government also will provide a version of the brief that can be shared with the defendants that includes information that is not being filed publicly but that redacts limited information (including Exhibit B) that the government is designating as Attorneys' Eyes Only.

## CONCLUSION

For the foregoing reasons, the government respectfully submits that the Court should deny the defendants' motion to suppress in its entirety.

Dated: Brooklyn, New York
August 25, 2025

                        JOSEPH NOCELLA, JR.
                        United States Attorney
                        Eastern District of New York

By:    /s/
        Alexander A. Solomon
        Meredith A. Arfa
        Robert M. Pollack
        Matthew Skurnik
        Assistant U.S. Attorneys
        (718) 254-7000

MARGARET A. MOESER
Chief
Money Laundering and Asset Recovery Section
Criminal Division, U.S. Department of Justice

By:    /s/
        Taylor G. Stout
        Jasmin Salehi Fashami
        Morgan Cohen
        Trial Attorneys

SCOTT LARA
Acting Chief
Counterintelligence and Export Control Section
National Security Division, U.S. Department of Justice

By:    /s/
        Christian Nauvel
        Sean O'Dowd
        Ahmed Almudallal
        Trial Attorneys