UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>– v. –<br><br>HUAWEI TECHNOLOGIES CO., LTD, *et al.*,<br><br>Defendants. | 18 CR 457 (S-4) (AMD) (JAM)<br><br>███████████████<br>████████████ |

DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL MOTIONS *IN LIMINE* TO ADMIT CERTAIN EVIDENCE AND PRECLUDE CERTAIN EVIDENCE AT TRIAL

David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*

# **TABLE OF CONTENTS**

I.   The Court Should Deny the Government's Bank Document Motion................................ 2

    A.   The Court Should Deny the Government's Motion to Admit Hearsay Evidence and to Preclude Huawei From Offering Evidence. ................................................. 2

        1.   The Motion Should Be Denied as Premature Because the Government Has Not Disclosed the Records It Seeks to Admit or Its Rule 902(11) Certification. ............................................................................................... 2

        2.   The Government's Examples Already Reveal Serious Admissibility Problems. ................................................................................................. 5

    B.   If the Court Admits These Documents, the Defense Is Entitled to Impeach the Hearsay Declarants Under Rule 806.................................................................. 12

    C.   The Court Should Deny the Government's Motion to Preclude Huawei from Offering Statements Contained in the Bank Records. ...................................... 13

II.  The Court Should Deny the Government's Motion to Admit ▉▉▉▉ Prior Testimony. 14

    A.   ▉▉▉▉ Prior Testimony Is Inadmissible. ......................................................... 15

        1.   If the Government Does Not Call ▉▉▉ the Confrontation Clause Bars Admission of the Prior Testimony Because ▉▉▉ Is Not "Unavailable." ................................................................................................................ 15

        2.   If the Government Calls ▉▉▉ to Testify, the Court Should Exclude His Prior Testimony Under Rule 403. ............................................................ 16

    B.   The Motion Is Premature Because Wholesale Admission of Prior Testimony Is Impermissible................................................................................................. 18

III. The Court Should Deny the Government's Motion Regarding Its 2020 ▉▉▉▉▉ ▉▉▉▉................................................................................................................ 20

    A.   Background ..................................................................................................... 21

    B.   Argument ....................................................................................................... 22

        1.   Huawei Tech's Response to the ▉▉▉▉ Does Not Tend to Show Consciousness of Guilt of the Charged Offenses.................................... 23

        2.   Any Probative Value Would Be Vastly Outweighed by Unfair Prejudice. 25

IV.  The Court Should Deny Both the Government's Motion for "Consciousness-of-Guilt" Evidence and for a Missing Witness Instruction Based on Its Own Inability to Properly Secure Evidence........................................................................................................ 27

    A.   The Government's Own Failure to Secure Witness Testimony Is Not Proof of Huawei's Consciousness of Guilt. ................................................................... 28

        1.   The Witnesses' Absence Is the Government's Own Doing; Huawei Has Done Nothing Reflecting "Consciousness of Guilt." ............................... 28

        2.   Huawei Has Not Impeded the Witnesses From Testifying. ..................... 31

B.     A Missing Witness Instruction Is Inappropriate...................................................... 32

     1.     The Government Has Not Tried to Obtain the Witnesses' Testimony. ..... 32

     2.     The Witnesses Are Not Peculiarly Within Huawei's Control. .................. 33

C.     The Court Should Exclude the Evidence Under Rule 403. .................................. 35

## TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page(s)**

*Abascal v. Fleckenstein*,
  820 F.3d 561 (2d Cir. 2016).................................................................................................7

*Amerisource Corp. v. RxUSA Intern. Inc.*,
  No. 02-cv-2514, 2009 WL 235648 (E.D.N.Y. Jan. 30, 2009)......................................................8

*Barber v. Page*,
  390 U.S. 719 (1968)............................................................................................................15

*Boca Investerings P'ship v. United States*,
  128 F. Supp. 2d 16 (D.D.C. 2000)........................................................................................8

*Brutus Trading LLC v. Standard Chartered Bank*,
  No. 18-CIV-11117, 2021 WL 4772142 (S.D.N.Y. Oct. 13, 2021)...........................................8

*Crawford v. Washington*,
  541 U.S. 36 (2004)..............................................................................................................15

*Cury v. Philip Morris USA*,
  No. 93 CIV. 2395 (CSH), 1995 WL 594856 (S.D.N.Y. Oct. 6, 1995)...................................20

*Deler v. Commodore Cruise Line*,
  No. 92-cv-4473 (SHS), 1995 WL 733655 (S.D.N.Y. Dec. 12, 1995) ....................................33

*DiRienzo v. Philip Servs. Corp.*,
  294 F.3d 21 (2d Cir. 2002)...................................................................................................17

*FTC v. AMG Servs., Inc.*,
  No. 12-cv-536, 2017 WL 1704411 (D. Nev. May 1, 2017) ......................................................8

*Gilmore v. Henderson*,
  825 F.2d 663 (2d Cir. 1987).................................................................................................26

*Hoffman v. Palmer*,
  129 F.2d 976 (2d Cir. 1942), *aff'd*, 318 U.S. 109 (1943) .......................................................10

*Hook v. Regents of Univ. of Cal.*,
  394 F. App'x 522 (10th Cir. 2010) .........................................................................................8

*In re Deepwater Horizon*,
  MDL No. 2179, 2012 WL 85447 (E.D. La. Jan. 11, 2012)................................................5, 7

*In re Grand Jury Proceeding*,
  971 F.3d 40 (2d Cir. 2020).....................................................................................................22

*Ira Green, Inc. v. Military Sales & Servs. Co.*,
    775 F.3d 12 (1st Cir. 2014)................................................................................................7

*Kolb v. Suffolk Cnty.*,
    109 F.R.D. 125 (E.D.N.Y. 1985)........................................................................................16

*Lewis v. Velez*,
    149 F.R.D. 474 (S.D.N.Y. 1993) .......................................................................................10

*Li v. Canarozzi*,
    142 F.3d 83 (2d Cir. 1998) ................................................................................................19

*Miller v. Rykoff-Sexton, Inc.*,
    845 F.2d 209 (9th Cir. 1998) .............................................................................................31

*Mitchell v. United States*,
    526 U.S. 314 (1999)...........................................................................................................30

*Motes v. United States*,
    178 U.S. 458 (1900)...........................................................................................................15

*Old Chief v. United States*,
    519 U.S. 172 (1997)...........................................................................................................27

*Pearlstein v. BlackBerry Ltd.*,
    No. 13-cv-7060 (CM) (KHP), 2022 WL 741941 (S.D.N.Y. Mar. 11, 2022) ...................17

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
    38 F.3d 627 (2d Cir. 1994)..............................................................................................6, 8

*Quinton v. Am. Express Co.*,
    No. 19-CV-566 (NGG) (JRC), 2025 WL 1384896 (E.D.N.Y. May 13, 2025) .............17, 18

*Rogers v. Richmond*,
    365 U.S. 534 (1961)...........................................................................................................30

*Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*,
    421 F. Supp. 2d 741 (S.D.N.Y. 2006)...............................................................................17

*Tome v. United States*,
    513 U.S. 150 (1995)...........................................................................................................18

*United States v. Adeniji*,
   31 F.3d 58 (2d Cir. 1994)...................................................................................................32

*United States v. Al-Sadawi*,
   432 F.3d 419 (2d Cir. 2005)..............................................................................................28

*United States v. Bescond*,
   24 F.4th 759 (2d Cir. 2021) ..............................................................................................34

*United States v. Brashier*,
   54 F.2 1315 (9t Cir 1976) .................................................................................................31

*United States v. Callahan*,
   300 F. Supp. 519 (S.D.N.Y. 1969) ....................................................................................30

*United States v. Cassese*,
   428 F.3d 92 (2d Cir. 2005).................................................................................................25

*United States v. Cirillo*,
   468 F.2d 1233 (2d Cir. 1972).............................................................................................31

*United States v. Culotta*,
   41 F.2d 1343 (2d Cir. 1969) ..............................................................................................31

*United States v. Daneshvar*,
   925 F.3d 766 (6th Cir. 2019) ..........................................................................................5, 6

*United States v. Fox*,
   No. 23-CR-227, 2025 WL 2076664 (E.D.N.Y. July 23, 2025) .............................................5

*United States v. Freidin*,
   849 F.2d 716 (2d Cir. 1988)...........................................................................................7, 10

*United States v. Gaskin*,
   364 F.3d 438 (2d Cir. 2004)..........................................................................................32, 33

*United States v. Gentile*,
   No. 21-CR-54 (RPK) (PK), 2024 WL 2941849 (E.D.N.Y. June 11, 2024) ..........................27

*United States v. Hwa*,
   No. 18-CR-538 (MKB), 2021 WL 11723583 (E.D.N.Y. Sept. 3, 2021)................................29

*United States v. Inadi*,
   475 U.S. 387 (1986)...........................................................................................................17

*United States v. Int'l Bus. Machines Corp.*,
 90 F.R.D. 377 (S.D.N.Y. 1981) ...............................................................................17

*United States v. Johnson*,
 507 F.3d 793 (2d Cir. 2007)....................................................................................20

*United States v. Komasa*,
 767 F.3d 151 (2d Cir. 2014)......................................................................................3

*United States v. Kompinski*,
 373 F.2d 429 (2d Cir. 1967)....................................................................................30

*United States v. LaVictor*,
 848 F.3d 428 (6th Cir. 2017) ..................................................................................18

*United States v. Lingat*,
 No. 21-CR-573 (MKV), 2024 WL 1051633 (S.D.N.Y. Mar. 11, 2024), *aff'd
 sub nom. United States v. Lemay*, No. 24-2328-CR, 2025 WL 1873404 (2d
 Cir. July 8, 2025) ....................................................................................................19

*United States v. Lita*,
 800 F. App'x 8 (2d Cir. 2020) ...........................................................................32, 33

*United States v. Massino*,
 546 F.3d 123 (2d Cir. 2008)....................................................................................27

*United States v. Mastropieri*,
 685 F.2d 776 (2d Cir. 1982)....................................................................................24

*United States v. Mittelstaedt*
 3 F.3 1208 121 (2 Cir 1994).....................................................................................32

*United States v. Nichols*,
 912 F.2d 598 (2d Cir. 1990)...............................................................................32, 34

*United States v. Perez*,
 387 F.3d 201 (2d Cir. 2004)....................................................................................28

*United States v. Pilitz*,
 No. 17-CR-0053 (JS) (ARL), 2022 WL 14763150 (E.D.N.Y. Oct. 25, 2022).........20

*United States v. Pitts*
 91 F.2 197 (D.C Cir. 1990).....................................................................................34

*United States v. Quinto*,
 582 F.2d 224 (2d Cir. 1978)....................................................................................18

*United States v. Robinson*,
    560 F.2d 507 (2d Cir. 1977)...........................................................................................27

*United States v. Roldan-Zapata*,
    916 F.2d 795 (2d Cir. 1990)...........................................................................................24

*United States v. Solomon*,
    No. 24-CR-665 (LAP), 2026 WL 621352 (S.D.N.Y. Mar. 5, 2026).......................................25

*United States v. Stewart*,
    907 F.3d 677 (2d Cir. 2018)...........................................................................................12

*United States v. Strother*,
    49 F.3d 869 (2d Cir. 1995)..............................................................................................7

United States v. Sun,
    No 1:24-cr-00346 (BMC), Dkt. 299, at 7 n.3 (E.D.N.Y. Nov  29  2025). ..............................29

*United States v. Torres*,
    845 F.2d 1165 (2d Cir. 1988).....................................................................................32, 33

*United States v. Trala*,
    386 F.3d 536 (3d Cir. 2004), *vacated on other grounds*, 546 U.S. 1086 (2006).....................24

*United States v. Trzaska*,
    111 F.3d 1019 (2d Cir. 1997).........................................................................................12

*United States v. Ulbricht*,
    79 F. Supp. 3d 466 (S.D.N.Y. 2015)...............................................................................25

*United States v. Wright*,
    489 F.2d 1181 (D.C. Cir. 1973).......................................................................................30

*Vicksburg & M.R. Co. v. O'Brien*,
    119 U.S. 99 (1886).......................................................................................................16

*Williams v. Florida*,
    399 U.S. 78, 112 (1970)................................................................................................30

## **Other Authorities**

2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, §
    401.08 (2d ed. 1997 ....................................................................................................28

Fed. R. Crim. P. 15 ...........................................................................................11, 14, 29, 33

Fed. R. Evid. 106 ...................................................................................................19, 20

Fed. R. Evid. 401 ................................................................................................................28, 35

Fed. R. Evid. 403 ................................................................................................................ *passim*

Fed. R. Evid. 801 ................................................................................................................16, 18

Fed. R. Evid. 803 ................................................................................................................ *passim*

Fed. R. Evid. 804 ................................................................................................................20

Fed. R. Evid. 805 ................................................................................................................12

Fed. R. Evid. 806 ................................................................................................................12, 13

Fed. R. Evid. 902 ................................................................................................................ *passim*

## **INTRODUCTION**

The government's supplemental motions in limine are plagued by the same flaws as its preceding 24 motions in limine. Once again, the government seeks to introduce out-of-court statements for which no hearsay or Confrontation Clause exception applies in order to get around its lack of competent evidence. *See* §§ I, II. And once again, the government has sought to engineer circumstances *during* the litigation of this case for the purpose of manufacturing evidence it apparently thinks it needs. *See* §§ III, IV.

Each of the government's latest motions in limine fails on its own terms. Supplemental Motion in Limine I fails because the government has neither identified the specific statements it seeks to admit nor produced the Rule 902(11) certifications its theory requires—and even its hand-picked exemplars reveal that the government cannot establish the contemporaneity, personal knowledge, and regularity that Rule 803(6)(A)–(C) requires. Those same records would likewise not survive a trustworthiness challenge under Rule 803(6)(E) because the declarants had ample motive to manipulate the records and a history of actually doing so.

Supplemental Motion in Limine II fails because the government has affirmatively shown that ████ is available, and neither the Confrontation Clause nor the Rules of Evidence permit the wholesale admission of two days of his prior civil-trial testimony as a weaker substitute for in-court testimony.

Supplemental Motion in Limine III fails because Huawei complied with ████ ████—and in any event, Huawei's frustrated attempts to ████ ████ are obviously not evidence of guilt. Moreover, opening the door to ████ would precipitate a Rule 403 mini-trial about ████ unconnected to any element of any count.

1

Finally, Supplemental Motion in Limine IV fails because Huawei had no obligation to join the prosecution team by securing witnesses for the government. The government knows how to obtain witness testimony from China—indeed, the government has advised both Huawei and other defendants that they must follow Chinese law in that respect. But the government chose not to do so itself. Huawei's recognition that the government's purported witness subpoena attempts are legally improper—which the government has expressly stated it shares—cannot justify either a consciousness-of-guilt inference or a missing witness instruction.

The Court should deny these motions. The government must prove its case through admissible evidence and testimony about the offense conduct, not through hearsay and irrelevant proof about how Huawei has behaved during various episodes that the government has manufactured during the litigation.

## ARGUMENT

I.   **THE COURT SHOULD DENY THE GOVERNMENT'S BANK DOCUMENT MOTION.**

A.   **The Court Should Deny the Government's Motion to Admit Hearsay Evidence and to Preclude Huawei From Offering Evidence.**

1.   **The Motion Should Be Denied as Premature Because the Government Has Not Disclosed the Records It Seeks to Admit or Its Rule 902(11) Certification.**

The government seeks a blanket ruling approving the admissibility of a loosely defined universe of statements contained within "bank reports, internal bank communications, and sanctions compliance questionnaires." Mot. at 1–7. The government acknowledges that it must prove that these statements fall within the business records exception under Federal Rule of Evidence 803(6), and states that it will satisfy that requirement through one or more Rule 902(11) certifications. *Id.* at 5–6.

2

The government's motion is premature and procedurally defective because the government has disclosed neither the records it seeks to admit nor the certifications it says will establish admissibility. Under Rule 902(11), the government "must make [each] record and certification available for inspection" so that Huawei "has a fair opportunity to challenge them." To date, neither the records nor the certifications have been made "available for inspection." The government offers a handful of exhibits as "representative examples," *see* Mot. at 2–5, but its motion is not limited to those examples—rather, it seeks a ruling covering every document that falls within these loosely described categories, without disclosing to the Court or the defense which documents are at issue or which statements the government intends to offer at trial.

Nor has the government provided any certifications. The defense accordingly does not know who will certify which statements, what the certifications will say, or on what basis the certifying witness(es) will attest that Rule 803(6)'s foundational requirements have been met with respect to each statement. As such, Huawei has not had a "fair opportunity to challenge" each certification, as Rule 902(11) guarantees. Nor has Huawei had any opportunity to exercise its right under Rule 803(6)(E) to challenge the trustworthiness of particular statements based on the "source of information or the method or circumstances of preparation." It makes no sense to litigate the government's motion now, only to do so again, as required by the Rule, after the records are identified and the certifications furnished.

For the same reasons, the government's motion suffers from an obvious substantive flaw. The government, as the offering party, must establish that the criteria in Rule 803(6)(A)–(C) are satisfied. *See United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014). Because the government has not submitted any Rule 902(11) certification, it has not laid a Rule 803(6)(A)–(C) foundation.

These requirements are not academic. To satisfy Rule 902(11), the government's certification will have to establish admissibility on a statement-by-statement basis. Where the records in question contain multiple levels of hearsay, the certification will have to establish admissibility with respect to each level. In particular, where the government seeks to admit statements that are attributed by the bank records to Huawei, the government needs to establish that the *attribution statements* are admissible for their truth. And the records are not identical: for example, while some records might have been "made at or near the time by—or from information transmitted by—someone with knowledge," Fed. R. Evid. 803(6)(A), others clearly were not. Even within a single document, some statements may have been recorded contemporaneously by someone with knowledge; others may not have been. The government's own lead example—the November 2013 report by █████████████████████████ ██████ (GX-21611-R)—illustrates the point: that document is a lengthy compendium of assertions collected from multiple underlying sources, spanning different time periods, and mixing attributed statements, characterizations by ██████ and the bank's own analytical conclusions. Those reliability problems are compounded by the fact that, as discussed below, ██████ *admitted to the government that he drafted this specific exhibit with the goal of intentionally misleading the risk committee.*

The government bears the burden of establishing admissibility of *every* hearsay statement it seeks to admit, and no boilerplate certification would be sufficient to do so. Until the government does what the Rules require—identify its proposed exhibits, provide the Rule 902(11) certifications, and make both available for inspection so that the defense has a fair opportunity to challenge them—the motion must be denied. This Court can and should deny the motion on this basis alone.

4

**2.      The Government's Examples Already Reveal Serious Admissibility Problems.**

In any case, even based on the examples provided (examples that the government presumably chose to present its position in the *best* light), it is extremely unlikely (i) that the government will be able to lay an adequate business records foundation under Rule 803(6)(A)–(C); or (ii) that the records will survive trustworthiness review under Rule 803(6)(E); both of which are preliminary to establishing (iii) that any embedded statements attributed to Huawei are admissible.

*i.      The Government's Examples Show That These Documents Are Not Business Records.*

The business record exception requires that a record be made "at or near the time" of the events described, by or from information transmitted by "someone with knowledge," and made and kept as part of the business's "regular practice." Fed. R. Evid. 803(6)(A)–(C). Based on the government's initial submissions, those requirements are not met with respect to any of the categories of documents at issue.

***The Government's Exemplar Emails (GX-21355; GX-21345-R; GX-21354)***. Emails are not categorically admissible as business records "simply because [they were] sent between two employees in a company or because employees regularly conduct business through emails." *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019); *see also United States v. Fox*, No. 23-CR-227, 2025 WL 2076664, at *13–14 (E.D.N.Y. July 23, 2025). Rather, the proponent must demonstrate that each email satisfies Rule 803(6)'s requirements—that it was created contemporaneously with the sender's acquisition of the information it contains, by a person with personal knowledge, and as part of a regular business practice. *In re Deepwater Horizon*, MDL No. 2179, 2012 WL 85447, at *3 (E.D. La. Jan. 11, 2012).

Based on the current record, those criteria are not met for the government's three exemplar emails. GX-21355 is a January 14, 2013 email from ▮▮▮▮▮ to other ▮▮▮▮▮ employees in which ▮▮▮ writes: "We spoke with Huawei on the Reuters report. They provide response towards the report as below." Mot. at 3–4. The email does not say when the purported conversation took place, who at Huawei provided the "response," whether ▮▮▮ himself had personal knowledge or received the information from someone else, or whether the numbered points that follow are Huawei's words or ▮▮▮ (or somebody else's) summary. In GX-21345-R, ▮▮▮ emails colleagues that "Huawei has confirmed no ▮▮ related transactions have been done with [the Skycom] account"—but again, the email does not identify who at Huawei "confirmed" this, whether ▮▮▮ had personal knowledge of the confirmation or learned of it in another way, or whether ▮▮▮ email was sent contemporaneously rather than days, weeks, or months later. Mot. at 4. And GX-21354's Q&A—in which the "Client committed that ▮▮ related payment would not be routed through us"—likewise provides no information about when any such commitment was made or who at Huawei made it; indeed, it is unclear who at ▮▮▮ authored the quoted text, and thus impossible to say if he or she had personal knowledge of the purported statement or obtained it from someone else. That is true of *each* of these examples: the government has failed to show that the author was a "person with knowledge," or alternatively provided any information about where the information came from. Such statements are not admissible as business records.

These emails have the hallmarks of inadmissible, ad hoc communications—a "form of conversation" rather than the type of systematized records marked by contemporaneity and personal knowledge that can qualify as non-hearsay. *Daneshvar*, 925 F.3d at 777 ("one-time discussion" is not a business record); *see also Potamkin Cadillac Corp. v. B.R.I. Coverage*

*Corp.*, 38 F.3d 627, 633 (2d Cir. 1994) (documents requiring "significant selection and interpretation of data" rather than "a downloading of information" fall outside Rule 803(6)); *Ira Green, Inc. v. Military Sales & Servs. Co.*, 775 F.3d 12, 20 (1st Cir. 2014) (excluding emails where "the record contains no evidence that [the author] had the requisite personal knowledge of" their contents and where there was a "lack of contemporaneity" between the emails and the events described therein); *In re Deepwater Horizon*, 2012 WL 85447, at *3 (Rule 803(6) compels "a particularized inquiry as to whether the declarant—the composer of the email—possessed personal knowledge of the information in the email").

*The Reputational Risk Reports (GX-21611-R)*. The government's single example of a reputational risk report, the report by ████████ (GX-21611-R), raises analogous concerns. The report is dated November 2013 and recounts events, analyses, and multiple layers of embedded statements—some from ████ employees and systems, some from the U.S. Congress, some from the news media, some apparently from an Algerian court case—that in turn reference other events and statements that are reported to have occurred (primarily) between 2005 and 2013. Among those statements, the document purports to recount Huawei's "formal response" to news reports from 2011 to early 2013—but does not state who at Huawei made the statement, when the statement was made, and whether it was contemporaneously recorded. Mot. at 2–3; *see Abascal v. Fleckenstein*, 820 F.3d 561, 565 (2d Cir. 2016) (excluding report published six months after relevant events); *United States v. Strother*, 49 F.3d 869, 876 (2d Cir. 1995) (same). Nor is there any indication that the report is a routine business record; it reads instead as a narrative case presentation assembled for an ad hoc committee meeting—the kind of reactive document courts have distinguished from the systematic records encompassed by Rule 803(6). *See, e.g.*, *United States v. Freidin*, 849 F.2d 716, 719–20 (2d Cir. 1988); *Strother*, 49 F.3d at

7

875–76; *Hook v. Regents of Univ. of Cal.*, 394 F. App'x 522, 531 (10th Cir. 2010); *FTC v. AMG Servs., Inc.*, No. 12-cv-536, 2017 WL 1704411, at \*4 (D. Nev. May 1, 2017).

And as with the emails, the government has not demonstrated that the report's author—

███████████ had the requisite personal knowledge of the facts he recorded. *See Brutus Trading LLC v. Standard Chartered Bank*, No. 18-CIV-11117, 2021 WL 4772142, at \*4 (S.D.N.Y. Oct. 13, 2021) (bank risk assessments inadmissible as "secondhand conduits of information"); *Potamkin Cadillac Corp.*, 38 F.3d at 633 (excluding documents requiring "significant selection and interpretation of data"); *Boca Investerings P'ship v. United States*, 128 F. Supp. 2d 16, 20 (D.D.C. 2000) (bank credit proposal excluded where proponent could not "point with any degree of certainty" to the sources of "the most important information" it contained).

*Sanctions Compliance Questionnaires (GX-22602; GX-22603)*. The questionnaires raise the same concerns. The government contends that these are forms in which "bank employees would answer [a standard set of questions] by obtaining responsive information from the client." Mot. at 5. But the government does not identify who at the banks completed them, whether those individuals personally spoke with Huawei (and, if so, which Huawei employees), or the extent to which the recorded answers reflect Huawei's words rather than the author's own interpretations. And while the government describes the questionnaires as incorporating "a standard set of questions," *id.*, the government has not shown that the banks had a regular practice governing how client responses were solicited, recorded, or incorporated into the questionnaires. The statements attributed to Huawei are also all over the map. Whereas some are attributed to specific meetings, others have no attribution at all, or purport to summarize what Huawei "has consistently conveyed" or "confirmed" over an undefined span of time—literally the opposite of a contemporaneous record. *Cf. Amerisource Corp. v. RxUSA Intern. Inc.*, No. 02-cv-2514, 2009

8

WL 235648, at \*3 (E.D.N.Y. Jan. 30, 2009) (declining to admit notes identifying only the month and year of underlying conversations).

   *ii.*  *These Documents Are Also Untrustworthy Under Rule 803(6)(E).*

Even where Rule 803(6)'s foundational requirements are otherwise met, a document should be excluded if "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E). The defense expects to make trustworthiness challenges to some or all of these documents at trial. The scope of those challenges must await the government's identification of its proposed exhibits and required Rule 902(11) certifications. But grounds for concern are already patent.

Initially, the government's principal hearsay declarant, ███████ ██████ Huawei relationship manager), was far from a disinterested record-keeper: he had a direct financial stake in the content of these documents. As ██████ told the government when he was interviewed as part of its investigation of █████ and Huawei, the Huawei account constituted "50% of his portfolio," and losing the account would have "affected [his] future promotions." DOJ_HUAWEI_A_0124193936 at 2, 12. This motive pervades his contemporaneous communications. Indeed, the Motion fails to mention that the November 2013 report (GX-21611-R), for example, is not a neutral observation and recording of events—it is an advocacy document in which █████ was expressly seeking to persuade an █████ risk committee to permit him to maintain and expand the Huawei account despite press accounts about Huawei's business in sanctioned countries.

Not only did █████ (and other similarly situated bank relationship managers) have a financial interest in the content of his communications purporting to attribute statements to Huawei, but *each* of the records the government seeks to admit was also created while ███████ was operating under a deferred prosecution agreement ("DPA") with the Department of Justice

for intentionally violating U.S. sanctions on ███ *See* Deferred Prosecution Agreement, ███ ███ ███ ████████████████████████████████████████████. The revelation that ███ was involved in any additional unlawful ███ related payments would have subjected the bank to termination of the DPA, likely criminal conviction, and a host of other penalties. *Id.* ¶¶ 6(g), 16. Pursuant to the DPA, ███ was also subject to a corporate compliance monitorship. *Id.* ¶¶ 9–13. ██████ and ████████████████—which knew that Huawei had for years used the Skycom ███ account for ███ related transactions—thus had an extraordinary incentive to paper their files with client assurances, whether or not those assurances were actually made, or whether or not they were actually made as reported.

Motives such as these are sufficient indicia of lack of trustworthiness to exclude documents under Rule 803(6)(E). *See, e.g.*, *Lewis v. Velez*, 149 F.R.D. 474, 486 (S.D.N.Y. 1993) (excluding records where author had self-serving "motives that undermine the [documents'] trustworthiness"); *Freidin*, 849 F.2d at 720–21 (records excludable where "circumstances of preparation" indicate unreliability); *Hoffman v. Palmer*, 129 F.2d 976, 991 (2d Cir. 1942) (records excludable where author was "dripping with motivations to misrepresent"), *aff'd*, 318 U.S. 109 (1943).

But the lack of trustworthiness in ███ statements goes well beyond his incentives. The motion also—remarkably—fails to mention that ███ admitted to the government, *with specific respect to the November 2013 report (GX-21611-R)*, that he was *deliberately manipulating the factual record in order to mislead the risk committee*. For example, ███ admitted that he "did not report that HUAWEI controlled SKYCOM and CANICULA" because he "did not want to *lose the HUAWEI account or trigger an investigation*." DOJ_HUAWEI_ A_0124193936 at 16 (emphasis added). And although ███ knew that Skycom had performed

10

transactions with ███ he "*did not report the illegal transactions to his superiors because he did not want to trigger more work for himself*." *Id.* at 15 (emphasis added). In other words, ███ acknowledged that he did not objectively observe and record information as required by Rule 803(6)(A)–(C). Rather, he assembled a misleading narrative with the goal of achieving the result that would be most likely to avoid investigation and benefit himself financially.

Nor was this problem limited to ███ The government's own Record of the Case ("ROC") confirms that significant information was systematically omitted from the internal reporting chain on which these records depend. For example, the ROC states that other "junior ███ employees" became aware that ███ maintained a bank account for Skycom that was "internally associated with Huawei," initiated the process of closing that account by communicating with unidentified Huawei employees, yet never "report[ed] information regarding the ███ Skycom account or its closure to . . . senior ███ executives." ROC ¶ 31. This goes directly to the "source of information" and the "circumstances of preparation" on which exclusion under Rule 803(6)(E) turns: the records the government seeks to admit were the product of an internal reporting process in which the employees responsible for supplying information to the risk committees were withholding material facts from those committees.

Huawei is therefore likely to prevail on its anticipated argument that the records are inadmissible under Rule 803(6)(E).

> iii.     *Even if the Documents Are Business Records, the Inner Layer of Hearsay Requires Its Own Exception.*

Even if the Court were to find that some of these documents qualify as business records, that would resolve only the "outer layer" of hearsay—the admissibility of the documents themselves as records of regularly conducted activity. The statements attributed to third parties such as Huawei *within* those documents constitute one or more separate "inner" layers that must

11

independently satisfy a hearsay exception or qualify as non-hearsay. *See* Fed. R. Evid. 805. The government alludes to several non-hearsay theories—falsity, effect on the listener, state of mind, Mot. at 6–7—but does not specify which theory applies to which statement in which document. Moreover, the example records are replete with statements by other third parties that the Motion does not even address. It is thus premature for the Court to decide whether a particular statement is genuinely being offered for a permissible non-hearsay purpose, and whether admission for that purpose would survive a Rule 403 analysis. Huawei will be prepared to address these questions once the government has produced its certifications and identifies the specific statements it intends to offer and the specific purpose for which each is offered.

**B.      If the Court Admits These Documents, the Defense Is Entitled to Impeach the Hearsay Declarants Under Rule 806.**

As Huawei noted in its response to the government's motion in limine regarding Bank Prosecution Evidence, Dkt. 622 at 13–14, should the Court admit these hearsay statements, the defense must be afforded full latitude to impeach the credibility of the declarants whose statements are admitted. Rule 806 provides that when a hearsay statement has been admitted in evidence, "the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness." Fed. R. Evid. 806. The Rule recognizes that the hearsay declarant "'is in effect a witness'" whose "'credibility should in fairness be subject to impeachment . . . as though he had in fact testified.'" *United States v. Stewart*, 907 F.3d 677, 687 & n.3 (2d Cir. 2018) (quoting *United States v. Trzaska*, 111 F.3d 1019, 1024 (2d Cir. 1997)) (vacating conviction where defendant was "deprived of the opportunity due him [under Rule 806] to defend himself against the evidence introduced at trial"). Here, as detailed above, the defense has substantial grounds to challenge the credibility of the authors of these documents— ██████████ foremost among them—based on, among other

12

things, their financial motivation and their motivation to avoid the specific risks created by the federal investigation into and prosecution of the relevant banks.[1] If the government chooses to put those declarants' credibility at issue, it cannot preclude Huawei from seeking to impeach them. Thus, if the Court ultimately admits any of these documents, it must also allow Huawei to introduce such impeachment evidence under Rule 806.

### C.    The Court Should Deny the Government's Motion to Preclude Huawei from Offering Statements Contained in the Bank Records.

The government separately asks the Court to preclude Huawei from offering "its own statements or other second-level hearsay" contained in the bank documents, arguing that such statements are inadmissible hearsay when offered by the defense. Mot. at 7–10. This request suffers from the same procedural defect as the rest of the government's motion: the Court cannot determine what Huawei may or may not offer without knowing which documents are at issue, which statements the government intends to introduce, and for what purpose.

On the merits, the government's position is internally contradictory. To the extent documents (including any attribution statements) are admitted as business records, they are such for both parties, not just the government. And to the extent statements (including purported Huawei statements contained within business records) are not admissible for the truth, it is up to the proponent to proffer a non-hearsay purpose for those statements. As is typical in a fraud case, Huawei expects that it may offer certain of its own statements that tend to show, for example, Huawei's own transparency with the alleged fraud victims, or its own state of mind; or

---

[1] Although the defense (like the government) focuses on ▮▮▮▮ for illustrative purposes, similar arguments—including the foundational deficiencies and the trustworthiness concerns under Rule 803(6)(E)—apply with similar force to the records of the other banks. Like ▮▮▮▮ those banks were prosecuted for prior ▮▮ sanctions violations and were under investigation or ongoing supervision at the time of the relevant hearsay statements. *See* Dkt. 622 at 8–9.

13

that tend to show notice to the banks, or bank personnel's state of mind. Ultimately, whether any particular statement is admissible for any particular purpose is a determination that must be made in context at trial—not by blanket pretrial order.[2]

## II.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION TO ADMIT ███████ PRIOR TESTIMONY.

The government seeks to pre-admit ██████████ 2018 trial testimony in civil litigation filed by █████ against ██████ Huawei Technologies Co., Ltd.; Huawei Technologies USA, Inc.; and Futurewei Technologies, Inc.[3] ██████ had completed two days of examination and was nearing the end of ████████ re-direct on the third day when the case settled before the Huawei civil defendants could re-cross him. Despite representing that it intends to call ██████ as a witness at Huawei's upcoming criminal trial, the government nevertheless asks the Court to admit his prior civil testimony wholesale.

The Court should deny this request. If the government does not call ██████ as a trial witness, the Confrontation Clause bars his prior testimony because he is not "unavailable." If the government calls ██████ as a witness at trial, the Court should exclude his prior testimony under

---

[2] The government's reliance on the Rule 15 deposition of ████████ a former senior risk officer at ██████ to illustrate purported defense abuses of the Rules of Evidence is misplaced. *See* Mot. at 7–8. At the deposition, the government purported to lay a business records foundation for GX-21348-3 (DX 103.3) and then offered it into evidence. On cross-examination, defense counsel then asked the witness to read a selection of the exhibit—already offered into evidence by the government—into the record, only to draw an objection from the government that the exhibit contained inadmissible hearsay. That is not how the Rules of Evidence work. In any event, the cross-examination at issue had a non-hearsay purpose of establishing what ████ considered when determining to retain Huawei as a customer—*i.e.*, ████████ acknowledged on cross-examination that he reviewed the information and that it was a factor in the bank's decision.

[3] "Huawei civil defendants." Huawei Device USA Inc. and Huawei Device Co., Ltd. were not parties to the ██████ litigation. ████████████████████████████
████████████████████████████

14

Rule 403. In any event, the government's motion is premature because the government has not designated the portions of ██████ prior testimony it intends to introduce at trial.

      **A.**     ██████ **Prior Testimony Is Inadmissible.**

      **1.**     **If the Government Does Not Call ██████ the Confrontation Clause Bars Admission of the Prior Testimony Because ██████ Is Not "Unavailable."**

The Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). Admissibility is conditioned on unavailability. *Id.* at 54. Thus, "[e]ven where the defendant had . . . an opportunity [for cross-examination], [the Supreme Court has] excluded the testimony where the government had not established unavailability of the witness." *Id.* at 57 (citing *Barber v. Page*, 390 U.S. 719, 722–25 (1968)). For example, in *Barber*, the Court held that introducing prior testimony violated the Confrontation Clause because the witness was available to provide live testimony. 390 U.S. at 722. The Court reasoned that to admit prior testimony, the witness must either testify in the current trial or be unavailable. *See id.* at 724–25 (citing *Motes v. United States*, 178 U.S. 458 (1900) (written deposition subject to cross-examination was not admissible because witness was available)).

The government has not established that ██████ is unavailable. To the contrary, the government has stated that it intends to call ██████ as a witness at trial and has subpoenaed his testimony. Mot. at 12, 14 n.5. Under these circumstances, the government has not established that admitting ██████ prior testimony is permitted under the Confrontation Clause. The Court should exclude his prior testimony.

Although the government focuses on Rule 801(d)(2)(D),[4] that rule is irrelevant to the

Confrontation Clause. As explained in Defendants' Response to the Government's Preliminary

Motions in Limine, Confrontation Clause analysis turns on the common law, not the modern

Rules of Evidence. Dkt. 615 at 28–29 (collecting cases). The modern Rule 801(d)(2)(D)—and

particularly its relaxed requirement that making the statement need not have been a job

responsibility as long as the content *related to* the witness's responsibilities, Mot. at 14—is a

departure from the common law rule which allowed only statements made by the agent as part of

the agent's responsibilities. Fed. R. Evid. 801(d)(2)(D), advisory committee's note to 1972

proposed rules; *see, e.g.*, *Vicksburg & M.R. Co. v. O'Brien*, 119 U.S. 99, 104 (1886). The

government implicitly concedes (as it must) that ███████ testimony as a separate, individual

defendant called by ██████ was not given as part of his job responsibilities. The Confrontation

Clause therefore prohibits his testimony's admission.

**2.    If the Government Calls ██████ to Testify, the Court Should Exclude His Prior Testimony Under Rule 403.**

If ██████ testifies, his prior testimony should be excluded under Rule 403 because the

minimal probative value of reading his civil testimony into the record would be substantially

outweighed by the risk of prejudice to Huawei.

Prior testimony is "only a weaker substitute" for live, in-court testimony. *United States v.*

*Inadi*, 475 U.S. 387, 394 (1986). "If the declarant is available and the same information can be

presented to the trier of fact in the form of live testimony, with full cross-examination and the

---

[4] The government argues that ██████ prior trial testimony is admissible under Rule 801(d)(2)(D) as a statement of an agent or employee. But that Rule similarly does not allow for the introduction of the prior trial testimony of an available witness like ██████ *Kolb v. Suffolk Cnty.*, 109 F.R.D. 125, 128 (E.D.N.Y. 1985) ("Rule 801(d)(2)(D) was not intended to permit the introduction of . . . defendant's employee['s] entire [transcript of prior testimony] for substantive purposes where the employee[ is] readily available to testify at trial.").

16

opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version." *Id.*; *see also Strategic Value Master Fund, Ltd. v. Cargill Fin. Servs., Corp.*, 421 F. Supp. 2d 741, 769 (S.D.N.Y. 2006) ("The Second Circuit has held that a witness's live in-court testimony is the preferred method of presenting his or her testimony.") (citing *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002)). For this reason, courts have long excluded prior testimony in favor of live witness testimony at trial. *See, e.g.*, *Pearlstein v. BlackBerry Ltd.*, No. 13-cv-7060 (CM) (KHP), 2022 WL 741941, at *3 (S.D.N.Y. Mar. 11, 2022) (barring parties from reading deposition testimony into the record if the witness testified from the stand because doing so would waste time and "live testimony works better with the trier of fact"); *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 381 (S.D.N.Y. 1981) (holding depositions of witnesses who subsequently testified at trial inadmissible and noting "[t]here is a strong preference for live testimony, long recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness").

Here, because ▮▮▮▮▮ prior trial testimony would substantively overlap with any live testimony, that prior testimony lacks any probative value. But even if there was any value, it would be substantially outweighed by multiple Rule 403 concerns. For example, permitting the government to read potentially days' worth of civil trial testimony into the record—testimony that could be presented live in a shorter, more direct and efficient manner—would unnecessarily protract what is already expected to be a multi-month trial and present unnecessarily cumulative testimony. *See, e.g.*, *Quinton v. Am. Express Co.*, No. 19-CV-566 (NGG) (JRC), 2025 WL 1384896, at *18 (E.D.N.Y. May 13, 2025) (finding that "reading the prior testimony into the record would take time and . . . would almost certainly lead to diversions and minitrials into the context of that evidence"). It would also likely confuse the jury "as to the issues at stake in this

17

litigation." *Id*. (emphasis omitted). Jurors will wonder why the government introduced both ██ ██ prior *and* in-person testimony but did not do the same for other witnesses. Introducing ██ ██ prior testimony will also cause jurors to speculate about the circumstances of the ████ litigation, requiring Huawei to introduce evidence contextualizing ████ prior testimony. *But see* Dkt. 629 at 7–19 (government's motion in limine to preclude introduction of evidence concerning the resolution of the civil cases despite acknowledging necessity and intent to introduce evidence about the existence of the civil cases). The Court can streamline the case and avoid such distractions and juror confusion by excluding ████ prior testimony.[5]

### B.     The Motion Is Premature Because Wholesale Admission of Prior Testimony Is Impermissible.

Even if ████ prior testimony is otherwise admissible, the government's motion is premature. To introduce a witness's prior testimony, the offering party must identify the portions it intends to introduce, and then only read those portions into the record, not offer transcripts as trial exhibits. *See United States v. LaVictor*, 848 F.3d 428, 453 (6th Cir. 2017) (holding district court erred in admitting transcript of grand jury testimony as an exhibit, noting "the preferred method for introducing testimony involves reading it out loud" because "[t]aped or recorded testimony creates a potential for double exposure to selected testimony that may improperly influence a jury"). The government has not yet identified what portions of ████ two days of testimony it intends to introduce. Huawei therefore cannot evaluate the specific excerpts the

---

[5] To the extent ████ prior testimony is consistent with the testimony he offers in this trial, such prior consistent testimony is hearsay under Rule 801(d)(1)(B) unless Huawei attacks his current testimony as fabricated. *See United States v. Quinto*, 582 F.2d 224, 234 (2d Cir. 1978) (prior consistent statements are inadmissible unless "offered to rebut an express or implied charge against (the witness) of recent fabrication or improper influence or motive"); *see also Tome v. United States*, 513 U.S. 150, 157 (1995) (prior consistent statements may not be admitted to "bolster" a witness).

government intends to introduce for relevance and other evidentiary issues, or counter-designate any testimony under the rule of completeness to give the jury necessary context. *See Li v. Canarozzi*, 142 F.3d 83, 88 (2d Cir. 1998) ("The court retains its normal discretion to exclude the [prior testimony] evidence on other grounds such as lack of relevance, *see* Fed. R. Evid. 402, improper purpose, *see, e.g.*, Fed. R. Evid. 404, or undue prejudice, *see* Fed. R. Evid. 403."); *United States v. Lingat*, No. 21-CR-573 (MKV), 2024 WL 1051633, at *6 (S.D.N.Y. Mar. 11, 2024), *aff'd sub nom. United States v. Lemay*, No. 24-2328-CR, 2025 WL 1873404 (2d Cir. July 8, 2025) (finding it premature to make a categorical ruling on admissibility of statements "in advance of hearing the proffered evidence and any potential [evidentiary or constitutional] objection, or knowing the context in which the statement is offered"). Without knowing what portions of ███████ lengthy prior trial testimony the government intends to introduce and for what purpose, pre-admitting his testimony would be premature.

If the Court ultimately admits portions of ██████ prior trial testimony, however, Huawei should be permitted to counter-designate testimony to ensure accuracy and context. The rule of completeness requires that "[i]f a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part—or any other statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Even if a portion of the statement is hearsay, "an omitted portion of the statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007); *see also United States v. Pilitz*, No. 17-CR-0053 (JS) (ARL), 2022 WL 14763150, at *2 (E.D.N.Y. Oct. 25, 2022) (permitting defendant to introduce portions of prior civil deposition testimony under Rule 106). Accordingly,

19

to the extent the government identifies and the Court admits portions of █████ prior testimony, Huawei should be permitted to counter-designate statements that provide context and ensure a fair and impartial understanding of his testimony.[6]

## III.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION REGARDING ██ ███ ████ ███ █████████

The Court should reject the government's efforts to treat Huawei Tech's[7] ████████ ██████████████████████████████████████████████ as evidence of consciousness of guilt. The government's brief omits essential facts that decide this motion, including foremost that Huawei Tech complied with ██████████████████████████████████████████ ███████████ it sought to meet and confer with the government to discuss ██████████ ████████████████████████, and when met with silence, Huawei Tech proceeded apace, ████████████████████████████████████████████████████ █████████████. Huawei Tech's compliance with █████████ does not prove a guilty conscience, and permitting evidence of Huawei Tech's █████████ would only reward the government for failing to timely pursue █████████ it now says Huawei Tech should have prioritized.

---



[6] Even if the Court admits some of █████ prior trial testimony, the Court should exclude his re-direct examination because the Huawei defendants in that case never had the opportunity to re-cross-examine him. Midway through █████ redirect of █████ and before the Huawei civil defendants could re-cross-examine him, the █████ case settled. Because █████ prior trial testimony is incomplete, admitting the testimony would be unfairly prejudicial. *Cf. Cury v. Philip Morris USA*, No. 93 CIV. 2395 (CSH), 1995 WL 594856, at *7 (S.D.N.Y. Oct. 6, 1995) (excluding deposition testimony under Rule 804(b)(1) where defense witness left deposition before cross examination was complete because "plaintiff was denied a full opportunity to conduct a meaningful cross-examination of a crucial witness").

[7] "Huawei Tech" in this section refers to Huawei Technologies Co., Ltd., the Huawei entity that was the █████████████ █████████████

Moreover, opening the door to evidence of Huawei Tech's ███████████ unnecessarily invites a Rule 403 morass. Rather than litigate the charges, the parties would instead be forced to litigate factual and legal disputes over ████████████████ ████████████████████████████; how Huawei Tech should have responded to the government's failure to confer or articulate any priorities; the government's belated attempt to █████████████████████████████████████; and what inferences, if any, are reasonably warranted by all of those matters—not least because the government has also insisted for half a decade that ████████████████████████████ ██████████████████ The Court should not allow the trial to be derailed by this irrelevant, prejudicial, and time-wasting sideshow.

### A.    Background

██████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████

21



**B.    Argument**

The ▮▮▮▮▮▮▮▮▮ evidence the government seeks to admit has no probative value.

Even if it had some minimal probative value, it should be excluded under Rule 403.

**1.    Huawei Tech's** ████████████████ **Does Not Tend to Show Consciousness of Guilt of the Charged Offenses.**

The government's proposed evidence lacks probative value because Huawei Tech complied with its obligations under the ████████████████████████████ ████████████████████████████████ In no circumstance does Huawei Tech's ████████████████████████████████ permit an adverse inference of guilt.

████████████████████████████████████████

████████████████████████████████████████

Huawei Tech ████████████████. But the government ████████████ ████████████████████████████████ Over the next several years, Huawei Tech ████████████████████████████

████████████████████████████████████████

Huawei Tech continued to ████████████████████████████████ ████████████████████████████. Because Huawei Tech complied with ██ ████████, there is no basis to infer any misconduct, much less consciousness of guilt of the charged crimes.

The government certainly cannot show that Huawei Tech *intentionally* ████████ ████████ in a manner that would warrant an adverse inference. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████████

23



Further, the government's consciousness-of-guilt theory is not probative because it rests on a remarkably brittle chain of speculative inferences. First, the government must show that Huawei Tech violated [redacted] Second, it must show that any violation was intentional. Third, it must show that, as part of the violation, Huawei Tech [redacted] [redacted] And fourth, it must show that Huawei Tech did so because it believed it was guilty of the charged crimes rather than for any other reason. Each of these issues would inevitably invite the jury to engage in raw speculation. *See United States v. Trala*, 386 F.3d 536, 545–46 (3d Cir. 2004) (rejecting failure to correct accomplice's misstatements to police as evidence of consciousness of guilt because jury would have to "speculate as to whether [defendant] heard [accomplice]"), *vacated on other grounds*, 546 U.S. 1086 (2006).

The two cases the government cites prove how lacking the factual predicate is in this case. In *United States v. Mastropieri*, 685 F.2d 776 (2d Cir. 1982), the government caught the defendant in the act of intentionally suppressing evidence. Just after the judge reserved decision in open court on a warrant to search the defendant's office, officers observed the defendant place a call to his brother-in-law, and then observed the brother-in-law walk out of the defendant's office and drive away with a carton and attaché case full of records. *See id.* at 790–91. In *United*

24

*States v. Roldan-Zapata*, 916 F.2d 795 (2d Cir. 1990), the defendant told his co-conspirator while they were both detained pending trial that "the government would have no case if [the coconspirator] did not talk." *Id.* at 803–04. The facts in this case are nowhere close to those cited by the government.

In any event, consciousness-of-guilt evidence is generally weak because it is probative only when the defendant's conduct points meaningfully toward guilt of the charged offense, rather than any number of alternative explanations. Here the government seeks to admit the ███████████ ██████ as evidence of consciousness of guilt of the charged crimes, but the government itself has repeatedly insisted that the █████████ ████████████ ████████████████████████████████ The government cannot have it both ways. Furthermore, "viewed objectively," ████████████████████████ ███████████████████████████████████ ████████████████████████████ is at least "as consistent with innocen[t] [explanations] as with guilt[y]" ones. *United States v. Cassese*, 428 F.3d 92, 101 (2d Cir. 2005).

### 2.    Any Probative Value Would Be Vastly Outweighed by Unfair Prejudice.

Even if the government's consciousness-of-guilt evidence had some minimal probative value, it would be inadmissible under Rule 403 because that probative value would be substantially outweighed by unfair prejudice, confusing the issues, misleading the jury, undue delay, and waste of time. If the government attempts to put on its consciousness-of-guilt case, Huawei Tech would have little choice but to counter the government's allegations, inviting a messy "mini-trial on collateral issues." *United States v. Ulbricht*, 79 F. Supp. 3d 466, 492–93 (S.D.N.Y. 2015); *see also United States v. Solomon*, No. 24-CR-665 (LAP), 2026 WL 621352, at

25

*3 (S.D.N.Y. Mar. 5, 2026) (excluding evidence that "invites a trial within a trial" on collateral and minimally probative issues).

Huawei Tech would show: (a) the breadth, burden, and impracticability  (b) the steps it took to attempt to ; (c) the government's failure to , or otherwise to ; (d) that Huawei Tech promptly and accurately (e) that the government effectively paid no attention to Huawei Tech's for years and—at best—failed to recognize that ; (f) that the government concealed the from Huawei Tech when it sought to (h) how Huawei Tech's (i) that there are ample alternative explanations—including substantial foreign-law hurdles—for Huawei Tech's ; and (j) that the government insisted time and again that the *Cf. Gilmore v. Henderson*, 825 F.2d 663, 666 (2d Cir. 1987) (directing habeas relief because state trial court prohibited defendant from introducing evidence explaining fear of police to respond to prosecution's evidence of flight to show consciousness of guilt).

Even addressing a subset of those issues would require extensive percipient and expert testimony on the saga of this subpoena. Because many of the relevant facts are known only to counsel of record—for the government and for the defense—admitting evidence on the topic

26

could require testimony from counsel of record, raising a host of ethical and constitutional choice-of-counsel issues that should be avoided.

None of that belongs in a case that is already substantially overladen. It would distract the jury, prolong an already lengthy trial, and force the parties to litigate collateral ████████ issues far removed from the elements of the charged offenses. Courts exclude consciousness-of-guilt evidence when rebutting it would require just that kind of distracting sideshow. *See United States v. Gentile*, No. 21-CR-54 (RPK) (PK), 2024 WL 2941849, at *2 (E.D.N.Y. June 11, 2024) ("[T]here is a substantial risk of confusion from introducing evidence of third parties' civil law [due diligence] obligations into a criminal [fraud] case.").

The government's consciousness-of-guilt theory would also cause unfair prejudice. It risks "lur[ing] the [jury] into declaring guilt on a ground different from proof specific to the offense charged." *United States v. Massino*, 546 F.3d 123, 132 (2d Cir. 2008) (quoting *Old Chief v. United States*, 519 U.S. 172, 180 (1997)). The government wants to tell the jury that Huawei Tech ████████████████████████████████████████████ ████████████████████████████████ That framing is as inaccurate as it is unfairly prejudicial and is apt to have the "strong emotional or inflammatory impact" that Rule 403 guards against. *United States v. Robinson*, 560 F.2d 507, 513–14 (2d Cir. 1977).

## IV.    THE COURT SHOULD DENY BOTH THE GOVERNMENT'S MOTION FOR "CONSCIOUSNESS-OF-GUILT" EVIDENCE AND FOR A MISSING WITNESS INSTRUCTION BASED ON ITS OWN INABILITY TO PROPERLY SECURE EVIDENCE.

Eight years after obtaining the original indictment in this case, and just a few months before the start of trial, the government for the first time purported to summon twenty-five China-based witnesses (the "Witnesses") by emailing subpoenas to Huawei's criminal defense counsel. As the government knows, Huawei's counsel does not represent these witnesses and

27

cannot accept service on their behalf, and Chinese law does not allow the government to secure the testimony of China-resident individuals in this manner. Indeed, the government itself has instructed Huawei and other defendants on the proper process for obtaining testimony of China-resident defense witnesses. *See, e.g.*, Dkt. 441. Even if the government's emailed subpoenas satisfied that process, Huawei has no obligation to assist the government in procuring trial witnesses. Yet the government seeks to transform its gamesmanship and lack of diligence into evidence of Huawei's consciousness of guilt that merits a missing witness instruction. The government's request is improper and lacks any basis in law or fact. Worse, it would impermissibly turn criminal defendants into agents of the prosecution. The Court should deny the government's request for a missing witness instruction and exclude under Rules 401 and 403 any evidence of the government's attempt to subpoena the Witnesses through defense counsel.

### A. The Government's Own Failure to Secure Witness Testimony Is Not Proof of Huawei's Consciousness of Guilt.

The government contends that defense counsel's refusal to accept service of subpoenas to witnesses it does not represent is admissible as evidence of Huawei's consciousness of guilt. This is without merit. Evidence may be admissible to show consciousness of guilt *only* "if reasonable inferences can be drawn from it and if the evidence is probative of guilt." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 401.08 (2d ed. 1997)); *accord United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005) (requiring inferences between defendant's conduct and guilt of charged offense). Neither requirement is met here.

### 1. The Witnesses' Absence Is the Government's Own Doing; Huawei Has Done Nothing Reflecting "Consciousness of Guilt."

It is impossible to draw any reasonable inferences probative of Huawei's guilt on the underlying offenses from the government's facially defective service by email. As the

28

government acknowledged in a July 2024 letter to the defendants, *see* Dkt. 441, because foreign witnesses are beyond the Court's subpoena power, a party seeking foreign witness testimony must follow a strict diplomatic process as a pre-condition, and doing so may take time. Accordingly, not only must the defense seek any necessary authorizations for testimony well before trial, but so must the government. Indeed, the government ably explained the process it must follow to secure foreign evidence from China for use at trial in a recent brief in *United States v. Sun*: "[t]o seek evidence for criminal matters from a witness in the PRC, the government must obtain approval from the PRC's Ministry of Justice through the U.S.-China Mutual Legal Assistance Agreement." No. 1:24-cr-00346 (BMC), Dkt. 299, at 7 n.3 (E.D.N.Y. Nov. 29, 2025).

The government has not even attempted to follow that process here. To the best of the defendants' knowledge, the government has not requested approval for the witnesses it wishes to call—despite advising Huawei to do so for defense witnesses. *See* Dkt. 441 at 1. Nor has the government made any other meaningful effort to secure the Witnesses' testimony, either by seeking to obtain the Witnesses' testimony via Rule 15 depositions or contacting the Witnesses it knows to be independently represented to determine whether they would agree to testify. Moreover, although the government could have conditioned its acquiescence to a ▮▮▮▮▮▮ ▮▮▮ on her promise to testify in this case,[8] or to sit for a Rule 15 deposition before departing the United States, it did neither.

---

[8] *See, e.g.*, *United States v. Hwa*, No. 18-CR-538 (MKB), 2021 WL 11723583, at *44 (E.D.N.Y. Sept. 3, 2021) (noting that an obligation to make non-U.S. witnesses "available for . . . testimony" at the request of law enforcement is "standard language that is routinely included" in non-prosecution and deferred-prosecution agreements and collecting cases).

Instead, the government waited eight years, then emailed subpoenas to Huawei's counsel on the eve of trial, fully aware that Huawei's counsel did not represent the Witnesses, was not authorized to accept service on their behalf, and that foreign law bars securing testimony in this manner. The notion that Huawei's response to this legally deficient service reflects Huawei's "consciousness of guilt" is plainly meritless. The government's subpoena-by-email is a legal nullity, not evidence of Huawei's consciousness of guilt.

Further, the government's position would turn ordinary criminal procedure on its head. An "underlying principle" of criminal procedure is that, as the party with the burden of proof, "the [government] must establish guilt by evidence independently and freely secured." *Rogers v. Richmond*, 365 U.S. 534, 541 (1961). The government cannot "enlist the defendant as an instrument in his or her own condemnation." *Mitchell v. United States*, 526 U.S. 314, 325 (1999); *accord, e.g.*, *Williams v. Florida*, 399 U.S. 78, 112 (1970) (Black & Douglas, JJ., concurring) (a criminal defendant "has an absolute, unqualified right to compel the State to investigate its own case, *find its own witnesses*, prove its own facts, and convince the jury through its own resources" (emphasis added)); *United States v. Wright*, 489 F.2d 1181, 1195 (D.C. Cir. 1973) (recognizing that a defendant has no duty to assist the prosecution in proving its case). Indeed, it is well-established that the government has no obligation to help a defendant find, let alone obtain, favorable witnesses. *See United States v. Callahan*, 300 F. Supp. 519, 525 (S.D.N.Y. 1969); *see also United States v. Kompinski*, 373 F.2d 429, 431 (2d Cir. 1967) ("[T]he government is under no obligation to prove a defendant's case, or to call a witness to testify simply because the testimony may be helpful to the defense."). The government's consciousness-of-guilt argument, thus, would unconstitutionally impose greater duties on the defendant than the prosecution.

30

### 2.    Huawei Has Not Impeded the Witnesses From Testifying.

The refusal of Huawei's trial counsel to accept the government's service-by-email does not reflect any consciousness of guilt, let alone give rise to a reasonable inference that Huawei is guilty of the underlying crimes. In limited circumstances, some courts have treated a party's *intentional, affirmative efforts* to impede or prevent testimony as circumstantial proof of consciousness of guilt. *See, e.g.*, *United States v. Cirillo*, 468 F.2d 1233, 1240 (2d Cir. 1972) (consciousness-of-guilt evidence requires proof of conduct designed to impede testimony). There were no such affirmative efforts here. Huawei did not ask the Witnesses not to testify, keep them from entering the United States, or otherwise interfere with the Witnesses' ability to appear and testify at trial.

The government cites no case treating a defendant's failure to volunteer to help the prosecution as consciousness of guilt. To the contrary, in the government's cases, parties took affirmative steps to *obstruct* a witness' appearance or testimony, such as by threatening to physically harm the witness, *see Cirillo*, 468 F.2d at 1240; suborning the witness's perjury, *see United States v. Culotta*, 413 F.2d 1343, 1346 (2d Cir. 1969); or instructing an employee to testify falsely, *see United States v. Brashier*, 548 F.2d 1315, 1325 (9th Cir. 1976).[9] Huawei has taken no remotely comparable steps here.

---

[9] The Ninth Circuit's decision in *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir. 1998), does not suggest that an employer invariably is obligated to produce its employees as witnesses on behalf of the government. *But see* Mot. at 25. Not only is it a civil case—not a criminal one where the government bears the exclusive burden of procuring its own evidence and proving its case against the defendant—but it permitted an adverse instruction based the plaintiff's reliance on an explicit promise from the employer to produce the witness. There was no such promise or reliance here. Nor did *Miller* involve non-U.S. witnesses beyond the subpoena power of the court and under no obligation to come to the United States from a country that bars foreign compelled testimony absent government approval.

### B.        A Missing Witness Instruction Is Inappropriate.

For similar reasons, the government is not entitled to a missing witness instruction. To obtain a missing witness instruction, the movant must show that it made a meaningful but unsuccessful effort to secure the witness's testimony, the witness is peculiarly within the non-movant's power to produce, and the witness would provide material, non-cumulative testimony. *See United States v. Torres*, 845 F.2d 1165, 1169 (2d Cir. 1988); 1 Leonard B. Sand et al., Modern Federal Jury Instructions—Criminal, Instr. 6-5 cmt. Because defendants bear no burden of proof, "great caution should be exercised" in considering a missing witness instruction against a criminal defendant. *See* Sand, Instr. 6-6 cmt.

No instruction should be given here. The government has apparently made no effort at all to secure the Witnesses' testimony, and the government does not claim to know what any of the Witnesses would say under oath. If the Witnesses were truly material to the government's case, the government would have sought their testimony through the lawful processes that exist.

### 1.        The Government Has Not Tried to Obtain the Witnesses' Testimony.

A party's "failure to inquire about a possible missing witness" through known legal processes "suggests that [the] witness [i]s not actually unavailable" to the party. *United States v. Lita*, 800 F. App'x 8, 13 (2d Cir. 2020) (citing *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994); *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990)). In *Lita*, the Second Circuit affirmed rejection of a missing witness instruction because although the government had superior access to a State Department employee witness, the defendant failed to use the State Department's known legal process by which private parties may subpoena such officers. 800 F. App'x at 13. Implying that the failure to employ such a legal process created "an aura of gamesmanship," the Second Circuit affirmed the rejection of a missing witness charge. *Id.* (quoting *United States v. Gaskin*, 364 F.3d 438, 463 (2d Cir. 2004)); *see also United States v.*

32

*Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir. 1994) (holding that a witness cannot be deemed unavailable to a party that has not made sufficient effort to secure the witness's testimony); *Torres*, 845 F.2d at 1170 ("[C]ourts have been reluctant to find a witness practically unavailable when it appears that the [movant] has no real interest in calling the witness to the stand, but merely is engaged in a form of gamesmanship in an effort to obtain a missing witness charge.").

Here, the government has failed to pursue established diplomatic and evidentiary processes to obtain the Witnesses' testimony: it has not sought to obtain the Witnesses' testimony through the MLAT process, through Rule 15 depositions, or voluntarily. Rather, the government has purported to subpoena the Witnesses by means that it has conceded are legally deficient,[10] apparently for the sole purpose of supporting its request in this motion. The government's facially defective efforts at service do not amount to meaningful attempts to obtain the Witnesses' testimony. Rather they reflect the "aura of gamesmanship" that "frequently accompanies requests for missing witness charges." *Lita*, 800 F. App'x at 13 (citing *Gaskin*, 364 F.3d at 463). These points are amplified by the fact that the government listed only 2 of the 25 Witnesses on its witness list. *See Deler v. Commodore Cruise Line*, No. 92-cv-4473 (SHS), 1995 WL 733655, at *5 (S.D.N.Y. Dec. 12, 1995) (denying a missing witness instruction where the party demonstrated "no real interest" in calling the witness residing abroad). The government's failure to engage in known processes and demonstrated lack of intent to call the Witnesses precludes a missing witness instruction.

### 2.    The Witnesses Are Not Peculiarly Within Huawei's Control.

---

[10] Indeed, when the government previously purported to serve a trial subpoena on ███ ████████ by email to Huawei's counsel, it conceded that such "service" was a nullity because "she is beyond the reach of compulsory process and the government cannot procure her testimony." Dkt. 637 at 13 n.9.

Nor are the Witnesses peculiarly within Huawei's control. To the extent that the Witnesses refuse to come to the United States, they are unavailable to Huawei too. Huawei does not have any ability to compel them to testify at trial. *Nichols*, 912 F.2d at 601–02 ("close relationship between law enforcement agents and prosecutors" was not enough to merit missing witness instruction).

The government has made no showing that Huawei has peculiar control over the Witnesses. That Huawei intends to call other China-based individuals *who have agreed* to testify does not establish control or the ability to force agreement by the Witnesses, much less justify an adverse inference. The willingness of certain Huawei employees to voluntarily testify in this case, or in earlier civil lawsuits, does not establish that Huawei compelled those employees to testify, or that it could compel these Witnesses to testify even if doing so were permitted under Chinese law. The Witnesses are within their rights to "remain at home." *Cf. United States v. Bescond*, 24 F.4th 759, 772 (2d Cir. 2021).

In any event, even if Huawei could compel its employees to fly to the United States and take the witness stand for the prosecution, and even if doing so were permissible under Chinese law, there is still no indication that the Witnesses would actually testify, as the government has identified almost all of the Witnesses as involved in the crimes charged against Huawei. *See* Mot. at 22. Indeed, the government has claimed in its Bill of Particulars response that ███████

████████████████████████████████████████████████████

███████ Those Witnesses would be well within their right to invoke their constitutional privilege against self-incrimination, which by itself suffices to deny the government a missing witness instruction. *See United States v. Pitts*, 918 F.2d 197, 199–201 (D.C. Cir. 1990) (holding

34

that a missing witness instruction was improper where the witness would likely have invoked the Fifth Amendment); Sand Instr. 6-6 cmt.

C.      **The Court Should Exclude the Evidence Under Rule 403.**

Finally, the Court should exclude evidence of the government's so-called efforts to procure the trial testimony of the Witnesses under Rule 403. As explained above, the evidence lacks any probative value and should be excluded under Rule 401. Yet the government proposes to cause significant prejudice to Huawei by suggesting that it engaged in misconduct by exercising its constitutional right to put the government to its burden at trial. Admitting evidence about the government's emailed subpoenas would require, as a fairness measure, permitting Huawei to introduce evidence that its decision did not stem from a guilty mind, but rather from an accurate understanding of both American and Chinese law.[11]

## CONCLUSION

For the above reasons, the government's supplemental motions in limine should be denied.

Dated: May 8, 2026

Respectfully submitted,

---

[11] For the reasons explained above, the government's suggestion that it "may move" to preclude Huawei's China-based defense witnesses "on fairness grounds" (Mot. at 24 n.8) misunderstands the law. Huawei is constitutionally entitled to call witnesses in its own defense. Its decision to do so does not obligate Huawei to help the government procure its own witnesses (much less violate Chinese law to do so), and the government cites no authority to the contrary.

35

/s/ *David Bitkower*
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

/s/ *Douglas A. Axel*
Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

/s/ *Brian M. Heberlig*
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc.,*
*Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*