------------------------------------------------------------ X

     :

**UNITED STATES OF AMERICA**,

     :

– against –     :   **MEMORANDUM DECISION AND ORDER**

     :

**HUAWEI TECHNOLOGIES CO., LTD.**, *et al.*,   18-CR-457 (AMD) (JAM)

     :

Defendants.   :

------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

Before the Court are the parties' preliminary motions *in limine*. The government moves to preclude the defendants from cross-examining representatives of victim financial institutions about earlier enforcement proceedings and from introducing evidence about those proceedings. (ECF No. 590.) In addition, the government moves to admit the statement of facts incorporated in the deferred prosecution agreement between the government and Wanzhou Meng, Huawei Tech's Chief Financial Officer ("CFO"). (*Id.*)[1, 2] The defendants move to preclude evidence from after March 3, 2003 that  and its founder tried to destroy records from and made certain admissions about the relevant charged time period of 2000 to 2003. (ECF No. 588; ECF No. 640 at 2–3.)[3] Jury selection is scheduled to begin on September 8, 2026. (*ECF*

---

[1] The government also asked the Court to set a schedule for the defendants to produce reciprocal discovery. (ECF No. 590 at 40–44.) On February 14, 2026, the Court set a deadline for the defendants to produce reciprocal discovery by March 18, 2026. (*See ECF Rescheduling Order dated Feb. 14, 2026.*) Accordingly, this motion is moot.

[2] As explained below, the Court denies Huawei Tech's motion to strike some of the arguments the government raised in its reply. (ECF No. 653.) The Court also denies the defendants' request for a hearing. (ECF No. 622 at 29 n.24.)

[3] The defendants are Huawei Technologies Co., Ltd. ("Huawei Tech"), Huawei Device Co., Ltd. ("Huawei Device"), Huawei Device USA, Inc. ("Huawei Device USA"), and Futurewei Technologies, Inc. ("Futurewei") (collectively, "Huawei"). Unless otherwise specified, the term "defendants" refers to these four entities.

*Minute Entry and Order dated Apr. 23, 2026*.)[4]  As explained below, the Court grants the government's motions and denies the defendants' motion.[5]

**LEGAL STANDARD**

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, trial."  *McLeod v. Llano*, No. 17-CV-606, 2021 WL 1669732, at *2 (E.D.N.Y. Apr. 28, 2021) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996)).  "*In limine* rulings are 'subject to change when the case unfolds.'"  *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)).

Evidence is admissible only if it is relevant.  Fed. R. Evid. 402.  Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Under Federal Rule of Evidence 403, relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  In applying Rule 403, the Court "conscientiously balance[s] the proffered evidence's probative value with the risk" of the enumerated dangers. *United States v. Awadallah*, 436 F.3d 125, 131 (2d Cir. 2006).

Hearsay — an out-of-court statement offered for the truth of the matter it asserts — is inadmissible unless it falls within an enumerated carveout or exception.  *See* Fed. R. Evid. 801,

---

[4] When the parties filed their motions, the trial was scheduled for May 4, 2026.

[5] The parties filed public redacted and sealed unredacted versions of their briefs and exhibits.  Where possible, this memorandum cites to the public redacted version of the parties' filings.  The parties should propose redactions for a version of this order to be filed on the public docket.

802, 803.  Under Federal Rule of Evidence 801(d)(2), a statement offered against an opposing party is admissible non-hearsay if it "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed," "is one the party manifested that it adopted or believed to be true," or "was made by the party's coconspirator during and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(B), 801(d)(2)(D), 801(d)(2)(E).

Finally, the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Therefore, "[t]he Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him."  *Giles v. California*, 554 U.S. 353, 358 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

## DISCUSSION

**I.    Government's Motion to Preclude Evidence Related to Prior Enforcement Proceedings Against Victim Banks**

The government "alleges — and expects to prove at trial — that Huawei Tech engaged in a long-running scheme to deceive numerous global financial institutions regarding Huawei Tech's business activities in Iran."  (ECF No. 590 at 8.)  The government moves to preclude the defendants from cross-examining witnesses from four of these financial institutions (the "victim banks") about their "prior enforcement proceedings and purported related compliance failures," and from introducing extrinsic evidence of those prior enforcement proceedings.  (*Id.* at 9.)[6]  The

---

[6] After the government filed its preliminary motions *in limine*, a grand jury returned a fourth superseding indictment, which charges conduct only related to three victim financial institutions.  (*Compare* ECF No. 126 at 24–25 *with* ECF No. 689 at 22–24.)

government argues that this evidence should be precluded under Rule 401 because it is irrelevant or under Rule 403 because any probative value is "substantially outweighed by the risk of confusing and misleading the jury, wasting time, and unduly prejudicing the government." (*Id.*)

The defendants argue that they should be permitted to use this evidence to impeach witnesses from the victim banks. (ECF No. 622 at 19–22.) They also argue that the evidence is relevant to the materiality of the statements the defendants made to the victim banks, and would not confuse the jury or be unfairly prejudicial. (*Id.* at 22–25.) In any event, they say, precluding the evidence at this stage is premature because they cannot predict all of the ways it might otherwise be relevant. (*Id.* at 23–24.)

As the government details in its motion,





The defendants argue that they should be allowed to use evidence of these proceedings to impeach witnesses from the victim banks because their "employers, jobs, and liberty interests provided incentives to exculpate the Banks, please the government, and/or point the finger at Huawei." (ECF No. 622 at 21.) Comparing the bank witnesses to cooperators with cooperation agreements, the defendants assert that they are "constitutionally entitled" to show that testifying bank employees "were influenced by criminal, regulatory, and financial jeopardy," "just as Huawei would be entitled to argue that any other cooperating witness is influenced by their desire for leniency." (*Id.*)

"A criminal defendant must 'be afforded a meaningful opportunity to cross-examine witnesses against him in order to show bias or improper motive for their testimony.'" *United States v. Lee*, 660 F. App'x 8, 18 (2d Cir. 2016) (summary order) (quoting *Brinson v. Walker*, 547 F.3d 387, 392 (2d Cir. 2008)). That is because "[a] defendant's major weapon when faced with the inculpatory testimony of an accusing witness often is to discredit such testimony by proof of bias or motive to falsify." *United States v. Blackwood*, 456 F.2d 526, 530 (2d Cir.

1972).  "The rule is that '[i]n attempting to establish the motives or bias of a witness against him, a defendant may . . . elicit evidence showing that the government made explicit promises of leniency in return for cooperation.'"  *Id.* (quoting *United States v. Campbell*, 426 F.2d 547, 549 (2d Cir. 1970)).  A defendant "may also show conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation.  Actions evidencing the intention of the government to trade leniency for cooperation are, however, irrelevant unless it can be established that the witness knew of these actions."  *Campbell*, 426 F.2d at 549 (citing *Gordon v. United States*, 344 U.S. 414, 422 (1953)).

According to the defendants, the victim banks "were subject to DOJ investigation, or under probation or DPA supervision, for Iran-related sanctions violations" while the government was investigating Huawei.  (ECF No. 622 at 17.)  There is, however, no evidence that the institutions were anything like cooperating witnesses.  The defendants do not cite any evidence that the government "made explicit promises of leniency in return for" the victim banks' cooperation in this case.  *Blackwood*, 456 F.2d at 530 (citation omitted).  There are no cooperation agreements, or any evidence that the bank witnesses knew of any "[a]ctions evidencing the intention of the government to trade leniency for cooperation."  *Campbell*, 426 F.2d at 549 (citation omitted).  Indeed, at this point, the agreements that the government had with the victim banks have expired.  (ECF No. 637 at 6.)  Moreover, the government represents that it has no other agreements with the victim banks about their representatives' testimony, including a promise of some kind of leniency or favorable treatment in exchange for their testimony at a trial.  (*Id.*)  Therefore, the prior enforcement proceedings are not appropriate impeachment evidence.

Even if the evidence the defendants seek to introduce were appropriate impeachment evidence, permitting it would risk confusing the issues and misleading the jury. The evidence is not relevant; it has nothing to do with Huawei, and involves different countries, entities, and time periods. District courts "have broad discretion to supervise the 'mode and order of examining witnesses' so as to make the presentation 'effective for determining the truth' and to 'avoid wasting time.'" *Lee*, 660 F. App'x at 18 (quoting Fed. R. Evid. 611(a)); *see also Corby v. Artus*, 699 F.3d 159, 166 (2d Cir. 2012) ("A trial judge retains 'wide latitude' to restrict cross-examination 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986))). And "most impeachment evidence and substantive evidence may be precluded if its probative value is substantially outweighed by the risk of unfair prejudice to the adverse party, wasting time, or confusing the jury." *Martinez v. City of New York*, No. 16-CV-79, 2022 WL 17090267, at *5 (E.D.N.Y. Nov. 18, 2022); *see also Corby*, 699 F.3d at 166 ("To determine the propriety of cross-examination, as with other determinations of admissibility of evidence, courts balance prejudice versus probative value." (quoting *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011))).

The defendants argue that the evidence of unrelated investigations is "likely also relevant to Huawei's substantive innocence or guilt," including on the issue of materiality. (ECF No. 622 at 22.) Magistrate Judge Cheryl Pollak rejected this argument, a decision that this Court upheld. (ECF No. 558; *ECF Minute Entry dated Sept. 30, 2025*.) As Judge Pollak explained, the law is clear that "for purposes of the bank and wire fraud statutes, a finding of criminal fraud requires materiality based on an objective standard." (ECF No. 558 at 12.) Because materiality is based on an objective standard, evidence of what the victim banks may or may not have subjectively

considered to be material has no bearing on whether Huawei's statements were material.

Therefore, evidence of the prior enforcement proceedings against the victim banks is not relevant

to materiality. Nor is it otherwise relevant. As Judge Pollak observed, "the past alleged

wrongdoing of the victim Banks in response to conduct by other entities based on unknown

circumstances is also not directly relevant to the fraudulent conduct charged here." (ECF No.

558 at 20–21.)

Even assuming this evidence was at all relevant, its value would be "substantially

outweighed by the risk of unfair prejudice associated with introducing the documents,

particularly given the scale of the misconduct." *United States v. Miller*, 800 F. App'x 39, 41 (2d

Cir. 2020). It would also make what is already projected to be a very long trial even longer, with

no corresponding benefit. Permitting this line of inquiry would require testimony about separate

criminal and civil resolutions involving unrelated conduct and sanctions regimes that are not at

issue in this case. Accordingly, the government's motion to preclude introduction of evidence

related to prior enforcement proceedings against the victim banks is granted.

## II. Government's Motion to Admit the Statement of Facts

In August 2018, a grand jury returned the first indictment in this case, which charged

Huawei Tech and Wanzhou Meng — Huawei Tech's CFO and the daughter of Huawei Tech's

founder — with bank fraud, conspiracy to commit bank fraud, wire fraud, and conspiracy to

commit wire fraud. (ECF No. 25.)[8] Canadian authorities arrested Meng in December 2018,

"pursuant to a request from the United States." (ECF No. 590 at 18.) While the government's

efforts to extradite Meng to the United States from Canada were ongoing, the government and

---

[8] The indictment also charged Skycom with conspiracy to commit bank fraud, conspiracy to commit wire fraud, bank fraud, and wire fraud. (*See* ECF No. 25; ECF No. 590 at 17.)

Meng — represented by one of the firms that represents the defendants in this case — negotiated a deferred prosecution agreement, which they finalized on September 22, 2021. (ECF Nos. 323, 323-1.) As part of that agreement, Meng admitted to a statement of facts. (ECF No. 323-1.)[9] Among other things, Meng admitted that Huawei Tech's operation of Skycom violated U.S. sanctions regulations and that she lied to a financial institution about Huawei Tech's compliance with sanctions and export control regulations. (*See id.* at 5–8.)

On September 24, 2021, the Court held a hearing at which Meng confirmed that the Statement of Facts was true and accurate. (ECF No. 590-2 at 15.) The Court approved the deferred prosecution agreement. (*See id.* at 19.) The government then withdrew its extradition request, and Meng returned to China. (*See* ECF No. 590 at 28.) She is currently Deputy Chairwoman, Rotating Chairwoman, and CFO of Huawei Tech. (*Id.* at 21.)

The government moves to admit the Statement of Facts at trial. (*Id.* at 17–40.) The government maintains that it is "highly relevant evidence, it is not hearsay or otherwise precluded by the Federal Rules of Evidence, and its admission does not violate the Confrontation Clause." (*Id.* at 17.) The defendants oppose. (ECF No. 622 at 25–46.)

### a. Whether the Statement of Facts is Hearsay

According to the government, the Statement of Facts is not hearsay because it is a statement of an agent or employee under Rule 801(d)(2)(D), or an adoptive admission under Rule 801(d)(2)(B). (ECF No. 590 at 24.)

A statement offered against an opposing party is not hearsay if it "is one the party manifested that it adopted or believed to be true." Fed. R. Evid. 801(d)(2)(B). When a statement

---

[9] In the meantime, a grand jury returned a third superseding indictment that charged Meng with the same crimes as the original indictment. (ECF No. 126; ECF No. 590 at 18.) Meng is not charged in the fourth superseding indictment. (*See* ECF No. 689.)

incriminates a defendant, the rationale for admitting it under Rule 801(d)(2)(B) is that "a person ordinarily will respond to an incriminatory or defamatory statement with a denial, or at least with some indication that he objects to the statement as untrue." *United States v. Shulman*, 624 F.2d 384, 390 (2d Cir. 1980) (citing *United States v. Flecha*, 539 F.2d 874, 876–77 (2 Cir. 1976); McCormick on Evidence § 270 (2d ed. 1972)).

The defendants do not deny that the Statement of Facts incriminates Huawei Tech. Indeed, in admitting the facts in the statement, Meng conceded the elements of counts four through seven of the fourth superseding indictment. The agreement includes the following admissions:

- that "Huawei [Tech]'s operation of Skycom, which caused [global financial institutions that provided international banking services to Huawei Tech] to provide prohibited services, including banking services, for Huawei [Tech]'s Iran-based business while Huawei [Tech] concealed Skycom's link to Huawei [Tech], was in violation of the U.S. Department of the Treasury's Office of Foreign Assets Control's Iranian Transactions and Sanctions Regulations, 31 C.F.R. Part 560;"

- that Huawei Tech "caused Skycom to conduct approximately $100 million worth of U.S.-dollar transactions through [one of the victim banks] that cleared through the United States, at least some of which supported its work in Iran in violation of U.S. law;" and

- that Meng told that victim bank Huawei Tech "operates in Iran in strict compliance with applicable laws, regulations and sanctions" and "there ha[d]

been no violation of export control regulations" by "Huawei or any third party Huawei works with," and that these statements were "untrue." (ECF No. 590-1 at 4.)

The defendants argue that Rule 801(d)(2)(B) does not apply because "Huawei did not remain 'silent.'" (ECF No. 622 at 44.) But a party may adopt an incriminating statement by "other ambiguous conduct." *Shulman*, 624 F.2d at 390; *see also United States v. Tocco*, 135 F.3d 116, 128–29 (2d Cir. 1998) ("Absent circumstances that render it more probable that a person would not respond to an accusation against him than that he would, such person's silence or other ambiguous conduct is admissible as an adoptive admission under [Rule] 801(d)(2)(B)."). When it was indicted in 2019, Huawei Tech pleaded not guilty to the indictment and stated that it "denie[d] that it or its subsidiary or affiliate have committed any of the asserted violations of U.S. law set forth in [the EDNY] indictment[], [was] not aware of any wrongdoing by Ms. Meng, and believe[d] the U.S. courts will ultimately reach the same conclusion." (ECF No. 590 at 32.) Two years later, in 2021, Meng, Huawei Tech's CFO, admitted that the contents of the Statement of Facts were true. At that point, Huawei Tech did not dispute anything in the Statement of Facts, although it would have been natural for it to do so. Instead, after the court proceeding in which Meng made those admissions, Huawei Tech issued the following statement: "We look forward to seeing Meng Wanzhou returning home safely to be reunited with her family. Huawei will continue to defend itself against the allegations in the US District Court for the Eastern District of New York." (*Id.*)

This failure "to deny an accusation in circumstances in which such a denial reasonably would be expected constitutes an adoptive admission." *Experience Hendrix, LLC v. Chalpin*, 461 F. Supp. 2d 165, 171–72 (S.D.N.Y. 2006). "Silence is not evidence of an admission, unless

11

there are circumstances which render it more reasonably probable that a man would answer the charge made against him than that he would not." *Flecha*, 539 F.2d at 877 (citation omitted); *see also Tocco*, 135 F.3d at 128 ("An innocent person accused of being involved in a crime will ordinarily deny such involvement or, at least, assert that the incriminatory statement is untrue."). Under these circumstances, it would have been reasonable for Huawei Tech to deny that the assertions in the Statement of Facts were true. Its failure to do so is an adoptive admission under Rule 801(d)(2)(B).

According to the defendants, no court has held "that a charged defendant who has already denied the charges against it by pleading not guilty has adopted *as its own* the contents of a co-defendant's guilty plea allocution or DPA statement because it remained silent rather than affirmatively speaking out to deny the contents of that statement." (ECF No. 622 at 43.) The essence of the defendants' argument is that Huawei Tech, which had already been indicted when Meng entered into the deferred prosecution agreement, had a constitutional right to remain silent, and therefore its silence in response to the Statement of Facts should not be used against it by admitting the Statement of Facts as an adoptive admission. (*See id.* at 44.) As explained above, Huawei Tech was not silent after Meng's admission. In any event, the defendants' argument is not persuasive.

In its discussion about adoptive admissions in criminal cases, the Advisory Committee observed that "silence may be motivated by advice of counsel or realization that 'anything you say may be used against you.'" Fed. R. Evid. 801(d)(2) advisory comm. n. (d)(2)(B). The Second Circuit has held that Rule 801(d)(2)(B) did not apply, for example, where one defendant did not deny an incriminating statement made by a co-defendant when both were under arrest and in the presence of police officers. *Flecha*, 539 F.2d at 876–77; *see also United States v. Lo*

*Biondo*, 135 F.2d 130, 131–32 (2d Cir. 1943).  But Flecha was not a corporate defendant seeking to exclude the admissions of its CFO; he was a person, in police custody, who exercised his right not to say anything when his co-defendant made an admission.  "Corporations do not have a Fifth Amendment right against self-incrimination."  *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 92 n.5 (2d Cir. 2012) (citing *Braswell v. United States*, 487 U.S. 99, 105 (1988)). "They thus face no Hobson's choice between asserting a constitutionally protected privilege and suffering an adverse inference if they do so."  *Allstate Ins. Co. v. Howell*, No. 09-CV-4660, 2010 WL 2091660, at *2 (E.D.N.Y. May 25, 2010).  Accordingly, the Statement of Facts is admissible non-hearsay under Rule 801(d)(2)(B) as an adoptive admission.[10]

   **b.   Whether Admitting the Statement of Facts Violates the Confrontation Clause**

   "The Confrontation Clause bars admission of 'testimonial statements' in a criminal case where the defendant does not have the opportunity to cross-examine the author of those statements."  *United States v. Gonzalez*, 144 F.4th 396, 407 (2d Cir. 2025) (citing *Crawford*, 541 U.S. at 53–54), *cert. denied sub nom. Landji v. United States*, No. 25-5908, 2026 WL 858446 (U.S. Mar. 30, 2026), and *cert. denied sub nom. Adamu v. United States*, No. 25-512, 2026 WL 858475 (U.S. Mar. 30, 2026).  The government does not dispute that the Statement of Facts is testimonial.  It argues, however, that because statements admitted under Rule 801(d)(2) are non-hearsay, their admission "does not implicate the Confrontation Clause."  (ECF No. 590 at 36–37.)  The defendants respond that the evidentiary rules the government cites were not recognized "at the time of the Founding," so admitting the factual statement would violate the Confrontation Clause.  (ECF No. 622 at 32–33.)

---

[10] Because the Court concludes that the Statement of Facts is admissible as an adoptive admission, it does not address the government's alternative argument that it is admissible as the statement of an agent or employee under Rule 801(d)(2)(D).

The Confrontation Clause "bars only the introduction of hearsay — meaning, out-of-court statements offered 'to prove the truth of the matter asserted.'" *Smith v. Arizona*, 602 U.S. 779, 785 (2024) (quoting *Anderson v. United States*, 417 U.S. 211, 219 (1974)). The Supreme Court held in *Crawford v. Washington* that courts analyzing Confrontation Clause claims are not bound by the definition of hearsay in the Federal Rules of Evidence. *See Crawford*, 541 U.S. at 61; *see also Smith*, 602 U.S. at 794. The Supreme Court has "acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted." *Giles*, 554 U.S. at 358. These exceptions are (1) "declarations made by a speaker who was both on the brink of death and aware that he was dying," and (2) "forfeiture by wrongdoing." *Id.* at 358–59. The Supreme Court explained in *Giles v. California* that these exceptions are justified because they were "founding-era exception[s] to the confrontation right." *Id.* at 358.

The parties dispute whether common law at the time of the founding recognized adoption or agency as exceptions to the right to confrontation. The defendants claim that "at the time of the Founding, the agency-statement exception was limited to statements made in carrying out the agent's responsibilities, not the agent's personal statements about their prior actions." (ECF No. 622 at 32.) As for the adoptive admission theory, the defendants say that "[a]doption by silence was unknown to the common law at the time of the Confrontation Clause, and its 19th century development was largely limited to civil cases, not the criminal context." (*Id.* at 33.)

However, even after *Crawford* and *Giles*, "the Confrontation Clause certainly does not exclude personal admissions by the defendant." 2 McCormick On Evid. § 252 (9th ed.). "[T]he opponent should not be able to exclude statements under the Confrontation Clause because she is unable to cross-examine herself . . . [f]or example, introduction of adoptive admissions also does not violate the confrontation doctrine as developed under *Crawford*." *Id.* at n.57. While

14

*Crawford* was an "emphatic rejection of the reliability-based approach of *Ohio v. Roberts*," *Hemphill v. New York*, 595 U.S. 140, 152 (2022), "[t]he rationale for admitting [adoptive admissions] is rooted in the 'adversary system, rather than satisfaction of the conditions of the hearsay rule,' namely, reliability." *In re: Gen. Motors LLC*, No. 14-MD-2543, 2015 WL 8578945, at *2 (S.D.N.Y. Dec. 9, 2015) (quoting *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 238 (2d Cir. 1999)). As a result, courts have found that adoptive admissions do not implicate the Confrontation Clause and have not analyzed whether adoptive admissions were recognized at common law as an exception to the confrontation right. *See, e.g.*, *Porter v. Yates*, No. 07-CV-5950, 2009 WL 412127, at *27 (C.D. Cal. Feb. 13, 2009) ("By 'adopting' [a detective and co-defendant's] statements, petitioner is, in effect, the declarant. Thus, the Confrontation Clause does not apply because petitioner has the right to confront only 'the witnesses against him[.]'" (quoting U.S. Const. amend. VI)); *People v. Jennings*, 237 P.3d 474, 508 (Cal. 2010) ("[W]hen a defendant has adopted a statement as his own, the defendant himself is, in effect, the declarant. The witness against the defendant is the defendant himself, not the actual declarant; there is no violation of the defendant's right to confront the declarant because the defendant only has the right to confront the witnesses against him." (citation modified)).

The Second Circuit has indicated that a corporation should not be permitted to object on Confrontation Clause grounds to statements of its agents or employees who are "in the eyes of the law, itself," although those cases predate *Crawford* and *Giles*. *United States v. Southland Corp.*, 760 F.2d 1366, 1377 (2d Cir. 1985); *United States v. King*, 134 F.3d 1173, 1175 (2d Cir. 1998) (holding that "a Confrontation Clause objection is not available where a corporation, owned entirely by one individual, seeks to preclude the use against it of that individual's

testimony from a prior trial").[11] Meng was — and is still — Huawei Tech's CFO. As a matter of precedent and common sense, Huawei Tech should not be able to object that admitting the statement of its senior executive about her conduct in connection with her job — which Huawei Tech adopted — violates Huawei Tech's rights. Accordingly, Meng's statement is admissible at trial.[12]

Nor does admitting the Statement of Facts violate the rights of the remaining defendants, Huawei Device, Huawei Device USA, or Futurewei. When "accusatory statements are admissible at a trial against some defendants but not others, the law recognizes that a trial court's instruction to a jury to consider the statements *only* in evaluating the guilt of the defendants against whom they are admissible is generally sufficient to eliminate any Confrontation Clause concern with respect to other defendants." *United States v. Jass*, 569 F.3d 47, 55 (2d Cir. 2009). There is one "narrow exception to this principle." *Richardson v. Marsh*, 481 U.S. 200, 207 (1987). "'[W]here the powerfully incriminating extrajudicial statements of a codefendant, who

---

[11] Huawei Tech complains that the government first argued that "in the eyes of the law," Meng is Huawei Tech itself in its reply brief, and that the Court should strike this argument. (ECF No. 653 at 1.) The Court declines to strike this argument, because the government argued in its opening brief that Huawei Tech adopted Meng's statements, and therefore admitting them would not violate the Confrontation Clause, which relies on similar reasoning. (*See* ECF No. 590 at 36–37.)

[12] In its reply, the government argues that Huawei Tech has procured Meng's absence, and therefore waived its rights under the Confrontation Clause. (ECF No. 637 at 17–19.) In *Giles v. California*, the Supreme Court examined the history of the forfeiture by wrongdoing exception at common law at the time of the founding and concluded that "[t]he manner in which the rule was applied makes plain that unconfronted testimony would *not* be admitted without a showing that the defendant intended to prevent a witness from testifying." 554 U.S. at 361. The exception applies "only when the defendant engaged in conduct *designed* to prevent the witness from testifying." *Id.* at 359; *see also Ervine v. Smith*, No. 22-1165, 2024 WL 3219501, at *2 (2d Cir. June 28, 2024) ("[D]efendants waive their rights under the Confrontation Clause when they (1) are responsible for procuring the unavailability of a witness; and (2) act with an intent to procure that witness's unavailability." (citations omitted)). There is no evidence currently before the Court that Huawei Tech has engaged in conduct to prevent Meng from testifying at trial. The government has subpoenaed Meng to testify at trial (ECF No. 637 at 17 n.9.), and Huawei presumably has control over whether she will comply with that subpoena. Huawei Tech's motion to strike this argument, (ECF No. 653), is denied.

stands accused side-by-side with the defendant,' are admitted at a joint trial, courts 'cannot accept limiting instructions as an adequate substitute for [the defendant's] constitutional right of cross-examination.'" *Jass*, 569 F.3d at 55 (quoting *Bruton v. United States*, 391 U.S. 123, 135–37 (1968)). The Statement of Facts does not "powerfully incriminat[e]" Huawei Device, Huawei Device USA, or Futurewei — it does not name or inculpate them in any way. Therefore, a limiting instruction that the jury may only consider the Statement of Facts against Huawei Tech is sufficient to protect the rights of the other defendants.

### c. Rule 403

The defendants argue in the alternative that the Court should exclude the Statement of Facts under Rule 403. (ECF No. 622 at 45.) The Statement of Facts is probative. It describes Huawei Tech's relationship to Skycom, as well as Meng's misleading representations to one of the victim banks about that relationship and about Huawei Tech's compliance with sanctions regulations. (*See* ECF No. 590-1 at 2–5.) In the defendants' view, the probative value is "substantially outweighed by the dangers of unfair prejudice, juror confusion, and the need to call prosecutors and defense attorneys as necessary fact witnesses." (ECF No. 622 at 45.)

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see also United States v. Figueroa*, 618 F.2d 934, 944 (2d Cir. 1980) ("Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence."). The defendants argue that the Statement of Facts is unduly prejudicial because it "lacks the probative value the government ascribes to it." (ECF No. 622 at 46.) It is for the jury to decide what weight to give Meng's admissions. The evidence is not unfairly prejudicial under Rule 403. Nor is it likely to confuse

17

the jury. Moreover, because the statement speaks for itself, there is no "need to call prosecutors and defense attorneys as necessary fact witnesses." (*Id.* at 45). The Court would not permit such testimony in any event because it would waste time and would be unnecessarily confusing.

Accordingly, the government's motion to admit the Statement of Facts is granted.

## III. Defendants' Motion to Preclude Evidence of Post-March 3, 2003 Conduct by ████ ████

Count Two of the indictment alleges that between 2000 and 2020, Huawei conspired with others to steal trade secrets from other companies. (ECF No. 689 ¶¶ 91–93.) As relevant to the defendants' motion, the indictment alleges that from 2000 and 2003, the defendants worked with ████████████████ to misappropriate trade secrets from ██████ (*Id.* ¶¶ 23, 91–92, 93(b).)[13] ██ founded ████ in July 2002 to compete with ██████ (ECF No. 588 at 3; ECF No. 607 at 4.) Between 2002 and 2010, ████ stole ██████ intellectual property for multiple products and technologies, leading to civil litigation in ██████████████████ ██████████████. (ECF No. 588 at 3–4; ECF No. 607 at 4.) As part of that litigation, the court ordered ██ to produce three computers, including his home computer, to ██████ forensic experts. (ECF No. 640 at 3–4; ECF No. 607 at 8–9.) Before he turned them over, however, ██ tampered with his computers by running file destruction software on them. (ECF No. 607 at 9.) Nevertheless, ██████ recovered some of ██ communications, including a March 3, 2003 email to the defendants to which ██ attached a 50-page document, marked "HIGHLY CONFIDENTIAL" and "████ Confidential Property," with technical specifications for ████ technology. (ECF No. 640 at 3; ECF No. 607 at 7–9.)

---

[13] The fourth superseding indictment refers to ██ as "Engineer-1," and to ██████ as "Company 2." (ECF No. 606 at 4 n.1.)

After the defendants moved to preclude the government from introducing "any evidence or argument at trial regarding post-March 3, 2003 conduct by ███████████ and its employees" (ECF No. 588 at 2), the government responded that it "intends to present evidence that post-dates March 3, 2003, largely only to the extent it bears on events that occurred between 2000 and 2003" (ECF No. 607 at 6). The defendants now ask the Court to exclude two narrower categories of evidence: (1) that ███ tried to destroy records from the relevant charged time period of 2000 to 2003, and (2) admissions that ████ and ██ made about events from the relevant charged time period of 2000 to 2003 during the civil litigation. (ECF No. 607 at 11; ECF No. 640 at 2–3.)[14] The government has not had an opportunity to respond to the defendants' revised request. As explained below, the Court declines at this point to exclude this evidence.

### a. Evidence Regarding ████ Personal Computer

The government states that it "may" present evidence that "██ in furtherance of the conspiracy, sought to tamper with [his personal computer] in order to destroy records from the 2000 to 2003 period." (ECF No. 607 at 5–6.) The defendants argue that the evidence should be excluded under Federal Rules of Evidence 401, 402, and 403 "as irrelevant and because any scant probative value would be substantially outweighed by a danger of undue prejudice to Huawei, misleading the jury, and wasting time." (ECF No. 640 at 4.)

#### i. Relevance

Because the indictment charges conspiracy, evidence that ██ tampered with his personal computer in an effort to destroy evidence of the conspiracy is generally relevant. "'An act that is

---

[14] The defendants reserve their rights to object to other post-March 3, 2003 evidence at trial. (ECF No. 640 at 2–3.)

alleged to have been done in furtherance of the alleged conspiracy' is considered 'part of the very act charged,' and 'may be admissible as direct evidence of the conspiracy itself.'" *United States v. Clanton*, 758 F. Supp. 3d 93, 102 (E.D.N.Y. 2024) (first quoting *United States v. Smothers*, 652 F. Supp. 3d 271, 284 (E.D.N.Y. 2023); and then quoting *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) (citation modified)). Moreover, "acts or statements designed to conceal an ongoing conspiracy are in furtherance of that conspiracy." *United States v. Eisen*, 974 F.2d 246, 269 n.8 (2d Cir. 1992) (citing *United States v. Beech–Nut Nutrition Corp.*, 871 F.2d 1181, 1199 (2d Cir.1989)). The government may attempt to demonstrate that █ a co-conspirator, attempted to destroy evidence of his wrongdoing during and in furtherance of the conspiracy. (ECF No. 607 at 5–6.) A jury could reasonably conclude that █ tampered with his computer to conceal that he worked with the defendants to steal █ trade secrets while the conspiracy to steal trade secrets was ongoing. *See United States v. Mejia*, 376 F. Supp. 2d 460, 463 (S.D.N.Y. 2005) (admitting evidence of a defendant's attempt to conceal $71,000 he received as compensation for his participation in a drug conspiracy). Therefore, evidence that █ tried to destroy evidence is admissible as an act in furtherance of the conspiracy.

    ii.  *Probative Value*

  The defendants argue that the Court should exclude this evidence under Rule 403 because the "danger of undue prejudice to Huawei" substantially outweighs the probative value. (ECF No. 640 at 4.) According to the defendants, the probative value of this evidence is "scant" because the government has not identified evidence establishing "that Huawei knew of, directed, or participated in" the destruction of evidence, that "█ himself intended to further any ongoing conspiracy with Huawei, or that █ deleted evidence relevant to Huawei in any way." (*Id.* at 4–5.)

It may be that the government cannot prove that ▮ tampered with his computer to conceal a conspiracy with the defendants, rather than to protect himself and ▮ against civil liability. But this goes to the weight of the evidence, not its admissibility. "That a reasonable jury might draw more than one inference from an item of evidence . . . does not make that evidence inadmissible to support one among other possible conclusions." *Mejia*, 376 F. Supp. 2d at 463; *see also United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003) ("Nonconclusive evidence should still be admitted if it makes a proposition more probable than not; factors which make evidence less than conclusive affect only weight, not admissibility." (quoting *S.E.C. v. Singer*, 786 F. Supp. 1158, 1166 (S.D.N.Y.1992))). Rather, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. ▮ attempt to destroy evidence tends to prove the charged conspiracy; whether it actually furthered the conspiracy is a question of fact for the jury to decide.[15] This is true whether the defendants knew what ▮ did or not. It is a "basic principle[]" of conspiracy law that "to be convicted as a member of a conspiracy, a defendant need not know every objective of the conspiracy, every detail of its operation or means employed to achieve the agreed-upon criminal objective, or even the identity of every co-conspirator." *United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979) (citation modified).

---

[15] The defendants cite several cases for the proposition that evidence of co-conspirators' separate criminal activity is inadmissible. (ECF No. 640 at 4–5 (citing *United States v. Priolo*, No. 21-CR-566, 2025 WL 679413, at *24–26, 28 (E.D.N.Y. Mar. 4, 2005); *United States v. Al-Moayad*, 545 F.3d 139, 161–66 (2d Cir. 2008); *United States v. Wassner*, 141 F.R.D. 399, 404–05 (S.D.N.Y. 1992)). None are analogous to this case. In *Priolo*, *Al-Moayad*, and *Wassner*, the government sought to introduce a co-conspirator's acts or statements that were not part of the charged conspiracy. *Priolo*, 2025 WL 679413, at *24–26 (excluding evidence of a co-conspirator's conviction that predated the conspiracy); *Al-Moayad*, 545 F.3d at 161–62 (excluding evidence of a terrorist attack that was not part of the charged conspiracy); *Wassner*, 141 F.R.D. at 404–05 (excluding statements of co-conspirators made "in connection with *other* conspiracies" and "not made in furtherance of the conspiracy alleged in *this* indictment"). Here, the government seeks to introduce evidence that ▮ tampered with his computer in furtherance of the charged conspiracy. (ECF No. 607 at 5–6.)

*iii.    Risk of Prejudice, Misleading the Jury, and Wasting Time*

Like most evidence in criminal cases, evidence of ▮ conduct may tend to prove the defendants' guilt, but it is not unfairly prejudicial under Rule 403. *See United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) ("All evidence introduced against a defendant, if material to an issue in the case, tends to prove guilt, but is not necessarily prejudicial in any sense that matters to the rules of evidence. Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence.") (citation modified)). Evidence that a co-conspirator tampered with a computer is not "any more sensational or disturbing than the crimes with which [the defendants are] charged," the standard for "unfair prejudice" that has been applied by the Second Circuit. *United States v. Pitre*, 960 F.2d 1112, 1120 (2d Cir. 1992); *see also United States v. Townsend*, No. 06-CR-34, 2007 WL 1288597, at *6 (S.D.N.Y. May 1, 2007) ("The probative nature of the evidence is not outweighed by any prejudicial effect, since the evidence at issue is no more inflammatory or sensational than the conduct with which Defendant has been charged."); *United States v. Stevens*, No. 03-CR-669, 2004 WL 2002978, at *2 (S.D.N.Y. Sept. 7, 2004) (collecting cases)).

The defendants also argue that admitting evidence that ▮ tampered with his computer "invites the jury to improperly and unfairly assume Huawei's guilt based on its mere association with ▮ (ECF No. 640 at 7.) However, the Court will give the jury the standard instruction to the effect that the government must prove that the defendants knowingly and intentionally participated in the crimes charged, and that mere association with conspirators is not enough to prove that the defendants were members of the conspiracy. "[I]t is axiomatic that jurors are presumed to follow their instructions." *United States v. Beverly*, 5 F.3d 633, 641 (2d Cir. 1993); *see also United States v. Salameh*, 152 F.3d 88, 117 (2d Cir. 1998) ("[T]o the extent that [the

defendant's] summation may have undermined [a co-conspirator's] defense by indirectly linking him to [a third co-conspirator], any possible prejudice was cured by the district court's jury instruction that '[m]ere association with other people that you found are members of the conspiracy is not enough for you to find a person to be a member . . . [even] a person who has knowledge of a conspiracy and all of its ramifications and does nothing about it is not a co-conspirator. . . . [It's] got to be an intentional joining of the conspiracy.'").

The defendants raise the specter of a "mini-trial" with additional fact and expert witnesses. (ECF No. 640 at 7.) It may be appropriate for the Court to exclude specific pieces of evidence at trial, depending on how the government offers it. *See, e.g.*, *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 664–65 (S.D.N.Y. 2007) (excluding an expert's testimony regarding a non-testifying expert's report because an expert witness "cannot simply be a conduit for the opinion of an unproduced expert"). However, "[e]vidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Chang*, No. 18-CR-681, 2024 WL 3303717, at *3 (E.D.N.Y. July 3, 2024) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001)). The Court will rule on the admissibility of specific evidence at trial.

### b. Admissions During Civil Litigation

The government states that it also "may present certain admissions" that ██ and ████ made "during the civil litigation related to events in the 2000 to 2003 period." (ECF No. 607 at 11.) The defendants argue that the government has not proffered any evidence that these "admissions were in furtherance of any ongoing conspiracy with Huawei at the time they were made," and the admission of such statements "would violate both the Confrontation Clause . . . and the rules against hearsay." (ECF No. 640 at 7–8 (citing *Melendez-Diaz v. Massachusetts*,

557 U.S. 305, 309–10 (2009); *Davis v. Washington*, 547 U.S. 813, 821 (2006); Fed. R. of Evid. 801, 802).)

The government has not described the "admissions" or explained how it intends to offer them, so the Court cannot conclude that they are "clearly inadmissible on all potential grounds." *Chang*, 2024 WL 3303717, at *3. The Supreme Court has determined that statements made "in furtherance of a conspiracy" are "by their nature . . . not testimonial," and thus do not implicate the protections of the Confrontation Clause. *Crawford*, 541 U.S. at 56. Moreover, under Federal Rule of Evidence 801(d)(2)(E), statements "made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay. Fed. R. Evid. 801(d)(2)(E). In the Second Circuit, trial courts considering whether to admit statements under Rule 801(d)(2)(E) follow the procedures enunciated in *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969): "conditionally admit[] co-conspirator statements during the government's presentation of its case," then make the necessary *Geaney* findings "after the government rest[s]." *United States v. Ferguson*, 676 F.3d 260, 273 n.8 (2d Cir. 2011). Accordingly, to the extent the government seeks to admit the statements under Rule 801(d)(2)(E), the Court will follow *Geaney*.

## CONCLUSION

For the above reasons, the government's motions *in limine* are granted, and the defendants' motion *in limine* is denied.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
June 8, 2026