NJM:TGS/MJC
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

18-CR-457 (S-4) (AMD)

**MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTION TO ADMIT AND EXCLUDE TESTIMONY AND
EXHIBITS FROM THE RULE 15 DEPOSITIONS OF ██████████ AND ████
████████**

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and Export
Control Section
National Security Division
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
MATTHEW F. SULLIVAN
Assistant U.S. Attorneys

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

CHRISTOPHER FENTON
Trial Attorney

(Of Counsel)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ii

BACKGROUND .............................................................................................................. 1

LEGAL STANDARD........................................................................................................6

ARGUMENT ..................................................................................................................14

    I.     THE COURT SHOULD OVERRULE THE DEFENDANTS'
          OBJECTIONS TO ███████████'S TESTIMONY AND
          ACCOMPANYING EXHIBITS THAT THE GOVERNMENT HAS
          DESIGNATED ........................................................................................14

    II.    THE COURT SHOULD SUSTAIN THE GOVERNMENT'S
          OBJECTIONS TO THE DFENDANTS' QUESTIONS, ███████████'S
          TESTIMONY, AND THE ACCOMPANYING EXHIBITS THE
          DEFENDANTS HAVE DESIGNATED .................................................20

    III.   THE COURT SHOULD OVERRULE THE DEFENDANTS'
          OBJECTIONS TO ███████████'S TESTIMONY AND
          ACCOMPANYING EXHIBITS THAT THE GOVERNMENT HAS
          DESIGNATED ........................................................................................42

    IV.   THE COURT SHOULD SUSTAIN THE GOVERNMENT'S
          OBJECTIONS TO THE DEFENDANTS' QUESTIONS, ███████
          ███████'S TESTIMONY, AND THE ACCOMPANYING
          EXHIBITS THE DEFENDANTS HAVE DESIGNATED ...................56

REQUEST FOR SEALING................................................................................ 75

CONCLUSION................................................................................................. 75

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bank of Am., Nat'l Ass'n v. Kamico, Inc.*,
No. 11-CV-5255 (MHD), 2012 WL 1449185 (S.D.N.Y. Apr. 24, 2012) ................................. 8

*Boniel v. U.S. Bank N.A.*,
No. 12-CV-3809 (ERK), 2013 WL 1687709 (E.D.N.Y. Apr. 18, 2013).................................. 8

*Borukh v. Experian Info. Sols., Inc.*,
No. 24-CV-6022 (NRM) (JRC), 2025 WL 1220042 (E.D.N.Y. Apr. 28, 2025).............. passim

*Edwards v. Wilkie*,
No. 16-CV-8031(LTS)(OTW), 2019 WL 5957171 (S.D.N.Y. Nov. 13, 2019) ....................... 17

*Grays v. Auto Mart USA, LLC*,
No. 21-1312, 2022 WL 2763096 (10th Cir. July 15, 2022)...................................................... 17

*Guadalupe v. City of New York*, No. 15-CV-220 (CM),
(JCF), 2016 WL 3570545 n.3 (S.D.N.Y. June 24, 2016) ......................................................... 48

*Harger Da Silva v. New York City Transit Auth.*,
No. 17-CV-4550 (FB) (VMS), 2022 WL 1720396 (E.D.N.Y. May 27, 2022) ....................... 43

*Henry v. Champlain Enters., Inc.*,
212 F.R.D. 73 (N.D.N.Y. 2003)................................................................................................ 48

*In re Ollag Constr. Equip. Corp.*,
665 F.2d 43 (2d Cir. 1981)........................................................................................................ 10

*Jordan v. United Cerebral Palsy of N.Y.C., Inc.*,
No. 12-CV-5715 (DLI) (RLM), 2016 WL 9022502 (E.D.N.Y. Mar. 31, 2016) ................. 8, 44

*Lebewohl v. Heart Attack Grill LLC*,
890 F. Supp. 2d 278 (S.D.N.Y. 2012)...................................................................................... 48

*Lugosch v. Pyramid Co.*,
435 F.3d 110 (2d Cir. 2006)...................................................................................................... 74

*Ortiz v. City of New York*,
No. 15-CV-2206 (DLC), 2017 WL 5613735 (S.D.N.Y. Nov. 21, 2017) .................................. 9

*Phoenix Assocs. III v. Stone*,
  60 F.3d 95 (2d Cir. 1995)................................................................................................. 9

*Potamkin Cadillac Corp. v. B.R.I Coverage Corp.*,
  38 F.3d 627 (2d Cir. 1994)............................................................................................... 9

*Pulsecard, Inc. v. Discovery Card Services, Inc.*,
  168 F.R.D. 295 (D. Kan. 1996)...................................................................................... 47

*Quinton v. Am. Express Co.*,
  No. 19-CV-566 (NGG) (JRC), 2025 WL 1994848 (E.D.N.Y. July 17, 2025).................. passim

*Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*,
  629 F.3d 282 (2d Cir. 2010)............................................................................................. 9

*Sanders v. New York City Hum. Res. Admin.*,
  361 F.3d 749 (2d Cir. 2004)........................................................................................... 51

*SCR Joint Venture L.P. v. Warshawsky*,
  559 F.3d 133 (2d Cir. 2009)............................................................................................. 8

*Thompson v. Workmen's Circle Multicare Ctr.*,
  No. 11-CV-6885 (DAB) (HBP), 2015 WL 4591907 (S.D.N.Y. June 9, 2015)................ 43

*United States v. Al-Moayad*,
  545 F.3d 139 (2d Cir. 2008)........................................................................................... 10

*United States v. Amodeo*,
  44 F.3d 141 (2d Cir. 1995)............................................................................................. 74

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008)............................................................................................. 74

*United States v. Blake*,
  195 F. Supp. 3d 605 (S.S.N.Y. 2016.............................................................................. 33

*United States v. Conde*,
  134 F.4th 82 (2d Cir. 2025) ............................................................................... 11, 16, 18

*United States v. Crawford*,
  239 F.3d 1086 (9th Cir. 2001) ................................................................................. 59, 60

*United States v. Davidson*,
  308 F. Supp. 2d 461 (S.D.N.Y. 2004)............................................................................ 13

*United States v. Dupree,*
    706 F.3d 131 (2d Cir. 2013)................................................................................ 12, 16

*United States v. Fox,*
    No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025)............................ 12, 16

*United States v. Gagliardi,*
    506 F.3d 140 (2d Cir. 2007).................................................................................. 11

*United States v. Gotti,*
    457 F. Supp. 2d 395 (S.D.N.Y. 2006)...................................................................... 19

*United States v. Green,*
    No. 12CR83S1235, 2017 WL 4803957 (W.D.N.Y. Oct. 25, 2017) ................................ 37, 57

*United States v. Ibrahim,*
    998 F. Supp. 2d 12 (N.D.N.Y. 2014) ...................................................................... 10

*United States v. Jackson,*
    180 F.3d 55 (2d Cir. 1999)................................................................................... 12

*United States v. Kaufman,*
    617 F. App'x 50 (2d Cir. 2015) ................................................................... 25, 29, 41

*United States v. Komasa,*
    767 F.3d 151 (2d Cir. 2014)............................................................................. passim

*United States v. Leonardi,*
    623 F.2d 746 (2d Cir. 1980)................................................................................. 38

*United States v. Lieberman,*
    637 F.2d 95 (2d Cir. 1980)............................................................................... passim

*United States v. Mahaffy,*
    No. 05-CR-613 (ILG), 2007 WL 1094153 (E.D.N.Y. Apr. 10, 2007) .................................... 13

*United States v. Marin,*
    669 F.2d 73 (2d Cir. 1982)............................................................................... 12, 33

*United States v. Mitchell,*
    502 F.3d 931 (9th Cir. 2007) ............................................................................... 13

*United States v. Monk,*
    577 F. App'x 8 (2d Cir. 2014) ............................................................................... 7

iv

*United States v. Pedroza,*
    750 F.2d 187 (2d Cir. 1984).............................................................................. 13

*United States v. Perez,*
    No. 01-CR-848 (SWK), 2003 WL 721568 (S.D.N.Y. Feb. 28, 2003) ............................... 13, 22

*United States v. Pluta,*
    176 F.3d 43 (2d Cir. 1999).............................................................................. 10, 11

*United States v. Pugliese,*
    153 F.2d 497 (2d Cir. 1945).............................................................................. 7

*United States v. Rommy,*
    506 F.3d 108 (2d Cir. 2007).............................................................................. 51

*United States v. Simmons,*
    No. 23-6771, 2025 WL 615459 (2d Cir. Feb. 26, 2025) ....................................... 7, 8

*United States v. Tin Yat Chin,*
    371 F.3d 31 (2d Cir. 2004).............................................................................. 11

*United States v. Udeokoro,*
    No. 17-CR-629 (AMD), 2023 WL 4138477 (E.D.N.Y. June 22, 2023) .... 25, 29, 41, 70, 71, 72

*United States v. Vallee,*
    304 F. App'x 916 (2d Cir. 2008) ..................................................................... 12

*United States v. Watts,*
    934 F. Supp. 2d 451 (E.D.N.Y. 2013) ............................................................... 7

*United States v. Weaver,*
    806 F.3d 90 (2d Cir. 2017)……………………………………………………..29, 70, 71, 72

*United States v. Williams,*
    205 F.3d 23 (2d Cir. 2000).............................................................................. 9

*Young v. McGinnis,*
    No. 98-CV-281 (JBW), 2006 WL 463507 (E.D.N.Y. Feb. 24, 2006)................... 23, 28, 29, 34

## **Rules**

Fed. R. Civ. P. 32(d)(3)(B) ................................................................................. 14, 15, 17

Fed. R. Crim. P. 15(e) ...................................................................................... 13, 17

Fed. R. Crim. P. 16 .......................................................................................... vi

Fed. R. Crim. P. 611(a) ................................................................................................ passim

Fed. R. Crim. P. 801(d)(2) ........................................................................................... passim
Fed. R. Evid. 401 ................................................................................. 7, 29, 70, 71, 72

Fed. R. Evid. 402 ............................................................................................................ 7

Fed. R. Evid. 403 ....................................................................................................... 5, 7

Fed. R. Evid. 602 .................................................................................................... 24, 29

Fed. R. Evid. 702 ........................................................................................................... vi

Fed. R. Evid. 801 ......................................................................................................... 11

Fed. R. Evid. 801(c) ..................................................................................................... 12

Fed. R. Evid. 801(d)(2)(A) ........................................................................................... 13

Fed. R. Evid. 803 ......................................................................................................... 11

Fed. R. Evid. 803(6) ................................................................................................ passim

Fed. R. Evid. 805 ................................................................................................... passim

Fed. R. Evid. 901(a) ..................................................................................................... 10

Fed. R. Evid. 902(11) ........................................................................................... 11, 16, 18

Fed. R. Evid. 803(6)(D) .................................................................................................. 6

Fed. R. Evid 902(11) ....................................................................................................... 6

Pursuant to the Court's Orders of March 10, 2026, the parties conducted video-recorded depositions of ███████ on March 26, 2026, and ███████ on March 30, 2026. (*See* Ex. A (Transcript of March 26, 2026 Deposition of ███████); Ex. E (Transcript of March 30, 2026 Deposition of ███████)). The parties subsequently designated, and exchanged objections regarding, the deposition testimony and corresponding exhibits they seek to introduce at trial. (*See* Ex. B (Parties' Designations and Objections from ███████ Deposition); Ex. F (Parties' Designations and Objections from ███████ Deposition)). For the reasons set forth below, the government respectfully requests that the Court rule: (1) admissible the portions of the deposition testimony and corresponding exhibits designated by the government; and (2) inadmissible the portions of the deposition testimony and corresponding exhibits to which the government has objected.

BACKGROUND

A. Deponent ███████

███████ is a former employee of ███████, one of the victim banks that the defendants are alleged to have defrauded in the bank and wire fraud charges alleged in Counts Four through Seven. Between approximately 2010 and 2017, ███████ served as ███████'s ███████ ███████. In that capacity, he reported directly to the chief executive officer and the board of directors (Ex. A at 14:19-23), and was responsible for managing ███████ (*id*. at 15:22-16:11).

B. Summary of ███████ Deposition

The government's direct examination of ███████, which lasted approximately two hours, focused almost entirely on the March 31, 2014 meeting of the ███████ ███████ (the "Committee"), which was the bank's "final arbiter" for resolving issues related to

1

reputational risk.   (*Id*. at 17:14-21; 19:11.)   During that meeting, the Committee met to determine whether or not to retain Huawei Technologies Co., Ltd. and its affiliates (collectively, "Huawei" or the "defendants") as a client following several negative news reports about Huawei's conduct in Iran, among other issues.   (*Id*. at 24:23-25:13.)   The Committee ultimately voted to continue the relationship, subject to the receipt of evidence that Huawei had, consistent with its representations to ███ , sold its ownership stake in Skycom.   (*Id*. at 65:5-9.)

The government elicited testimony from ███ regarding the materials that he reviewed to prepare for the meeting, the contents of the meeting itself, and the factors that influenced the Committee's decision to retain Huawei as a client.   ███ testified that such factors included Huawei's denial of wrongdoing in connection with its conduct in Iran (*id*. at 54:24-55:2), and representations that it had sold its ownership stake in Skycom (*id*. at 63:9-64:7) and complied with U.S. sanctions (*id*. 43:24-44:10).   Through ███ 's testimony, the government moved to admit, among other documents, the minutes of the Committee meeting (GX 21621 (Ex. C-3)), as well as two reports that ███ reviewed to prepare for the meeting (GX 1348-2 (Ex. C-1 and GX 21348-3 (Ex. C-2)).   All three documents contained statements made by Huawei which are among the representations the government alleges are materially false.

In order to admit these documents, the government elicited testimony from ███ establishing that each document is a business record, and thus not hearsay, pursuant to Federal Rule of Evidence 803(6)(D).   The defendants' objections focused primarily on the admission of, and testimony regarding, these three documents.   Specifically, as discussed below, the defendants objected to these documents and related testimony on the grounds that they purportedly are not business records, contained second-level hearsay, and were irrelevant and prejudicial.

2



Defense counsel cross-examined ▮▮▮▮▮ for approximately six hours, nearly three times the length of the direct examination.  Among many other topics, defense counsel questioned ▮▮▮▮▮ extensively regarding, and sought to admit documents related to, ▮▮▮▮▮'s ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that same year.   As discussed below, the government objected to these lines of questioning on the grounds that they are irrelevant, prejudicial, and impermissibly sought to introduce unexcepted hearsay.  Defense counsel also asked ▮▮▮▮▮ about a number of other issues that either predated the alleged fraud scheme in this case, were irrelevant, or were far outside the scope of the direct examination.

C.  Deponent ▮▮▮▮▮

For nearly 30 years, ▮▮▮▮▮ has worked as a ▮▮▮▮▮ for ▮▮▮▮▮ ("▮▮▮"), one of the victim-banks that the defendants are charged with defrauding in the wire fraud charges in the Fourth Superseding Indictment (ECF No. 689).   (*See* Ex. E at 11:05-12:05.)   He served as the ▮▮▮▮▮ from approximately 2004 to March 2007.  (*Id.* at 14:8-19:07.)   He also served as a voting member of the ▮▮▮▮▮ from approximately 2013 to 2018.   (*See* Ex. A at 19:08-20:22.)

D.  Summary of ▮▮▮▮▮ Deposition

The government's direct examination of ▮▮▮▮▮, which lasted approximately three hours and twenty minutes, focused largely on:   (i) the measures ▮▮▮ took to ensure compliance with sanctions laws; (ii) ▮▮▮'s policies and procedures for managing sanctions risks posed by its clients, including the functioning of committees within the bank that evaluated the

3

sanctions risk posed by clients, such as the ████████ and ████ (iii) factors those committees considered in deciding how to manage and whether to retain clients with operations in sanctioned countries; and (iv) the documents those committees used in making such decisions, and how such documents are prepared and maintained.

As described below, the government introduced several such documents containing representations attributable to Huawei.  These documents contain statements made by Huawei which are among the representations the government alleges are materially false.  ████████ explained that ████ considered these representations material in deciding whether to retain Huawei as a client and continuing to provide banking services to Huawei.

In order to admit these documents, the government elicited testimony from ████ ████████ establishing that each document is a business record, and thus not hearsay, pursuant to Federal Rule of Evidence 803(6)(D).[1]  The defendants' objections focused primarily on the admission of, and testimony regarding, these documents.   Specifically, as explained below and in Exhibit F, the defendants objected to these documents and related testimony on the grounds that they purportedly are not business records, contain second-level hearsay, and are irrelevant and unfairly prejudicial.

The defendants cross-examined ████████ for over four hours, partly regarding the above topics, but also on a litany of other issues untethered to the direct examination.   In particular, as discussed below, the defendants questioned ████████ regarding, and sought to admit documents related to, ████'s ████ ████████████

---

[1]    Additionally, this memorandum of law attaches as Exhibit G a business records certification from ████ pursuant to Rule 902 authenticating each of the exhibits the government offered during the direct examination of ████████.  (*See* Ex. G (████ Business Records Certification).)   The government received Exhibit G on June 1, 2026.

███████████████████████.  The government objected to these lines of questioning on the grounds that they were irrelevant and prejudicial and constituted an impermissible effort to introduce unexcepted hearsay.

E.  Pending Motions *in Limine*

Two of the government's pending motions *in limine* bear directly on the admissibility of many designated passages of the ████ and ██████ deposition testimony.

The government's preliminary motion *in limine*, filed on December 1, 2025, explained why the Court should preclude cross-examination and evidence regarding prior enforcement proceedings involving the victim banks, including the ████ and ███ ████ as well as ██████████████████████ (ECF. No. 589, hereafter "Preliminary MIL," at 3-11.)  The government argued in that motion that the Court should preclude cross-examination and evidence regarding the prior enforcement proceedings because they are irrelevant to any disputed issue in this case, including the materiality of Huawei's misstatements.  (*Id*. at 7.)  Additionally, the government argued that pursuant to Federal Rule Evidence 403, the probative value of these issues, if any, would be substantially outweighed by the risk of confusing and misleading the jury, wasting time, and unduly prejudicing the government.  (*Id*. at 9-10.)  Permitting such questioning and evidence would essentially put ████ and ████—that is, the victims—on trial, and require the government to introduce considerable additional evidence to provide context and thereby needlessly lengthen the trial.

The government's supplemental motion *in limine*, filed on April 24, 2026, explained why the Court should admit statements attributed to Huawei in certain types of records created by victim banks, including the aforementioned ████ and ████ documents that the government moved to admit through ████████'s and ██████████'s testimony.  (ECF No. 691,

hereafter "Supp. MIL," at 1-10.)   In that motion, the government argued that these and other documents should be admitted pursuant to Federal Rules of Evidence 803(6)(D) and 902(11) because they are business records.   (*Id*. at 5.)   Statements attributed to Huawei contained within these business records—which the defendants incorrectly describe in their objections as hearsay-within-hearsay—are admissible non-hearsay[2] because they are not offered for their truth; indeed, the government alleges they are false.   (*Id*. at 6.)   Finally, the government argues that Huawei should be precluded from offering its own statements contained in victim-bank business records because a defendant is not permitted to introduce self-serving hearsay.   (*Id*. at 7-10.)

LEGAL STANDARD

Below, the government outlines the legal standards applicable to the objections offered by both parties concerning the ██████ and █████████ depositions.

A.  Relevance

"Relevant evidence is admissible unless" the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court "provide[] otherwise."   Fed. R. Evid. 402.   "Evidence is relevant if:   (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."   Fed. R. Evid. 401.   "Irrelevant evidence is not admissible."   Fed. R. Evid. 402.   "[T]he threshold for relevance is low. 'All that is necessary, and all that is possible, is that each bit [of evidence] may have enough rational connection with the issue to be considered a factor contributing to an answer.'"   *United States v. Monk*, 577 F. App'x 8, 9-10 (2d Cir. 2014) (quoting *United States v. Pugliese*, 153 F.2d 497, 500 (2d Cir. 1945)).

---

[2]      The documents themselves are not hearsay because they are all business records kept by the banks in the ordinary course of business.   *See* Fed. R. Evid. 803(6), 901, 902(11).

B. Federal Rule of Evidence 403

Relevant evidence is subject to the probative-prejudice balancing test of Federal Rule of Evidence 403. *See United States v. Watts*, 934 F. Supp. 2d 451, 462-63 (E.D.N.Y. 2013). Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The "district court is obviously in the best position to do the balancing mandated by Rule 403." *United States v. Simmons*, No. 23-6771, 2025 WL 615459, at *4 (2d Cir. Feb. 26, 2025) (internal quotations omitted).

C. Foundation for Personal Knowledge

Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.*

"[T]he personal knowledge of a witness may be inferred based on her position with a company." *Borukh v. Experian Info. Sols., Inc.*, No. 24-CV-6022 (NRM) (JRC), 2025 WL 1220042, at *5 (E.D.N.Y. Apr. 28, 2025) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138-39 (2d Cir. 2009)); *see also Jordan v. United Cerebral Palsy of N.Y.C., Inc.*, No. 12-CV-5715 (DLI) (RLM), 2016 WL 9022502, at *4 (E.D.N.Y. Mar. 31, 2016) (explaining that witness's role as "Acting Director" of program gave him "primary knowledge" of the information in his declaration), *aff'd*, 682 F. App'x 48 (2d Cir. 2017)).

Additionally, "a witness may establish personal knowledge based on a review of business records." *See Quinton v. Am. Express Co.*, No. 19-CV-566 (NGG) (JRC), 2025 WL

7

1994848, at *8 (E.D.N.Y. July 17, 2025) (permitting testimony of corporate employee based on her experience with her employer and her review of the company's business records) (citing *Borukh*, 2025 WL 1220042, at *6-7 (collecting cases)); *Bank of Am., Nat'l Ass'n v. Kamico, Inc.*, No. 11-CV-5255 (MHD), 2012 WL 1449185, at *6 (S.D.N.Y. Apr. 24, 2012) (holding that there was no question as to the competence of a declaration by the vice president of the plaintiff-company because as a vice president, the witness was both qualified, and duty-bound, to review the relevant business records of the plaintiff before making his affidavit). "It is axiomatic that a corporate representative may testify . . . based on knowledge gained from a review of corporate books and records." *Boniel v. U.S. Bank N.A.*, No. 12-CV-3809 (ERK), 2013 WL 1687709, at *1 (E.D.N.Y. Apr. 18, 2013).

Thus, a corporate employee may testify about the company's policies and procedures based on his or her experience with the company and review of the company's business records. *See, e.g.*, *Borukh*, 2025 WL 1220042, at *5-6 (internal citations omitted) (finding witness possessed sufficient personal knowledge where he described the process the plaintiff took to enroll in a program, including the forms the plaintiff completed, and based his declaration on a review of his company's relevant business records concerning same); *Quinton*, 2025 WL 1994848, at *8 (same).

D.  Foundation for Admission of Business Records

"In all cases, the principal precondition to admission of documents as business records pursuant to Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Ortiz v. City of New York*, No. 15-CV-2206 (DLC), 2017 WL 5613735, at *6 (S.D.N.Y. Nov. 21, 2017) (quoting *Potamkin Cadillac Corp. v. B.R.I Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994)) (internal quotation marks omitted).

8

"To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'" *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014) (internal quotations omitted). "'The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *Id.* (quoting *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995)) (internal quotation marks omitted). "[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person." *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 289 (2d Cir. 2010) (internal quotation omitted); *see also United States v. Williams*, 205 F.3d 23, 34-35 (2d Cir. 2000) (concluding that the government laid a proper foundation where the bank employee who testified was sufficiently familiar with the bank's practice and testified that the document was created as part of that practice); *In re Ollag Constr. Equip. Corp.,* 665 F.2d 43, 46 (2d Cir. 1981) (explaining that "business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations," and noting that the relevant financial statements were requested by a bank and were regularly used by the bank to make decisions whether to extend credit); *United States v. Lieberman*, 637 F.2d 95, 100 (2d Cir. 1980) ("[T]he requisite knowledge may be inferred from the fact that it was someone's business to obtain such information. Evidence that it was someone's business duty in the organization's routine to observe the matter will be prima facie sufficient to establish actual knowledge. This does not dispense with the need for personal knowledge, but permits it to be proved by evidence of practice and a reasonable assumption that general practice was followed in regard to a particular matter.") (internal citations omitted). "Using an 'automated

9

process' to compile the records in question does not render the documents inadmissible." *Komasa*, 767 F.3d at 156.

Moreover, "foundational questions address weight not admissibility." *United States v. Ibrahim*, 998 F. Supp. 2d 12, 15 n.4 (N.D.N.Y. 2014).

E. <u>Authentication of Business Records</u>

Federal Rule of Evidence 901 provides that to properly authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). The bar for authentication is "not particularly high." *United States v. Al-Moayad*, 545 F.3d 139, 172-73 (2d Cir. 2008) (internal citation omitted). "[T]he burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal citation omitted). "Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." *Id.* (internal citation omitted). This "minimal" standard can be satisfied by the "testimony of a witness with knowledge that a matter is what it is claimed to be." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal citation omitted). Once this "minimal" standard is met, "the other party then remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the *weight* of the evidence—not to its *admissibility*." *United States v. Tin Yat Chin*, 371 F.3d 31, 38 (2d Cir. 2004).

"Rule 902(11), referred to in Rule 803(6)(D), provides, as relevant here, that '[t]he original or a copy of a domestic record *that meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal

10

statute or a rule prescribed by the Supreme Court,' is 'self-authenticating,' meaning that it '*require[s] no extrinsic evidence of authenticity in order to be admitted*.' Fed. R. Evid. 902(11) (emphases added)." *United States v. Conde*, 134 F.4th 82, 88 (2d Cir. 2025). "Accordingly, Rules 803(6) and 902(11) create a framework for the authentication and admission of business records 'without the expense and inconvenience of producing time-consuming foundation witnesses.'" *Id.* (quoting *Komasa*, 767 F.3d at 15 and Fed. R. Evid. 803 Advisory Committee Note (2000)). "The custodian need not have personal knowledge of the actual creation of the document' to lay a proper foundation." *Id.* (quoting *Komasa*, 767 F.3d at 156).

F. <u>Hearsay</u>

Any statement that is made by a declarant not testifying at trial, offered in evidence to prove the truth of the matter asserted, is excluded as hearsay absent the applicability of one of the hearsay exceptions provided in the Federal Rules of Evidence. *See* Fed. R. Evid. 801, 802, 803, 804. A document that contains two levels of hearsay—*i.e.*, the first level being the document itself, and the second level being the hearsay statements in the document—is admissible only if each level of hearsay satisfies a hearsay exception. *See* Fed. R. Evid. 805. Where a party offers an out-of-court statement *not* for its truth, but for some other purpose, such as demonstrating that a party made the statement, the falsity of the statement, or the effect on the listener, the statement is not hearsay. *See* Fed. R. Evid. 801(c); *see also* Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay") (internal citation omitted); *United States v. Vallee*, 304 F. App'x 916, 919 (2d Cir. 2008) ("[T]he testimony at issue was not hearsay because it was not admitted for the truth . . . but

11

rather as evidence of [the defendant's] state of mind."); *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *9 (E.D.N.Y. July 23, 2025) ("Where the proponent offers records into evidence to prove the falsity of the statements therein or to link the records to the defendant, courts within the Second Circuit admit such records into evidence because they are not offered for the truth of the matters asserted in the records.").

A defendant generally is prohibited from introducing its own out-of-court statements at trial. *See United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999) (no abuse of discretion where district court omitted portions of statements which "consisted largely of [defendant's] own self-serving statements, which, as offered by him, are inadmissible hearsay"). Therefore, a "court may . . . exclude any portion that consists largely of a defendant's own self-serving statements, which, as offered by him, are inadmissible hearsay." *United States v. Mahaffy*, No. 05-CR-613 (ILG), 2007 WL 1094153, at *2 (E.D.N.Y. Apr. 10, 2007) (internal citation omitted).

The government, on the other hand, may introduce a defendant's statements, because when introduced by the government, the statements are not hearsay. A statement is not hearsay if it is "offered against a party and . . . was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). However, while the government may introduce a defendant's statements, a defendant may not do the same in an "attempt to get [his] side of the [ ] story in front of the jury without him testifying and opening him up to cross-examination." *United States v. Davidson*, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004); *see United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) (defendant was properly precluded from

12

eliciting, on cross-examination of government agents, exculpatory statements that he had made during interviews with agents, since those statements were inadmissible hearsay).

G. Scope

It is well established that the Court has broad discretion to limit the scope of cross-examination.  *See, e.g.*, *United States v. Pedroza*, 750 F.2d 187, 195 (2d Cir. 1984) (scope and extent of cross-examination are within sound discretion of trial court).   However, a trial court does not abuse its discretion in limiting cross-examination "to topics addressed in direct testimony." *United States v. Perez*, No. 01-CR-848 (SWK), 2003 WL 721568, at *6 (S.D.N.Y. Feb. 28, 2003). Additionally, a trial court is "well within its discretion in limiting cross-examination on a topic irrelevant to the charges at hand."  *Id*. at *9.

H. Waivable Objections

Under Rule 15, "a deposition must be taken and filed in the same manner as a deposition in a civil action."  *See* Fed. R. Crim. P. 15(e).   Consequently, an objection pertaining to the form of a question, which can be cured by restating the question, is waived unless timely made during the deposition.  *See* Fed. R. Civ. P. 32(d)(3)(B).

ARGUMENT[3]

I.       THE COURT SHOULD OVERRULE THE DEFENDANTS' OBJECTIONS TO ██████████'S TESTIMONY AND ACCOMPANYING EXHIBITS THAT THE GOVERNMENT HAS DESIGNATED

The defendants' main objections to the government's direct examination of ████████ concerned the admissibility and contents of business records, namely, internal ████

---

[3]      The government is not addressing the designated portions of the direct examinations to which the defendants do not object, or the designated portions of the cross-examinations to which the government does not object.   To the extent that any of the government's objections stated in Exhibits B and F are not asserted herein, the government

reports prepared to brief ▮▮▮▮▮ and the Committee members in advance of the March 31, 2014 meeting on issues pertaining to ▮▮▮▮'s decision whether or not to retain Huawei as client. The defendants also asserted purported objections related to documents withheld or redacted by ▮▮▮▮ on the basis of attorney-client and work product privilege. For the reasons stated below, the defendants' objections are meritless and should be overruled.

A.  Exhibit A at 24:16-24:22, 72:17-73:3 (Defense Objection: Improper Sword and Shield Use of Privileged Information)

The testimony in these designated passages pertained to the Committee's decision in 2017 to terminate ▮▮▮▮'s relationship with Huawei. ▮▮▮▮ did not produce to the government the minutes of that 2017 Committee meeting on the grounds that they are "protected by all applicable privileges, including the attorney-client privilege and work product privilege." (*See* Ex. C-5 (June 2, 2026 letter from ▮▮▮▮ counsel).) Although ▮▮▮▮ testified about his understanding of why ▮▮▮▮ terminated its relationship with Huawei, ▮▮▮▮ has confirmed that he "did not disclose any privileged information during his deposition." (*Id.*) The defendants' argument appears to be that because the minutes of the 2017 Committee meeting are privileged, the Court must preclude ▮▮▮▮'s testimony about the termination of ▮▮▮▮'s relationship with Huawei. This argument is baseless.

The "improper sword and shield use of privileged information" is not a cognizable objection under the Federal Rules of Evidence. Even if it it were, it lacks merit because there is no basis to conclude that ▮▮▮▮ used any form of privilege as "sword" or a "shield": (1) the witness never once invoked any form of privilege as a reason why he could not answer any

---

withdraws those objections. Additionally, to the extent that the government's designations and objections differ from those stated in Exhibits B and F, the designations and objections stated herein are controlling.

14

question in this passage, or at any time; (2) the witness was never instructed by his counsel in this passage, or at any time, to decline to answer any question by defense or government counsel on the basis of any privilege; and (3) the questions in this passage did not call for, and the witness did not respond with, privileged information.   Accordingly, the Court should overrule these objections.

B.   Exhibit A at 31:18-39:25, 40:14-44:04, 44:14-48:11, 48:14-24 (Defense Objections: Hearsay-Not a Business Record, Second-Level Hearsay, Rules 401 and 403)

The defendants asserted these objections to both the admission of GX 21348-2 (Ex. C-1) and to the testimony about this exhibit in the designated passages.   The Court should overrule these objections.

*First*, the Court should overrule the objections to GX 21348-2 (Ex. C-1) because it is admissible under the business records exception to the hearsay bar.   This exhibit is a report prepared by ▮▮▮ employees for the Committee's March 31, 2014 meeting which presented factors that weighed both in support of, and against, ▮▮▮'s continued relationship with Huawei. The government laid the foundation required by Rule 803(6) to admit this document as a business record (Ex. A at 31:18-33:15).   *See Komasa*, 767 F.3d at 15.   Additionally, the government will independently establish that this document is a business record through a Rule 902(11) certification.   *See Conde*, 134 F.4th at 88.

*Second*, for the reasons stated in the government's supplemental motion *in limine* (Supp. MIL 1-10), the objected-to statements within GX 21348-2 (Ex. C-1) about which ▮▮▮ testified and read into the record are not hearsay because they are not offered for their truth, but rather: (1) for their effect on the listeners, namely, ▮▮▮ and the Committee (Ex. A at 38:22-39:25, 44:14-45:6, 46:4-25, 48:1-20); or (2) to demonstrate that Huawei made the statements which are among the misrepresentations forming the basis of the charged fraud (*id*. at

15

40:14-21, 41:16-42:5, 45:20-23, 47:10-25).  *See, e.g.*, *Dupree*, 706 F.3d at 136 ("a statement offered to show its effect on the listener is not hearsay"); *Fox*, 2025 WL 2076664, at *9 (admitting loan contracts in wire fraud conspiracy prosecution "to prove the falsity of the statements therein").

*Third*, ████████'s testimony in these passages is indisputably relevant to the bank and wire fraud charges because it explained what the Committee is, how it functions, and why it was considering the viability of ████'s relationship with Huawei in March 2014.   There is no basis to exclude this testimony under Rule 403.

C.   Exhibit A at 47:10-47:19 (Defense Objection: Leading Question)

The Court should overrule this objection because the question at issue was not a leading question and, even if it was—and it was not—the defendants waived this objection.   The question asks, essentially, whether based on Huawei's representation to ████, as recorded in GX 21348-2 (Ex. C-1 at 4), "that its shareholding in Skycom was sold in 2009," ████████ understood that there was no longer an "ownership relationship" between Huawei and Skycom in March 2014.   This question does not suggest the answer to the witness.

Additionally, although defense counsel objected to this question during the deposition, he did not make a "form" objection.   Because a leading objection is an objection to the form of a question, the defendants waived this objection because defense counsel did not timely assert it during the deposition.  *See* Fed. R. Crim. P. 15(e); Fed. R. Civ. P. 32(d)(3)(B).   The reason for this requirement is plain—parties should provide notice of the alleged defect in the form of the question in time for the question to be rephrased, rather than sandbagging and then moving to exclude otherwise-admissible testimony for technical reasons.  *See, e.g.*, *Grays v. Auto Mart USA, LLC*, No. 21-1312, 2022 WL 2763096, at *4 (10th Cir. July 15, 2022) (stating that Fed. R. Civ. P.   32(d)(3)(B)  requires   "objections   to   the   form   of   a   question"   to   be   raised

"contemporaneously"); *Edwards v. Wilkie*, No. 16-CV-8031(LTS)(OTW), 2019 WL 5957171, at *2 (S.D.N.Y. Nov. 13, 2019) (stating that Fed. R. Civ. P. 32(d)(3)(B) requires timely and contemporaneous objections necessary for objections to form and relating to matters that "might have been corrected at that time").

    D.   Exhibit A at 48:25-56:14 (Defense Objections: Hearsay-Not a Business Record, Second-Level Hearsay, Rules 401 and 403)

The defendants asserted these objections to both the admission of GX 21348-3 (Ex. C-2) and to the testimony about this exhibit in the designated passages. The Court should overrule these objections.

*First*, the Court should overrule the objections as to GX 21348-3 (Ex. C-2) because it is admissible under the business records exception to the hearsay bar. This exhibit is another report prepared by ▮▮▮▮ employees for the Committee's March 31, 2014 meeting which presented factors that weighed both in support of, and against, ▮▮▮▮'s continued relationship with Huawei. The government laid the foundation required by Rule 803(6) to admit this document as a business record (Ex. A at 48:25-49:16). *See Komasa*, 767 F.3d at 156 Additionally, the government will independently establish that this document is a business record through a Rule 902(11) certification. *See Conde*, 134 F.4th at 88.

*Second*, for the reasons stated in the government's supplemental motion *in limine* (Supp. MIL 1-10), the objected-to statements within GX 21348-3 (Ex. C-2) about which ▮▮▮▮▮▮ testified and read into the record are not hearsay because they are not offered for their truth, but rather, for their effect on the listeners, namely, ▮▮▮▮▮▮ (Ex. A, 51:8-10), the Committee (*id*. 52:21-53:6, 53:12-54:16, 55:3-56:2), and another committee at ▮▮▮▮ called the Asia Pacific Client Selection Committee (*id*. 52:2-9).

17

*Third*, ████████'s testimony in this designated passage is indisputably relevant to the bank and wire fraud charges because it explained why and how the Committee was considering the viability of ████'s relationship with Huawei in March 2014.   There is no basis to exclude this testimony under Rule 403.

E.   Exhibit A at 56:18-58:1 (Defense Objections: Over-Redaction and Rule 106)

The defendants objected to the admission of GX 21621 (Ex. C-3)—the minutes of the March 31, 2014 Committee meeting—on the grounds that the section of the minutes pertaining to Huawei is overreacted and, on account of those redactions, rendered misleading and incomplete under Rule 106.

*First*, over-redaction is not a cognizable objection under the Federal Rules of Evidence.   In any event, the government does not possess a version of GX 21621 in which the Huawei section is "completely unredacted."   The redactions were made by ████, which holds the privileges that are the bases of the redactions, not the government.

*Second*, Rule 106 is not implicated because there is no indication that the sections of GX 21621 are "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact."   *United States v. Gotti*, 457 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2006).

*Third*, there is no indication that the redacted portions of GX 21621 are even admissible.   Indeed, the government produced another version of this document in which one of the sentences in the Huawei section that is redacted in GX 21621 is unredacted, which defense counsel showed to ████████ as DX 107.6 (Ex. D-7).   (Ex. A 183:13-186:10.)   The unredacted sentence in DX 107.6 that is not visible in GX 21621 states: "████ clarified that ████████ (member of ████ FSCV) had engaged with the government who confirmed they were

18

comfortable with Huawei." As discussed below in Section II.U, this sentence is pure hearsay, irrelevant, and risks confusing the jury as the purported "comfort[]" of the unspecified "government" with Huawei will likely be misinterpreted as an official "government" judgment on the conduct at issue this case.

Accordingly, the Court should overrule these objections.

F.   Exhibit A at 70:23-71:5 (Defense Objection: Question Mischaracterizes the Document)

The defendants objected to the question in this passage on the grounds that it purportedly mischaracterized the document about which the government was questioning ██████. The document, GX 21352-2 (Ex. C-4), is an action log that tracked open items from the Committee's March 31, 2014 meeting, one of which was to "Monitor for receipt of appropriate evidence relating to the relationship between Huawei and Skycom." (*Id*. at 3.) The log states that this action item, *i.e.*, the *receipt* of such of evidence, was completed when ████'s global relationship banker—the banker primarily responsible for managing the Huawei relationship— "witnessed Huawei's sales contract for Skycom stating that it sold its entire stake in the company to a third party." (*Id*.) The question at issue by government counsel expressly incorporated by reference this description: "[F]ollowing the receipt of the sales contract *as described in the log*, did the relationship between ████ and Huawei continue?" (Ex. A at 70:23-25 (emphasis added).) The defendants appear to object to this phrasing because the log stated that the banker "witnessed," but not "receive" the contract. A question that is qualified by what is stated in a document does not mischaracterize that document. Accordingly, the Court should overrule this objection.

II.     THE COURT SHOULD SUSTAIN THE GOVERNMENT'S OBJECTIONS TO THE DEFENDANTS' QUESTIONS, ███████████'S TESTIMONY, AND THE ACCOMPANYING EXHIBITS THE DEFENDANTS HAVE DESIGNATED

The government's main objections to the defendants' cross-examination of ███████ followed the arguments raised in its preliminary and supplemental motions *in limine*, namely, and respectively, that the Court should preclude cross-examination and evidence regarding ██████████████████████████ and that the defendants should not be permitted to admit unexcepted second-level hearsay from documents the government seeks to admit as business records.    Additionally, defense counsel asked ███████ about a number of issues that were irrelevant to the proof of the alleged fraud scheme, were far outside the scope of the direct examination, or both.    The government also objected to a number of questions by defense counsel that improperly assumed facts that were not in evidence.    For the reasons stated below, the Court should sustain the government's objections.

A.  Exhibit A at 83:18-87:16, 87:23-96:24, 97:2-103:13, 103:19-106:8, 126:13-127:16, 237:10-11, 14-16 (DX 142, 143, 144, 149) (Government Objections: Subject of Pending Motion *in Limine*, Relevance, Rule 403, Second-Level Hearsay, Scope)

The government objects to the admission of: DX 142 (Ex. D-1), the ██████ ██████

████████████████████████████████████████████████

█████████████████████████████████████  ████████  ████████████

███████  The government further objects to the testimony about these exhibits in these designated passages.

*First*, the government objects on the grounds of relevance and Rule 403 for the reasons stated in its preliminary motion *in limine*.  (*See* Preliminary MIL at 7-11.)    Cross-examination and evidence regarding the ██████ ████████████████████ should be precluded because they are factually and legally irrelevant to the jury's assessment of the materiality of the

defendants' fraudulent statements, or any other element of the bank and wire fraud charges.  (*Id*.) To the extent there is any probative value to cross-examination or evidence regarding these topics—and there is not—it is substantially outweighed by the risk of confusing and misleading the jury, wasting time, and unduly prejudicing the government.  (*Id*.)  Permitting cross-examination or evidence concerning these issues would effectively put ███ and the other victim-banks on trial, which is precisely the type of risk that Rule 403 is designed to prevent.  (*Id.*)

*Second*, the government objects on hearsay grounds.  The entirety of DX 142, 143, 144, 149—*i.e.*, the substantive contents of, respectively, the ████████████████████ ████████████████—constitute unexcepted second-level hearsay which precludes both the admission of these documents and any testimony related thereto.  *See* Fed. R. Evid. 805.  Even if these documents are admissible—and they are not for the reasons stated in the government's preliminary motion *in limine*—their contents are not.

*Third*, the government objects on the grounds that any testimony related to the ████████████████████ is outside of the scope of the direct examination and should be excluded.  The government's direct examination of ████████ was predominantly focused on the March 31, 2014 Committee meeting.  The ████ ████████████████ and all documents and testimony related thereto, are thus completely unrelated to the subjects of the direct examination and are properly excluded.  *See Perez*, 2003 WL 721568, at *6 (it is within the discretion of the trial court to limit cross-examination "to topics addressed in direct testimony").

Accordingly, the Court should sustain the government's objections.

B. <u>Exhibit A at 108:19-109:8 (Government Objections: Facts Not in Evidence, Counsel Testifying)</u>

The government objects to the questions and testimony in this designated passage on the grounds that defense counsel improperly asserted facts not in evidence in the guise of asking

21

a leading question.   Defense counsel showed ██████ a photograph for identification (DX 231), asserted that the person depicted in the photograph was ██████, and that ██████ was ██████'s lead banker for Huawei.   Counsel then, as a separate matter, asked if the witness remembered ██████.   Counsel's in-the-moment defense of his improper question was to assert that it was a leading question—but a proper leading question might have been, "██████ was the lead relationship banker for Huawei in ██████, right?"   Posing the question as a two-part matter—first asserting a fact ("██████ was the lead relationship banker for Huawei"), and second asking a question that does not rely on the validity of the first part ("[D]o you remember ██████?")—allowed counsel to assert a fact without requesting the witness to comment on it. In other words, it permitted counsel to testify.   Accordingly, the Court should sustain the government's objections.

C. Exhibit A at 111:3-8, 111:15-18 (Government Objection: Facts Not in Evidence)

The government objects to the questions and testimony in these designated passages on the grounds that defense counsel's questions improperly assumed facts in evidence.   Defense counsel asserted that "from 1998 through February 2013, Skycom was a ██████ customer with ██████ bank accounts," and asked ██████ if he was aware of this.   (Ex. A at 111:3-8.) Defense counsel next asked:   "I take it you were not aware that Skycom and Huawei had been using ██████ accounts to make payments related to Iran routinely for years?"   (*Id.* at 111:15-18.) Defense counsel cannot assert facts that had not been established by admissible evidence by phrasing such improper testimony as a leading question.   *See* Fed. R. Crim. P. 611(a) (giving the district court discretion over the manner of witness examinations); *see also Young v. McGinnis*, No. 98-CV-281 (JBW), 2006 WL 463507, at **21-22 (E.D.N.Y. Feb. 24, 2006), *aff'd*, 319 F. App'x 12 (2d Cir. 2009) (finding, during habeas review, that the trial court did not abuse its

22

discretion by sustaining objections to cross-examination questions which improperly assumed facts not in evidence and lacked foundation).   Accordingly, the Court should sustain the government's objection.

D. Exhibit A at 111:20-112:15 (Government Objections: Lack of Personal Knowledge, Foundation, Relevance, and Scope)

The government objects to the questions and testimony in this designated passage on the grounds of lack of personal knowledge, foundation, relevance, and scope.   Defense counsel showed ▌▌▌▌ DX 112 (Ex. D-11) for identification.[4]   DX 112 is a 2007 ▌▌ telegraphic transfer application form between Skycom and ▌▌▌ for the remittance of a Euro-denominated payment.   Upon being presented with the document, ▌▌▌▌ denied having ever seen it or any document like it.   (Ex. A, 112:9-15.)   After ▌▌▌▌ confirmed that he had no personal knowledge of this document, defense counsel should have ended this line of inquiry.   *See* Fed. R. Evid. 602 ("[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").   Nonetheless, defense counsel proceeded to ask ▌▌▌▌ questions about the contents of DX 112—all of which lacked foundation—and to read portions of the document into the record despite not having moved it into evidence.   That is improper.   DX 112, and the questions and testimony related thereto, are also irrelevant because they pertained to a 2007 transaction that predated by several years the fraud scheme in this case, which is alleged to have begun in 2010.   Moreover, the transaction at issue in DX 112 is a Euro-denominated payment, not a U.S. dollar-denominated payment like the kind

---

[4]   The government notes that although defense counsel offered DX 112 (Ex. D-11) into evidence during the deposition (Ex. A at 115:5-8), the defendants did not designate this portion of the transcript (Ex. B at 3).   To the extent this was inadvertent and the defendants intend to admit this exhibit, the government objects on the same grounds stated in Section II.D, as well as hearsay, because defense counsel did lay a business records foundation.

23

at issue in the bank and wire fraud charges.   Finally, questions regarding this document, and more generally, Euro-denominated payments made prior to the beginning of the alleged fraud scheme, were plainly beyond the scope of the direct examination.   Accordingly, the Court should sustain the government's objections.

E.   Exhibit A at 113:21-25, 114:13-115:4 (Government Objections: Relevance, Scope)

The government objects to the questions and testimony in these designated passages on the grounds of relevance and scope.   Here, defense counsel asked ███████ about ████ 's policy in 2007 regarding Euro-denominated transfers between Hong Kong and Iran.   These questions called for irrelevant testimony as the conduct underlying the bank and wire fraud charges is alleged to have begun in 2010 and relates to U.S. dollar transfers through the United States, not Euro-denominated transfers between Hong Kong and Iran in 2007.   The question was also plainly beyond the scope of the direct examination.   Accordingly, the Court should sustain the government's objections.

F.   Exhibit A at 115:21-116:25 (Government Objections: Relevance, Scope)

The government objects to the question in this designated passage on the grounds of relevance and scope.   The questions and testimony in this passage pertained to ████ 's electronic transaction monitoring system for flagging potential sanctions violations.   ████ 's ability, or lack thereof, to detect sanctions violations is irrelevant to the charged conduct in this case.   *See United States v. Kaufman*, 617 F. App'x 50, 52 (2d Cir. 2015) (rejecting challenge to jury instruction that victim negligence, carelessness or gullibility is no defense to bank fraud charges and holding that the instruction "was a proper statement of the law"); *United States v. Udeokoro*, No. 17-CR-629 (AMD), 2023 WL 4138477, at *6 (E.D.N.Y. June 22, 2023) ("It is well-settled in this circuit that a defendant charged with a fraudulent scheme may not assert as a

24

defense the victim's failure to discover the fraud.").   The questions and testimony in this passage were also beyond the scope of the direct examination.   Accordingly, the Court should sustain the government's objections.

G.  Exhibit A at 119:10-25 (Government Objections: Relevance, Scope, and Hearsay)

The government objects to the questions and testimony in this designated passage on the grounds of relevance, scope, and hearsay.  *First*, defense counsel again asked ███████ about ███████'s policy in 2007 regarding Euro transfers, this time between any ███████ account and Iran.   This question is irrelevant, beyond the scope of the direct examination, and should be precluded for the reasons stated above in Sections II.D-E.  *Second*, defense counsel asked: "Do you recall that ███████ claimed publicly that in 2007 it voluntarily discontinued all business with Iranian banks, persons, and entities regardless of currency?  Do you remember that?"   These questions called for unexcepted hearsay regarding ███████'s purported, prior statements, and are irrelevant, beyond the scope of the direct examination, and should be precluded for the reasons stated in Sections II.D-E.   Accordingly, the Court should sustain the government's objections.

H.  Exhibit A at 120:1-121:12 (Government Objections: Subject of Pending Motion in Limine, Relevance, Rule 403, Second-Level Hearsay, Scope)

The government objects to the questions and testimony in this designated passage on the grounds that they are: (1) based entirely on DX 143 (Ex. D-2), ███████████████████ ████████████████████, to which the government objects on the basis of relevance and Rule 403, as well as for the reasons stated Section II.A and in the government's preliminary motion *in limine* (Preliminary MIL at 3-11); (2) based on unexcepted hearsay contained in DX 143 (Ex. D-2); (3) related to ███████'s 2007 policy regarding business with Iranian banks, which is irrelevant for the reasons stated in Sections II.D-E; and (4) beyond the scope of the direct examination. Accordingly, the Court should sustain the government's objections.

I.   Exhibit A at 121:13-15 (Government Objections: Counsel Testifying, Relevance, Scope)

The government objects to the question and testimony in this designated passage on the grounds that defense counsel improperly asserted facts not in evidence in the guise of asking a leading question, relevance, and scope.   Defense counsel asked: "Do you recall that the bank maintained an office in Tehran into 2010, and perhaps later?"   Like the question at issue in Section II.B, defense counsel improperly asserted a fact and, without allowing ▮▮▮▮▮ to comment on it, asked him if he remembered the fact.   Additionally, the question calls for irrelevant testimony.   The gravamen of the bank and wire fraud charges with respect to ▮▮▮ is that Huawei misled the bank about its relationship with Skycom, its compliance with U.S. sanctions, and whether it used ▮▮▮ to facilitate U.S.-dollar payments to support its operations in Iran.   Whether or not ▮▮▮ maintained an office in Iran in 2010 is not probative of any element of those charges.   Finally, this question is beyond the scope of the direct examination. Accordingly, the Court should sustain the government's objections.

J.   Exhibit A at 122:3-123:15 (DX 218) (Government Objections: Foundation, Hearsay, Second-Level Hearsay, Relevance, Scope)

The government objects to the admission of DX 218 (Ex. D-5), as well as to the testimony about this exhibit in this designated passage, on the grounds of foundation, hearsay, second-level hearsay, relevance, and scope.   DX 218 is an ▮▮▮ presentation dated October 2010 which contains a map of ▮▮▮ affiliate offices that states that an ▮▮▮ opened a "representative office" in Tehran in 1999.   (*See* Ex. D-5 at 15.)   Defense counsel did not elicit any foundation to admit this document:

> Q. I should step back. This is a ▮▮▮ presentation dated October 2010, a presentation to the fixed income investors. Do you see that on the first page?
>
> A. I do. I have never seen this document.

26

Q. Okay.

A. But yes.

Q. Does this appear to be similar to formats of ▮▮▮▮ PowerPoints that you are familiar with?

A. I really can't recall.

MR. HEBERLIG: Okay, I move [for] the admission of defense exhibit 218.

▮▮▮▮▮▮ testified that he had never seen DX 218 before (Ex. A, 122:9), and defense counsel did not lay foundation to admit it as a business record.   DX 218 therefore cannot be admitted through ▮▮▮▮▮.   Additionally, because defense counsel did not lay a business records foundation, DX 218 is inadmissible hearsay.   Even if defense counsel had laid the proper foundation to admit DX 218—and he did not—the entirety of its contents, including the map about which he asked the witness, is unexcepted second-level hearsay.   The document and testimony related thereto are also irrelevant to the charged fraud for the reasons stated in Section II.I, as well as beyond the scope of the direct examination.   Accordingly, the Court should sustain the government's objections.

K.   Exhibit A at 123:23-126:8 (Government Objections: Foundation, Hearsay, Second-Level Hearsay, Relevance, Scope)

The government objects to the questions and testimony in this designated passage on the grounds of foundation, hearsay, second-level hearsay, and relevance as they pertain either to: (1) ▮▮▮▮'s former Tehran office, the existence of which is irrelevant for the reasons stated in Section II.I; (2) DX 218 (Ex. D-5), which is inadmissible for the reasons stated in Section II.J; and (3) passages in the ▮▮▮▮ ▮▮▮▮ which are inadmissible for the reasons stated in Section II.A. Additionally, the government objects to the questions and testimony in this passage on the grounds that they are beyond the scope of the direct examination.   Finally, the government objects to the questions in this passage to the extent they mischaracterize the map contained in DX 218 (Ex. D-

27

5 at 7) by referring to the ▉ office in Tehran as a regular "office" instead of—as the document states—a "representative office" (Ex. A at 123:10-12, 23-25), the latter of which is typically a non-revenue generating office that has limited operation.   Accordingly, the Court should sustain the government's objections.

L.  Exhibit A at 127:17-22 (Government Objections: Facts Not in Evidence)

The government objects to the question and testimony in this designated passage on the grounds that defense counsel's question improperly assumed facts in evidence.   Defense counsel asked ▉ : "[W]ere you aware that Skycom . . . had accounts at ▉ prior to the [March 31, 2014 Committee] meeting?"   Like the question at issue in Section II.B, defense counsel improperly asserted a fact and, without allowing ▉ to comment on it, asked him if he remembered the fact.   *See* Fed. R. Crim. P. 611(a) (giving the district court discretion over the manner of witness examinations); *see also Young*, 2006 WL 463507, at **21-22. Accordingly, this question and the related testimony should be precluded.

M.  Exhibit A at 127:23-131:6 (Government Objections: Foundation, Facts Not in Evidence, Relevance, Scope)

The government objects to the questions and testimony in this designated passage on the grounds of foundation, facts not in evidence, relevance, Rule 403, and scope.   The questions at issue pertain solely to ▉ 's internal office reporting and information system, known by the acronym HORIS.

*First*, there is no foundation for this testimony because ▉ testified at the outset that he did not ever use or interact with this system (Ex. A at 128:7-14).   *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

28

*Second*, undeterred by the witness's lack of personal knowledge regarding HORIS, defense counsel proceeded to improperly assert facts not in evidence in the guise of asking leading questions about HORIS, such as: (1) "Are you aware of the fact that Skycom was identified within the HORIS mastergroup for Huawei between at least 2011 and 2014?"; and (2) "How about a company named Canicula, were you aware that a company named Canicula was identified within the HORIS system as part of the Huawei's mastergroup?" (*Id*. at 130:16-131:2.)  Like the question at issue in Section II.B, defense counsel improperly asserted facts and, without allowing ███████ to comment on them, asked him if he was aware of those facts.  *See* Fed. R. Crim. P. 611(a) (giving the district court discretion over the manner of witness examinations); *see also Young*, 2006 WL 463507, at **21-22.

*Third*, the questions regarding HORIS are irrelevant.  Even if Skycom and Canicula were recorded in HORIS as being associated with Huawei—as defense counsel improperly testified through his questions—that is irrelevant to the bank and wire fraud charges. At most, such information supports an inference that ███ may have negligently failed to discover Huawei's misrepresentations regarding its relationship with, or sale of, Skycom. Because negligence is not a valid defense to, and reliance is not an element of, bank or wire fraud, whether or not ███ negligently failed to discover Huawei's misrepresentations is irrelevant to any "fact of consequence in determining this action."  *See* Fed. R. Evid 401; *see also Kaufman*, 617 F. App'x at 52; *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017) ("[R]eliance is not an element of criminal fraud"); *Udeokoro*, 2023 WL 4138477, at *6.

*Fourth*, it thus follows that the questions and testimony regarding HORIS threaten to confuse or mislead the jury by suggesting that ███ was obligated to detect, or capable of detecting, Huawei's fraud based on information contained in HORIS.

29

*Fifth*, the questions and testimony in this passage are beyond the scope of the direct examination.

Accordingly, the Court should sustain the government's objections.

N. Exhibit A at 131:10-132:1, 132:22-133:23 (DX 208_N) (Government Objections: Foundation, Counsel Testifying, Improper Impeachment, Relevance, Scope)

The government objects to the admission of DX 208_N (Ex. D-6)[5], as well as to the questions and testimony about this exhibit in the designated passages, on the grounds of counsel testifying, foundation, relevance, scope, and improper impeachment.  DX 208_N is a spreadsheet of information derived from ███████'s HORIS system which shows that Skycom and Canicula were part of the mastergroup of companies associated with Huawei.  *First*, defense counsel improperly identified and described the document before showing it to the witness and moving it into evidence: "Alright, so hopefully this is visible, barely visible to my eyes, but this is defense exhibit 208_N, which is a HORIS report from December 2011.  And, subject to connection, I would move it into evidence at this time."  (Ex. A at 131:12-16.)  *Second*, defense counsel did not lay sufficient—or any—foundation to admit DX 208_N; indeed, ███████ testified he had never seen it before and that he was not familiar with HORIS (*id.* at 133:13-14).  *Third*, the questions in this passage are irrelevant for the reasons stated in Section II.M, and beyond the scope of the direct examination.  *Fourth*, by the time defense counsel showed DX 208_N to ███████, he had already testified that he had no knowledge of the HORIS system (*id.* at 130:6-8), or of the relationship between Skycom, Canicula, and Huawei as presented therein (*id* at 130:16-131:2).  The questions in this passage about the relationship between Skycom, Canicula,

---

[5]    DX 208_N (Ex. D-6) is a voluminous Excel spreadsheet with multiple tabs.  The government has included as Exhibit D-6 to this motion only the specific tab which defense counsel showed to ███████.

and Huawei as presented in DX 208_N thus constituted improper impeachment as they did not contradict ███████'s prior testimony.   Accordingly, the Court should sustain the government's objections.

O.  Exhibit A at 137:8-12 (Government Objection: Hearsay)

This government objects to the question in this designated passage on the grounds of hearsay.   Defense counsel asked: "At the █████ meeting on March 21, 2014, did either ██████████ or ██████████ mention that Skycom had been a █████ customer?"   This question plainly calls for unexcepted hearsay.   Accordingly, the Court should sustain the government's objection.

P.  Exhibit A at 137:13-139:8, 140:5-19 (Government Objections: Relevance, Scope, Rule 403)

The government objects to the questions and testimony in these designated passages on the grounds of relevance, scope, and Rule 403.   The questions and testimony all pertain to █████'s various internal alert and transaction monitoring systems.   Defense counsel repeatedly asked whether alerts related to Skycom were, or could have been, brought to the attention of ██████████ or the Committee.   This issue is irrelevant for the same reasons stated in Section II.M regarding the irrelevance of the questions related to HORIS—whether or not █████ could have detected Huawei's alleged fraud scheme through its internal alert and transaction monitoring systems is immaterial to the proof of the bank and wire fraud charges.   Additionally, the questions and testimony in these passages are beyond the scope of the direct examination.   They also threaten to confuse or mislead the jury by suggesting that █████ was obligated to detect, or that its alert and transaction monitoring systems were capable of detecting, Huawei's alleged fraud.   Accordingly, the Court should sustain the government's objections.

31

Q. <u>Exhibit A at 151:23-152:17, 154:18-157:18, 160:21-25, 163:14-164:25, 165:7-12, 165:13-18, 165:22-166:1, 172:15-23, 173:1-13 (Government Objections: Second-Level Hearsay, Speculation)</u>

The government objects to the questions and testimony in these designated passages on the grounds of second-level hearsay and speculation. Throughout these passages, defense counsel reads from, or asks questions premised upon, unexcepted hearsay contained in GX 21348.2 (Ex. C-1) and GX 21348.3 (Ex. C-2). For example:

> Let me read [from Section 5 of GX 21348.2] and ask you a couple of questions about it. Under that heading it says:
>
> "In 2003 ███████████ accused Huawei of infringing its patents and stealing its internetwork operating system source code for network equipment. ████████ settled the lawsuit it had brought against Huawei in 2004. Huawei brushed away the allegations and has now become one of the biggest patent owners in the world. It has made a big commitment to research and development, with 50 percent of its staff working in R&D. Huawei reportedly spent 4.8 billion or 14 % of its total revenue on research and development in 2013, and will increase this figure by 28 percent in 2014."
>
> Did you review this information in advance of the meeting?

(Ex. A at 154:23-155:10.) As the government argued in its supplemental motion *in limine*, although statements attributed to the defendants in GX 21348.2 (Ex. C-1) and GX 21348.3 (Ex. C-2) are admissible non-hearsay because they are not offered for their truth, that does not permit the defendants to admit unexcepted second-level hearsay contained in these same documents. (Supp. MIL at 6-7.) These designated passages all contain questions and testimony based on such second-level hearsay and should therefore be precluded. Additionally, one of the portions of GX 21348.2 at issue here contains a statement made by Huawei (Ex. A 165:7-10). However, a defendant cannot introduce its own, self-serving hearsay. *See Marin*, 669 F.2d at 84; *United States v. Blake*, 195 F. Supp. 3d 605, 610 S.D.N.Y. 2016). Finally, certain questions in these passages invited ████████ to improperly speculate regarding which lines of business ("EU and

32

other business" versus the "Iranian business") Huawei considered to be "more important."   (Ex. A, 165:13-15.)   Accordingly, the Court should sustain the government's objections.

R.   Exhibit A at 168:5-10, 169:10-15, 169:16-170:9, 170:16-20 (Government Objection: Speculation, Foundation, Relevance, Scope)

The government objects to the questions and testimony in this designated passage on the grounds of speculation, foundation, relevance, and scope.   Defense counsel asked ███████ to put himself in the position of the persons who prepared GX 2138.2 (Ex. C-1) in order to assess whether they should have included certain information pertaining to Skycom.   This question calls for speculation and should be precluded.   Additionally, the questions predicated on Skycom's association with Huawei as recorded in HORIS (Ex. A 169:10-13, 16-24, 170:16-19) lack foundation, relevance, and are beyond the scope of the direct examination for the reasons stated in Section II.M.   Accordingly, the Court should sustain the government's objections.

S.   Exhibit A at 171:11-15, 171:21-23 (Government Objections: Foundation, Facts Not in Evidence, Relevance, Scope)

The government objects to the questions and testimony in these designated passages on the grounds of foundation, facts not in evidence, and scope.   Here, defense counsel again asks ███████ about the relationship between Skycom and Huawei as recoded in ████'s HORIS system, and again improperly asserts facts not in evidence without asking the witness to comment on those facts.   For example:

> Q. [W]ould it have been relevant to your decision, the committee's decision at the time, to know that Skycom had been a ████ customer for over a decade within the Huawei mastergroup?"
>
> A. I can't answer that now. I don't know what would have been, what we would have been thinking about at that time, apart from the information we had, and that's if the allegation was true.
>
> Q. We have seen records that Huawei's mastergroup included Skycom?

A. You did, I didn't see it at the time.

(Ex. A at 171:11-23.)   Additionally, for the reasons stated in Section II.M, these questions lack foundation, relevance, and were beyond the scope of the direct examination.   Accordingly, the Court should sustain the government's objections.

T.   Exhibit A at 173:14-21 (Government Objections: Relevance, Facts Not in Evidence Hearsay)

The government objects to the questions and testimony in this designated passage on the grounds of relevance, facts not in evidence, and hearsay.   As part of a line of questioning pertaining to second-level hearsay contained in GX 21348-2 (*see* Ex. A at 173:4-13 (discussing page five of GX 21348-2) (Ex. C-1 at 5)))—to which the government objects for the reasons stated in Section II.Q—defense counsel asked:

> Q.   Let me ask you a question and if not I can see if I can refresh your recollection.   Isn't it the case that [the second-level hearsay contained on page five of GX 21348.2] was a reference to recently leaked reports that the US national security agency had infiltrated Huawei and had been monitoring its email traffic among senior Huawei executives for years?"
>
> A. I have no idea what you are talking about.

(*Id*. at 173:15-21.)   This question was improper and should be precluded because none of those purported facts are in evidence.   *See* Fed. R. Crim. P. 611(a) (giving the district court discretion over the manner of witness examinations); *see also Young*, 2006 WL 463507, at **21-22. Additionally, whether or not the "the US national security agency had infiltrated Huawei" is irrelevant to the bank and wire and fraud charges.   It is also prejudicial and threatens to mislead the jury into believing that the government "infiltrated," and thus, harmed, the very company it is prosecuting.   Accordingly, the Court should sustain the government's objections.

34

U. Exhibit A at 179:12-188:9 (DX 107.6, DX 120) (Government Objections: Hearsay, Second-Level, Rule 403, Relevance, Foundation)

The government objects to the admission of DX 107.6 (Ex. D-7) and DX 120 (Ex. D-8), as well as to the questions and testimony in the designated passages, including with respect to these exhibits.

*First*, the questions and testimony in this designated passage are irrelevant, prejudicial, and based on unexcepted hearsay. Nearly the entirety of this section pertains to an ▇ employee's purported ties to the U.K. intelligence community and conversations between that employee and the U.K. government in which the U.K. government purportedly concluded that Huawei did not pose a national security threat. (Ex. A 182:19-186:1) Whether or not the U.K. government made such statements to this employee is irrelevant to the bank and wire fraud charges, and will prejudice the government and mislead the jury by improperly suggesting that Huawei was essentially cleared of misconduct. Additionally, unexcepted hearsay is embedded in questions and testimony throughout this passage. (Ex. A 180:12-16, 184:204, 186:4-6, 187:23-25 ).

*Second*, the government objects to the admission of DX 107.6 (Ex. D-7), which is a slightly less redacted version of the minutes of the March 31, 2014 Committee meeting seen in GX 21621 (Ex. C-3). In the unredacted portion of DX 107.6, the above-mentioned ▇ employee reports: "▇ clarified that ▇ (member of ▇ FSCV) had engaged with the government who confirmed they were comfortable with Huawei." (Ex. D-7 at 2.) This statement is second-level hearsay, irrelevant, and risks confusing the jury as the purported "comfort[]" of the unspecified "government" with Huawei will likely be misinterpreted as an official judgment on the conduct at issue this case.

*Third*, the government objects to the admission of DX 120 (Ex. D-8), which is an email between ▇ employees which ▇ did not receive and therefore could not

35

authenticate, and for which defense counsel did not lay a business records foundation.  (Ex. A 187:3-188:8.)   From this email—for which there is no foundation to admit into evidence—defense counsel read into the record unexcepted hearsay concerning the "NSA backdooring into Huawei's email mainframe."   (*Id*. 187:23-25.)   This unsupported assertion is irrelevant to the bank and wire fraud charges; it is also prejudicial and threatens to mislead the jury into believing that the government "infiltrated," and thus, harmed, the very company it is prosecuting.

Accordingly, the Court should sustain the government's objections.

V.  Exhibit A at 191:11-13, 192:19-25, 193:1-3, 13:-17 (Government Objections: Withdrawn Question, Mischaracterizes the Document)

The government objects to the questions in these designated passages on the grounds that they were either withdrawn, mischaracterized the document at issue, or both.

*First*, one of defense counsel's questions was not answered—presumably because it was withdrawn in favor of the more precise question that followed the objection.   The question pertained to a portion of the minutes of the Committee's March 31, 2014 meeting (*see* GX 21621 (Ex. C-3)), which defense counsel mischaracterized:

> Q. Okay. And you were, you made a note of the fact that the Skycom *revenue* was a small percentage of the Huawei sales revenue?
>
> MR. COHEN: Objection. Mischaracterizes the document.
>
> Q. Okay, you noted that the Skycom *deal* was a small percentage of the Huawei sales revenue, right?
>
> A. That's what it says.

(Ex. A at 191:11-17 (emphasis added).)   Counsel's withdrawn inaccurate characterization of the document should not be considered by the jury.

*Second*, the other questions in these passages (Ex. A 192:19-25, 193:1-3, 13:-17) similarly mischaracterized GX 21621.   In relevant part, GX 21621 states: "[███████] noted that

36

the Skycom *deal* was a small percentage of the Huawei sales revenue." (Ex. C-3 at 2 (emphasis added).) The "Skycom deal" is a reference to Huawei's purported sale of Skycom. (*Id.*) Defense counsel incorrectly asserted several times that GX 21621 stated that Skycom's overall "revenue"—not simply the Skycom "deal"—was a "a small percentage of the Huawei sales revenue."

Accordingly, the Court should sustain the government's objections.

W. Exhibit A at 199:22-201:11 (Government Objections: Improper Impeachment, Improper Refreshment)

The government objects to the questions in this passage on the grounds that they constituted improper impeachment and improper refreshment. Defense counsel attempted to impeach ▮▮▮▮▮ with prior statements contained in a report of an interview with law enforcement, but there was no inconsistency between those statements and ▮▮▮▮▮'s testimony. Defense counsel asked whether ▮▮▮▮▮ instructed another ▮▮▮ employee to personally witness the contract pursuant to which Huawei purportedly sold its ownership stake in Skycom. (Ex. A at 199:22.) ▮▮▮▮▮ did not deny this, and instead testified that he could not remember giving such an instruction. (*Id.* at 199:25, 200:5-8, 201:1-11.) As ▮▮▮▮▮ did not deny making the statement at issue, there was no basis to impeach him with his prior statements in the law enforcement interview report. Moreover, defense counsel's attempt to impeach ▮▮▮▮▮ with the report of his law enforcement interview is improper. *See United States v. Green*, No. 12CR83S1235, 2017 WL 4803957, at *2 (W.D.N.Y. Oct. 25, 2017) ("'a witness may not be charged with a third party's characterization of his statements unless the witness has subscribed to them'") (quoting *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980)). These questions also constituted improper refreshment, as defense counsel read from the law enforcement interview report (*id.* at 201:1-4), which was not in evidence, and ▮▮▮▮▮ testified based on what was

37

stated in the document rather than from his memory (*id*. at 200:7-8).  Accordingly, the Court should sustain the government's objections.

X.   Exhibit A at 202:6-15 (Government Objection: Hearsay)

The government objects to the question in this designated passage on the grounds that it calls for hearsay.  Defense counsel asked: "Did ███████, one of the attendees at the meeting, inform the group that she had received a sanctions compliance report three weeks before the meeting . . . stating that Skycom is 100 percent owned by a subsidiary, Canicula limited?" This question calls for two layers of hearsay: the statements in the report purportedly received by ███████, and her statements to the Committee about this report.   Accordingly, the Court should sustain the government's objections.

Y.   Exhibit A at 211: 18-24 (Government Objections: Foundation, Facts Not in Evidence)

The government objects to the question in this designated passage on the grounds of foundation and facts not in evidence.  Defense counsel asked: "[H]ad the committee searched its own records [*i.e.*, within HORIS] and ascertained that Skycom had been sold to this company Canicula within its mastergroup, you might have made a different decision too at the time?"   This question was premised on information derived from █████'s HORIS system that was not in evidence, and lacked foundation because, as stated in Section II.M, ███████ testified he had no knowledge of HORIS or of the relationship between Huawei and Canicula as recorded therein. Accordingly, the Court should sustain the government's objections.

Z.   Exhibit A at 212:18-214:7 (Government Objections: Relevance, Hearsay, Rule 403, Subject of Pending Motion *in Limine*)

The government objects to the questions and testimony in this designated passage on the grounds of relevance, hearsay, and Rule 403, as well as for the reasons stated in the government's preliminary motion *in limine*.  The questions in this passage all essentially pertain

to whether ▮▮▮▮ was interviewed by law enforcement prior to ▮▮▮'s 2017 decision to terminate its relationship with Huawei.  The fact that ▮▮▮▮ was interviewed by law enforcement, as well as the timing of his interview, are irrelevant to the bank and wire fraud charges.  Defense counsel also repeatedly referenced the ▮▮ ▮▮ (Ex. A, 213:20-214:7) in questions that suggested that ▮▮▮'s decision to terminate its relationship with Huawei was connected to the expiration of the ▮▮  These questions were based on unexcepted hearsay contained in the ▮▮ and are irrelevant and prejudicial for the reasons stated in Section II.A and the government's preliminary motion *in limine*.  (*See* Preliminary MIL at 3-11.)  Accordingly, the Court should sustain the government's objections.

AA.   Exhibit A at 214:15-219:5(Government Objections: Relevance, Hearsay, Rule 403, Subject of Pending Motion *in Limine*, Facts Not in Evidence)

The government objects to the questions and testimony in this designated passage on the grounds of relevance, hearsay, Rule 403, facts not in evidence, and because certain questions should be precluded based on the arguments stated in the government's preliminary motion *in limine*.  (*See* Preliminary MIL at 3-11.)  The questions and testimony in this passage all pertained to the ▮▮ ▮▮ and should be excluded on the grounds of relevance and prejudice for the reasons stated in Section II.A and in the government's preliminary motion *in limine*.  Additionally, multiple questions contained unexcepted hearsay from the ▮▮ (Ex. A at 214:21-24, 216:16-20, 217:12-15) or from documents not in evidence, including the report of ▮▮▮▮'s interview with law enforcement which defense counsel improperly read into the record (*id*. at 217:24-218:4).  Other questions amounted to testimony from defense counsel regarding the number of ▮▮ employees interviewed by law enforcement, which are facts not in evidence about which ▮▮▮▮ had no personal knowledge.  (*Id*. at 216:23-217:5.)  Accordingly, the Court should sustain the government's objections.

39

BB.        Exhibit A at 220:24-221:2, 221:12-15 (Government Objections: Legal Conclusion, Relevance)

The government objects to the questions in these designated passages because they ask whether: (1) ████████ believed that the minutes of the Committee's 2017 decision to terminate ██████'s relationship with Huawei were privileged, which improperly called for a legal conclusion (and to which ████████ replied, "I am not a lawyer, I don't know" (Ex. A at 221:2)); and (2) whether █████ asserted privilege over those same minutes, which is irrelevant to the bank and wire fraud charges.   Accordingly, Court should sustain the government's objections.

CC.        Exhibit A at 238:24-244:9 (DX 236) (Government Objections: Second-Level Hearsay, Relevance, Rule 403)

The government objects to the admission of DX 236 (Ex. D-9), a "Global Banking FIM Functional Instructions Manual," as well as to the questions and testimony in this designated passage, on the grounds of second-level hearsay, relevance, and Rule 403.   Although DX 236 itself may be admissible as business record, its contents are unexcepted second-level hearsay. Nearly all of the questions in this passage impermissibly incorporate or refer to unexcepted hearsay contained in DX 236.   Additionally, to the extent that the questions in this passage refer to ██████'s purported failure to memorialize conversations with Huawei employees in violation of the practices prescribed (via unexcepted hearsay) in DX 236, or of an unspecified "best practice," such questions are irrelevant and prejudicial.   At most, such questions support an inference that, at times, █████ may have negligently failed to comply with certain of its own policies.   However, as stated in Section II.M, negligence is not a valid defense to fraud, and the jury should not be misled by putting █████, a victim, on trial about whether it could have discovered Huawei's alleged fraud. *See Kaufman*, 617 F. App'x at 52; *Udeokoro*, 2023 WL 4138477, at *6. Accordingly, Court should sustain the government's objections.

40

DD.        Exhibit A at 244:6-247:8 (Government Objection: Relevance)

The government objects to the questions in this designated passage because they pertain to the so-called "three lines of defense," a well-known risk management framework, and are irrelevant to the bank and wire fraud charges.   Accordingly, Court should sustain the government's objections.

EE.        Exhibit A at 250:2-257:23 (DX 101) (Government Objections: Second-Level Hearsay, Relevance)

The government objects to the admission of DX 101 (Ex. D-10), which is ████'s 2013 annual report, as well as to the questions and testimony in this designated passage, on the grounds of hearsay and relevance.   *First*, although the document itself may be admissible as a business record, its contents are unexcepted second-level hearsay.   Many questions in this passage are predicated on such hearsay.   *Second*, all of the questions in this passage pertained, in the words of defense counsel, to "the way [████] was organized and some of its own financials."   (Ex. A 250:4-6.)   Such questions included whether or not "████ was one of the largest banking and financial services organizations in the world," (*id.* 250:12-14), the number of customers served by bank (*id.* 250:19-21), the number of persons employed by the bank (*id.* 250:23), and multiple questions about the organizational structure and geographic location of ████'s subsidiaries (*id.* 253:10-257:23).   These sort of questions are irrelevant to the bank and wire fraud charges. Accordingly, Court should sustain the government's objections.

FF. Exhibit A at 258:11-259:12, 259:14-262:21 (Government Objections: Relevance, Rule 403, Subject of Pending Motion *in Limine*)

The government objects to the questions and testimony in this designated passage on the grounds of relevance and Rule 403, and because the topics at issue should be precluded based on the arguments stated in the government's pending preliminary motion *in limine*.   All of

41

the questions in this passage pertain to the ███ ██ (DX 142) (Ex. D-1) or ███ ███

████████DX 149) (Ex. D-4), and are irrelevant and prejudicial for the reasons stated in

Section II.A. and the government's preliminary motion *in limine*.  Additionally, many of the

questions are premised upon unexcepted hearsay in DX 142 and DX 149, as defense counsel read

from these documents and then asked ████████ about his understanding of what was read to him.

(Ex. A at 260:1-4, 7-11, 14-21, 261:24-262:8.)   Other questions are extremely prejudicial—

separate and apart from the generally prejudicial nature of the ████ ████████████

such as questions pertaining to the amount of the fines paid by ████ ████████████

████████████ (*id*. 262:11-21), and questions that baselessly imply that the government

pressured ████ to terminate its relationship with Huawei.  (*Id*. at 258:15-18, 258:23-259:3.)

Accordingly, Court should sustain the government's objections.

III.     THE COURT SHOULD OVERRULE THE DEFENDANTS' OBJECTIONS TO ████████'S TESTIMONY AND ACCOMPANYING EXHIBITS THAT THE GOVERNMENT HAS DESIGNATED

The defendants' main objections to the government's direct examination of

████████ concerned the admissibility and contents of business records, namely, internal ████

due diligence documents prepared to aid ███ compliance professionals and risk committees in

evaluating the sanctions risk that Huawei posed and in deciding whether or not to retain Huawei

as client.  For the reasons stated below, the defendants' objections are meritless and should be

overruled.

A.     Exhibit E at 17:21-17:25 (Defense Objection: Asked and Answered)

Here, the defendants made an "asked and answered" objection to the government's

second question concerning the types of materials prepared for ███ compliance and risk

committee meetings.   District courts within this circuit are split on whether "asked and answered"

is even a cognizable objection. *See, e.g.*, *Thompson v. Workmen's Circle Multicare Ctr.*, No. 11-CV-6885 (DAB) (HBP), 2015 WL 4591907, at *5 (S.D.N.Y. June 9, 2015) (noting that "asked and answered" is not cognizable under the Federal Rules of Evidence); *but see, e.g.*, *Harger Da Silva v. New York City Transit Auth.*, No. 17-CV-4550 (FB) (VMS), 2022 WL 1720396, at *1 (E.D.N.Y. May 27, 2022) (treating "asked and answered" as a permissible objection). Moreover, although the government asked ███████ about papers prepared for such meetings two pages earlier (*see* Ex. E at 15:08), the government's repeat of this question in this context was part of the same discussion, was intended to (and did) elicit additional detail beyond ███████'s initial answer, and in no way badgered the witness or wasted time. *See* Fed. R. Crim. P. 611(a) (giving the district court discretion over the manner of witness examinations). While the government would not seek to replay duplicative questions and responses for the jury, the jury should not be deprived of the additional information ███████ provided based on the second formulation of a related question.

B.       Exhibit E at 18:14-19:07 (Defense Objections: Foundation, Rule 602)

In this section, the defendants made foundation and Rule 602 objections to the government's questions and ███████'s testimony concerning the roles and responsibilities of compliance executives and client relationship managers at ███. The Court should overrule these objections because ███████ had already explained his experience as a compliance executive at ███ and some of the responsibilities of compliance executives and client relationship managers at ███. His nearly 30 years of experience as a compliance executive at ███ provided ample foundation and established his personal knowledge that informed his testimony. *See Borukh v. Experian Info. Sols., Inc.*, 2025 WL 1220042, at *5; *Jordan*, 2016 WL 9022502, at *4.

43

C.        Exhibit E at 22:20-23:03 (Defense Objection: Mischaracterizing Prior Testimony)

Here, in the course of asking for additional detail, the government stated that ████ ████████ had previously "mentioned that the relationship manager would complete the [sanctions] questionnaire with the client." (Ex. E at 22:20-21.) The defendants objected to this statement as mischaracterizing ██████████'s prior testimony. It did not. Only a few lines earlier, ████ ██████ testified that relationship managers were expected to discuss a client's links to sanctioned countries with the client and to complete a sanctions questionnaire for the client, including "ask[ing] specific questions around sanctions to complete the questionnaire." (Ex. E at 22:07-22:16.) Accordingly, the Court should overrule this objection.

D.        Exhibit E at 24:08-25:11 (Defense Objection: Foundation)

Here, the government asked ██████████ to explain how U.S. dollar-clearing transactions work. The defendants made a foundation objection. However, just before the defendants made this objection, ██████████ testified that he is familiar with U.S. dollar-clearing. (*See* Ex. E at 24:06-24:07.) During his testimony on this topic, ██████████ explained that he is familiar with U.S. dollar-clearing through his work experience at ████. (*See* 24:06-25:22.) Indeed, as noted in the next section, the defendants did not object to ██████████'s explanation of how he is familiar with U.S.-dollar clearing. Accordingly, because ██████████'s explanation of U.S. dollar-clearing was based on his professional experience, the Court should overrule this objection. *See Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.

E.        Exhibit E at 26:03-26:12 (Defense Objection: Foundation)

Here, the government asked, based on ██████████'s experience, in which country or countries he would expect U.S. dollar-clearing activity to occur for a multinational corporation. ██████████ answered "in the US." (*See* Ex. E at 26:12.) The defendants made a foundation

44

objection.   In the immediately preceding section, discussed in Section III.D above, ███████████

provided sufficient foundation for this answer by explaining that he is familiar with U.S. dollar-

clearing from his work for ███.   The defendants did not object to that explanation.   ███

███████ even provided an example of a U.S. dollar-clearing transaction.   (*See* Ex. E at 25:02-

25:11.)   Accordingly, because ████████████'s answer was based on his professional experience

and because his ample explanation would enable the jury to evaluate his knowledge on the topic,

the Court should overrule this objection.   *See Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025

WL 1994848, at *8.

F.       Exhibit E at 27:09-27:12 (Defense Objection: Foundation)

Here, the government asked ████████████ whether it would be reasonable for a

bank to expect a U.S. dollar-clearing transaction not to go through the United States, to which he

answered that most U.S. dollar transactions clear through the United States.   The defendants made

a foundation objection.   For the reasons explained in Sections III.D and III.E above, ████████████

had previously provided ample foundation for this answer.

G.       Exhibit E at 29:13-29:23 (Defense Objections: Asked and Answered, Foundation)

Here, the government asked whether ████████████ had ever encountered a

multinational company engaging in a U.S. dollar-clearing transaction that did not go through the

United States.   The defendants made an "asked and answered" objection.   The Court should

overrule this objection, as this is a different question than the government previously asked, which

was whether he would expect such a transaction to clear through the United States or whether a

multinational should expect such a transaction to clear through the United States.   (*See* Ex. E at

26:03-27:12.)

45

H.         Exhibit E at 32:13-34:10 and GX 22306-2[6] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Rule 403)

Here, the defendants objected to an internal ▮▮▮ chart summarizing sanctions issues concerning Huawei attached to an internal ▮▮▮ email.  The defendants objected to the chart, but not to the cover email.  The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections because ▮▮▮▮▮▮▮▮'s two-page testimony concerning the standard business record foundation questions was amply sufficient.  *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.  Exhibit G also independently overcomes these objections.

The defendants also made a hearsay objection, which the Court should also overrule.  The explanation in the preceding paragraph overcomes the first level of hearsay.  And the information in the document was introduced not for its truth, but rather to show its effect on the recipient, as the document itself makes clear.  (*See* Ex. H-2 ("In view of the adverse news [concerning Huawei] in the Washington Times and the sensitivity of its products supplied to sanctioned countries, escalation to ▮▮▮▮▮▮▮▮ for second consideration and approval to maintain the relationship is considered necessary.").)

Finally, the Court should overrule the defendants' Rule 403 objection.  Based on the transcript, the basis for the objection is unclear.  And in any case, given the similarity of ▮▮▮'s compliance concerns to the allegations in the Fourth Superseding Indictment—that Huawei may have been supplying the Iranian government with telecommunication equipment—the document's

---

[6]       GX 22306-2 is attached hereto as Exhibit H-2.  The cover email, GX 22306, to which the defendants did not object, is attached hereto for completeness as Exhibit H-1.

46

probative value is not substantially outweighed by any unfair prejudice or confusion.[7]   (*See* ECF No. 689 at ¶¶ 67, 70.)

I.    Exhibit E at 35:09-36:21 and GX 22306-2[8] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Rule 403, Vagueness)

According to Exhibit F, the defendants again object to Exhibit H-2 (GX 22306-2) in this section.   The Court should overrule the defendants' foundation, Rule 901, Rule 602, hearsay, and Rule 403 objections for the same reasons explained in section III.H above.

Additionally, the government asked ▓▓▓▓▓▓▓ if he remembered having general concerns about Huawei's ties to the Iranian military.   The defendants made a vagueness objection (*see* Ex. E at 35:19-35:23).   The Court should overrule this objection because the question is not unreasonably difficult to understand.   *Cf. Pulsecard, Inc. v. Discovery Card Services, Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996) (overruling objection to interrogatory on grounds of vagueness and ambiguity where reason and common sense to attribute ordinary definitions to terms and phrases provided needed clarity).

J.    Exhibit E at 36:22-41:03 and GX 22306-1[9] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Rule 403, Asked and Answered, Document Speaks for Itself, Vagueness)

Exhibit H-3 (GX 22306-1) is the newspaper article linked in the previous exhibit, Exhibit H-2 (GX 22306-2).   Newspaper articles are self-authenticating under Federal Rule of Evidence 902(6).   The fact that the exhibit is an internet printout does not undermine its

---

[7]    The government notes for the Court that the defendants filed a sealed and HSD motion in limine on February 13, 2026, seeking to preclude evidence regarding Huawei's alleged exportation of telecommunications equipment to Iran.

[8]    GX 22306-2 is attached hereto as Exhibit H-2.

[9]    GX 22306-1 is attached hereto as Exhibit H-3.

authentication.   *See Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 298-99 (S.D.N.Y. 2012) (admitting internet printouts that contain indicia of reliability, including an internet domain address and a printout date).   Exhibit H-3 (GX 22306-1) contains the Washington Times by-line, domain name, publication date, and the date the exhibit was printed from the internet. Accordingly, the Court should overrule the defendants' foundation and Rule 901 objections.   The Court should overrule the defendants' Rule 602 objection because the article was linked in an attachment to an email that ███████████ received, Exhibit H-1 (GX 22306)—to which the defendants did not object—and he testified that it was his practice to read articles linked in compliance documents.   The Court should overrule the defendants' hearsay objection because the government offered the article not for its truth, but to show effect on the recipient.   Finally, the Court should overrule the defendants' Rule 403 objection because, as explained above, the article contains similar allegations to those in the Fourth Superseding Indictment.

The Court should overrule the defendants' asked-and-answered objection (*see* Ex. E at 37:22-38:05) because the government's question, while a repeat, happened only once, in no way badgered the witness or wasted time, and elicited additional information.   *See* Fed. R. Crim. P. 611(a).

The Court should overrule the defendants' "speaks for itself" objection (*see* Ex. E at 38:25-40:12) because it was proper for ███████████ to read a portion of an admitted exhibit. *See Guadalupe v. City of New York*, No. 15-CV-220 (CM) (JCF), 2016 WL 3570545, at *3 n.3 (S.D.N.Y. June 24, 2016) ("Neither will objecting that a document 'speaks for itself' be considered proper.") (quoting *Henry v. Champlain Enters., Inc.*, 212 F.R.D. 73, 78 (N.D.N.Y. 2003)).

The Court should overrule the defendants' vagueness objection (*see* Ex. E at 40:20-41:03) because the government's question about the risk inherent in banking a client with ties to

48

the Iranian military was not unreasonably difficult to understand.   Indeed, ▮▮▮▮▮▮▮ had no trouble answering it.

K.      Exhibit E at 41:04-52:05 and GX 22601-3[10] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Rule 403, Vagueness, Foundation, Rule 701)

Here, the defendants objected to admission of an internal ▮▮ compliance memorandum discussing the sanctions risk Huawei posed and whether to continue banking Huawei.   The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-4 (GX 220601-3) because ▮▮▮▮▮▮▮'s testimony concerning the standard business record foundation questions was amply sufficient.   *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.   Exhibit G also overcomes these objections.

The Court should also overrule the defendants' hearsay objections.   The explanation in the preceding paragraph overcomes the first level of hearsay.   Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the recipient.   The document also contained statements attributed to Huawei, which are admissible non-hearsay as statements of a party-opponent.   Fed. R. Crim. P. 801(d)(2).   Finally, the Court should overrule the defendants' Rule 403 objection because the information in the document includes misrepresentations directly relevant to the indictment's fraud counts that are no more prejudicial than the allegations in the Fourth Superseding Indictment.

The Court should overrule the defendants' vagueness objection (*see* Ex. E at 42:25-43:04) because the question about the bank's policies was a clear question that ▮▮▮▮▮▮▮ had no trouble answering.

---

[10]      GX 22306-3 is attached hereto as Exhibit H-4.

49

The Court should overrule the defendants' foundation objection (*see* Ex. E at 45:17-46:12) because ▮▮▮▮▮▮▮ had previously explained that information attributed to clients in documents such as this came from clients.   *See, e.g.*, Ex. E at 43:06-43:14.

The Court should overrule the defendants' Rule 701 objection (*see* Ex. E at 48:20-49:17) because the government did not ask ▮▮▮▮▮▮ for an opinion, nor did he provide one. ▮▮▮▮▮▮▮ merely explained, based on his long experience as a compliance executive at ▮▮▮, how ▮▮ banked clients who had some activity in sanctioned countries.

L.        Exhibit E at 52:15-60:22 and GX 22301[11] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Leading, Vagueness)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-5 (GX 220601-3), an internal ▮▮▮ email concerning the sanctions risk Huawei posed because ▮▮▮▮▮▮▮'s testimony concerning the standard business record foundation questions was amply sufficient.   *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.   Exhibit G also overcomes these objections.   The Court should overrule the defendants' hearsay objection because the email is admissible as a past recollection recorded under Federal Rule of Evidence 803(5).[12]   "For a statement to come within this rule, a proponent must show that (1) the witness's memory of the events detailed in the record was sufficiently impaired; (2) the witness prepared or adopted the record at or near the time of the events reported; and (3) at that time, the record correctly reflected the witness's knowledge of the reported events."   *United States v. Rommy*, 506

---

[11]        GX 22301 is attached hereto as Exhibit H-5.

[12]        Under Rule 803(5), "[i]f admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."   This is precisely how the government handled the exhibit during the deposition.   (*See* Ex. E at 57:02-57:05.)

F.3d 108, 138 (2d Cir. 2007) (internal citation omitted). ███████████'s testimony satisfied all three elements.   (*See* Ex. E at 55:18-56:11.)

The Court should overrule the defendants' "leading" objection (*see* Ex. E at 54:04-54:15) because the question was a simple "yes or no" question that did not suggest an answer. Moreover, "the language of Federal Rule of Evidence 611(c) expressing a preference for non-leading questions is only precatory" and "generally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses."   *Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004).   The question was also not prejudicial.   *See id.*

The government does not oppose the defendants' first vagueness objection at Exhibit E at 55:18-55:23.   The Court should overrule the defendants' second vagueness objection (*see* Ex. E at 59:11-59:15) because the question was not unreasonably difficult to understand, and the government clarified the question in its very next question.

M.      Exhibit E at 69:02-75:11 and GX 22602[13]  (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-6 (GX 22602), an internal ████ sanctions questionnaire for Huawei, because █████████'s testimony concerning the standard business record foundation questions was sufficient.   *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.   Exhibit G also overcomes these objections.

The Court should also overrule the defendants' hearsay objections.   The explanation in the preceding paragraph overcomes the first level of hearsay.   Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the

---

[13]      GX 22602 is attached hereto as Exhibit H-6.

recipient.   The document also contained statements attributed to Huawei, admissible as statements of a party-opponent.   Fed. R. Crim. P. 801(d)(2).

N.     Exhibit E at 75:12-82:06 and GX 22605[14] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Asked and Answered)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-7 (GX 220605), a summary of a call between ███ and Huawei, because ████████'s testimony concerning the standard business record foundation questions was amply sufficient.   *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at \*5-6; *Quinton*, 2025 WL 1994848, at \*8.   Exhibit G also overcomes these objections.

The Court should also overrule the defendants' hearsay objections.   The explanation in the preceding paragraph overcomes the first level of hearsay.   Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the recipient.   Finally, the document also contained statements attributed to Huawei.   Fed. R. Crim. P. 801(d)(2).

The Court should overrule the defendants' foundation objection concerning the question whether the person noted as being on the call was a Huawei employee (*see* Ex. E at 76:10-76:15) because ████████ based his answer on a review of the document.   *See Borukh*, 2025 WL 1220042, \*5-6 ("a witness may establish personal knowledge based on a review of business records") (internal citations omitted).

The Court should overrule the defendants' asked and answered objection (*see* Ex. E at 76:16-77:01) because the government's question merely clarified ████████'s prior

---

[14]     GX 22605 is attached hereto as Exhibit H-7.

answers, in no way badgered the witness or wasted time, and elicited additional information.  *See* Fed. R. Crim. P. 611(a).

O.     Exhibit E at 82:07-83:25 and GX 22601[15] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-8 (GX 22601), an internal ▇▇ client review form concerning Huawei, because ▇▇▇▇▇▇▇'s testimony concerning the standard business record foundation questions was amply sufficient.  *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.  Exhibit G also overcomes these objections.

The Court should also overrule the defendants' hearsay objections.  The explanation in the preceding paragraph overcomes the first level of hearsay.  Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the recipient.  The document also contained statements attributed to Huawei.  Fed. R. Crim. P. 801(d)(2).

P.     Exhibit E at 85:01-94:17 (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Vagueness, Calling for Speculation)

The Court should overrule the defendants' objections to admission of Exhibit H-8 (GX 22601) for the reasons articulated in Section III.O.

The Court should overrule the defendants' vagueness objection (*see* Ex. E at 92:22-92:25) because questioning how not having the names of a client's business partners in a sanctioned country would hinder the bank is not unreasonably difficult to understand, and in any case, the government clarified in the very next question.

---

[15]     GX 22601 is attached hereto as Exhibit H-8.

The Court should also overrule the defendants' speculation objection (*see* Ex. E at 94:08-94:12). The government asked ███████████ if it were possible for ███ to miss transactions that violated sanctions if the bank did not have the correct names on its watch list. ███████████'s answer was based on his extensive experience as a compliance professional, not speculation.

Q.  Exhibit E at 94:18-96:05 and GX 22600[16] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-9 (GX 22600), a ████ adverse media form concerning Huawei, because ███████████'s testimony concerning the standard business record foundation questions was amply sufficient. *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8. Exhibit G also overcomes these objections. The Court should also overrule the defendants' hearsay objections. The business records exception overcomes the first level of hearsay. Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the recipient. The document also contained statements attributed to Huawei. Fed. R. Crim. P. 801(d)(2).

R.  Exhibit E at 97:20-101:13 and GX 22600 (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' objections to admission of Exhibit H-9 (GX 22600) for the reasons articulated in Section III.Q.

---

[16]  GX 22600 is attached hereto as Exhibit H-9.

S.        Exhibit E at 101:14-104:18 and GX 22603[17] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-10 (GX 22603), a ███ client sanctions risk assessment concerning Huawei, because ██████████'s testimony concerning the standard business record foundation questions was sufficient.  *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.   Exhibit G also overcomes these objections.  The Court should also overrule the defendants' hearsay objections.  The business records exception overcomes the first level of hearsay.    Additionally, the information in the document was introduced not for its truth, but rather to show its effect on the recipient.  The document also contained statements attributed to Huawei.   Fed. R. Crim. P. 801(d)(2).

T.        Exhibit E at 105:13-109:21 and GX 22603 (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay)

The Court should overrule the defendants' objections to admission of Exhibit H-10 (GX 22603) for the reasons articulated in Section III.S.

U.        Exhibit E at 116:23-119:01 and GX 22302[18] (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Reading from Document Not in Evidence)

The Court should overrule the defendants' foundation, Rule 901, and Rule 602 objections to Exhibit H-11 (GX 22302) because ██████████'s testimony concerning the standard business record foundation questions was sufficient.  *See Komasa*, 767 F.3d at 156; *Lieberman*, 637 F.2d at 100; *Borukh*, 2025 WL 1220042, at *5-6; *Quinton*, 2025 WL 1994848, at *8.   Exhibit G also overcomes these objections.  The Court should also overrule the defendants' hearsay objections.  The business records exception overcomes the first level of hearsay.    Additionally,

---

[17]      GX 22603 is attached hereto as Exhibit H-10.

[18]      GX 22302 is attached hereto as Exhibit H-11.

the information in the document was introduced not for its truth, but rather to show its effect on the recipient.  The document also contained statements attributed to Huawei.  Fed. R. Crim. P. 801(d)(2).

The government does not oppose the defendants' objection to ███████ reading from a document not yet in evidence (*see* Ex. E at 117:12-117:16).

V.      Exhibit E at 120:05-124:05 and GX 22302 (Defense Objections: Foundation, Rule 901, Rule 602, Hearsay, Vagueness, Calling for Speculation)

The Court should overrule the defendants' objections to admission of Exhibit H-11 (GX 22302) for the reasons articulated in Section III.U.

The government does not oppose the defendants' first vagueness objection (*see* Ex. E at 121:22-122:05).

The Court should overrule the defendants' second vagueness objection and their speculation objection (*see* Ex. E at 123:08-123:21).  The government asked whether, based on ███████'s extensive experience as a compliance executive at ████, trust was important between the bank and its clients.  The question is clear, and ███████ had no trouble understanding or answering it.  Moreover, the question did not call for speculation, and ███ ███████ did not speculate.  He gave definitive answers based on his professional experience. *Borukh*, 2025 WL 1220042, at *5-6.

IV.      THE COURT SHOULD SUSTAIN THE GOVERNMENT'S OBJECTIONS TO THE DEFENDANTS' QUESTIONS, ███████'S TESTIMONY, AND THE ACCOMPANYING EXHIBITS THE DEFENDANTS HAVE DESIGNATED

The government's main objections to the defendants' cross-examination of ███████ followed the arguments raised in its preliminary and supplemental motions *in limine*, namely, and respectively, that the Court should preclude cross-examination and evidence

regarding ████████████████████████████████████ and that the defendants should not be permitted to admit second-level hearsay from documents the government seeks to admit as business records. Additionally, defense counsel asked ████████████ about a number of issues that were irrelevant to the proof of the alleged fraud scheme, were far outside the scope of the direct examination, or both. The government also objected to the defendants' failure to properly authenticate several of the exhibits they offered. For the reasons stated below, the Court should sustain the government's objections.

A. Exhibit E at 60:23-66:21

The defense has labeled this a counter-designation. But since the government has not designated this portion of the direct examination, it appears that neither party intends to introduce this portion. *See* Ex. F at 4.

B. Exhibit E at 127:03-134:25 (Government Objections: Relevance, Form, Counsel Narrating, Rule 611, Foundation, Improper Impeachment, Scope)

In this section, defense counsel gave an introductory narration for nearly two pages without asking any questions. (*See* Ex. E at 127:03-128:15.) Defense counsel did not seek or elicit any relevant testimony. The Court should exercise its discretion under Federal Rule of Evidence 611(a) and preclude this narration, as it is gratuitous and lengthy.

In this section, defense counsel asked ████████████ about a law enforcement report summarizing his prior statements to law enforcement. (*See* Ex. E at 132:12-133:11.) ████ ████████ stated that he had never seen any such report. Attempting to impeach ████████████ with these reports was impermissible. *See Green*, 2017 WL 4803957, at *2.

C. Exhibit E at 135:09-177:11

    i. *136:11-138:20 (Government Objections: Relevance, Counsel Testifying, Mischaracterizing Prior Testimony)*: Here, defense counsel gave an introductory narration,

which the Court should exclude under Federal Rule of Evidence 611(a). Defense counsel's characterization of ██████████'s memory of compliance concerns about Huawei also mischaracterizes ██████████'s prior testimony by improperly suggesting that ██████████ knew about those issues only as a result of the government's investigation. *See, e.g.*, Ex. E at 35:22-36:02 (██████████ testifying that the document reminded him of the compliance concern with Huawei). Indeed ██████████ corrected defense counsel. *See, e.g.*, Ex. E at 137:25-138:02 (██████████ testifying that he was reminded of issues concerning Huawei during his law enforcement interview, but that he would have known about them at the time ). The Court should exclude defense counsel's questions and ██████████'s answers.

     ii.     *139:04-140:13 (Government Objections: Relevance, Rule 403)*: In this section, defense counsel asked ██████████ whether he knew about U.S. government interviews of other ████ employees. These questions are entirely irrelevant and risk confusing the jury. The Court should exclude this testimony under Rules 401, 402, and 403.

     iii.     *140:14-142:05 (Government Objections: Subject of Pending Motion in Limine, Relevance, Scope, Hearsay, Rule 403)*: The government objects to the designated testimony regarding the ████ ████ on the grounds stated in its preliminary motion *in limine*, namely, relevance and Rule 403. (*See* Preliminary MIL at 7-11.) Additionally, the contents of the ████ related documents constitute unexcepted second-level hearsay which precludes both their admission and testimony related thereto. *See* Fed. R. Evid. 805.

     iv.     *153:07-153:10 (Government Objections: Relevance, Foundation, Scope, Rule 403)*: Here, defense counsel asked ██████████ whether U.S. sanctions laws change based on the policies of a particular presidential administration. This question was irrelevant to the elements of the fraud counts charged in this case and risks confusing the jury. It was beyond the

58

scope of the direct examination, where the government asked no questions about how U.S. sanctions laws are promulgated.   And defense counsel laid no foundation with ██████████ concerning how he would know how U.S. sanctions laws are promulgated.   Accordingly, the Court should exclude this testimony under Rules 401, 402, 403, 602, and 611(b).

v.       *154:02-154:10 (Government Objections: Vagueness, Rule 403)*:       Defense counsel's question concerning whether U.S. sanctions law has changed "if slightly, or less than slightly, over time" was vague, as defense counsel acknowledged in rephrasing the question.   The question and answer were also of only minimal relevance to the fraud scheme charged in this case and risk confusing the jury.   Accordingly, the Court should exclude this testimony as vague and under Rule 403.

vi.       *154:11-155:03 (Government Objections: Relevance, Foundation, Scope, Rule 403)*:   Here, defense counsel asked ██████████ about U.S. sanctions laws changing depending on the U.S. government administration in power.   The Court should exclude this testimony for precisely the same reasons articulated in Section IV.C.iv above.

vii.       *156:06-157:05 (Government Objections: Vagueness, Calling for Legal Conclusion)*:   In this section, defense counsel asked whether ██████████ agreed that when a transaction involving ████ did not touch the United States, there was a possibility that U.S. sanctions on Iran were not implicated.   This question was difficult to understand, and defense counsel had to rephrase the question multiple times before ██████████ understood.   In the end, defense counsel asked ██████████ if a deal involving Iran that never touched the U.S. would not implicate U.S. sanctions on Iran.   This question improperly called for a legal conclusion.   *See United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001), *as amended* (Feb. 14, 2001) ("The lay witness may not, however, testify as to a legal conclusion, such as the correct interpretation of

59

a contract.")   Thus, the Court should exclude this section as vague and improperly calling for a legal conclusion.

      viii.    *157:06-157:20 (Government Objections: Subject of Pending Motion in Limine, Relevance, Scope, Hearsay, Rule 403)*:   In this section, defense counsel again asked ▮▮▮▮▮▮▮▮ about ▮▮▮▮▮▮▮▮   The Court should exclude this testimony for the reasons articulated in Section IV.C.iii above.

      ix.    *158:01-159:06   (Government   Objections:   Relevance,   Foundation,   Scope, Vagueness, Calling for Legal Conclusion, Rule 403)*:   In this section, defense counsel asked ▮▮▮ ▮▮▮▮▮▮ several questions about the legality of doing business in Iran.   These questions were irrelevant to the elements of the fraud counts charged in this case and risk confusing the jury. They were beyond the scope of the direct examination, where the government did not ask ▮▮▮ ▮▮▮▮▮▮ how companies may legally operate in Iran.   And defense counsel laid no foundation with ▮▮▮▮▮▮▮▮ concerning how he would know how companies may legally operate in Iran. Accordingly, the Court should preclude this testimony under Rules 401, 402, 403, 602, and 611(b). The Court should also preclude this testimony as improperly calling for a legal conclusion.   *See Crawford*, 239 F.3d at 1090.

      x.    *163:09-163:15 (Withdrawn Question)*:   Defense counsel withdrew this question, so the Court should exclude this section.

      xi.    *165:13-165:15 (Government Objections: Subject of Pending Motion in Limine, Relevance, Scope, Rule 403)*:   Here, defense counsel asked whether ▮▮▮'s compliance process changed during the term of ▮▮▮▮▮▮   The Court should exclude this testimony for the reasons articulated in Section IV.C.iii above.

xii.     *171:09-174:07 and DX 366*[19]  *(Government Objections: Subject of Pending Motion in Limine, Hearsay)*:   Here, the defendants offered into evidence minutes from a ▉▉▉ risk committee meeting held on March 4, 2013.  (*See* Exhibit I-1 (DX 366).)   The Court should exclude this document and the designated testimony concerning it, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Although the document itself may qualify as a business record, the contents of the document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.   *See* Fed. R. Evid. 805.

xiii.     *175:03-175:04; 175:09-175:10; 175:16-175:19; and 176:03-176:09 (Government Objections: Subject of Pending Motion in Limine, Hearsay)*:   This testimony concerns Exhibit I-1 (DX 366), and the Court should exclude it for the reasons articulated in Section IV.C.xii above.

D. Exhibit E at 181:14-182:12 and DX 367.1[20]

The Court should exclude this section of testimony and Exhibit I-2 (DX 367.1) because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.

E. Exhibit E at 183:07-187:20, DX 367.1, and DX 367 [21] (Government Objection: Foundation)

The Court should exclude this section, Exhibit I-2 (DX 367.1), and Exhibit I-3 (DX 367) because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.

---

[19]     DX 366 is attached hereto as Exhibit I-1.

[20]     DX 367.1 is attached hereto as Exhibit I-2.

[21]     DX 367 is attached hereto as Exhibit I-3.

61

To the extent any objection remains necessary, the Court should exclude Exhibit I-3 (DX 367), an email attaching an internal ▇ risk committee memorandum, for lack of foundation, as defense counsel failed to ask all the requisite authentication questions under Rules 803(6) and 902(11), merely asking whether "this email is the kind of thing that ▇ would keep in its records," but failing to ask whether it was made at or near the time by someone with knowledge.

F. Exhibit E at 188:23-191:18 and DX 367.3 [22] (Government Objections: Relevance, Foundation, Hearsay, Subject of Pending Motion in Limine)

The Court should exclude Exhibit E at 188:23-189:05 because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.  The Court should also exclude this section for the reasons articulated in Section IV.C.xii above, as it involved reading unexcepted second-level hearsay from an internal ▇ memorandum.  *See* Fed. R. Evid. 805.

The Court should exclude Exhibit I-4 (DX 367.3), a ▇ "Corporate Group Account Plan" for Huawei, and the remaining testimony in this section for lack of foundation, as defense counsel failed to ask all the requisite authentication questions under Rules 803(6) and 902(11), failing to ask whether it was made at or near the time by someone with knowledge.   The Court should also exclude Exhibit I-4 (DX 367.3) for lack of relevance, as the commercial and financial information in this document does not bear on the fraud scheme charged in this case. Finally, the Court should exclude this document and the designated testimony concerning it, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Even if the testimony had properly established the document as a business

---

[22]    DX 367.3 is attached hereto as Exhibit I-4.

record, the contents of the document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.   *See* Fed. R. Evid. 805.

G. Exhibit E at 192:02-204:24 and DX 367.3, DX 371, DX 371.1, and DX 371.2 [23] (Government Objections: Relevance, Foundation, Hearsay, Counsel Narrating, Improper Impeachment, Subject of Pending Motion in Limine)

The Court should exclude this section and Exhibit I-4 (DX 367.3), Exhibit I-5 (DX 371), Exhibit I-6 (DX 371.1), and Exhibit I-7 (DX 371.2) because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.

To the extent any objection remains necessary, the Court should exclude Exhibit I-4 (DX 367.3) for the reasons articulated in Section IV.F.   Additionally, the Court should exclude Exhibit I-5 (DX 371) (an email attaching an internal ▮▮▮ risk committee memorandum concerning Huawei); Exhibit I-6 (DX 371.1) (the memorandum); Exhibit I-7 (DX 371.2) (a ▮▮▮ "Corporate Group Account Plan" for Huawei); and the remaining testimony in this section for lack of foundation, as defense counsel failed to ask all the requisite authentication questions under Rules 803(6) and 902(11), failing to ask whether these documents were made at or near the time by someone with knowledge.   Moreover, the Court should exclude these documents and the designated testimony concerning them, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Even if the testimony had properly established the documents as business records, the contents of the documents constitute unexcepted second-level hearsay which precludes their admission and testimony related thereto. *See* Fed. R. Evid. 805.

---

[23]    DX 371 is attached hereto as Exhibit I-5.   DX 371.1 is attached hereto as Exhibit I-6.   DX 371.2 is attached hereto as Exhibit I-7.

Finally, to the extent any objection remains necessary, Court should exclude defense counsel's improper narration and reading of documents under Rule 611.  (*See, e.g.*, Ex. E at 195:10-195-195:19 ("I am going to save you from reading, I will read it for you . . . ."); Ex. E at 196:16-196:17 ("I am going to take us on a little adventure."); Ex. E at 201:03-201:09 ("It is a trick question, you can't find it.  Let's not spend time, because it doesn't exist. . . .  It doesn't exist here.").)

H.  Exhibit E at 205:06-206:15 and DX 371.2 (Government Objections: Foundation, Hearsay, Subject of Pending Motion in Limine)

The Court should exclude this section and Exhibit I-7 (DX 371.2) for the reasons articulated in Section IV.G.

I.  Exhibit E at 206:22-213:14 and DX 373 and DX 366[24]  (Government Objections: Hearsay, Subject of Pending Motion in Limine, Rule 403)

The Court should exclude this section, Exhibit I-8 (DX 373), and Exhibit I-1 (DX 366) because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.

To the extent any objection remains necessary, Court should exclude Exhibit I-8 (DX 373), Exhibit I-1 (DX 366), and the testimony in this section for hearsay.  The Court should exclude Exhibit I-1 (DX 366) for the reasons articulated in Section IV.C.xii above.  The government withdraws its objection to foundation for Exhibit I-8 (DX 373) and the testimony in this section.  But the Court should exclude Exhibit I-8 (DX 373) (an agenda for a ▮▮▮ risk committee meeting) and the designated testimony concerning it, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.  Even if the testimony had properly established this document as a business record, the contents of the

---

[24]    DX 373 is attached hereto as Exhibit I-8.

document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.   *See* Fed. R. Evid. 805.

J.   Exhibit E at 214:20-222:09

i.   *216:15-217:20 (Government Objections: Relevance, Hearsay, Foundation)*:   In this section, defense counsel repeatedly asked ███████████ about an industry standard for de minimis exposure of a bank client to sanctioned countries.   This testimony was irrelevant to the fraud scheme charged in this case, which concerns Huawei's misrepresentations to its banks.   Any conceivable relevance was substantially outweighed by the risk of confusing the jury.   Accordingly, the Court should exclude this testimony under Rules 401, 402, and 403.   Moreover, ██████████ lacked foundation to answer this question, as he repeatedly answered that he did not know.   Accordingly, the Court should also exclude this testimony under Rule 602.

ii.   *219:03-219:05 (Counsel Narrating/Improper Commentary)*:   The Court should exclude defense counsel's improper commentary under Rule 611.   (*See* Ex. E at 219:03-219:05 ("It was confusing right, because it has a different title and then it says "Inside the Ring".   What does that mean, right?").)

iii.   *219:24-222:09 and GX 22306-4 and GX 22306-5* [25] *(Government Objections: Foundation, Hearsay, Subject of Pending Motion in Limine)*:   The Court should exclude Exhibit I-9 (GX 22306-4) (a ████ due diligence form) and Exhibit I-10 (GX 22306-5) (an internal ████ summary describing its relationship with Huawei) for lack of foundation, as defense counsel failed to ask any of the requisite authentication questions under Rules 803(6) and 902(11).   The Court should also exclude these documents and the designated testimony concerning them, on the

---

[25]   GX 22306-4 and GX 22306-5 are attached hereto as Exhibits I-9 and I-10, respectively.   The government marked these as government exhibits and provided them to the defendants, but the government did not offer these exhibits into evidence.

grounds stated in the government's supplemental motion *in limine,* filed on April 24, 2026, namely hearsay.   Even if the testimony had properly established the documents as business records, the contents of the documents constitute unexcepted second-level hearsay which precludes their admission and testimony related thereto.   *See* Fed. R. Evid. 805.

K. <u>Exhibit E at 222:10-224:10 (Government Objections: Relevance, Foundation, Basis for Knowledge, Counsel Narrating, Basis for Counsel Questions, Rule 403)</u>

In this section, defense counsel attempted to portray the Washington Times as a biased publication.   (*See* Ex. E at 223:17-223:18 ("Would you be surprised if I told you that the Washington Times is a conservative newspaper?").)   Defense counsel also suggested that the Washinton Times no longer exists, without a proper basis for such a question.   (*See* Ex. E at 223:21-223:22 ("Would you be surprised if I told that you [sic] it no longer exists?").)   Indeed, a simple Google search would have confirmed that the Washington Times does, in fact, still exist. *See* https://www.washingtontimes.com/ (last visited May 29, 2026).   Defense counsel also made other improper commentary.   (*See* Ex. E at 224:05-224:06 ("And I hate to do this to you, but I am going to because I have to for my client.").)   The Court should exclude this entire section as irrelevant under Rules 401 and 402 because it had no bearing on the elements of the charged fraud scheme, which concerns Huawei's alleged misrepresentations to its banks, and also under Rule 611 because of defense counsel's improper commentary and questions.   Any conceivable relevance would be outweighed by the risk of unfair prejudice and confusing the jury under Rule 403.

L.    Exhibit E at 225:03-231:21 and GX 22608[26] (Government Objections: Foundation, Basis for Knowledge, Hearsay, Subject of Pending Motion in Limine, Rule 403)

The Court should exclude Exhibit I-11 (GX 22608), an internal ███ rick committee memorandum concerning Huawei, and the testimony in this section concerning this document, for lack of foundation, as defense counsel failed to ask all the requisite authentication questions under Rules 803(6) and 902(11), failing to ask whether this document was made at or near the time by someone with knowledge.  The Court should also exclude this document and the designated testimony concerning it, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.  Even if the testimony had properly established the document as a business record, the contents of the document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.  *See* Fed. R. Evid. 805.  Defense counsel also improperly asked ███████ to speculate on what other people believed.  *See* Ex. E at 230:22-231:21.  Finally, any marginal relevance of the document—which as elicited by defense counsel discusses the geopolitical climate and Huawei's hiring of a public relations firm—would be substantially outweighed by the risk it poses of confusing the jury under Rule 403.

M.    Exhibit E at 232:05-243:18

i.    *232:05-236:03 (Government Objections: Hearsay, Subject of Pending Motion in Limine, Basis for Knowledge, Foundation, Relevance)*:   The Court should exclude this testimony on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.  Although the government properly offered the ███ documents discussed herein

---

[26]    GX 22608 is attached hereto as Exhibit I-11.  The government marked this document as a government exhibit and provided it to the defendants, but the government did not offer this exhibit into evidence.

as business records, the defendants may not introduce inadmissible self-serving hearsay from them, such as statements about ███'s evaluation of its engagement with Huawei.  *See* Fed. R. Evid. 805.   Defense counsel also improperly asked ████████ about what was written on the ███ website, for which defense counsel laid no foundation and which was irrelevant to the charged fraud scheme.

ii.       *236:19-238:17 (Government Objections: Subject of Pending Motion in Limine, Hearsay)*:   The Court should exclude this testimony on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Although the government properly offered the ███ document discussed herein as a business record, the defendants may not introduce inadmissible self-serving hearsay from it.   *See* Fed. R. Evid. 805.

iii.      *240:09-240:25 (Government Objections: Foundation, Basis for Knowledge, Hearsay, Subject of Pending Motion in Limine)*:   The Court should exclude this section because this section is a defense counter-designation corresponding to a portion of the direct examination that neither party has designated, Exhibit E at 60:23-69:01.   To the extent any objection remains necessary, the Court should exclude this section for the reasons articulated in Section IV.G above.

iv.      *242:17-243:18 (Government Objections: Relevance, Subject of Pending Motion in Limine, Hearsay, Rule 403)*:   This section concerned ███'s evaluation of news coverage of Huawei.   This testimony and related portion of Exhibit H-9 (GX 22600) were irrelevant because they did not bear on the fraud scheme charged in this case, which concerns Huawei's alleged misrepresentations.   And any marginal relevance would be substantially outweighed by the risk of confusing the jury.   Accordingly, the Court should exclude this section under Rules 401, 402, and 403.   The Court should also exclude this testimony and the hearsay portions of Exhibit H-9 (GX 22600) on the grounds stated in the government's supplemental motion *in limine*, filed on

April 24, 2026, namely hearsay.   Even though the government properly offered this document as a business record, the defendants may not introduce inadmissible self-serving hearsay from it. *See* Fed. R. Evid. 805.

N.   Exhibit E at 244:04-248:15 and DX 364[27] (Government Objections: Relevance, Scope, Foundation, Hearsay, Subject of Pending Motion in Limine)

In this section, the defendants offered a 2012 ███ annual report, Exhibit I-12 (DX 364), into evidence and elicited testimony about it concerning ███'s business operations and profits.   As an initial matter, the Court should exclude this document and the related testimony as entirely irrelevant to the fraud scheme charged in this case.   It was also beyond the scope of the direct examination, where the government asked no questions about ███'s profits or growth. Moreover, the Court should exclude this document and testimony for lack of foundation, as defense counsel failed to ask any of the requisite authentication questions under Rules 803(6) and 902(11).   Indeed, before offering the document into evidence, defense counsel merely told ███ ███ what the document was.   (*See* Ex. E at 244:09-244:12 (". . . . I am putting on the screen for you what has been marked for identification as defense exhibit 364, which is, I will represent to you, the 2012 ███████ annual report.").)   Finally, the Court should exclude this document and the designated testimony concerning it, on the grounds stated in the government's supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Even if the testimony had properly established the document as a business record, the contents of the document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.   *See* Fed. R. Evid. 805.

---

[27]      DX 364 is attached hereto as Exhibit I-12.

O.  Exhibit E at 249:13-251:7 (Government Objections: Counsel Narrating, Foundation, Rule 403)

The government objects to a portion of this section designated by the defendants, Exhibit E at 250:19-251:07.   In this section, defense counsel made improper comments rather than ask ▬▬▬ questions.   (*See* Ex. E at 250:19-251:04 ("Now, I am going to go over some documents from ▬ and I believe that they though[sic] that Skycom was an ▬ customer . . . . And that ▬ knew that Huawei and Skycom were related entities. . . .   And I am going to receive a lot of objections to these questions . . . .").)   The Court should exercise its discretion under Rule 611 to exclude this improper commentary.

P.  Exhibit E at 252:10-253:05, DX 368, and DX 368.1 [28] (Government Objections: Foundation, Relevance, Hearsay, Subject of Pending Motion in Limine)

The Court should exclude Exhibit I-13 (DX 368) (an internal ▬ email attaching a spreadsheet of clients), Exhibit I-14 (DX 368.1) (the spreadsheet), and the testimony in this section concerning these documents for lack of foundation, as defense counsel failed to ask all the requisite authentication questions under Rules 803(6) and 902(11), failing to ask whether these documents were made at or near the time by someone with knowledge.   Moreover, to the extent the defendants contend that these documents show that ▬ should have known of a relationship between Skycom and Huawei, they are irrelevant because "[i]t is well-settled in this circuit that a defendant charged with a fraudulent scheme may not assert as a defense the victim's failure to discover the fraud."   *Udeokoro*, 2023 WL 4138477, at *6; *see also Kaufman*, 617 F. App'x at 52; *Weaver*, 860 F.3d at 96; Fed. R. Evid 401.   The Court should also exclude Exhibit I-13 (DX 368) and the designated testimony concerning it, on the grounds stated in the government's

---

[28]      DX 368 is attached hereto as Exhibit I-13.   DX 368.1 is attached hereto as Exhibit I-14.

supplemental motion *in limine*, filed on April 24, 2026, namely hearsay.   Even if the testimony

had properly established the document as a business record, the contents of the document constitute

unexcepted second-level hearsay which precludes the document's admission and testimony related

thereto.   *See* Fed. R. Evid. 805.

Q.   Exhibit E at 253:18-255:17, DX 368, and DX 368.1 (Government Objections: Foundation, Relevance, Hearsay, Subject of Pending Motion in Limine)

The Court should exclude this section, Exhibit I-13 (DX 368), and Exhibit I-14 (DX 368.1) for the reasons articulated in Section IV.P.

R.   Exhibit E at 256:15-256:20 and 257:04-259:17 and DX 369[29] (Government Objections: Foundation, Relevance, Hearsay, Subject of Pending Motion in Limine)

As an initial matter, the Court should exclude Exhibit I-15 (DX 369) (an internal

█████ email concerning Skycom) and the testimony in this section concerning that document for

lack of foundation, as defense counsel failed to ask all the requisite authentication questions under

Federal Rules of Evidence 803(6) and 902(11), failing to ask whether this document was made at

or near the time by someone with knowledge.   Moreover, to the extent the defendants contend

that this document shows that █████ should have known of a relationship between Skycom and

Huawei, it is irrelevant because "[i]t is well-settled in this circuit that a defendant charged with a

fraudulent scheme may not assert as a defense the victim's failure to discover the fraud."

*Udeokoro*, 2023 WL 4138477, at \*6; *see also Kaufman*, 617 F. App'x at 52; *Weaver*, 860 F.3d at

96; Fed. R. Evid 401.   Additionally, the Court should exclude this exhibit and the designated

testimony, on the grounds stated in the government's supplemental motion *in limine*, filed on April

24, 2026, namely hearsay.   Even if the testimony had properly established the document as a

---

[29]   DX 369 is attached hereto as Exhibit I-15.

71

business record, the contents of the document constitute unexcepted second-level hearsay which precludes the document's admission and testimony related thereto.    *See* Fed. R. Evid. 805.

S.    Exhibit E at 260:14-263:03, DX 368.1, and DX 370 [30] (Government Objections: Foundation, Relevance Hearsay, Subject of Pending Motion in Limine)

The Court should exclude Exhibit I-14 (DX 368.1) and the related testimony for the reasons articulated in Section IV.P above.

The Court should exclude Exhibit I-16 (DX 370) (a spreadsheet appearing to show Skycom and Huawei as related entities) and the related testimony because defense counsel failed to ask any of the requisite authentication questions under Rules 803(6) and 902(11).    Indeed, defense counsel stated that "I am going to offer this document DX-00370 subject to later connection."    (Ex. E at 262:15-262:16.)    But defense counsel never made the later connection or made any attempt to authenticate this document.    Moreover, to the extent the defendants contend that these documents show that ▋ should have known of a relationship between Skycom and Huawei, they are irrelevant because "[i]t is well-settled in this circuit that a defendant charged with a fraudulent scheme may not assert as a defense the victim's failure to discover the fraud." *Udeokoro*, 2023 WL 4138477, at *6; *see also Kaufman*, 617 F. App'x at 52; *Weaver*, 860 F.3d at 96; Fed. R. Evid 401.

---

[30]    DX 370 is attached hereto as Exhibit I-16.

T.  Exhibit E at 263:18-271:12 and DX 358, DX 359, DX 351, DX 360, DX 361, DX 362, DX 363, DX 352, DX 352.1, DX 353, DX 354, DX 355, DX 356, DX 357, and DX 365[31] (Government Objections: Relevance, Foundation, Hearsay, Subject of Pending Motion in Limine, Rule 403)

The Court should exclude this entire section, including all the exhibits listed above and the related testimony.  With one exception, these documents are all records from ▮▮▮ regulatory and criminal enforcement actions, specifically ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮  The one other document is ▮▮'s 2019 annual report.  The government objects to these documents and this designated testimony on the grounds stated in its preliminary motion *in limine*, namely, relevance and Rule 403.  (*See* Preliminary MIL at 7-11.)  Additionally, the contents of these documents constitute unexcepted second-level hearsay which precludes both their admission and testimony related thereto.  *See* Fed. R. Evid. 805.  Moreover, the Court should exclude each of these documents and the related testimony for lack of foundation, as defense counsel failed to ask any of the requisite authentication questions under Rules 803(6) and 902(11).

---

[31]  DX 358 is attached hereto as Exhibit I-17.  DX 359 is attached hereto as Exhibit I-18.  DX 351 is attached hereto as Exhibit I-19.  DX 360 is attached hereto as Exhibit I-20.  DX 361 is attached hereto as Exhibit I-21.  DX 362 is attached hereto as Exhibit I-22.  DX 363 is attached hereto as Exhibit I-23.  DX 352 is attached hereto as Exhibit I-24.  DX 352.1 is attached hereto as Exhibit I-25.  DX 353 is attached hereto as Exhibit I-26.  DX 354 is attached hereto as Exhibit I-27.  DX 355 is attached hereto as Exhibit I-28.  DX 356 is attached hereto as Exhibit I-29.  DX 357 is attached hereto as Exhibit I-30.  DX 365 is attached hereto as Exhibit I-31.

The government notes that the transcript, Exhibit E, references two defense exhibits as DX 358.001 and 359-100.  The government understands this to be a clerical error, and that the referenced exhibits are actually DX 358 (Exhibit I-17) and DX 359 (Exhibit I-18).

U. Exhibit E at 271:22-276:07 (Government Objections: Relevance, Subject of Pending Motion in Limine, Hearsay, Rule 403)

In this section, defense counsel asked ▮▮▮▮▮▮▮ about other banks "targeted by the United States government." Defense counsel asked whether ▮▮▮▮▮▮▮ had spoken to counterparts at other banks concerning U.S. government enforcement actions. Defense counsel also asked ▮▮▮▮▮▮▮ about ▮▮▮'s efforts to improve its compliance program. These questions and testimony were entirely irrelevant to the fraud scheme charged in this case, which concerns Huawei's misrepresentations to certain of its banks, including ▮▮▮. As explained in the government's preliminary motion *in limine* and elsewhere in this memorandum of law, U.S. government enforcement actions concerning ▮▮▮ are not relevant to the instant case, let alone U.S. government enforcement actions concerning other banks. This testimony can only serve to cause unfair prejudice to the government and to confuse the jury by putting the victims' conduct at issue, in violation of Rule 403. Finally, to the extent that defense counsel attempted to elicit what compliance professionals at other banks may have told ▮▮▮▮▮▮▮, any such answer constitutes hearsay. Accordingly, the Court should exclude this entire section.

V. Exhibit E at 276:12-278:23 (Relevance, Subject of Pending Motion in Limine, Hearsay, Rule 403, Improper Counsel Narration)

The testimony in this section is similar to the testimony in Section IV.U., and the Court should exclude it for the same reasons. Additionally, the Court should exclude defense counsel's reading from the ▮▮▮ website and assertion that ▮▮▮ was "working with Huawei and talking with Huawei about their compliance program" as impermissible hearsay and improper commentary under Rule 611.

74

W. Exhibit E at 279:04-279:12 (Government Objections: Relevance, Foundation, Hearsay, Subject of Pending Motion in Limine, Rule 403)

Here, the government objects only to ▋▋▋▋ reference to ▋▋▋▋ for the reasons outlined in Section IV.T above.

REQUEST FOR SEALING

The government respectfully requests leave to file this brief and the exhibits under seal, with a redacted version of the brief filed on the public docket.   The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.   *See, e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored").   However, sealing is warranted in order to protect the privacy interests of third parties, particularly the victim banks and their employees.   *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).   Under the circumstances, the interest in safeguarding the privacy of these entities outweighs the public's qualified right to access such information.   Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

CONCLUSION

For the foregoing reasons, the government respectfully requests the Court grant the government's motion.

Dated:      Brooklyn, New York
           June 3, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:    /s/                            
Alexander A. Solomon
Meredith A. Arfa
Robert M. Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000


MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys


CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney