NJM:TGS/MJC
F. #2017R05903

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

HUAWEI TECHNOLOGIES CO., LTD., ET AL.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**FILED UNDER SEAL**

18-CR-457 (S-4) (AMD)

**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANTS' MOTION AND OBJECTIONS REGARDING TESTIMONY OF RULE 15 WITNESSES**

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

MARGARET A. MOESER
Chief
Money Laundering, Narcotics
and Forfeiture Section
Criminal Division
U.S. Department of Justice

CHRISTIAN NAUVEL
Acting Chief
Counterintelligence and Export
Control Section
National Security Division
U.S. Department of Justice

ALEXANDER A. SOLOMON
MEREDITH A. ARFA
ROBERT M. POLLACK
MATTHEW SKURNIK
MATTHEW F. SULLIVAN
Assistant U.S. Attorneys

TAYLOR G. STOUT
MORGAN J. COHEN
JASMIN SALEHI FASHAMI
Trial Attorneys

CHRISTOPHER FENTON
Trial Attorney

(Of Counsel)

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................................................... ii

I.  THE COURT SHOULD REJECT THE DEFENDANTS' ARGUMENTS SEEKING TO EXCLUDE THE GOVERNMENT'S DESIGNATED TESTIMONY AND EXHIBITS................................................................................................................ 2

    A   The Government's Exhibits Are Admissible Business Records Under Rule 803(6) ................................................................................................ 2

    B.  The Government's Exhibits Are Sufficiently Trustworthy ................................ 17

    C.  The Government Has Established that the Portions of the Exhibits It Seeks to Admit Are Not Hearsay ....................................................................... 21

    D.  The Court Should Reject the Defendants' Rule 403 Arguments ......................... 25

    E.  The Court Should Admit GX 21621 (Exhibit C-3) as Offered........................... 25

    F.  The Court Should Admit ▇▇▇▇▇▇ Testimony Concerning the GRRC Termination Meeting ....................................................................................... 26

II. THE COURT SHOULD SUSTAIN THE GOVERNMENT'S OBJECTIONS TO EACH OF THE DEFENDANTS' COUNTER-DESIGNATIONS .......................................... 29

    A.  ▇▇▇ Counter-Designations............................................................................... 29

    B.  ▇▇▇▇ Counter-Designations .......................................................................... 30

REQUEST FOR SEALING............................................................................................................ 33

CONCLUSION................................................................................................................................ 34

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                **Page(s)**

*Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC*,
    No. 17-CV-1688 (PHX) (DWL), 2020 WL 587841 (D. Ariz. Feb. 6, 2020) .................... 20, 24

*In re Int'l Mgmt. Assocs., LLC*,
    781 F.3d 1262 (11th Cir. 2015) ...................................................................... 10, 19

*In re Ollag Constr. Equip. Corp.*,
    665 F.2d 43 (2d Cir. 1981)................................................................................ 4, 5

*Johnson v. Sw. Recovery Servs. Inc.*,
    No.22-CV-242 (BH), 2023 WL 1944127 (N.D. Tex. Jan. 24, 2023), *report and
    recommendation adopted*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023).............................. 24

*Lugosch v. Pyramid Co.*,
    435 F.3d 110 (2d Cir. 2006).............................................................................. 39

*Paddack v. Dave Christensen, Inc.*,
    745 F.2d 1254 (9th Cir. 1984) ........................................................................... 20

*Pappas v. Middle Earth Condo. Ass'n*,
    963 F.2d 534 (2d Cir. 1992)............................................................................... 27

*Phoenix Assocs. III v. Stone*,
    60 F.3d 95 (2d Cir. 1995)............................................................................. passim

*Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*,
    629 F.3d 282 (2d Cir. 2010)......................................................................... 3, 10, 19

*Reynolds v. Am. Airlines, Inc.*, No.
    14-CV-2429 (CLP), 2017 WL 6017355 (E.D.N.Y. Dec. 4, 2017)......................................... 14

*Saks Int'l, Inc. v. M/V Exp. Champion*,
    817 F.2d 1011 (2d Cir. 1987)........................................................................ 3, 10, 19

*Stein Hall & Co. v. S.S. Concordia Viking*,
    494 F.2d 287 (2d Cir. 1974)................................................................................ 5

*U.S. Football League v. Nat'l Football League*,
    842 F.2d 1335 (2d Cir. 1988).............................................................................. 30

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
    576 F.3d 1040 (9th Cir. 2009) ............................................................................ 20

*United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC,*
  294 F. Supp. 3d 18 (E.D.N.Y. 2018) ................................................................ 11, 12, 19

*United States v. Amodeo*,
  44 F.3d 141 (2d Cir. 1995).................................................................................... 39

*United States v. Aref*,
  533 F.3d 72 (2d Cir. 2008).................................................................................... 38

*United States v. Conde*,
  134 F.4th 82 (2d Cir. 2025) ................................................................................ 3, 11

*United States v. Dupree*,
  706 F.3d 131 (2d Cir. 2013).................................................................................. 28

*United States v. Fox*,
  No. 23-CR-227 (NGG), 2025 WL 2076664 (E.D.N.Y. July 23, 2025)........................... passim

*United States v. Freidin,*
  849 F.2d 716 (2d Cir. 1988).................................................................................. 22

*United States v. Gotti*,
  457 F. Supp. 2d 395 (S.D.N.Y. 2006)...................................................................... 30

*United States v. Hathaway*,
  798 F.2d 902 (6th Cir. 1986) ............................................................................ 20, 21

*United States v. Kaiser*,
  609 F.3d 556 (2d Cir. 2010)........................................................................... 20, 21, 23

*United States v. Kaufman*,
  617 F. App'x 50 (2d Cir. 2015) .............................................................................. 36

*United States v. King*,
  134 F.3d 1173 (2d Cir. 1998)............................................................................ 27, 28

*United States v. Komasa*,
  767 F.3d 151 (2d Cir. 2014).................................................................................. 6, 14

*United States v. Lieberman*,
  637 F.2d 95 (2d Cir. 1980)................................................................................... 4, 10

*United States v. Pirk*,
  No. 15-CR-142 (EAW), 2018 WL 1521781, (W.D.N.Y. Mar. 28, 2018)........................... 7, 14

*United States v. Reyes*,
157 F.3d 949 (2d Cir. 1998)....................................................................................... 20

*United States v. Rom*,
528 F. (2d Cir. 2013)............................................................................................ 6, 14

*United States v. Smith-Kilpatrick*,
942 F.3d 734 (6th Cir. 2019) ......................................................................... 19, 21, 23

*United States v. Talco Contractors, Inc.*,
153 F.R.D. 501 (W.D.N.Y. 1994)............................................................................ 32, 33

*United States v. Udeokoro*,
No. 17-CR-629 (AMD), 2023 WL 4138477 (E.D.N.Y. June 22, 2023) .................................. 36

*United States v. Weaver*,
860 F.3d 90 (2d Cir. 2017)........................................................................................ 36

*United States v. Williams*,
205 F.3d 23 (2d Cir. 2000)...................................................................................... 4, 9

## **Rules**

Fed. R. Evid. 106 .............................................................................................. 1, 26

Fed. R. Evid. 401 ................................................................................................. 32

Fed. R. Evid. 402 ................................................................................................. 32

Fed. R. Evid. 403 .............................................................................................. 1, 25

Fed. R. Evid. 801 .......................................................................................... 23, 24, 25

Fed. R. Evid. 803 ........................................................................................... passim

Fed. R. Evid. 902 ............................................................................................ 4, 5, 12

On June 3, 2026, the parties filed their respective motions concerning the admissibility of testimony and exhibits from the Rule 15 depositions of ██████████ and ██████████████. (*See* ECF No. 713 ("Gov't Mot."); Def. Mot.).[1] In their motion, the defendants ask the Court to exclude most of the exhibits and related testimony that the government offered during both depositions, arguing that: (1) the government failed to elicit sufficient foundational testimony to admit the exhibits as business records under Federal Rule of Evidence 803(6) (Def. Mot. at 4-7, 16-19); (2) the exhibits otherwise do not satisfy Rule 803(6)(E)'s "trustworthiness" requirement (*id*. at 7-9, 19); (3) the exhibits contain embedded hearsay that does not satisfy a hearsay exception (*id*. at 10, 19-20); (4) certain contents of the exhibits are prejudicial pursuant to of Federal Rule of Evidence 403 (*id*. at 10-11, 20); (5) GX 21621 (Exhibit C-3)[2] is over-redacted and thus violates Federal Rule of Evidence 106 (Def. Mot. at 12); and (6) the Court should exclude ██████████ unprivileged testimony concerning ████████ decision to terminate its relationship with Huawei because the bank withheld as privileged the minutes of the 2017 meeting of the ██████ ██████████████████ (the "Committee") where that decision was made (*id*. at 12-15). For the reasons explained below in Part I, the Court should reject each of these arguments.

Additionally, the defendants argue that the Court should admit their counter-designated deposition testimony and exhibits. (*Id*. at 21-25.) In their motion, the defendants provide a list of thematic issues to which their counter-designations generally relate. In the

---

[1]    The government filed a sealed version of its Rule 15 motion (the "Government Motion" or "Gov't Mot.") on the docket and provided an unredacted version to the Court and the defendants via email. The defendants provided their motion (the "Def. Mot.") to the Court and the government via email, but to date, do not appear to have filed it on the docket.

[2]    The government incorporates herein the exhibits and exhibit naming conventions included in the Government Motion.

Government Motion, the government explained in detail why the testimony and exhibits described in the defendants' list of topics should be excluded.   For the sake of efficiency, in Part II, below, the government cross-references the relevant portions of the Government Motion which pertain to each of the thematic issues included in the defendants' motion.   The defendants also attach four appendices to their motion which set forth the complete list of their "requested counter-designations and bases for admission."   (*Id*. at 21 n.9; *see also id*. Appendices A-D.)   The government has addressed each of the counter-designations in Appendices A-D either in the Government Motion or in Part II of this response.

    I.    THE COURT SHOULD REJECT THE DEFENDANTS' ARGUMENTS SEEKING TO EXCLUDE THE GOVERNMENT'S DESIGNATED TESTIMONY AND EXHIBITS

    A.  The Government's Exhibits Are Admissible Business Records Under Rule 803(6)

    1.  Legal Standard

Federal Rule of Evidence 803(6) provides a hearsay exception for "[a] record of an act, event, condition, opinion, or diagnosis if: (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

       "The custodian need not have personal knowledge of the actual creation of the document to lay a proper foundation."   *United States v. Conde*, 134 F.4th 82, 88 (2d Cir. 2025)

2

(internal citations omitted).    "[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person."    *Ret. Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 289 (2d Cir. 2010) (internal quotation omitted).    "'Nor is there any requirement under Rule 803(6) that the records be prepared by the party who has custody of the documents and seeks to introduce them into evidence.'"    *Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) (quoting 4 Weinstein's Evidence, at 803–201–04).    "Rather, all that is required is proof that 'it was the business entity's regular practice to get information' from the person who created the document . . . ."    *Stone*, 60 F.3d at 101 (quoting *Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987)); *see also United States v. Williams*, 205 F.3d 23, 34-35 (2d Cir. 2000) (concluding that the government laid a proper foundation where the bank employee who testified was sufficiently familiar with the bank's practice and testified that the document was created as part of that practice); *In re Ollag Constr. Equip. Corp.,* 665 F.2d 43, 46 (2d Cir. 1981) (explaining that "business records are admissible if witnesses testify that the records are integrated into a company's records and relied upon in its day-to-day operations," and affirming admission of financial statements into evidence in part because they "were on the Bank's own form, were completed at its request, and were of a type regularly used by the Bank in making decisions [on] whether or not to extend credit"); *United States v. Lieberman*, 637 F.2d 95, 100 (2d Cir. 1980) ("[T]he requisite knowledge may be inferred from the fact that it was someone's business to obtain such information.    Evidence that it was someone's business duty in the organization's routine to observe the matter will be prima facie sufficient to establish actual knowledge.    This does not dispense with the need for personal knowledge, but permits it to be

3

proved by evidence of practice and a reasonable assumption that general practice was followed in regard to a particular matter.") (internal citations omitted).

"In general, the business records exception 'favors the admission of evidence rather than its exclusion if it has any probative value at all.'" *United States v. Fox*, No. 23-CR-227 (NGG), 2025 WL 2076664, at *9 (E.D.N.Y. July 23, 2025) (quoting *Ollag Constr. Equip. Corp.*, 665 F.2d at 46). "This circuit has always interpreted the business records exception 'most liberally' . . . the testimony of [the] witness describing the procedure and swearing that the records resulted from that procedure is sufficient to establish admissibility." *Stein Hall & Co. v. S.S. Concordia Viking*, 494 F.2d 287, 292 (2d Cir. 1974) (internal citations omitted).

    2.  <u>GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) are Admissible Business Records Under Rule 803(6)</u>

The defendants contend that GX 21348-2 (Exhibit C-1) (the "███ Report") and GX 21348-3 (Exhibit C-2) (the "███ Report") are not admissible because ███████ testimony did not establish the requisite foundation to admit these documents as business records under Rule 803(6). (Def. Mot. 4-7.) This claim fails for several reasons.

*First*, the defendants' arguments regarding the sufficiency of ████████ testimony will be moot because the government will obtain a Rule 902(11) certification from ███████ that covers GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2).[3] (*See* Def. Mot. at 5 n.3 (acknowledging that the exhibits could be admissible pursuant to a Rule 902(11) certification).) Under Rule 803(6)(D), the conditions required to satisfy the business records hearsay exception may be shown by the testimony of a custodian or another qualified witness, or

---

[3]    The government anticipates that it will receive the certification shortly after the filing of this response, and will promptly submit it to the Court and to the defendants.

by a certification that complies with Rule 902(11).   Courts in the Second Circuit routinely apply these provisions to authenticate and admit certified business records at trial.   *See, e.g.*, *United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) ("Rules 902(11) and 803(6) are [] designed to work in tandem.   Rule 902(11) was added to create 'a procedure by which parties can authenticate certain records of regularly conducted activity, other than through the testimony of a foundation witness.'") (quoting Fed. R. Evid. 902 advisory committee note (2000 amendment)); *United States v. Rom*, 528 F. App'x 24, 27 (2d Cir. 2013) ("Rule 902(11) extends Rule 803(6) by allowing a written foundation in lieu of an oral one."); *Fox*, 2025 WL 2076664, at *9 (recognizing that the proponent may satisfy the business records foundational conditions by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification).   This Court should do the same with respect to the documents covered by the certification, including GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2).

*Second*, ▮▮▮▮▮▮▮ testimony provided a sufficient foundation to admit GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) as business records.   The "key inquiry" under Rule 803(6) is "whether the foundation witness is familiar with the organization's record keeping practices, not his familiarity with any particular record."   *United States v. Pirk*, No. 15-CR-142 (EAW), 2018 WL 1521781, at *3 (W.D.N.Y. Mar. 28, 2018) (internal citation omitted). To establish such familiarity, "all that is required is proof that 'it was the business entity's regular practice to get information' from the person who created the document."   *Stone*, 60 F.3d at 101 (quoting *Saks Int'l,* 817 F.2d at 1013).   ▮▮▮▮▮▮ testimony cleared that bar.

With respect to the regular record creation practices of ▮▮▮ and the Committee, ▮▮▮▮▮ who chaired the Committee and was indisputably familiar with such practices, testified that: (1) the purpose of the Committee was to serve as the "final arbiter" within ▮▮▮ for decisions

5

related to reputational risk (Ex. A at 17:14-21); (2) different divisions of the bank—including ████████████████████████████████, which was ██████ investment banking arm (*id.* at 23:16-23), and the ██████████████████████████████ which was an independent group within ████████ ████████████████████████████ (*id.* at 49:10-20)—routinely presented reports to the Committee that were pertinent to whatever risk-related decision was before the Committee at a particular meeting (*id.* at 21:9-23, 32:3-7); and (3) those reports would ultimately be sent to the Committee's secretariat which, in turn, sent them to the Committee members to review prior to each meeting (*id.* at 21:13-18).

████████████ then testified that the creation of GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) was consistent with the regular record creation practices of ██████ and the Committee.   Specifically, he testified that: (1) the Committee convened on March 31, 2014 to discuss certain reputational risks affecting whether or not ██████ would retain Huawei as a client (*id.* at 24:23-25:13); (2) prior to that meeting, ██████ and ████ prepared reports—*i.e.*, GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2)—outlining the reputational risk issues associated with Huawei (*id.* at 31:24-32:7 (██████ Report), 49:10-50:20 (████ Report)); and (3) those reports were sent to the Committee's secretariat which, in turn, sent them to ██████████ and the other Committee members for review before the Huawei meeting (*id.* at 25:15-26:20, 27:15-28:10).

In addition to the foregoing testimony, ████████ affirmatively answered questions that tracked each of the particular requirements stated in Rule 803(6)(A), (B), and (C).   (*Id.* at. 31:19-33:11 (██████████), 49:2-50:13 (██████████).)   Notably, defense counsel did not object

6

to any of those questions.[4]   (*Id.*) ███████████ answers to the government's foundation questions thus bolstered and completed the foundation-related testimony described above.   In *Conde*, the Second Circuit held that the trial court did not abuse its discretion in admitting a document as a business record where the proponent provided sworn written testimony in the form of a declaration attesting that each of the Rule 803(6) requirements had been met.   134 F.4th at 88.   Because the sworn declaration certified that the document at issue "had been created and maintained in the regular course of [the company's] business," nothing more was required to admit the document. *Id.*   ███████████ sworn testimony that each of the requirements enumerated in Rule 803(6) had been met for GX 21348-2 (Exhibit C-1) and GX 21348-3 should be treated no differently.[5]

In sum,   ███████████ testimony established that the Committee's "regularly conducted activity" was to assess reputational risk issues pertaining to ██████ clients, like Huawei. *See* Fed. R. Evid. 803(6)(B).   It further established that it was the "regular practice" of ██████ to

---

[4]    The defendants belatedly argue that the government's foundation questions were impermissible leading questions.  Because a leading objection is an objection to the form of a question, the defendants waived this objection because defense counsel did not timely assert it during the deposition.  *See* Fed. R. Crim. P. 15(e); Fed. R. Civ. P. 32(d)(3)(B); s*ee also Grays v. Auto Mart USA, LLC*, No. 21-1312, 2022 WL 2763096, at \*4 (10th Cir. July 15, 2022) (noting that Fed. R. Civ. P. 32(d)(3)(B) requires "objections to the form of a question" to be raised "contemporaneously"); *Edwards v. Wilkie*, No. 16-CV-8031 (LTS) (OTW), 2019 WL 5957171, at \*2 (S.D.N.Y. Nov. 13, 2019) (stating that Fed. R. Civ. P. 32(d)(3)(B) requires timely and contemporaneous objections necessary for objections to form and relating to matters that "might have been corrected at that time").

[5]    The defendants cite *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 319 (E.D.N.Y. 2010), for the notion that "leading foundational questions asked by counsel in the affirmative is not dispositive on the issue of admissibility when the concomitant substantive evidence is to the contrary."  (Def. Mot. at 5.)   Here, for the reasons stated in Section I.A.2., the "concomitant substantive evidence" is *not* "to the contrary," as ███████████ provided additional testimony beyond his answers to the government's rule-tracking foundational questions that corroborated and bolstered his answers to those questions.

create risk reports tailored to issues that were to be considered during particular Committee meetings. *See* Fed. R. Evid. 803(6)(C). That evidentiary foundation is sufficient to conclude that GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) were made consistent with the ███████ "regular practices," and "in the course of" the Committee's "regularly conducted business activity." *See* Fed. R. Evid. 803(6); *see also Stone*, 60 F.3d at 103 (accountant's work paper was admissible as a business record where the accountant testified that "he prepared the work paper each year in the regular course of [the client's business]" and that "it was the regular practice . . . to make such documents"); *Williams*, 205 F.3d at 34-35 (concluding that the government laid a proper foundation where a bank employee witness was sufficiently familiar with the bank's practice and testified that the document at issue was created as part of that practice).

*Third*, the defendants' claims regarding the purported insufficiency of ███████████ foundation testimony lack merit. They claim that ███████ failed to identify the specific authors of the two reports. (Def. Mot. at 5-6.) But identifying authorship of a business record, of course, is not required by Rule 803(6). *See In re Int'l Mgmt. Assocs., LLC*, 781 F.3d 1262, 1268 (11th Cir. 2015) ("The testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation."); *Ret. Plan of UNITE HERE Nat'l Ret. Fund*, 629 F.3d at 289 ("[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person.") (internal quotation omitted); *Stone*, 60 F.3d at 101 (concluding that the foundation witness's failure to identify the specific individual responsible for creating the record did not prevent its admissibility); *Saks Int'l*, 817 F.2d at 1013 ("[T]here is no requirement that the person whose first-hand knowledge was the basis of the entry be identified, so long as it was the business entity's regular practice to get information from such a person.").

8

The defendants relatedly claim that, because ▮▮▮▮▮▮ did not identify the individual ▮▮▮ employees who wrote the reports, his testimony did not establish that the reports' authors possessed personal knowledge of their contents.  (Def. Mot. 5-7.)  "In light of the complexities of modern business, direct proof of actual knowledge of the person making the record or providing the information is not required, and the requisite knowledge may be inferred from the fact that it was someone's business to obtain such information."  *Lieberman*, 637 F.2d at 100.  ▮▮▮▮▮▮ provided a sufficient basis to permit this inference, as he testified that ▮▮▮▮ expected that whoever prepared a report for the Committee's review would present accurate information, including information from clients such as Huawei.  (Ex. A at 22:6-14, 33:4-11, 49:21-23); *cf. Conde*, 127 F.4th at 87-89; *Stone*, 60 F.3d at 101-102.

Next, the defendants claim that ▮▮▮▮▮▮ testimony did not establish that the ▮▮▮ and ▮▮ reports were made "at or near the time" of the "act, event . . . or opinion" at issue.  However, the record shows otherwise.  ▮▮▮▮▮▮ testified that each report was created contemporaneously with both the opinions stated therein regarding Huawei's risk profile, and described the general purpose of these documents, which was to advise the Committee ahead of its March 31, 2014 meeting.  *See, e.g.*, *United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC*, 294 F. Supp. 3d 18, 29 (E.D.N.Y. 2018) (holding that a report created approximately three years after the filing of a lawsuit in order to investigate the claim underlying the lawsuit was a business record under Rule 803(6) because, among other reasons, it was "created contemporaneous with its purpose—investigation of the underlying claim [asserted in the three-year-old lawsuit]").  He further testified that GX 21348-2 (Exhibit C-1), the ▮▮▮ report, was created on March 26, 2014—five days before the Committee's meeting on March 31, 2014—and that the purpose of the report was to convey "information prepared by [the ▮▮▮ division] to give background to the

9

committee" regarding Huawei's risk issues.  (*Id*. 31:25-32:2.)  The ██ report itself expressly stated that it was created to "appraise the committee of potential reputational risks associated with continued involvement with [Huawei] and known mitigants" and to "seek concurrence to the retention of the relationship with Huawei."  (Ex. C-1 at 2.)  In other words, the ██ report is a "record" of ██ "opinion[s]" regarding whether the Committee should vote to retain Huawei as a client that was created contemporaneously with the document's stated purpose.  That is sufficient to satisfy Rule 803(6)'s "at or near the time" requirement.  *See United States Underwriters Ins. Co.*, 294 F. Supp. 3d at 29.

The same reasoning applies to GX 21348-3 (Exhibit C-2), the ██ report.  ██ testified that it was prepared in March 2014 and that ██ reports were generally created when "necessary" to "get a picture in terms of a client."  (Ex. A at 49:12-20, 50:8-10.)  The report itself expressly stated that it contained "analysis" that was "compiled . . . to support the submission to the [Committee]" at the request of a subordinate, regional risk committee following that committee's approval in November 2013 of the retention of the Huawei relationship."  (Ex. X at 2.)  Thus, the opinions recorded in the ██ Report, too, were timely "created contemporaneous with its purpose."  *United States Underwriters Ins. Co.*, 294 F. Supp. 3d at 29.  That some of the information summarized in the report reflected data collected by the bank over the prior months or years is of no moment—this was simply some of the information the bank considered when it weighed the ██ Report.

Last, the defendants claim that the reports could not have been made pursuant to ██ or the Committee's regular practices because the March 31, 2014 meeting was purportedly an "emergency, ad hoc" meeting, as opposed to a regularly scheduled meeting.  (Def. Mot. at 7.)  ██ did not testify (and was not cross-examined about) anything to this effect,

10

which is presumably why the defendants do not cite any part of his testimony to corroborate their assertion.   Instead, the defendants cite a handful documents—all of which are internal ▮▮▮ emails that constitute inadmissible hearsay—to argue that the "true" purpose the Committee meeting was to "authorize the bank's participation in a lucrative loan."  (Def. Mot. at 7.)   This unsupported claim is irrelevant to the admissibility of GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2), and ultimately amounts to little more than rhetorical sleight of hand.   ▮▮▮ testified that the Committee typically met once a month but would convene on an *ad hoc* basis, if necessary, to resolve reputational risk issues.   (Ex. A at 20:9-11.)   None of the documents cited by the defendants prove, or even suggest, that the Committee meeting held on March 31, 2014 was an *ad hoc* meeting as opposed to a regular monthly meeting.   Regardless, what matters is not regularity of the *meeting*, but the regularity of the record creation *practices* with respect to each meeting, whether regularly scheduled or not.   For the reasons stated above, ▮▮▮ testimony amply demonstrated that GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) were created pursuant to ▮▮▮ and the Committee's regular practices.

      3.  <u>GX 22306-2 (Exhibit H-2), GX 22306-1 (Exhibit H-3), GX 22306-3 (Exhibit H-4), GX 22602 (Exhibit H-6), GX 22605 (Exhibit H-7), GX 22601 (Exhibit H-8), GX 22600 (Exhibit H-9), GX 22603 (Exhibit H-10), and GX 22302 (Exhibit H-11) Are Admissible Business Records Under Rule 803(6)[6]</u>

The defendants argue that the following exhibits, which the defendants collectively label the "▮▮ Committee Submissions," are not admissible because the government has failed to establish the requite foundation to admit these documents as business records under Rule 803(6):

---

[6]   Because the defendants did not address GX 22306 (Exhibit H-1) and GX 22301 (Exhibit H-5), they appear to concede that these exhibits satisfy Rule 803(6).   In any event, for the reasons applicable to the other exhibits that were challenged, these exhibits are independently admissible.

GX 22306-2 (Exhibit H-2), GX 22306-1 (Exhibit H-3), GX 22306-3 (Exhibit H-4), GX 22602 (Exhibit H-6), GX 22605 (Exhibit H-7), GX 22601 (Exhibit H-8), GX 22600 (Exhibit H-9), GX 22603 (Exhibit H-10), and GX 22302 (Exhibit H-11).[7]  (*See* Def. Mot. at 16-19.)

As an initial matter, the government attached to its motion a business record certification from ▆▆ pursuant to Rule 902(11) authenticating each of the exhibits the government offered during the direct examination of ▆▆▆▆▆ (*See* Ex. G (▆▆ Business Records Certification).)  This certification alone satisfies the foundational elements of Rule 803(6).  *See* Fed. R. Evid. 803(D); *Komasa*, 767 F.3d at 155; *Rom*, 528 F. App'x at 27; *Fox*, No. 2025 WL 2076664, at *9.

Moreover, ▆▆ ▆▆▆▆ testimony amply "elaborate[d] on procedure, methodology, or accountability of the business procedure" concerning the preparation and maintenance of the ▆▆ Committee Submissions.  *Reynolds v. Am. Airlines, Inc.*, No. 14-CV-2429 (CLP), 2017 WL 6017355, at *3 (E.D.N.Y. Dec. 4, 2017).  His testimony established his "familiar[ity] with the organization's record keeping practices."  *Pirk*, 2018 WL 1521781, at *3. For example, he testified at length about ▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, for which he served as secretary (but not a voting member), and the ▆▆▆▆▆▆▆▆▆▆▆▆▆ on which he served as a voting member.  His explanation included the committees' respective functions, responsibilities, reporting structure, makeup, the factors the committees considered in making their decisions whether to retain clients,

---

[7]    In arguing that the government failed to establish the ▆▆ Committee Submissions as business records, the defendants spend a significant portion of their argument discussing GX 22607.  (*See* Def. Mot. at 17-18.)  The government is not seeking to offer this document into evidence through ▆▆▆▆▆ and has not designated his testimony concerning this document for admission, thus mooting any dispute concerning the admissibility of this document and related testimony.  (*See generally* Gov't Mot.; Ex, F.)

the information the committees considered, and the types of documents prepared for and used by the committees in making such decisions.   (Ex. E at 13:23-23:12.)   His explanation also included a description of the role that the bank's relationship managers served in interacting directly with clients and obtaining relevant information from clients for the ███████ and ███ to consider. (Ex. E at 18:19-19:07, 21:18-23:07.)

In addition to the foundation described above, as detailed below, when discussing each of the ███ Committee Submissions, ████████ foundational testimony reinforced and completed the foundation-related testimony described above.

### a.   GX 22306-2 (Exhibit H-2)

GX 22306-2 (Exhibit H-2) is a summary of a ███ sanctions due diligence form for Huawei attached to an email he received.   In discussing this document, ████████ explained that the form is a standard form that ███ created and used, that he was familiar with the bank's policies and procedures for creating and retaining such documents, and that the document otherwise satisfied all the Rule 803(6) foundational elements.   (*See* Ex. E at 32:12-34:06.)

### b.   GX 22306-1 (Exhibit H-3)

GX 22306-1 (Exhibit H-3) is a *Washington Times* news article about Huawei's links to the Iran's Islamic Revolutionary Guard Corps that was linked in the ███ sanctions due diligence form above, GX 2206-2 (Exhibit H-2).   In discussing the article, ████████ confirmed that it was his practice to review news stories linked in due diligence forms.   (*See* Ex. E at 36:22-38:17.)   The government offered GX 22306-1 (Exhibit H-3) under Rule 902(6) and for the effect on the reader, and it is admissible for the reasons detailed in the Government Motion. (*See* Gov't Mot. at 47-49.)

13

c. GX 22306-3 (Exhibit H-4)[8]

GX 22306-3 (Exhibit H-4) is a ▮▮ sanctions due diligence memorandum concerning Huawei that documented representations from Huawei. In discussing this document, ▮▮▮▮▮▮ confirmed that it was attached to an email he received, that it was a standard ▮▮ document, that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements. (*See* Ex. E at 41:04-44:01.)

d. GX 22602 (Exhibit H-6)

GX 22602 (Exhibit H-6) is a ▮▮ sanctions questionnaire for Huawei documenting representations from Huawei. In discussing this document, ▮▮▮▮▮▮ explained that it was a standard ▮▮ document, that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements. (*See* Ex. E at 69:01-71:06.)

e. GX 22605 (Exhibit H-7)

GX 22605 (Exhibit H-7) is a summary of call between Huawei and ▮▮ concerning sanctions compliance that documented representations from Huawei. In discussing this document, ▮▮▮▮▮▮ explained that it was ▮▮ standard practice to keep records of such

---

8       The government notes that, in its motion, there is a typo on page 49 that inadvertently identifies Exhibit H-4 as "GX 220601-3." (*See* Gov't Mot. at 49). However, the header and accompanying footnote on that page correctly identify GX 22306-3 as Exhibit H-4. The same typo occurs on page 50, which inadvertently identifies Exhibit H-5 as "GX 220601-3." (*See id.*) Similarly, the header and accompanying footnote on that page correctly identify GX 22301—to which defendants do not object—as Exhibit H-5.

14

calls, that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements.  (*See* Ex. E at 75:12-78:08.)

f.  GX 22601 (Exhibit H-8)

GX 22601 (Exhibit H-8) is a ▌▌ form documenting representations from Huawei concerning sanctions compliance.  In discussing this document, ▌▌▌▌ explained that this was a standard document used by the ▌▌ that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements.  (*See* Ex. E at 82:07-83:24.)

g.  GX 22600 (Exhibit H-9)

GX 22600 (Exhibit H-9) is a ▌▌ adverse media form concerning Huawei documenting representations from Huawei.  In discussing this document, ▌▌▌▌ explained that this was a standard ▌▌ document, that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements.  (*See* Ex. E at 94:19-96:03.)

h.  GX 22603 (Exhibit H-10)

GX 22603 (Exhibit H-10) is a ▌▌ client sanctions risk assessment for Huawei that documented representations from Huawei.  In discussing this document, ▌▌▌▌ explained that it was completed by ▌▌ relationship managers, who included the representations from Huawei.  ▌▌▌▌ also explained that the document's purpose was to assess the sanctions

15

risk that Huawei posed to the bank, as well as the review process for the document.   Finally, he explained that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements.   (*See* Ex. E at 101:14-104:17.)

i.   GX 22302 (Exhibit H-11)

GX 22302 (Exhibit H-11) is a summary of a call between ▮▮▮ and Huawei concerning sanctions compliance that documented representations from Huawei.   In discussing this document, ▮▮▮▮▮ noted the date of the call and the participants, and he explained that ▮▮▮ routinely created such documents, that he was familiar with the bank's policies and procedures concerning the creation and retention of such documents, that those policies included recording client responses promptly, and that the document otherwise satisfied all the Rule 803(6) foundational elements.   (*See* Ex. E at 116:23-118:25.)

In sum, ▮▮▮▮▮ testimony in sufficient detail established that ▮▮▮ regularly assessed sanctions risk posed by clients such as Huawei and that it was the bank's regular practice to create, use, and keep documents like the ▮▮▮ Committee Submissions to aid that effort.   As for the defendants' argument that ▮▮▮▮▮ failed to identify the specific authors of the ▮▮▮ Committee Submissions, *see* Def. Mot. at 17, the Court should reject that argument for the same reasons articulated in Section I.A.2 above.   *See Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268; *Ret. Plan of UNITE HERE Nat'l Ret. Fund*, 629 F.3d at 289; *Stone*, 60 F.3d at 101; *Saks Int'l*, 817 F.2d at 1013.   Similarly, as for the defendants' argument that the Court should not admit the ▮▮▮ Committee Submissions as business records because they incorporated information obtained before they were prepared, the Court should reject that argument for the same reasons as articulated

16

in Section I.A.2 above.  *United States Underwriters Ins. Co.*, 294 F. Supp. 3d at 29.   Moreover, each of the ██ Committee Submissions was dated, and ████████ testified that they were created at or near the time by, or from information transmitted by, someone with knowledge.   *See id*.   Accordingly, the Court should admit the ██ Committee Submissions as records of a regularly conducted activity.   *See* Fed. R. Evid. 803(6); *see also Stone*, 60 F.3d at 103.

B. <u>The Government's Exhibits Are Sufficiently Trustworthy</u>

4. <u>Legal Standard</u>

If the Rule 803(6) foundational elements are met—as they are for the government's exhibits discussed above—business records are admissible if "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."   Fed. R. Evid. 803(6)(E).   "'The opponent's showing of untrustworthiness must be specific and credible.'"   *United States v. Smith-Kilpatrick*, 942 F.3d 734, 742 (6th Cir. 2019) (citing *United States v. Hathaway*, 798 F.2d 902, 907 (6th Cir. 1986)).   "[C]ourts usually reserve findings of untrustworthiness for cases involving records that are nonroutine, prepared in anticipation of litigation, or otherwise suggest the existence of a motive and opportunity to falsify." *Advanced Reimbursement Sols. LLC v. Spring Excellence Surgical Hosp. LLC*, No. 17-CV-1688 (PHX) (DWL), 2020 WL 587841, at *5 (D. Ariz. Feb. 6, 2020) (citing *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1258-59 (9th Cir. 1984) and *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*, 576 F.3d 1040, 1044 (9th Cir. 2009)).   Importantly, however, "[r]esidual doubts on the question [of trustworthiness] would go to the weight of the evidence, not its admissibility." *United States v. Kaiser*, 609 F.3d 556, 576 (2d Cir. 2010) (alteration in original) (quoting *United States v. Reyes*, 157 F.3d 949, 953 (2d Cir. 1998)); *see also Smith-Kilpatrick*, 942 F.3d at 742 ("[A]ssuming a proper foundation has been laid, 'the proper approach is to admit the evidence and

17

permit the jury to determine the weight to be given the records.'") (quoting *Hathaway*, 798 F.2d at 907).

### 5.   GX-21348-2 (Exhibit C-1) and GX 21348-3 Are Sufficiently Trustworthy

The defendants contend that GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2) are inadmissible because they are not sufficiently trustworthy.  (Def. Mot. at 7-9.)  This argument is meritless.

*First*, as noted above, the trustworthiness of these exhibits pertains to the weight afforded by the jury, not to their admissibility.  *See Kaiser*, 609 F.3d at 576 (internal citation omitted).   Even if the defendants had met their burden to make a credible showing regarding the trustworthiness of the reports—and they did not for the reasons stated below—"the proper approach is to admit the evidence and permit the jury to determine the weight to be given the records."  *Smith-Kilpatrick*, 942 F.3d at 742 (internal quotation omitted).   Accordingly, as a matter of law, the purported lack of trustworthiness of GX 21348-2 (Exhibit C-1) and GX 21348-3 (Exhibit C-2)—which does not provide support for the inference of fabrication in anticipation of this litigation—presents no bar to their admission.

*Second*, both reports are sufficiently trustworthy.   The purpose of the trustworthiness requirement is to ensure that documents were not created for "personal purpose[s] . . . or in anticipation of any litigation" so that the creator of the document "had no motive to falsify the record in question."  *United States v. Freidin,* 849 F.2d 716, 719 (2d Cir. 1988).   With respect to GX 21348-2 (Exhibit C-1), the ▮▮▮▮ Report, the defendants claim that ▮▮▮▮▮▮▮—Huawei's primary relationship banker at ▮▮▮▮ during the relevant time—had such a motive.   As the defendants note, ▮▮▮▮▮▮ admitted in an interview with the government that, to preserve the Huawei account over which he presided, he concealed from ▮▮▮▮▮ and by

18

extension ▮▮▮▮ and the Committee—damaging information that would have exposed the falsity of Huawei's representations to the bank.  (Def. Mot. at 8.)   Specifically, the defendants allege that ▮▮▮▮ concealed that he knew (a) that Huawei continued to control Skycom despite having represented that it sold its ownership stake and (b) that Skycom had conducted illegal transactions with Iran, despite Huawei's representation that it complied with U.S. sanctions.   (*Id*.) Although the government does not deny that ▮▮▮▮ acted as an uncharged coconspirator in facilitating Huawei's fraud on ▮▮▮▮ by concealing such information, there is no evidence, and the defendants point to none, that the actual representations attributed to Huawei in GX 21348-2 (*see* Ex. C-1 §§ 2-3), or any of the other Huawei-related information contained in the report, were not accurately recorded.   If anything, ▮▮▮▮ was motivated to *aid* Huawei's fraud scheme by concealing the falsity of the statements recorded in GX 21348-2 (Exhibit C-1) that Huawei had made to ▮▮▮▮ *not* to falsify information that would have negatively affected its relationship with the bank.   Thus, despite ▮▮▮▮ lack of candor, the government maintains that GX 21348-2 (Exhibit C-1) is sufficiently reliable.   Nonetheless, if the defendants wish to argue to the jury that the ▮▮▮ Report is unreliable because Huawei defrauded HBSC with the help of ▮▮▮▮, they are free to do so.

As to GX 21348-3 (Exhibit C-2), the ▮▮▮ Report, the defendants merely rehash their claims regarding the purported insufficiency of ▮▮▮▮ foundational testimony.   (Def. Mot. at 9.)   Those claims should be rejected for the reasons stated above.   Additionally, the defendants baselessly assert that the ▮▮▮ Report was "unreliable" because—contrary to ▮▮▮▮ testimony and what is stated in the report itself—it was "specifically commissioned for the purpose of obtaining approval to participate in (and lead) a Huawei syndicated loan."   (*Id*.) But the notion that the ▮▮▮ Report was driven by a secret, improper motive is undermined by the

19

very documents the defendants cite to support this claim.    For example, in DOJ_HUAWEI_A_0004547401, which is an internal ██████ email form February 2014, a senior ██████ executive wrote: "[H]as a ██████ report been undertaken?? – if not then it probably should be in order to gain an independent perspective + access to (potentially) non-public info."[9]    This email thus *corroborates* ██████ testimony that the ██████ Report was authored by the independent ██████████████████████ and was meant to provide "a better picture in terms of a client" by using both public information and the ██████████████████ "own contacts."    (Ex. A at 49:12-16.)

6.    The ████ Committee Submissions Are Sufficiently Trustworthy

The defendants assert that the ████ Committee Submissions "lack sufficient indicia of trustworthiness."    (Def. Mot. at 19.)    As with the ██████ documents, the trustworthiness of these exhibits pertains to the weight afforded by the jury, not their admissibility.    *See Kaiser*, 609 F.3d at 576 (internal citation omitted).    Moreover, the defendants fail to make any "specific and credible" showing of untrustworthiness.    *See Smith-Kilpatrick*, 942 F.3d at 742.    The only document the defendants specifically attack is GX 22607, the so-called "draft ████ report," which is not one of the "████ Committee Submissions."    (*See* Def. Mot. at 16.)    As explained above in footnote 7, the government is not seeking to admit GX 22607 through ██████████ and has not designated his related testimony for admission.

As for the ████ Committee Submissions that the defendants seek to exclude, as explained above, ████████████ testimony about each of them clarified that they were routine records created and kept by ████ and there is no suggestion that they were "nonroutine, prepared

---

[9]        The second of the two documents cited by the defendants is another ██████ email chain that appears to refer to an entirely different report for a different committee.    (Def. Mot. at 9.)

20

in anticipation of litigation, or otherwise suggest the existence of a motive and opportunity to falsify." *Advanced Reimbursement Sols. LLC*, 2020 WL 587841, at \*5.   The defendants do not specify any of the ▮▮▮ Committee Submissions which they seek to exclude or articulate any reason whatsoever to consider any of them untrustworthy—they simply speculate that some of them *could* be draft documents, which *could* have been altered before their final form.   (*See* Def. Mot. at 19.)   This speculation is not a sufficient ground from which to find them facially unreliable.   Accordingly, the Court should reject the defendants' argument to exclude the ▮▮▮ Committee Submissions under Rule 803(6)(E).   *See, e.g.*, *Johnson v. Sw. Recovery Servs. Inc.*, No.22-CV-242  (BH),  2023  WL  1944127,  at  \*5  (N.D.  Tex.  Jan.  24,  2023,  *report  and recommendation adopted*, 2023 WL 1879999 (N.D. Tex. Feb. 10, 2023) ("Because Plaintiff fails to identify a lack of trustworthiness with the [] declaration, her hearsay objection is overruled.").

    C.  The Government Has Established that the Portions of the Exhibits It Seeks to Admit Are Not Hearsay[10]

As an initial matter, GX 21348-2 (Exhibit C-1), GX 21348-3 (Exhibit C-2), and the ▮▮▮ Committee Submissions overcome the first layer of hearsay because, as explained above in Section I.A., they qualify as business records under Rule 803(6).   Moreover, the defendants' arguments regarding embedded hearsay within these documents are meritless.

The defendants contend that the Court should exclude embedded statements within GX 21348-2 (Exhibit C-1), GX 21348-3 (Exhibit C-2), and the ▮▮▮ Committee Submissions that do not satisfy a hearsay exception and are not otherwise admissible.   (Def. Mot. at 10, 19-20.) However, as the government explained in its supplemental motion *in limine* (ECF No. 691 at 1-

---

[10]    For  a  summary  of  the  applicable  legal  standards  concerning  hearsay,  the government respectfully refers the Court to the equivalent legal standard section in its motion. (*See* Gov't Mot. at 11-13.)

10) and in the Government Motion, the statements attributed to Huawei within GX 21348-2 (Exhibit C-1), GX 21348-3 (Exhibit C-2), and the ▇▇ Committee Submissions are not hearsay because they are not offered for their truth but rather: (1) "to prove the falsity of the statements therein or to link the records to the defendant," *see Fox*, 2025 WL 2076664, at *9; (2) as party admissions under Rule 801(d)(2); and/or (3) for their effect on the recipient, namely, ▇▇▇▇▇▇ ▇▇▇▇▇ and the respective committees that received the statements.

*First*, the documents at issue attributed various statements to Huawei which the government intends to prove were false, like the statements seen below in GX 21348-2 (Exhibit C-1):



22

(Ex. C-1 at 3-4.)   The government is not offering these statements for their truth; indeed, Huawei's statements concerning its compliance with U.S. economic sanctions and its relationship with Skycom are offered to show that Huawei made these flagrantly false statements, which is the heart of the fraud alleged in Counts Four through Seven of the Fourth Superseding Indictment.   *See* Fed. R. Evid. 801(c) (defining hearsay as a statement offered for its truth); *see also* Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."); *Fox*, 2025 WL 2076664, at *9 ("Where the proponent offers records into evidence to prove the falsity of the statements therein or to link the records to the defendant, courts within the Second Circuit admit such records into evidence because they are not offered for the truth of the matters asserted in the records.").

*Second*, the statements attributed to Huawei in the reports, like the kind seen above, also constituted party admissions which are not hearsay under Rule 801(d)(2).   The Second Circuit has explained that "Section 801(d)(2)(D) broadens the prior definition of admissible statements of agents from statements 'made by the agent acting in the scope of his employment' to statements 'related to a matter within the scope of the agency or employment.'"   *United States v. King*, 134 F.3d 1173, 1174 n.1 (2d Cir. 1998) (quoting Fed. R. Evid. 801(d)(2)(D) advisory committee note).   Additionally, the Second Circuit has emphasized that "admissibility under this rule should be granted freely."   *Pappas v. Middle Earth Condo. Ass'n*, 963 F.2d 534, 537 (2d Cir. 1992); *see also* Fed. R. Evid. 801(d)(2), advisory comm. notes (Federal Rules of Evidence call for "generous treatment of the avenue of admissibility" for admissions in general).

The defendants argue against admissibility on the basis that none of the ▇▇ Committee Submissions identify the Huawei employee who made the statements.   (*See* Def. Mot.

23

at 20.)   The defendants cite no case law indicating any such requirement.  (*See id.*)   Moreover, several of the ▮ Committee Submissions *do* identify the Huawei representative who made the statements on behalf of Huawei.  For example, GX 22605 (Exhibit H-7), a summary of call between Huawei and ▮ concerning sanctions compliance that documented representations from Huawei, specifically identified the Huawei representative on the call.   The same is true of GX 22302 (Exhibit H-11), another call summary between ▮ and Huawei that documented representations from Huawei.   But even though not all the documents attributed the Huawei statements to individual Huawei employees, given the nature of the statements attributed to Huawei—which concerned Huawei's compliance with sanctions laws and its relationship with Skycom—all of the statements were made by an employee "related to a matter within the scope of the agency or employment."  *King*, 134 F.3d at 1174 n.1 (quoting Fed. R. Evid. 801(d)(2)(D) advisory committee note).   Moreover, the statements attributed to Huawei in the ▮ and ▮ Committee Submissions are uniform in falsely expressing Huawei's compliance with applicable sanctions law.

*Third*, other statements in the reports, including, but not limited to, excerpts from news reports about Huawei's conduct in Iran, are non-hearsay because they are not offered for their truth, but for their effect on the recipient, that is, ▮ ▮ and the respective committees.  *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay.") (internal citation omitted).   During their depositions, ▮ and ▮ explained how these statements affected, or were relevant to, the committees' decision making.  (*See, e.g.*, Ex. A at 38:22-39:7, 44:14-45:6, 46:4-25, 48:1-20; Ex. E at 32:13-34:07 and 36:14-36:17, 36:23-38:12, 40:20-41:03, 41:05-42:14, 45:04-

24

45:09, 49:18-50:16, 69:02-74:14, 75:13-82:06, 82:08-83:24, 85:02-90:05, 94:19-96:06, 97:20-101:13, 101:15-104:17, 105:14-109:21, 116:25-118:25 and 120:06-124:02.)

*Fourth*, the statements are admissible non-hearsay for the same reasons outlined in the Government Motion.   (*See* Gov't Mot. Sections I.B, I.D, and III.H-V.)

### D. The Court Should Reject the Defendants' Rule 403 Arguments

The defendants assert that the government's exhibits contain irrelevant and unfairly prejudicial statements that the Court should exclude under Rule 403.   The government agrees to consult with the defense on appropriate redactions to these exhibits.   (*See* Def. Mot. at 10, 20.)

### E. The Court Should Admit GX 21621 (Exhibit C-3) as Offered

The defendants object to the admission of GX 21621 (Exhibit C-3)—the minutes of the March 31, 2014 Committee meeting—on the narrow ground that a question by one of the participants was improperly redacted and thereby rendered the minutes misleading and incomplete under Rule 106.   (Def. Mot. at 12.)   This argument fails.   If the defendants possessed a version of the minutes in which this question was not redacted, they had every opportunity to admit it through ████████ (though they would have to reveal their undisclosed possession of documents withheld from reciprocal Rule 16 discovery and from defendants' subpoena productions) but apparently chose not to do so.[11]   The defendants' tactical decision not to reveal their access to this document in time to obtain the witness's perspective on the question does not require the Court to exclude GX 21621 (Exhibit C-3), which the government properly admitted through ████████ testimony.   (Ex. A at 56:15-57:23.)   That is likely why, apart from the redacted question at issue, the defendants do not object to the admission of GX 21621 (Exhibit C-3) or its contents.

---

[11]      On June 15, 2026, ████████ produced to the government for the first time a version of the minutes in which the question at issue was not redacted.

Furthermore, the redacted question is inadmissible hearsay.  Finally, Rule 106 is not implicated because there is no indication that, and the defendants make no attempt to explain how, the redacted question is "essential to explain an already admitted document, to place the admitted document in context, or to avoid misleading the trier of fact."  *United States v. Gotti*, 457 F. Supp. 2d 395, 397-98 (S.D.N.Y. 2006); *see also U.S. Football League v. Nat'l Football League*, 842 F.2d 1335, 1375-76 (2d Cir. 1988) (stating that Rule 106 "does not compel admission of otherwise inadmissible hearsay evidence") (internal citation omitted).  While there may well be some answers that are impossible to decipher, or are too easy to misunderstand, absent the precipitating question, this is not such a case.  Accordingly, the Court should admit GX 21621 (Exhibit C-3) as offered by the government.

F.  <u>The  Court  Should  Admit ▆▆▆▆▆ Testimony  Concerning  the ▆▆▆▆ Termination Meeting</u>

The defendants contend that ▆▆▆▆ non-privileged testimony regarding ▆▆▆▆ separation from Huawei in 2017 should be excluded because ▆▆▆ withheld the minutes of the Committee meeting at which that decision was reached on the basis of the attorney-client privilege.  (Def. Mot. at 12-15.)  The defendants speculate that, pursuant to some as-yet undisclosed secret agreement between ▆▆▆ and the government, ▆▆▆▆ was "allowed . . . to divulge" privileged information about the separation while ▆▆▆ would continue to "withhold the underlying minutes of [the Committee meeting] as privileged to prevent their disclosure to Huawei."  (Def. Mot. at 12.)  This sort of rank speculation is baseless and would serve as an



inappropriate ground for suppression.   Simply put, there is no basis to exclude █████████ testimony.[12]

*First*, █████████ brief testimony regarding ████████ separation from Huawei (Ex. A at 24:16-24:22, 72:17-73:3) was not privileged.   That is why, as the defendants observe, ██████ counsel did not preclude █████████ from offering such testimony.   Indeed, after the deposition, ██████ counsel confirmed to the defendants that █████████ "did not disclose any privileged information during his deposition." (Ex. C-5.)   The main question at issue from the government—"Why did ██████ ultimately separate from Huawei?" (Ex. A at 72:7)—plainly does not call for privileged information.   Nor was it, as the defendants imagine, "clearly designed to elicit from ██████ testimony that the [Committee] was involved in the decision to terminate the ██████ relationship." (Def. Mot. at 14.)   The government's only meeting with █████████ prior to his deposition occurred in 2017—before █████████ separation from Huawei.   Moreover, ████ ██████ did not review the privileged minutes prior to his testimony, or even recall ever seeing them in the first place.   (Ex. A at 219: 21-22, 221:9-11.)

*Second*, although ██████ did withhold the minutes of the 2017 Committee meeting from discovery due to attorney-client privilege (Ex. C-5), it has not asserted privilege over the fact of, or reasons for, the separation, nor as to the fact of the Committee meeting itself.   Thus, the defendants' characterization of █████████ testimony as pertaining to "a supposedly privileged

---

[12]    Much of the defendants' argument on this issue pertains to whether █████████ testimony regarding ██████ separation from Huawei waived the privilege that ██████ asserted over the Committee meeting minutes.   Although the government does not believe █████████ revealed any privileged information, it takes no position on the waiver issue, as the privilege belongs to ██████ not the government.   Whether █████████ effected a waiver is a separate question from whether his testimony should be excluded because the Committee meeting minutes were withheld for privilege.   The government addresses the later issue above.

meeting that Huawei knew nothing about" is inaccurate.  (Def. Mot. at 13.)  Moreover, the government has produced multiple documents from ███ pertaining to its decision to separate from Huawei, any of which could have been used to attempt to impeach ████████ testimony on this issue.   That the defendants did not do so does not require the exclusion of his testimony.

*Third*, the defendants tellingly do not point to a single case that holds that exclusion is a proper remedy under the circumstances at issue here.  The defendants cite only to *United States v. Talco Contractors, Inc.*, 153 F.R.D. 501 (W.D.N.Y. 1994), a civil tax case, from which they quote the following language: "[W]hen a witness invokes . . . privilege with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony[,] . . . the witness's direct testimony should be stricken in whole or in part."   (Def. Mot. at 15 (quoting *Talco Contractors Inc.*, 153 F.R.D. at 506) (emphasis in original).)   The defendants omit that this case, and the language they quote therefrom, pertained to the self-incrimination privilege, not the attorney-client privilege, and the preclusion remedy recognized by the court was grounded, in part, on Rule 26(c) of the Federal Rules of Civil Procedure, which is inapposite here.  *See Talco Contractors Inc.*, 153 F.R.D. at 506-07.   More fundamentally, while the *witness* in that case refused to testify during a deposition based on the self-incrimination privilege, ████████ never once invoked any form of privilege.

Accordingly, there are no grounds on which to exclude ████████ testimony regarding ███ decision to separate from Huawei in 2017.

II.     THE COURT SHOULD SUSTAIN THE GOVERNMENT'S OBJECTIONS TO EACH OF THE DEFENDANTS' COUNTER-DESIGNATIONS

      A.  ██████ Counter-Designations

          1.  "Testimony regarding ██████ lack of compliance knowledge" (Def. Mot. at 22)

The government objects to this defense counter-designation for the reasons stated in Sections II.E-G of the Government Motion.  Additionally, the Court should reject the defendants' claim that these passages are "relevant to the weight accorded ██████ testimony because it permits the inference that a customer like Huawei" could not have been expected to "know[] the same things" about ██████ compliance program that ██████ purportedly did not know.  Huawei is not charged with violating ██████ compliance program; it is charged with violating U.S. laws with which it represented it complied—bespeaking a claim to understand the laws well enough to determine that is did not run afoul of them.

          2.  "Testimony regarding ██████ lack of knowledge of compliance systems" (Def. Mot. at 22-23)

The government objects to this defense counter-designation for the reasons stated in Sections II.M-N, P, R-S, and Y of the Government Motion.

          3.  "Testimony and evidence regarding ██████ ██████████████████ (Def. Mot. at 23)

The Court should exclude the testimony and defense exhibits in this defense counter designation pursuant to the Court's order of June 8, 2026, granting the government's Preliminary Motions in Limine and excluding cross-examination and evidence related to prior enforcement proceedings against the victim banks (the "Order").  (*See* ECF No. 717 at 3-8.)

          4.  "Testimony regarding ring fencing" (Def. Mot. at 23)

The government objects to this defense counter-designation for the reasons stated in Sections II.H-J of the Government Motion.   Additionally, certain of these counter designations (Ex. A at 120:14-121:6) pertain to the ▮▮▮▮ ▮▮▮▮ which should be excluded pursuant to the Order.

5.   "Testimony regarding ▮▮▮▮▮▮▮▮" (Def. Mot. at 23-24)

The government objects to this defense counter-designation for the reasons stated in Section II.U of the Government Motion.

6.   "Testimony regarding interviews with law enforcement" (Def. Mot. at 24)

The government objects to this defense counter-designation for the reasons stated in Section II.AA of the Government Motion.

7.   "Testimony regarding call reports" (Def. Mot. at 24)

The government objects to this defense counter-designation for the reasons stated in Section II.CC of the Government Motion.

8.   "Testimony regarding ▮▮▮▮▮ failure to put Skycom on sanctions list" (Def. Mot. at 24)

The government does not object to this defense counter-designation.

9.   "Background about ▮▮▮▮▮ (Def. Mot. at 24)
The government objects to this defense counter-designation for the reasons stated in Section II.EE of the Government Motion.

B.   ▮▮▮▮▮ Counter-Designations

10. "Lack of personal knowledge" (Def. Mot. at 24-25)

a.   Exhibit E at 128:16-132:11

The government does not object to this defense counter-designation.

b.  Exhibit E at 132:12-133:11

The Court should exclude this testimony for the reasons articulated in Section IV.B of the Government Motion.

c.  Exhibit E at 133:12-140:13

The Court should exclude the portions of this section listed in Sections IV.B, IV.C.i, and IV.C.ii of the Government Motion, for the reasons articulated in the Government Motion.

11. "█████ ██████ (Def. Mot. at 25)

The Court should exclude the testimony and defense exhibits the defendants have designated regarding █████ ████████████████████ to the Order.

12. "Background about ████ and its compliance process" (Def. Mot. at 25)

d.  Exhibit E at 142:12-152:22

The government does not object to this defense counter-designation.

e.  Exhibit E at 179:12-181:03

The government does not object to this defense counter-designation.

f.  Exhibit E at 273:13-276:07

The Court should exclude this section for two reasons. First, in this section, defense counsel referenced █████ █████ (*see* Ex. E at 273:13-19), and the Court should exclude this section pursuant to the Order. Second, in this section, defense counsel asked questions and elicited testimony about ████ efforts to improve its compliance program. Such testimony is irrelevant because "[i]t is well-settled in this circuit that a defendant charged with a fraudulent scheme may not assert as a defense the victim's failure to discover the fraud." *United States v. Udeokoro*, No. 17-CR-629 (AMD), 2023 WL 4138477, at *6 (E.D.N.Y. June 22, 2023); *see also*

*United States v. Kaufman*, 617 F. App'x 50, 52 (2d Cir. 2015); *United States v. Weaver*, 860 F.3d 90, 96 (2d Cir. 2017); Fed. R. Evid. 401, 402.

g.  Exhibit E at 276:12-278:23

The Court should exclude this section for the same reasons articulated in Section IV.V of the Government Motion.

13. "Knowledge of the relevant sanctions regime" (Def. Mot. at 25)

a.  Exhibit E at 152:23-157:05

The Court should exclude the portions of this section listed in Sections IV.C.iv. IV.C.v, IV.C.vi, and VI.C.vii of the Government Motion, for the reasons articulated in the Government Motion.

b.  Exhibit E at 157:22-159:06

The Court should exclude the portions of this section listed in Sections IV.C.viii and IV.C.ix of the Government Motion, for the reasons articulated in the Government Motion.

14. "███ motives to maintain Huawei relationship" (Def. Mot. at 25)

c.  244:04-248:15

The Court should exclude this section and Exhibit I-12 (DX 364) for the reasons articulated in Section IV.N of the Government Motion.

d.  252:10-253:05

The Court should exclude this section, Exhibit I-13 (DX 368), and Exhibit I-14 (DX 368.1) for the reasons articulated in Section IV.P of the Government Motion.

e.  253:18-255:17

The Court should exclude this section, Exhibit I-13 (DX 368), and Exhibit I-14 (DX 368.1) for the reasons articulated in Sections IV.P and IV.Q of the Government Motion.

32

f.   256:15-256:20

The Court should exclude this section and Exhibit I-15 (DX 369) for the reasons articulated in Section IV.R of the Government Motion.

g.   257:04-259:17

The Court should exclude this section and Exhibit I-15 (DX 369) for the reasons articulated in Section IV.R of the Government Motion.

h.   260:14-263:03

The Court should exclude Exhibit I-14 (DX 368.1), Exhibit I-16 (DX 370), and the related testimony for the reasons articulated in Section IV.S of the Government Motion.

i.   DX 367.3

The Court should exclude Exhibit I-4 (DX 367.3) for the reasons articulated in Sections IV.F and IV.G of the Government Motion.

15. "██████ knowledge of Skycom"

a.   249:13-251:07

The Court should exclude the portions of this section listed in Section IV.O of the Government Motion for the reasons articulated in that Section of the Government Motion.

b.   Exhibit I-13 (DX 368)

The Court should exclude Exhibit I-13 (DX 368) for the reasons articulated in Sections IV.P and IV.Q of the Government Motion.

## REQUEST FOR SEALING

The government respectfully requests leave to file this brief and the exhibits under seal, with a redacted version of the brief filed on the public docket.   The government is sensitive to the need to minimize the amount of information in a criminal case that is filed under seal.   *See,*

33

*e.g.*, *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008) (noting "the requirement that district courts avoid sealing judicial documents in their entirety unless necessary"); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (noting that sealing orders should be "narrowly tailored").   However, sealing is warranted in order to protect the privacy interests of third parties, particularly the victim banks and their employees.   *See United States v. Amodeo*, 44 F.3d 141, 147 (2d Cir. 1995).   Under the circumstances, the interest in safeguarding the privacy of these entities outweighs the public's qualified right to access such information.   Because the facts set forth herein provide a sufficient basis for the "specific, on the record findings" necessary to support sealing, *Lugosch*, 435 F.3d at 120, the government respectfully requests that the Court permit the government to file this brief under seal.

## CONCLUSION

For the foregoing reasons, the government respectfully requests the Court grant the Government Motion (ECF No. 713) and admit and exclude testimony and exhibits from the depositions as outlined therein.

Dated:    Brooklyn, New York
          June 17, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:    /s/
       Alexander A. Solomon
       Meredith A. Arfa
       Robert M. Pollack
       Matthew Skurnik
       Matthew F. Sullivan
       Assistant United States Attorneys
       (718) 254-7000

34

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and
Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan J. Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN NAUVEL
Acting Chief, Counterintelligence and Export
Control Section,
National Security Division,
U.S. Department of Justice

Christopher Fenton
Trial Attorney

35