UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. –

HUAWEI TECHNOLOGIES CO., LTD.,
*et al.*,

Defendants.

18 CR 457 (S-4) (AMD) (JAM)

**UNREDACTED VERSION**

**FILED UNDER SEAL**

**DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD.,
HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S
MOTION AND OBJECTIONS REGARDING TESTIMONY OF RULE 15 WITNESSES**

David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,
Huawei Device USA Inc., and Futurewei Technologies, Inc.*

## **TABLE OF CONTENTS**

I.   **The Court Should Exclude Certain Testimony and Evidence from the Rule 15 Depositions** ................................................................................................... 2

    A.   **Government Witness** ███████ ████ ........................................................ 2

        1.  Background ................................................................................................ 2

        2.  The Court should exclude the ████ and ██ Reports and related testimony. ................. 4

        3.  The Court should exclude the redacted version of the March 2014 Meeting Minutes .. 12

        4.  The Court should preclude the government from introducing testimony regarding purportedly privileged communications. ............................................................. 12

    B.   **Government Witness** ███████████ ██████████████████ ....................... 15

        1.  Background ................................................................................................ 15

        2.  The Court should exclude the ████ Committee Submissions and related testimony. ... 16

II.  **If the Court Admits the Government's Requested Testimony and Exhibits, it Should Admit Huawei's Proposed Excerpts.** ................................................................ 21

    A.   **Many of Huawei's counter-designations are necessary for completeness.** ............. 21

    B.   **Counter-designations that are not necessary for completeness are independently relevant and admissible.** ............................................................................. 22

        1.  ███████ ................................................................................................ 22

        2.  ████████████ ......................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Bagby v. Kuhlman*,
    932 F.2d 131 (2d Cir. 1991).................................................................................................15

*In re Grand Jury Proceedings*,
    219 F.3d 175 (2d Cir. 2000)...............................................................................................13

*In re Nassau Cnty. Strip Search Cases*,
    742 F. Supp. 2d 304 (E.D.N.Y. 2010) ..............................................................................5, 6

*In re Sealed Case*,
    676 F.2d 793 (D.C. Cir. 1982) ...........................................................................................13

*In re Steinhardt Partners, L.P.*,
    9 F.3d 230 (2d Cir. 1993) ..................................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
    293 F.D.R. 539, 544 (S.D.N.Y. 2013) ..............................................................................13

*John Doe Co. v. United States*,
    350 F.3d 299 (2d Cir. 2003)...............................................................................................13

*Mandal v. City of New York*,
    No. 02-cv-1234 (WHP), 2006 WL 3405005 (S.D.N.Y. Nov. 26, 2006) ...............................10

*New York Times Co. v. U.S. Dep't of Justice*,
    939 F.3d 479 (2d Cir. 2019)................................................................................12, 13, 14

*Ortho Pharma. Corp. v. Cosprophar, Inc.*,
    828 F. Supp. 1114 (S.D.N.Y. 1993)....................................................................................5

*Reynolds v. Am. Airlines, Inc.*,
    No. 14 CV 2429 (CLP), 2017 WL 6017355 (E.D.N.Y. Dec. 4, 2017)....................................5

*Rodriguez v. Mod. Handling Equip. of NJ, Inc.*,
    604 F. Supp. 2d 612 (S.D.N.Y. 2009).................................................................................10

*Saks Int'l, Inc. v. M/V Export Champion*,
    817 F.2d 1011 (2d Cir. 1987)...............................................................................................8

*United States v. Bein*,
    728 F.2d 107 (2d Cir. 1984)...............................................................................................12

*United States v. Bilzerian*,
    926 F.2d 1285 (2d Cir. 1991).............................................................................................13

*United States v. Castro*,
   813 F.2d 571 (2d Cir. 1987)........................................................................................21

*United States v. Freidin*,
   849 F.2d 716 (2d Cir. 1988)..........................................................................................7

*United States v. Hunt*,
   534 F. Supp. 3d 233 (E.D.N.Y. 2021) ..........................................................................8

*United States v. Johnson*,
   507 F.3d 793 (2d Cir. 2007)........................................................................................21

*United States v. Kaiser*,
   609 F.3d 556 (2d Cir. 2010)........................................................................................11

*United States v. Komasa*,
   767 F.3d 151 (2d Cir. 2014)..........................................................................................4

*United States v. Reyes*,
   18 F.3d 65 (2d Cir. 1994) ............................................................................................11

*United States v. Talco Contractors, Inc.*,
   153 F.R.D. 501 (W.D.N.Y. 1994)................................................................................14

## Other Authorities

Fed. R. Evid. 106 .....................................................................................................12, 21

Fed. R. Evid. 403 ...............................................................................................10, 11, 20

Fed. R. Evid. 803 ...................................................................2, 4, 5, 6, 7, 15, 16, 17, 19

Fed. R. Evid. 805 ............................................................................................................10

Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc. (collectively, "Huawei") respectfully submit this motion to exclude certain testimony and evidence from the Rule 15 depositions of ███████ and ███████████ ████ and ██████ were or are, respectively, ████████████ at ████████████ and ██████████████████ two of the alleged Victim Banks identified in the S-4 Indictment. During their depositions, the evidence showed that ████ and ██████ lack sufficient knowledge to testify about important subjects and, critically, had absolutely no familiarity with certain purported business records through which the government attempted to introduce Huawei's alleged misrepresentations. And during ██████ deposition, the government sought to introduce an improperly redacted version of an important exhibit as well as testimony about an allegedly privileged meeting that Huawei had no opportunity to meaningfully cross examine.[1]

The Court should exclude ██████ and ██████ testimony and related evidence. The government failed to establish a business-records foundation for the records it sought to introduce, the underlying documents are untrustworthy and filled with hearsay for which the government has failed to establish an exception, and the records contain highly prejudicial and irrelevant representations that the Court should exclude. The Court should independently exclude from ██████ deposition the improperly redacted exhibit and ██████ testimony regarding the allegedly privileged meeting because admitting that testimony would be unfair to Huawei. If the Court admits ██████ or ██████ testimony as the government requests, the Court should admit

---

[1] Along with this Motion, Huawei has filed a motion for leave to submit the video recordings of the depositions for the Court's consideration. Huawei believes that these recordings will offer a more complete and accurate depiction of the testimony than the transcripts alone, aiding the Court in assessing the merits of this Motion and related pending motions in limine.

1

additional excerpts designated by Huawei, which are necessary to contextualize the government's requested excerpts or are independently relevant and admissible.[2]

**ARGUMENT**

**I.     The Court Should Exclude Certain Testimony and Evidence from the Rule 15 Depositions**

**A.     Government Witness** ███████ ████

1.     <u>Background</u>

███████ was previously █████████████████████████████████ ████████ at ████ He also served on ████████████████████████ ("██████ which he described during his deposition as "the final arbiter for resolving . . . matters which related to the reputational risk of the bank." ████ Depo. Tr. 17:14–16. During his Rule 15 deposition, the government sought to introduce several documents without proper foundation or context and to elicit testimony about an allegedly privileged meeting.

First, during ████ direct examination, the government sought to introduce several documents as purported business records under Federal Rule of Evidence 803(6). Two of them— a report by ████████████████████████████ ("████ Report," at GX 21348-2) and a report by █████████████████████████ ("████ Report," at GX 21348-3)—are documents that the ████ allegedly considered in 2014 in assessing its continued relationship with Huawei. The government attempted to establish a business-records foundation through ████ testimony, and ████ provided rote responses to the government's leading questions regarding the documents' foundation. *See, e.g., id.* at 32:8–33:9. The government moved to admit those documents as business records over Huawei's objection and without further qualification, and asked ████ to

---

[2] Huawei's line-by-line objections to the witnesses' testimony are attached in an Appendix to this brief.

2

read limited excerpts to establish that the ▮▮▮ considered certain representations regarding Huawei in deciding to maintain a business relationship. However, when defense counsel later attempted to cross-examine ▮▮▮ on other excerpts in the same documents reflecting *other* considerations that factored into the ▮▮▮ decision, the government objected on hearsay grounds.

Second, the government offered a redacted version of minutes from a March 2014 meeting of the ▮▮▮ at which the Committee considered and agreed to continue the bank's relationship with Huawei. *See* GX-21621 ("March 2014 Meeting Minutes"). Within the version offered by the government, ▮▮▮ redacted a question from ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮ (who was also a regular member of the ▮▮▮ but did not redact the responsive answer from ▮▮▮▮ an ▮▮▮▮ *See id.* (redacting ▮▮▮ question but including ▮▮▮ response). This selective redaction removed important context from ▮▮▮ response.

Third, the government elicited testimony from ▮▮▮ about a 2017 ▮▮▮ meeting concerning whether ▮▮▮ would terminate its relationship Huawei ("▮▮▮ Termination Meeting"). Prior to the deposition, the government had never disclosed that this meeting had taken place or provided any Rule 16 or Jencks material about the meeting. Early in ▮▮▮ direct examination, the government asked whether the ▮▮▮ was involved in the decision to separate from Huawei in 2017; ▮▮▮ responded that it was. ▮▮▮ Depo. Tr. 24:16–22. Near the end of his direct examination, the government returned to this topic to ask ▮▮▮ why ▮▮▮ ultimately separated from Huawei. *Id.* at 72:17–73:2. ▮▮▮ stated that the ▮▮▮ had a meeting in the middle of 2017, and "at that meeting it was shown that the representations that" Huawei allegedly made in 2014 regarding its relationship with Skycom "were inaccurate." *Id.* at 72:18–21. That alleged inaccuracy precipitated "a breakdown in trust and hence the recommendation"

3

from the ▮▮▮ that ▮▮▮ and Huawei separate. *Id.* at 72:22–24. When defense counsel asked ▮▮▮ about the 2017 meeting on cross-examination, ▮▮▮ speculated that discussions and minutes from that meeting might be privileged. *Id.* at 219:15–16. ▮▮▮ legal counsel, who accompanied ▮▮▮ throughout the deposition and was present to preserve "applicable privileges," *id.* at 11:14–15, did not object to the government's question or to ▮▮▮ response. Since ▮▮▮ deposition, ▮▮▮ has confirmed—consistent with ▮▮▮ speculation—that minutes regarding the ▮▮▮ Termination Meeting exist, that ▮▮▮ deems them privileged, and that ▮▮▮ did not produce the minutes to the government. *See* June 2, 2026 Letter from ▮▮▮ to Huawei.

2. <u>The Court should exclude the ▮▮▮ and ▮▮▮ Reports and related testimony.</u>

The government moved to admit the 2014 ▮▮▮ and ▮▮▮ Reports, as well as ▮▮▮ testimony reading portions of those reports into the record. The Court should sustain the defense's contemporaneous objections to that evidence. The ▮▮▮ and ▮▮▮ Reports are untrustworthy documents that contain multiple levels of inadmissible hearsay and prejudicial statements that have nothing to do with this case. The government has failed to establish the admissibility of the Reports or ▮▮▮ testimony about them.

a. The government failed to establish that the Reports are business records.

A document is admissible as a business record under Rule 803(6) where the proponent establishes that the document was "kept in the course of a regularly conducted business activity[,] . . . that it was the regular practice of that business activity to make the [record]," *United States v. Komasa*, 767 F.3d 151, 156 (2d Cir. 2014), and that the record "was made at or near the time by—or from information transmitted by—someone with knowledge," Fed. R. Evid.

4

803(6)(A). The offering party must establish the requisite foundation through the "testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6)(D).[3]

Rote, unsupported statements that the foundational elements are satisfied are insufficient. Rather, "the proponent must elaborate on procedure, methodology, or accountability of the business procedure." *Reynolds v. Am. Airlines, Inc.*, No. 14-cv-2429 (CLP), 2017 WL 6017355, at *3 (E.D.N.Y. Dec. 4, 2017) (citing *Ortho Pharma. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1120–21 (S.D.N.Y. 1993)). That a witness can "answer[] leading foundational questions asked by counsel in the affirmative is not dispositive on the issue of admissibility when the concomitant substantive evidence" reveals foundational omissions. *In re Nassau Cnty. Strip Search Cases*, 742 F. Supp. 2d 304, 319 (E.D.N.Y. 2010). "In such a situation, form is necessarily trumped by substance lest the purpose of the rules of evidence be perverted." *Id.*

The government failed to establish the requisite foundation through ███ testimony, and the documents themselves do not satisfy Rule 803(6)'s requirements. During direct examination, ███ answered the government's leading foundational questions regarding both Reports. *See, e.g.*, ███ Depo. Tr. 32:8–33:9, 49:21–50:13 (responding "yes" to leading questions regarding the business records foundation). But upon further questioning, it became clear that ███ did not know whether the records were made at or near the time, or by someone with knowledge, of the underlying information. *See generally id.* at 31:19–33:11, 157:25–158:8. For example, ███ twice conceded that he did not know whether the ███ Report was

---

[3] The government could also establish a business-records foundation "by a certification that complies with Rule 902(11)." Fed. R. Evid. 803(6)(D). The government has not yet supplied a Rule 902(11) certification for the records it offered during ███ and ███ depositions, so any attempt to admit the documents as business records would be premature and improper for the reasons explained in Huawei's Response to the Government's Supplemental Motions in Limine, Dkt. 697 at 2–5.

prepared by someone with personal knowledge of the events described (or from information transmitted by such a person), testifying that he "[could not] tell" who the author was and speculating that "you would think that" the person who prepared the report "would have knowledge of the events." *Id.* at 32:21–33:1, 157:25–158:4. He could not even identify which business unit within ███ ███ Division prepared the report. *Id.* at 158:5–8. Notwithstanding his pro forma responses to the government's questions about the foundational elements of the ███ Report, ███ did not know how the document was created or whether it was sufficiently "regular[]" to meet the elements of Rule 803(6). *See In re Nassau Cnty.*, 742 F. Supp. 2d at 319.

The same defect undermines the government's foundation for the ███ Report. When asked on direct examination whether the report was prepared "by ███ in the ordinary course of its regularly conducted business activities," ███ demurred: "I think so[.]" *See* ███ Depo. Tr. 50:1–4. But on cross-examination, ███ conceded that he did not know who authored the report—speculating only that "someone in Asia would have done it"—or when it was prepared. *Id.* at 149:8–23. ███ testimony is therefore inadequate to establish a foundation to admit the Reports as business records.

The Reports themselves also suggest that they were not prepared "at or near the time" of the underlying events or by someone "with knowledge [of those events]." Fed. R. Evid. 803(6)(A). For example, the ███ Report, which is dated March 26, 2014, incorporates media reports and reported statements that long pre-date the Report, with some statements going back to 2003. *See* GX-21348-2 at 2–5.[4] The March 2014 ███ Report also incorporates statements

---

[4] Discovery also reveals that the Report lacks contemporaneity. In describing the ███ Report, an ███ executive stated that he had "collated" the Report's contents "from a number of sources," DOJ_HUAWEI_A_0004549130 at 1, including reports drafted by ██████ ████ ████████████████ between November 2012 and February 2014, as well as a December 9, 2011 ████ Regional Risk Committee meeting concerning Huawei. *See* ███

6

from as far back as 2011, with most of the statements preceding the ▮ Report by several

months. *See* GX-21348-3 at 3–5. Furthermore, some of the statements in the Reports that are

purportedly attributed to unknown personnel at Huawei lack any date at all, making it impossible

to know whether the relevant statement was made by someone with knowledge of the events

being described or was made at or near the time of the Report, or if the statement was made at

all.

Nor do the Reports appear to have been made as a "regular" practice of the ▮

*United States v. Freidin*, 849 F.2d 716, 720 (2d Cir. 1988). Instead, they were hurriedly prepared

to advocate for ▮ participation in a loan with Huawei: the ▮ Report was prepared for

an emergency, ad hoc ▮ meeting to confirm the Huawei relationship and to authorize the

bank's participation in a lucrative loan. *See* DOJ_HUAWEI_A_0004547511 at 1,

DOJ_HUAWEI_A_0004547579 at 1, DOJ_HUAWEI_A_0004551474 at 3. The ▮ Report was

commissioned for the same purpose. DOJ_HUAWEI_A_0004547401 at 1,

DOJ_HUAWEI_A_0004547419 at 5–6. The ad hoc nature of the Reports precludes them from

bearing the reliability intrinsic in records that are made so regularly that they can be specially

relied upon.

      b.     The Reports lack indicia of trustworthiness.

Even where Rule 803(6)'s foundational requirements are met, a document is inadmissible

if "the source of information or the method or circumstances of preparation indicate a lack of

trustworthiness." Fed. R. Evid. 803(6)(E). Trustworthiness is the "principal precondition" to

---

February 21, 2014, Report (GX-21607-R), ▮ November 2013 Report (GX-21611-R), ▮
November 2012 Report (GX-21610-R), December 2011 ASP RRC Meeting Minutes
(DOJ_HUAWEI_A_0004546459). Those underlying documents are also of dubious reliability
and do not meet the business records exception.

7

admissibility, *Saks Int'l, Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987), that must inhere in both "the underlying sources of information and the process by which and purposes for which that information is recorded," *United States v. Hunt*, 534 F. Supp. 3d 233, 254 (E.D.N.Y. 2021) (citation omitted). Both Reports contain elements that undermine their trustworthiness and merit exclusion.

     ***The*** ███ ***Report.*** The ███ Report's untrustworthiness largely stems from the fact that its underlying source material derives from reports prepared by ████████████████ ████████████ and a self-admitted advocate with a clear agenda to fabricate documents to retain a business relationship with Huawei. As explained in Huawei's Response to the Government's Supplemental Motions in Limine ("Supplemental Response"), ███ had strong incentive to not merely record facts, but to frame information in a manner that advanced his financial interest in continuing the Huawei relationship and his interest in avoiding investigation of ███ prior facilitation of Iran-related transactions. *See* Dkt. 697 at 4, 9–11.

     Indeed, ███ explicitly admitted having manipulated the record with respect to both of the reports that underpinned the ███ Report. During an interview with the government, ███ admitted that he deliberately omitted information about Huawei's relationship with Skycom from a November 2013 report to an ███ committee (GX-21611-R) in order to mislead that committee. Specifically, ███ admitted that he did not include in the November 2013 report that "HUAWEI controlled SKYCOM and CANICULA"—even though he knew that to be true—because he "did not want to lose the HUAWEI account or trigger an investigation." DOJ_HUAWEI_A_0124193936 at 16. And although he knew that Skycom had performed transactions with Iran, he "did not report the illegal transactions to his superiors" in his November 2013 report "because he did not want to trigger more work for himself." *Id*. at 15.

██████ made these same misrepresentations regarding Skycom in a February 2014 report that he prepared for the ██████ *See* GX-21607-R. ██████ February 2014 report parroted his prior report and omitted information that he knew to be true about Huawei's relationship with Skycom. *See* GX-21607-R at 4. And ██████ again admitted to the government that he intentionally "omitted information about the SKYCOM and CANICULA relationship" from the February 2014 report. DOJ_HUAWEI_ A_0124193936 at 17.[5] That ██████ misrepresentations undergird the ████ Report undermines the Report's trustworthiness and is grounds to exclude it.

  ***The*** ████ ***Report.*** The ████ Report also lacks indicia of trustworthiness. The circumstances of its preparation show that it was not a routine business record, but a purpose-driven narrative created for an ad hoc committee process. The ████ Report was specifically commissioned for the purpose of obtaining approval to participate in (and lead) a Huawei syndicated loan. *See* DOJ_HUAWEI_A_0004547401 at 1; DOJ_HUAWEI_A_0004547419 at 5–6. This initiative was driven by clear commercial objectives: to preserve ██████ position as Huawei's leading international bank, capture an anticipated $4.8 million in revenue from the loan, and sustain annual revenues in the tens of millions based on a continuation of Huawei's business. *See* DX-00132.1 at 2. This purpose colored the process of preparing the ████ Report and renders it unreliable hearsay.

---

[5] Ultimately, the ████ Report incorporated ██████ misrepresentations from the November 2013 and February 2014 reports and similarly failed to include what ████ knew to be the true nature of that relationship. *See* DOJ_HUAWEI_A_0004549130 at 1 (████ executive explaining that he had "collated the information" in the ████ Report "from a number of sources," including ██████ reports); DOJ_HUAWEI_A_0004551423 at 1 (different ████ executive stating that he "tweaked . . . [into] ████ format" the ████ Report that he understood incorporated ██████ February 2014 report).

c.      The Reports contain multiple levels of hearsay.

Separately, the Court must exclude any embedded hearsay statements that do not satisfy a hearsay exception. Under Federal Rule of Evidence 805, a proponent of embedded hearsay must show that every layer of hearsay meets a separate exception. Fed. R. Evid. 805; *see also Rodriguez v. Mod. Handling Equip. of NJ, Inc.*, 604 F. Supp. 2d 612, 623 (S.D.N.Y. 2009) (excluding hearsay statements in business record that relied on statements from non-parties).

Here, many of the statements within the ███ and ███ Reports derive from third parties for which the government has not established an independent hearsay exception. For example, both Reports cite named and unnamed news articles for many of their representations about Huawei's work and allegedly adverse developments. *See, e.g.*, GX-21348-2 at 3 (stating that "[v]arious news articles refer to Huawei's business presence in Iran"); GX-21348-3 at 3–7 and footnotes (citing news articles). But news articles are hearsay, too, *see Mandal v. City of New York*, No. 02-cv-1234 (WHP), 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006), and the government has not established that any underlying statement from a news source satisfies a hearsay exception. Moreover, each news report relies on additional layers of out-of-court statements by third-party sources. *See, e.g.*, ███ Report (GX-21348-3) at 6 & n.18 (citing *Reuters* report with embedded press release from Vienna prosecutor's office). The government's failure even to identify the layers of hearsay with specificity, much less to articulate any applicable exceptions, renders the multiple layers of hearsay and ███ testimony regarding those statements inadmissible.

d.      Rule 403 requires excluding prejudicial portions of the Reports.

Even if the ███ and ███ Reports were not hearsay, they should be excluded or substantially redacted to omit prejudicial excerpts under Federal Rule of Evidence 403. Evidence

10

must be excluded where its probative value is "substantially outweighed by a danger of…unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. Where a party identifies a non-hearsay purpose for an out-of-court statement, or where a statement is admissible under a hearsay exception, the statement should be excluded under Rule 403 where the jury is likely to consider the statements for their truth and prejudice the defendant. *United States v. Kaiser*, 609 F.3d 556, 572–73 (2d Cir. 2010); *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994).

Both the ▮▮▮ and ▮▮ Reports are replete with irrelevant statements that would substantially prejudice Huawei if admitted. For example, the ▮▮▮ Report references a U.S. Congressional Report that alleges that Huawei "poses a national security threat," is "closely linked to the Chinese Government[] and Military," and "had not fully cooperated with the [U.S. House's] investigation and had failed to comply with US Laws," GX-21348-2 at 2–3; a 2012 case in which a Huawei employee was convicted in Algeria of bribing a former Algerian executive, *id.* at 4; allegations that Huawei was suspected of paying bribes in Austria, *id.*; and other inflammatory and prejudicial allegations that have nothing to do with this case. *See id.* at 4–5. The ▮▮ Report contains nearly identical statements. *See* GX-21348-3 at 4–7 (references to investigations by the UK, India, France, and Australia; references to Huawei founder Ren Zhengfei's career in the PLA and Huawei's alleged "linkages to the PLA and Chinese intelligence"; references to a "bribery case in Algeria" and an "Austria bribery scandal"). These highly inflammatory, third-party-sourced statements lack any probative value and would only serve to suggest to the jury that Huawei did the things alleged. They should be excluded.

11

3.    <u>The Court should exclude the redacted version of the March 2014 Meeting Minutes.</u>

The Court should also exclude the government's version of the March 2014 Meeting Minutes (GX-21621), which improperly redacts ███████ question about a media report regarding Hewlett Packard and Skycom, but leaves ███████ responsive explanation about Skycom unredacted. The government's redaction is incomplete and improper under Federal Rule of Evidence 106. That rule permits an adverse party to "require the introduction . . . of any other part" of a record "that in fairness ought to be considered at the same time." Fed. R. Evid. 106. Rule 106 clearly requires introduction of ████ question to ████ to contextualize █████ response and to prevent misleading the jury about the meaning and significance of █████ statement.

4.    <u>The Court should preclude the government from introducing testimony regarding purportedly privileged communications.</u>

The Court should also exclude testimony related to the allegedly privileged ████ Termination Meeting, during which the ████ purportedly agreed that ████ should sever business ties with Huawei. Because ████ disclosed purportedly privileged information about the ████ Termination Meeting to the government and allowed ████ to divulge this information in his testimony, while withholding the underlying minutes as privileged to prevent their disclosure to Huawei, permitting ████ testimony would give the government an unfair and impermissible advantage.[6]

---

[6] Huawei has serious doubts that documents related to the ████ Termination Meeting are privileged. It is axiomatic that "[o]nly communications between a client and attorney"—not discussions among non-lawyers—"are protected by the privilege." *United States v. Bein*, 728 F.2d 107, 113 (2d Cir. 1984). The ████ Termination Meeting was a business meeting that ████ officers and employees attended in their business capacities to make business decisions for the bank. The Committee members were not interpreting the law or making legal decisions. They were instead deciding what was best for the business and operations of the bank, and how best to mitigate the bank's reputational—not legal—risks.

12

"[A] party's assertion of factual claims can, out of considerations of fairness to the party's adversary, result in the involuntary forfeiture of privileges for matters pertinent to the claims asserted." *New York Times Co. v. U.S. Dep't of Justice*, 939 F.3d 479, 495 (2d Cir. 2019) (quoting *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003)). "[T]his kind of unfairness may arise when 'a party advances a claim to a court or jury (or perhaps another type of decisionmaker) while relying on its privilege to withhold from a litigation adversary materials that the adversary might need to effectively contest or impeach the claim.'" *Id.* (quoting *John Doe*, 350 F.3d at 303) (alterations omitted); *see also In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("[I]mplied waiver may be found where a privilege holder 'asserts a claim that in fairness requires examination of protected communications.'") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)). Courts have likewise found waiver where the information is disclosed directly to an adversary, or to a non-adversary in a way that "materially increases the likelihood that that an adversary can gain access to that information," *In re Terrorist Attacks on Sept. 11, 2001*, 293 F.D.R. 539, 544 (S.D.N.Y. 2013); *cf. In re Sealed Case*, 676 F.2d 793, 817 (D.C. Cir. 1982) ("[A] party waives its work product protection … if it discloses the privileged material to anyone without common interests in developing legal theories and analyses of documents.") (internal quotation marks omitted). In assessing whether a privilege is implicitly waived, courts "look for specific instances of unfairness that undermine the adversarial process." *New York Times Co.*, 939 F.3d at 496. "[T]his is inherently a case-by-case determination." *Id.*; *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 236 (2d Cir. 1993).

Here, under any theory, it would be unfair to permit the government to introduce ████ testimony about a supposedly privileged meeting that Huawei knew nothing about before the deposition. Even assuming the ████ Termination Meeting was privileged, ████ knowingly

13

permitted ▮▮▮ to disclose the contents of the Committee's discussions from that Meeting to the government (and then to testify about the content of the Committee's deliberations during his deposition), waiving any pre-existing privilege. The fact of ▮▮▮ disclosure is apparent from the face of deposition transcript. Near the beginning of ▮▮▮ direct examination, the government set up the testimony by specifically asking whether the ▮▮▮ was involved in the decision to separate from Huawei. ▮▮▮ Depo. Tr. 24:16–24:22. The government then circled back to that fact later in the deposition, asking a question that was clearly designed to elicit from ▮▮▮ testimony that the ▮▮▮ was involved in the decision to terminate the ▮▮▮ relationship, and to state the ▮▮▮ rationale for recommending the termination. *Id.* at 72:17–73:2. ▮▮▮ counsel, who was present during the deposition, never objected to the government's question or to ▮▮▮ answer. That is clear waiver, and it gave the government an unfair advantage that "undermine[s] the adversarial process." *New York Times*, 939 F.3d at 496.

That ▮▮▮ disclosed details about the ▮▮▮ Termination Meeting to the government is also apparent because nothing else in the record or in discovery explains how the government would know about this privileged meeting. Nothing in the government's Rule 16 discovery suggests that the ▮▮▮ Termination Meeting happened or that the ▮▮▮ was involved in the ▮▮▮ Huawei separation decision, and ▮▮▮ Jencks materials say nothing about the meeting. Therefore, there must have been discussions between ▮▮▮ counsel and the government regarding the ▮▮▮ Termination Meeting where ▮▮▮ counsel shared privileged information with the government. Because Huawei has not had an opportunity to evaluate the veracity of ▮▮▮ statements regarding the ▮▮▮ Termination Meeting or to cross-examine him on the topic, permitting the government to admit ▮▮▮ testimony about the ▮▮▮ Termination Meeting would be unfair and undermine the adversarial process. The Court should exclude

14

█████ testimony regarding the █████ Termination Meeting. *See United States v. Talco Contractors, Inc.*, 153 F.R.D. 501, 506 (W.D.N.Y. 1994) (explaining that "when a witness invokes . . . privilege 'with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony[,] . . . the witness' direct testimony should be stricken in whole or in part'") (quoting *Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991)) (emphasis in original).

   **B.    Government Witness** ████████ ████████████

    1.    <u>Background</u>



████████████ is a longtime ██████████ at ████ he currently serves as ██████████████████████████████████ ████████ testified about ████ internal risk-management structure and its handling of Huawei as a client. He explained that committees and subcommittees such as the ████████████████████████ ████████████████ on which he served as the ████████████████ and the ████████████████ evaluated ████ client relationships.[7] These committees considered submissions prepared by relationship managers, including summaries of client relationships, collections of adverse media, and sanctions questionnaires.

During ████████ deposition, the government repeatedly sought to introduce committee submissions with layers of embedded hearsay as purported business records under Rule 803(6). On cross-examination, however, defense counsel repeatedly established that ████████ had little knowledge about the records he was testifying about: he did not prepare the documents, did not interact directly with Huawei personnel, was not involved in day-to-day client management, and

---

[7] Internal ████ documents refer to the ████ as the ████████████████████ not the ████ ████████ *See, e.g.*, GX-22601.

had little independent recollection of the underlying events and documents that the government asked him about. Indeed, █████ testified that he spent little time on Huawei-related compliance issues; to █████ Huawei was merely one of thousands of ██ clients he had reviewed over the course of his long career. █████ Depo. Tr. 29:03–12. █████ also admitted that he had no independent recollection of the details of ████ relationship with Huawei. *Id*. at 138:12–20. Even so, as with █████ the government questioned █████ about documents he did not recall and, for some, reviewed them for the first time in preparation for his testimony.

As is relevant here, the government seeks to admit through █████ testimony nine purported business records at trial (collectively "████ Committee Submissions"):

- GX-22302, a meeting memorandum dated May 8, 2018 ("Meeting Memo")
- GX-22306-1, an August 18, 2010 Washington Times news article attached to GX-22306.2 ("Washington Times Article")
- GX-22306-2, a draft summary of an ████ sanctions due diligence form regarding Huawei ("Due Diligence Draft")
- GX-22306-3, a 2010 sanctions due diligence memorandum ("Sanctions Due Diligence Memorandum")
- GX-22600, a 2016 adverse media assessment form ("Adverse Media Form")
- GX-22601, a 2015 Committee Review memorandum ("████ Committee Review Memo")
- GX-22602, a 2015 CDD Sanctions Questionnaire ("████ Sanctions Questionnaire"), which contains information regarding Huawei's business in sanctioned countries
- GX-22603, a 2017 Client Sanctions Risk Assessment Form ("████ Risk Assessment Form")
- GX-22605, a 2015 Call Note ("Call Note")

> 2. <u>The Court should exclude the ████ Committee Submissions and related testimony.</u>

Many of the defects that merit excluding █████ testimony and related exhibits apply equally to █████ The government failed to establish that the exhibits are admissible under

16

Rule 803(6), or that any statements contained within them are independently admissible.

Accordingly, the exhibits and corresponding testimony should be excluded.

     a.  The ▋ Committee Submissions are not admissible as business records.

  The Court should exclude the ▋ Committee Submissions because the government failed to establish a business records foundation. As with ▋ the government asked ▋ perfunctory foundational questions. *See, e.g.,* ▋ Depo. Tr. 33:01–18 (regarding GX 22306-2). However, when tested, ▋ revealed that he knew nothing about these documents, including who authored them or when. Fed. R. Evid. 803(6)(A).

  For example, with respect to the Due Diligence Draft, ▋ did not know who drafted the document, *see* ▋ Depo Tr. 34:12–21, or when the document was drafted, *id.* at 34:22–35:05. Similarly, with respect to the Adverse Media Form, ▋ had no idea who prepared the document or whether that person had knowledge of the contents of the document. *See id.* 96:06–97:16. Same with the ▋ Committee Review Memo: ▋ did not "know the name of the individual" who drafted it, "when it was drafted," or "how the document was obtained." *Id.* at 84:1–23.

  Furthermore, ▋ lack of familiarity with the documents made it impossible for him to testify that the documents were the regular records that he said they were. That problem is especially apparent with respect to ▋ testimony regarding GX-22607 ("the Draft ▋ Report"), a *draft* ▋ report to the ▋ an internal risk committee, that ▋ believed was the *final* version. During his deposition, ▋ testified that the Draft ▋ Report—which contained a section detailing Huawei's connections to Skycom and Skycom's business in Iran, *see* GX-22607 at 2—was "prepared for the ▋ as part of the regular types of memos they reviewed," that "the ▋ would have received and reviewed" the

Draft ██ Report, and that the document was a business record prepared in the regular course of business. ██████ Depo. Tr. 61:2–63:3. In fact, the Draft ██ Report was not a final version that the ████████ reviewed, as ████████ testimony during his direct examination suggested (and as the government's questioning implied); rather, it was a non-final draft that was undergoing revisions.[8] *See* ██████ Depo. Tr. 185:13–17 (████████ testifying that a cover email transmitting the Draft ██ Report read "[p]lease see updated version for your review"). The government extensively questioned ████████ about references to a December 2012 Reuters report on Skycom's business in Iran within the document and the purported materiality of that information to ██ and the ████████ The final version of the report, which ████████ was only shown during his cross-examination, deleted references to Skycom's business in Iran. Indeed, according to minutes from the meeting, the ████████ did not discuss that issue at all. *See* DX-371 (██ correspondence deleting references to Iran); *see also* ██████ Depo Tr. 197:10–200:03, 201:02–203:06 (acknowledging that revised report omitted references to Skycom and Iran); *id.* at 210:23–212:12 (testifying that meeting minutes did not include discussion of Iran, Skycom, or *Reuters*). This testimony makes clear that ████████ lacked sufficient knowledge regarding the ██ Committee Submissions to establish a business records foundation.

Nor do the records themselves show that they are business records. Rather, the ██ Committee Submissions incorporate information that plainly was obtained long before the reports were prepared. *See, e.g.*, GX-22602 at 5 (relying in part on "senior employees'" "regular dialogue with Huawei" regarding "previous dealings" to prepare document); GX-22601 at 9

---

[8] These issues were known to the government. In an August 14, 2018 interview with ██ employee ████████ the ████████████ responsible for contacting Huawei on behalf of █████████ informed the government that although she prepared an early version of the Committee Report that included the *Reuters* articles, someone revised it out of the final document produced to the Committee.

(stating that "client had confirmed [certain information] in multiple conversations," though not necessarily with the author of the document). Because ▌▌▌▌ could not answer basic foundational questions regarding these documents, and because the documents themselves fail to meet the business records requirements, the ▌▌ Committee Submissions and related testimony should be excluded.

        b.     The ▌▌ Committee Submissions are not trustworthy under Rule 803(6)(E).

Additionally, the documents lack sufficient indicia of trustworthiness. First, as was established during ▌▌▌▌ cross-examination, there was a critical variance between the Draft ▌▌ Report and the final. And only the final version of the submission can purport to reflect what a key compliance committee considered in making business decisions about Huawei. In this example, the final submission omitted information that the government has averred is material: a discussion of Skycom's business in Iran. If the government had its way, the draft would have been admitted as a business record and created a significant misimpression in the trial that the risk committee relied on certain information about Skycom, when in fact that information was removed from the final version of the submission. Because none of the ▌▌ Committee Submissions bear markings that indicate whether they are final or a draft that was later edited prior to submission, it is impossible to ascertain which of the documents were considered by risk committees and actually reflect the information the government now claims was so critical to the bank's committee deliberations and decision making. These documents are untrustworthy for the purposes of the business records exception.

        c.     The ▌▌ Committee Submissions contain multiple levels of hearsay.

The ▌▌ Committee Submissions also have embedded hearsay that does not independently satisfy a hearsay exception; they should therefore be excluded. As an initial

19

matter, the government sought to admit multiple statements purportedly made by Huawei as statements of a party opponent. *See* ▮▮▮▮▮ Depo. Tr. 188:13–15 (the government stating that it "offered representations which were admissions of a party opponent"). But none of the documents attribute the statements to any specific Huawei individual or entity. *See, e.g.*, GX-22601 at 1 (stating that "[c]lient confirmed that they only sign contracts/conduct business with commercial distributors, operators, and sell to mass public smart phones and telecommunication devices that promotes better social connectivity"); GX-22306-3 at 1 (stating that "[t]he client has indicated that on a standalone basis, Huawei Technologies, Co. Ltd., the HQ of Huawei Group, has never had any direct and indirect sales with sanction countries"). These vague recitations lack sufficient information to establish that the documents meet the requirements of any relevant hearsay exception. Likewise, for the same reasons third-party media statements are inadmissible with respect to ▮▮▮▮ testimony, they are inadmissible with respect to the ▮▮▮ Committee Submissions and ▮▮▮▮▮ testimony.

d.      The Court should exclude prejudicial statements under Rule 403.

Finally, as with ▮▮▮▮ some of the ▮▮▮ Committee Submissions contain inflammatory references to irrelevant allegations and claims that the Court should exclude under Rule 403. For example, the Adverse Media Report details news reports like those described in the ▮▮▮▮ and ▮▮▮ Reports that would only prejudice Huawei in the eyes of the jury. Just as such allegations should be excluded from the ▮▮▮ and ▮▮▮ Reports, *see supra* § I.A.2.d, they should be excluded here.

20

II.    **If the Court Admits the Government's Requested Testimony and Exhibits, it Should Admit Huawei's Proposed Excerpts.**

If the Court admits any of the government's requested excerpts and exhibits from ▮▮▮ and ▮▮▮ testimony, the Court should also admit Huawei's proposed counter-designations.[9]

A.    **Many of Huawei's counter-designations are necessary for completeness.**

If the Court admits the so-called business records and testimony, the Court should, for completeness under Rule 106, admit related testimony that the government did not designate. Even where a statement is hearsay, an "omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987)); *see also* Fed. R. Evid. 106 (permitting introduction for completeness "over a hearsay objection").

Rule 106 would require introduction of portions of the reports that the government has called "hearsay," but that are admissible to provide context to the underlying testimony. For example, the government designated and sought to admit the ▮▮▮ and ▮▮▮ Reports and ▮▮▮ Committee Submissions in their entirety and to introduce excerpts of those documents to advance its narrative that the alleged Victim Banks considered purported statements about Iran and Skycom as material facts in deciding whether to maintain Huawei as a customer. If the government can introduce only one or a subset of factors considered by the committees to improperly suggest that those factors were important, Huawei is entitled to clarify the record by

---

[9] Huawei's requested counter-designations and bases for admission are provided in the Appendix.

21

showing the full range of information the banks considered in making their decisions so that the jury can consider which, if any, of the factors were material to the banks.[10]

> **B.  Counter-designations that are not necessary for completeness are independently relevant and admissible.**

Even if the Court excludes the business records evidence and testimony discussed above, the Court should admit the following evidence and testimony as independently relevant and admissible to impeach █████ and █████████ testimony and to support Huawei's defense.

> 1.  ████████

**Testimony regarding** █████ **lack of compliance knowledge.** █████ testimony that he did not know (a) how █████ compliance program worked before 2011, *see, e.g.*, █████ Depo. Tr. 76:16, 77:20–21, (b) what █████ sanctions compliance policies were at that time, *id.* at 113:21–25, 114:13–115:4, (c) whether the bank's pre-2011 policy permitted certain transactions, *id.* at 113:21–25, 114:13–115:4, 119:11–18, and (d) what the bank's sanctions policy was, *id.* at 236:17–25, is relevant to the weight accorded █████ testimony because it permits the inference that a customer like Huawei likewise could not have known the same things.

**Testimony regarding** █████ **lack of knowledge of compliance systems.** █████ lack of knowledge regarding █████ compliance systems, █████ Depo. Tr. 115:22–116:17 (regarding WOLF); *id.* at 134:14–20, 135:12–14 (regarding IRIS); *id.* at 140:12–19 (regarding CAMP); *id.* at 128:8–20 (regarding HORIS), goes to the weight accorded to █████ testimony.

---

[10] Huawei anticipates that the government will raise objections to Huawei's counter-designations, including objections to "scope" and "improper impeachment." The government's scope objections are improper; Huawei was entitled to question the witnesses in the manner that it would at trial, and if Huawei were to call the witnesses as adverse witnesses in its case-in-chief, the witnesses' testimony elicited by Huawei would be admissible. The government's "improper impeachment" objections are likewise unclear; Huawei does not know what the purported instances of "improper impeachment" entailed. To the extent those objections are sufficiently preserved, Huawei will respond to them after the government specifies the bases for its objections.

████ testimony that the ████ never received alerts flagging Skycom as an ████ customer, *see* ████ Depo. Tr. 140:21–141:16, both shows that information regarding Huawei's relationship with Skycom was not material and supports Huawei's defense that ████ personnel motivated to retain the Huawei relationship were responsible for preventing the Committee from learning that information.

**Testimony and evidence regarding** ████ ███████████████████████ **and** ███████████ ████ testimony and evidence regarding the ████ ████ and the bank's ████████████████████ is relevant to ████ credibility and to rebut the government's narrative that ████ considered Huawei's representations to be material. *See* Dkt. 615 at 1–17. It is also relevant to the extent the Court admits Huawei CFO Cathy Meng's ██████████████ ██████ to show that Ms. Meng's ██████ was unusually lenient compared to ██████.[11] ████ testimony denying that ████ terminated its relationship with Huawei because of pressure under the ████ is relevant to ████ credibility. *See* ████ Depo. Tr. 258:11–259:12.

**Testimony regarding "ring fencing."** ████ testimony regarding ████ "ring-fencing" policy, *see* ████ Depo. Tr. 39:1–25, and cross testimony that ████ maintained a representative office in Iran through 2010 despite representing that it had previously ceased all business in Iran, *id.* at 120:14–121:6, 122:21–25, DX-218, is relevant impeachment evidence.

**Testimony regarding** ██████████ ████ testimony that the ████ viewed ████ ████ 2014 statement that the U.K. government was comfortable with Huawei as a

---

[11] For reasons explained in Huawei's Response to the Government's Preliminary Motions in Limine, *see* Dkt. 615 at 17–39, Ms. Meng's ███████████████ should be excluded. However, for reasons explained above and in Huawei's Response to the Government's Preliminary Motions in Limine, Dkt. 615 at 1–17, the Bank Prosecution Evidence—including ██████ and ████ related testimony—is independently admissible as substantive evidence to bolster Huawei's defense, and to impeach bank witnesses.

"mitigating factor" in favor of maintaining the Huawei relationship, ███ Depo. Tr. 182:3–21, 184:2–6, 186:17–187:1, shows what the ███ considered in reviewing its relationship with Huawei.

**Testimony regarding interviews with law enforcement.** ███ testimony that he did not know the government in 2017 was investigating U.S. dollar transactions by ███ *see* ███ Depo. Tr. 215:14–216:15, is facially not credible and relevant impeachment evidence for ███

**Testimony regarding call reports.** ███ testimony regarding the absence of contemporaneous notes documenting alleged representations from Huawei regarding compliance efforts, *see*, *e.g.*, ███ Depo. Tr. 238:14–243:4, suggests that Huawei made no such representations and is admissible to impeach the credibility of the hearsay declarants who authored the ███ compliance reports.

**Testimony regarding ███ failure to put Skycom on a sanctions list.** ███ testimony that ███ could have but did not flag Skycom on internal compliance systems, *see* ███ Depo. Tr. 247:10–250:1, tends to rebut the government's argument that information about Skycom was material, and to impeach the hypothetical answers by government witnesses asserting that such information was personally important to them.

**Background about ███** Testimony and evidence regarding ███ organizational structure and financial condition during the relevant time period, ███ Depo. Tr. 250:3–257:23, is relevant and helpful context.

2. ███

**Lack of personal knowledge.** ███ testimony reflecting his lack of knowledge about the ███ Huawei relationship is relevant to ███ credibility and undermines the

24

relevance of his testimony. ████ Depo. Tr. 128:16–132:11, 132:12–133:11, 133:12–140:13.

████ Evidence and testimony regarding ████ and ████ ████ are relevant to ████ credibility and to rebut the government's narrative that ██ considered Huawei's representations to be material. *See* ████ Depo. Tr. 140:14–142:11, 157:05–157:20, 263:18–271:12; 217:22–273:12, DX-351, DX-352, DX-352.1, DX-353, DX-354, DX-355, DX-356, DX-357, DX-358, DX-359, DX-360, DX-361, DX-362, DX-363, DX-365.

**Background about** ██ **and its compliance process.** ████ testimony regarding his personal work experience at ██ his understanding of the relevant ██ committees and their respective processes, and the imperfections inherent in compliance programs is helpful context for the jury. ████ Depo. Tr. 142:12–152:22, 179:12–181:03, 273:13–276:07. 276:12–278:23.

**Knowledge of the relevant sanctions regime.** ████ testimony regarding what types of transactions U.S. law prohibits is relevant to contextualize ████ testimony regarding the ████ consideration of compliance issues. ████ Depo. Tr. 152:23–157:05, 157:22–159:06.

████ **motives to maintain Huawei relationship.** Evidence and testimony showing that ██ had a large financial stake in retaining Huawei as a client, ████ Depo. Tr. 244:04–248:15, 252:10–253:05, 253:18–255:17, 256:15–256:20, 257:04–259:17, 260:14–263:03, DX-364, DX-367.3, DX-368, DX-368.1, DX-369, DX-370, is relevant impeachment evidence.

████ **knowledge of Skycom.** Evidence that ██ knew about Skycom, ████ Depo. Tr. 249:13–251:07; DX-368, is relevant impeachment evidence.

## CONCLUSION

For the foregoing reasons, the Court should exclude exhibits and testimony from ████

25

and ████████ Rule 15 depositions, and alternatively, admit counter-designated exhibits and testimony requested by the defense.

Respectfully submitted,

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

/s/ Doug A. Axel
Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

/s/ Brian M. Heberlig
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*