UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. –<br><br>HUAWEI TECHNOLOGIES CO., LTD., *et al.*,<br><br>Defendants. | 18 CR 457 (S-4) (AMD) (JAM)<br><br>**UNREDACTED VERSION**<br>**FILED UNDER SEAL** |

**DEFENDANTS HUAWEI TECHNOLOGIES CO., LTD., HUAWEI DEVICE CO., LTD., HUAWEI DEVICE USA INC., AND FUTUREWEI TECHNOLOGIES, INC.'S OPPOSITION TO THE GOVERNMENT'S MOTION AND OBJECTIONS REGARDING <u>TESTIMONY OF RULE 15 WITNESSES</u>**

David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA Inc., and Futurewei Technologies, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      The Court Should Sustain Huawei's Objections and Overrule the Government's
Objections to ▮▮▮▮▮ Deposition Testimony and Exhibits.................................... 2

      A.    The Court should sustain Huawei's objections to ▮▮▮ testimony and related
exhibits. ....................................................................................................... 2

      B.    The Court should overrule the government's objections regarding ▮▮▮
testimony. ................................................................................................... 13

II.     The Court Should Sustain Huawei's Objections and Overrule the Government's
Objections to ▮▮▮▮▮ Deposition Testimony and Exhibits ............................... 42

      A.    The Court should sustain Huawei's objections to ▮▮▮ testimony and related
exhibits. ....................................................................................................... 42

      B.    The Court should overrule the government's objections regarding ▮▮▮
testimony. ................................................................................................... 54

CONCLUSION ................................................................................................................ 70

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bagby v. Kuhlman*,
   932 F.2d 131 (2d Cir. 1991)..................................................................................................3

*McLeod v. Llano*,
   2021 WL 1669732 (E.D.N.Y. Apr. 28, 2022) ...............................................................14, 28

*Qorrolli v. Metro. Dental Assocs., D.D.S. - 225 Broadway, P.C.*,
   2023 WL 3645136 (S.D.N.Y. May 25, 2023) ......................................................................18

*U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*,
   112 F. Supp. 3d 122 (S.D.N.Y. 2015)..................................................................................18

*United States v. Barrett*,
   178 F.3d 643 (2d Cir. 1999)..................................................................................................26

*United States v. Cardillo*,
   316 F.2d 606 (2d Cir. 1963)....................................................................................................3

*United States v. Coven*,
   662 F.2d 162 (2d Cir. 1981)....................................................................................................3

*United States v. Diaz*,
   878 F.2d 608 (2d Cir. 1989)..................................................................................................20

*United States v. Graham*,
   47 F.4th 561 (7th Cir. 2022) ...............................................................................................6, 9

*United States v. Mahaffy*,
   2007 WL 1213743 (E.D.N.Y. Apr. 24, 2007) ......................................................................18

*United States v. Mohamed*,
   2022 WL 3703200 (E.D.N.Y. Aug. 26, 2022)............................................................... passim

*United States v. Quinto*,
   582 F.2d 224 (2d Cir. 1978)..............................................................16, 21, 22, 23, 40, 54, 56

*United States v. Rossomando*,
   144 F.3d 197 (2d Cir. 1998)..................................................................................................26

*United States v. RW Prof. Leasing Services Corp.*,
   452 F. Supp. 2d 159 (E.D.N.Y. 2006) ..................................................................................26

ii

*United States v. Tory*,
  52 F.3d 207 (9th Cir. 1995) ................................................................38, 55

*United States v. Zaso*,
  2024 WL 19212890 (W.D.N.Y. April 30, 2024) .................................................18

**Other Authorities**

Fed. R. Crim. P. 15 ................................................................ passim

Fed. R. Evid. 106 ................................................................11, 30, 32, 61

Fed. R. Evid. 403 ................................................................ passim

Fed. R. Evid. 611 ................................................................17, 18

Fed. R. Evid. 613 ................................................................38

Fed. R. Evid. 801 ................................................................21, 48

Fed. R. Evid. 803 ................................................................5, 45, 49, 61

Fed. R. Evid. 806 ................................................................68

Fed. R. Evid. 902 ................................................................5, 9, 45

**INTRODUCTION**

The government's arguments and objections to ▓▓▓▓▓ and ▓▓▓▓▓▓ depositions reflect the government's approach to prosecuting this case: the government seeks to admit objectionable evidence that it believes advances its own case, but to bar Huawei from introducing admissible evidence necessary for its defense. For example, the government seeks to confine the scope of each witness's testimony to its narrowly focused examination, although the parties dispute what testimony is relevant; to exclude testimony that the government claims calls for facts not in the record even though trial has yet to start; and to exclude portions of its own exhibits that provide necessary context for the jury's understanding of those same documents.

Each of the government's requests is improper on its own: each seeks to deprive the jury of the evidence it needs to assess the strength of the government's charges and of Huawei's defenses. But they are especially inappropriate in the context of Rule 15 depositions, which are designed to preserve an *unavailable* witness's testimony "*for trial*." Fed. R. Crim. P. 15(a) (emphasis added). This purpose makes the government's "scope" and "facts not in evidence" objections particularly misplaced. Where a witness will be examined only once, and where the parties dispute what issues are relevant to the witness's testimony, courts permit a cross-examining party to exceed the scope of direct. And because trial has yet to start, the government's "facts-not-in-evidence" arguments are premature; it would make little sense to view the witnesses' deposition testimony in isolation and assess the scope of the trial record at the time of the witness's *pre-trial* deposition. Those objections are best reserved until trial begins three months from now.[1]

---

[1] Huawei respectfully submits that an in-court conference would be the most efficient way to resolve the parties' motions and objections in connection with the Rule 15 depositions.

Moreover, the government seeks to exclude material exculpatory evidence based on a mischaracterization of Huawei's defense. Specifically, the government seeks to exclude evidence that Huawei did not conceal its relationship with Skycom from ▮▮▮▮ (or the other banks), but rather openly disclosed that information for years. The government argues that this evidence should be excluded because "bank negligence" is not a defense to fraud. But as explained below, Huawei is not planning to argue that it is innocent because the banks were negligent. Rather, evidence that Huawei disclosed to the banks the very facts that it is accused of fraudulently concealing is a core part of Huawei's defense to the fraud charges: it shows that Huawei did not conceal the information and had no intent or motive to do so. It also rebuts the government's theory of materiality, which the government seeks to prove through evidence— including through ▮▮▮▮ deposition testimony—that ▮▮▮▮ terminated its relationship with Huawei when it "discovered" the purported misrepresentations. Evidence that ▮▮▮▮ knew that information all along directly contradicts that evidence and is admissible for that purpose.

## ARGUMENT

I. **The Court Should Sustain Huawei's Objections and Overrule the Government's Objections to ▮▮▮▮▮▮ Deposition Testimony and Exhibits**

    A. **The Court should sustain Huawei's objections to ▮▮▮▮ testimony and related exhibits.**

        1. <u>The Court should sustain Huawei's objection to ▮▮▮▮ testimony about the 2017 ▮▮▮▮ Termination Meeting (▮▮▮▮ Depo. Tr. 24:16–24:22, 72:17–73:03).</u>

The Court should exclude ▮▮▮▮ direct testimony about the purportedly privileged ▮▮▮▮ Termination Meeting at which the Committee decided to terminate its relationship with Huawei. *See* Huawei Rule 15 Mot. at 12–15. Where an invocation of privilege "prevents inquiry into matters about which the witness testified on direct examination," and not merely credibility, "that witness's [direct] testimony should be stricken in whole or in part." *United States v.*

*Cardillo*, 316 F.2d 606, 611 (2d Cir. 1963); *see Bagby v. Kuhlman*, 932 F.2d 131, 135 (2d Cir. 1991) (stating that a Sixth Amendment violation occurs "when assertion of the privilege undermines the defendant's opportunity to test the truth of the witness' direct testimony"); *United States v. Coven*, 662 F.2d 162, 170–71 (2d Cir. 1981) (drawing same principle from the equivalent doctrine regarding witnesses' invocation of the privilege against self-incrimination). That was the case here. ▮▮▮ and ▮▮▮ invocation of privilege prevented Huawei from cross-examining ▮▮▮ testimony that the ▮▮▮ terminated Huawei based on the company's alleged misrepresentation about its link to Skycom. ▮▮▮ testimony should be stricken.

The government, echoing ▮▮▮ *see* June 2, 2026 letter from ▮▮▮ to Huawei, claims that ▮▮▮ did not disclose any privileged information and did not use any privilege as a "sword" or "shield." Gov't Mot. at 14–15.[2] Both arguments lack merit. First, both ▮▮▮ and ▮▮▮ disclosed the contents of the ▮▮▮ Termination Meeting and the Committee's deliberative process. ▮▮▮ revealed the contents of those allegedly privileged communications in his testimony about the Committee's decision to end ▮▮▮ relationship with Huawei and the basis for that decision. *See* ▮▮▮ Depo. Tr. 24:16–24:22, 72:17–73:03. And that testimony was clearly scripted and about a topic that had not been referenced in ▮▮▮ *Jencks* materials, suggesting that before ▮▮▮ deposition, ▮▮▮ counsel disclosed the privileged contents of the ▮▮▮ Termination Meeting to the government. That is the only plausible way the

---

[2] The government also claims without citation that the improper use of privileged information is "not a cognizable objection under the Federal Rules of Evidence." Gov't Mot. at 14. But nothing on the face of Rule 15 limits Huawei's objections to those provided under federal evidentiary rules. Accordingly, nothing precludes Huawei from requesting that ▮▮▮ untested testimony about a privileged matter be stricken here, or from raising any of other objection that the government claims is "not cognizable" under the Federal Rules of Evidence.

government would know how to stage ▮▮▮ careful and deliberate testimony about the ▮▮▮ Termination Meeting.

Second, the government's claim that ▮▮▮ testimony did not fit the traditional "sword and shield" framework—*i.e.*, he did not invoke privilege and was not instructed to not answer questions because of privilege, Gov't Mot. at 14–15—is beside the point.[3] The relevant question is whether ▮▮▮ privilege claim "prevents the defendant from probing the substance of [direct] testimony on cross," in which case Huawei "is entitled to have the testimony stricken." Christopher Mueller & Laird Kirkpatrick, 3 Fed. Evid. § 6:73. Based on the deposition transcript, it is apparent that ▮▮▮ or its counsel disclosed privileged information to the government, and it has refused to provide that same information to Huawei. Huawei was therefore deprived of an opportunity to question ▮▮▮ about the ▮▮▮ Termination Meeting. This selective disclosure is unfair to Huawei. The Court should therefore exclude this portion of ▮▮▮ testimony.

> 2. The Court should sustain Huawei's objection to the ▮▮▮ Report and ▮▮▮ related testimony (GX 21348-2, ▮▮▮ Depo. Tr. 31:18–39:25, 40:41–44:04, 44:14–48:11, 48:14–24).

As explained in Huawei's Rule 15 motion, the ▮▮▮ Report and ▮▮▮ related testimony are inadmissible. The government failed to establish a business records foundation for the ▮▮▮ Report; the Report is untrustworthy; the Report is filled with multi-level hearsay for which the government has not established a recognized exception; and substantial portions of the report

---

[3] The government's contention is also dubious as a matter of fact. When defense counsel asked ▮▮▮ about the existence of minutes from the ▮▮▮ Termination Meeting (which is not privileged), ▮▮▮ responded that those minutes "may be privileged," ▮▮▮ Depo. Tr. 219:15–16, effectively invoking privilege and clearly signaling his intent to not answer defense counsel's questions about the meeting or minutes due to privilege. In any event, as explained above and in Huawei's Rule 15 motion, Huawei is not invoking the traditional sword-and-shield doctrine but instead contends that ▮▮▮ testimony should be excluded under principles of fairness because ▮▮▮ selectively disclosed the contents of the ▮▮▮ Termination Meeting to the government. *See* Huawei Rule 15 Mot. at 12–15.

should be excluded under Federal Rule of Evidence 403. *See* Huawei Rule 15 Mot. at 4–11.

The record belies the government's claim that it laid an adequate business records foundation for the ███ Report through ████ testimony: ████ failed to establish critical foundational facts, including whether the ███ Report was prepared by someone with knowledge or contemporaneous with the underlying statements. Huawei Rule 15 Mot. at 5–6. Indeed, the Report itself undermines any claim that it was prepared "at or near the time" of the underlying events or by someone "with knowledge [of those events]." Fed. R. Evid. 803(6)(A). As explained in Huawei's motion, the March 2014 ███ Report incorporates media reports and other statements that go back to 2003. Huawei Rule 15 Mot. at 6 (citing GX 21348-2 at 2–5).

The government's claim that it "will independently establish" that the ███ Report is a business record through a certificate under Federal Rule of Evidence 902(11) is no basis to pre-admit the Report now. As explained in Huawei's response to the government's supplemental motions in limine, the government must satisfy several preconditions—including timely producing a certification to the defense so that the defense can challenge it, *see* Dkt. 697 at 2–4—that it has not yet attempted to meet. Unless and until it does, the ███ Report is inadmissible.

The government contends that the portions of the ███ Report that ████ read into the record are not hearsay because they are offered to show "their effect on the listeners" or to "demonstrate that Huawei made the statements." Gov't Mot. at 15–16. Both attempts to subvert the hearsay rules fail.

First, the government has not established that the hearsay statements in the ███ Report are admissible for their effect on ████ While statements introduced to show their effect on the listener are generally admissible as non-hearsay, the proponent must show that "the listener

5

*heard and reacted to the statement*" at the time, and "the 'actual use' of the statement at trial" must be "to *demonstrate the listener's response*," not any other purpose. *United States v. Graham*, 47 F.4th 561, 567 (7th Cir. 2022) (citation omitted) (emphases added).

None of the passages ▮▮ read into the record establish whether ▮▮ heard those precise statements within the ▮▮ Report or, if he did, what his response was when he heard them. Nor were the passages introduced to demonstrate ▮▮ real-time reaction: the government did not ask ▮▮ whether and how he responded to the statements immediately after he read them, or how the passages affected him at the time. Rather, the government relied on the passages to elicit ▮▮ *retrospective* view about the statements within the ▮▮ Report, or his current take on the *hypothetical* importance of the passages within the Report. For example, the government had ▮▮ read into the record the following passage: "Allegations were made [Jan 2013] of connections with Huawei and Skycom Tech – a HK based company who, it was claimed, had attempted to sell embargoed HP computer equipment to Iran. In response to the claims, Huawei advised ▮▮ that it's shareholding in Skycom was sold in 2009 and that Cathy Meng (CFO Huawei) resigned her position on the board of Skycom in April 2009." ▮▮ Depo. Tr. 45:17–20. After reading that passage, the government did not ask ▮▮ whether he read or heard that statement at the time it was made; the government instead asked whether ▮▮ read the underlying *Reuters* article that outlined the Skycom allegations, and ▮▮ responded that he "believe[d] there was a *Reuters* article," but he could not recall whether he read it. *Id.* at 45:24–46:03, 46:09–11. Nor did the government elicit testimony about how, if at all, that statement affected him at the time; the government instead used this passage to ask whether "it matter[ed] to ▮▮ generally "to receive truthful information from Huawei." *Id.* at 46:04–06. That is not a proper use of the hearsay exception the government invokes.

6

The same is true for other passages ▮ read into the record: the government did not ask ▮ to explain whether he was aware of and read or heard the statements at the time and, if so, how they affected him and his decision-making, but instead invited him to explain the statements' general meaning and significance.[4] And in instances where the government did ask ▮ to explain how specific statements might have been "concerning" or otherwise affected him or the bank, he could not recall what he "thought at the time." ▮ Depo. Tr. 40:01–13.

Second, the government has failed to show that Huawei made alleged representations attributed to it in the ▮ Report. Specifically, the government asked ▮ to read into the record certain statements about what "Huawei have (sic) advised." ▮ Depo. Tr. 40:19–41:15. But the passages that ▮ read into the record do not show who at Huawei made the representation, or whether the individual that made the representation was authorized to do so on behalf of the company.[5] Accordingly, the government has not established a non-hearsay purpose

---

[4] The government established early in ▮ deposition that he "review[ed]" the attachments to a March 31, 2014, email that included the ▮ Report. *See* ▮ Depo. Tr. 28:08–10. But the government never established that ▮ read the specific hearsay statements contained within the ▮ Report that the government asked about or confirmed whether and how those specific statements affected him.

[5] Importantly, the ▮ Report—which was prepared using source documents from ▮ who has acknowledged manipulating the record to mislead the ▮ so he could ensure continuation of the Huawei account, *see* Huawei Rule 15 Mot. at 8–9—reflects that statements attributed to Huawei may have been altered to add the purported attribution. The alteration is best illustrated by bullet "a" in the "Business presence in OFAC sanctioned countries" section of the ▮ Report, which ▮ read into the record. *See* ▮ Depo Tr. at 40:23–41:01. That document was sourced from multiple reports drafted by ▮ HSBC's relationship manager for Huawei, between 2012 and February 2014, as well as December 2011 minutes from a meeting by the ▮ a regional risk committee responsible for assessing customer-related risks, including for Huawei. That source material reflects ▮ conclusion regarding Huawei's business presence in sanctioned countries, explaining that "Huawei's exposure in the OFAC Countries are (sic) minimal." *See* GX 21607-R at 4; *see also* GX 21609-R at 5 (similar); GX 21610-R at 4-5 (similar); DOJ_HUAWEI_A_SDM_0004546459 at 3 (similar). The ▮ Report, however, transforms ▮ characterization into a statement by Huawei, stating that "Huawei have (sic) advised ▮ that . . . Huawei's exposure to OFAC

for the statements. Finally, Huawei incorporates its Rule 403 objection to the inflammatory and irrelevant portions of the ▮▮▮ Report. *See* Huawei Rule 15 Mot. at 10–11.

      3.    <u>The Court should sustain Huawei's objection to the government's leading question ( ▮▮▮ Depo. Tr. 47:10–19).</u>

The Court should sustain Huawei's objection to the government's leading question about Skycom's ownership. During the relevant exchange, the government repeated a purported Huawei statement into the record and then immediately followed with a suggestive question: "Huawei advised ▮▮▮ that its shareholding in Skycom was sold in 2009. *So according to that representation*, was there still an ownership relationship between Huawei and Skycom as of March 2014?" ▮▮▮ Depo. Tr. 47:10–16 (emphasis added). The question's structure presupposed—and thereby instructed the witness—that a statement regarding selling shares implied a statement regarding whether *any* ownership relationship remained. ▮▮▮ provided the only response the government's question invited: "Per the paragraph, no." *Id.* at 47:18.

The government claims that its question was not leading because it asked about ▮▮▮ understanding of Huawei's relationship with Skycom as of March 2014. Govt. Mot. at 16. But the question did not ask for ▮▮▮ understanding. The government asked a specific question that demanded a specific answer: whether, according to a representation that the government had just read, there was "an ownership relationship between Huawei and Skycom as of March 2014." ▮▮▮ Depo. Tr. 47:14–16. That the government's question demanded a specific answer is clear from ▮▮▮ response, which was tethered to the sentence the government read and provided the only possible substantive response based on that excerpt: "no." *Id.* at 47:18.

The government's claim that Huawei waived its objection to the leading nature of the

---

countries is minimal" and falls below certain thresholds. *See* GX 21348-2 at 3. This further undermines any claim that Huawei provided the representations in the ▮▮▮ Report.

8

question is wrong. Huawei objected during the deposition. *See* ███ Depo. Tr. 47:17. And the basis for its objection—that the government's question was highly suggestive of the answer— was so self-evident that it was apparent to the government when made. It was therefore preserved. *See, e.g.*, *United States v. Mohamed*, 2022 WL 3703200, at *1 (E.D.N.Y. Aug. 26, 2022) (permitting non-specific objections made during Rule 15 deposition where the basis for the objection was apparent to counsel).

4.    The ███ Report and related testimony are inadmissible (GX 21348-3, ███ Depo. Tr. 48:25–56:14).

As explained in Huawei's Rule 15 motion, the ███ Report and ███ related testimony are inadmissible. As with the ███ Report, the government failed to establish a business records foundation for the ███ Report; the Report is untrustworthy; the Report is filled with multi-level hearsay for which the government has not established a recognized exception; and substantial portions of the report should be excluded under Rule 403. *See* Huawei Rule 15 Mot. at 4–11.

The government's claim that it laid a business records foundation for the ███ Report through ███ testimony is wrong again. As explained in Huawei's Rule 15 motion, ███ could not identify who prepared the Report or when it was prepared. *Id.* at 6. And again, the government's promise to "independently establish" that the ███ Report is a business record through a Rule 902(11) certification is no basis to pre-admit the Report now, before the government has satisfied that rule's requirements.

The government's attempts to get around the ███ Report's embedded hearsay problems fail. The government did not introduce embedded hearsay statements about Huawei to show their effect on the listener because the government's question did not ask about the statements' effect on ███ or the ███ at the time. *Graham*, 47 F.4th 561, 567. *See, e.g.*, ███ Depo. Tr. 52:21–53:06 (asking what ███ "understand[s]" a passage about Huawei's business in OFAC

9

countries to "refer to," not how the passage affected him or the ███ at the time).

Finally, Huawei maintains and incorporates its Rule 403 objection to the inflammatory and irrelevant portions of the ██ Report. *See* Huawei Rule 15 Mot. at 10–11.

> 5.  <u>The Court should sustain Huawei's objection to the 2014 ████ Minutes and related testimony (GX 21621, ████ Depo. Tr. 56:18–58:01).</u>

The Court should sustain Huawei's objection to GX 21621 (March 2014 Meeting Minutes), which is a version of minutes from the ████ March 31, 2014 meeting that completely redacts an important and contextualizing question from ████ ████████ (who was also a regular member of the ████ but leaves the response provided by ████████ Global Relationship Manager for Huawei, unredacted.

The government claims that it "does not possess" a "completely unredacted" version of the March 2014 Meeting Minutes. Gov't Mot. at 18. Even if not, it certainly possesses—and has produced to the defense—versions of the minutes with far fewer redactions. *See, e.g.*, DX 244.2 (redacting "Hewlett Packard" out of ████ question but leaving his identity and the remainder of his question unredacted); DOJ_HUAWEI_A_0117030616 (redacting ████ initials but leaving his question unredacted). Nor is the government's claim that it only received a version of the minutes with ████ question unredacted two days ago true. *See* Gov't Resp. at 25 & n.11. Between 2019 and 2023, the government produced to the defense three versions of the minutes—DX 107.6, DX 244.2 and DOJ_HUAWEI_A_0117030616—that, when read together, reveal ████ identity and the full contents of his question. The government's choice to present a fully redacted and acontextual version of the minutes was just that: a choice. But there is no legal justification for admitting the government's preferred version with unnecessary redactions. The jury is entitled to the full, unredacted exchange, whether it is presented in a single document or across three.

The government claims that the redactions were "made by ███ which holds the privileges that are the bases of the redactions." Gov't Mot. at 18. But the government does not argue that the redacted text is in fact privileged. Nor could it. ███ provided the government with multiple versions of the minutes which combine to reveal the full content of ███ questions, and the government produced those versions to Huawei in discovery. *See* DX-244.2. ███ disclosure of ███ question thus confirms that there is no privilege. Furthermore, the redactions make no sense. The government's version of the minutes redacts ███ *question* even though ███ has not claimed privilege over ███ *answer*. *See* GX 21621, DX 107.6, DX 244.2. The government cannot seriously argue that the question is privileged but the answer is not; the same privilege rule should apply to both ███ question and ███ response.

The government claims without any argument that "there is no indication that the [redacted] sections of GX 21621" are necessary "to explain an already admitted document, to place the admitted document into context, or to avoid misleading the trier of fact." Gov't Mot. at 18. But that is not true. ███ question to ███ is clearly necessary to contextualize ███ response and to prevent misleading the jury about the meaning and significance of ███ statement by leaving it without any context.[6] *See* Fed. R. Evid. 106. The Court should sustain Huawei's objection.

> 6.    <u>The Court should sustain Huawei's objection to the government's misleading question about the Action Log (███ Depo. Tr. 70:23–71:05).</u>

The Court should sustain Huawei's objection to the government's misleading question and ███ testimony regarding the contents of GX 21352-2 ("Action Log"), an action log that

---

[6] The government's version of the March 2014 ███ Meeting Minutes also <u>excludes other important admissible context</u>, including mitigating information conveyed by ███ to the ███ which ███ testified contributed to the ███ 2014 decision to retain Huawei. *See* ███ Depo. Tr. 186:04–187:01. Huawei addresses DX 107.6 and ███ statement *infra* at 32–34.

the ▮▮▮ prepared and that tracked follow-up items the ▮▮▮ requested after its March 2014 meeting. *See* ▮▮▮ Depo. Tr. 30:12–15. During the relevant exchange, the government showed ▮▮▮ a portion of the Action Log that listed as an agenda item to "[m]onitor for receipt of appropriate evidence relating to the relationship between Huawei and Skycom[.]" GX 21352-2 at 3. According to ▮▮▮ the ▮▮▮ required confirmation about Huawei's and Skycom's relationship before the Committee would agree to maintain its relationship with Huawei, and it commissioned one of the relationship managers to obtain that confirmation. Under the column in the Action Log titled "Action taken / to be taken," the log states that a "GRB [global relationship banker] witnessed Huawei's sales contract for Skycom stating that it sold its entire stake in the company to a third party company on 26Nov2007." *Id.* Notwithstanding the document stating that the relationship banker "*witnessed* Huawei's sales contract," the government asked ▮▮▮ "[F]ollowing the *receipt of the sales contract* as described in the log, did the relationship between ▮▮▮ and Huawei continue?" ▮▮▮ Depo. Tr. 70:23–25. The government's question clearly mischaracterized the Action Log: the ▮▮▮ never "received" the sales contract referenced in the Action Log; rather, an ▮▮▮ relationship banker "witnessed," or saw, the contract and reported about its contents to the ▮▮▮

That distinction is important. The Action Log shows that the ▮▮▮ did not base its decision to continue its relationship with Huawei on its *own* review of the contents of the sales contract showing Skycom's shares sold to an unnamed third party. Rather, the ▮▮▮ relied on representations by the relationship banker to confirm the nature of Huawei's sale and consequent relationship with Skycom. That banker was ▮▮▮ relationship banker for Huawei who intentionally concealed information about Huawei's relationship with Skycom. *See* ▮▮▮ Depo. Tr. 110:07–10 (▮▮▮ testifying that ▮▮▮ "is the one who went to look at the contract");

12

Huawei Rule 15 Mot. at 8–9 (citing ▮▮▮▮ admission that he intentionally concealed information he had about Huawei's relationship with Skycom from senior ▮▮▮▮ officials). And true to form, rather than disclose that Huawei sold its Skycom shares to Canicula, a Huawei-affiliated entity (a fact that would have been apparent had the ▮▮▮▮ received and reviewed the contract itself), ▮▮▮▮ reported that Huawei sold the shares to an unnamed third party. *See* GX 21352-3 at 3. That obscurity was intentional. In a 2017 interview with the government, ▮▮▮▮ acknowledged that he "knew the sale was not to an independent third party" but nevertheless omitted that information in his report to the ▮▮▮▮ because he just cared about "ticking the box" of viewing the contract to maintain ▮▮▮▮ relationship with Huawei. DOJ_HUAWEI_A_0124193936 at 17. And his knowing omission worked: ▮▮▮▮ testified that, based on ▮▮▮▮ representation, ▮▮▮▮ believed that Huawei divested its Skycom shares in an arms-length transaction, ▮▮▮▮ Depo. Tr. 71:06–10, not that it transferred its shares to a Huawei-affiliated entity. The government's question suggesting that the ▮▮▮▮ received and personally reviewed the sales contract erases this important context.

**B.    The Court should overrule the government's objections regarding ▮▮▮▮ testimony.**

    1.    <u>Huawei preserves its arguments that testimony and exhibits concerning the Bank Prosecution Evidence are admissible (▮▮▮▮ Depo. Tr. 83:18–87:16, 87:23–96:24, 97:02–103:13, 103:19–106:08, 126:13–127:16, 237:10–11, 14–16, DX 142, 143, 144, 149).</u>

During ▮▮▮▮ deposition, Huawei introduced testimony and evidence showing that at the time ▮▮▮▮ decided to terminate its relationship with Huawei and ▮▮▮▮ employees began serving as cooperating witnesses, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* DX 142,

13

143, 144. As explained in prior motion in limine briefing, this evidence undermines the government's claim that the bank terminated its relationship with Huawei because it learned about Huawei's alleged misrepresentations, and shows instead that ███ debanked Huawei because of pressure from the DOJ. It is also essential to impeach, among other things, the hearsay statements the government seeks to rely on for their truth. *See* Dkt. 615 at 1–17. ███ testimony and evidence discussing the bank prosecution evidence is relevant for these purposes among others.

However, Huawei acknowledges the Court's June 8, 2026 Order granting the government's preliminary motion in limine to preclude evidence of prosecutions and enforcement actions against the alleged victim banks, including ███ *see* Dkt. 717, and will not rehash its arguments for admissibility of that evidence here. Huawei reserves the right to re-raise the issue during trial if and when it becomes appropriate to do so. *See* Dkt. 717 at 2 (stating that "[i]n limine rulings are 'subject to change when the case unfolds'") (quoting *McLeod v. Llano*, 2021 WL 1669732, at *2 (E.D.N.Y. Apr. 28, 2022)).

    2.    <u>The Court should overrule the government's objection to ███ testimony regarding ███ identification (███ Depo. Tr. 108:19–109:08).</u>

The Court should overrule the government's objections to defense counsel's questions regarding ███ Defense counsel showed ███ a series of pictures of former ███ personnel and asked the same leading question (without objection) that identified the individual and asked whether ███ remembered them. *See, e.g.,* ███ Depo. Tr. 107:25–108:04 (regarding ███ *id.* at 108:10–13 (regarding ███ Defense counsel then asked: "How about ███ . . . He was the lead relationship banker for Huawei in ███ do you remember ███ *Id.* at 108:17–20. Defense counsel made a proper prefatory statement

14

identifying ▮ as Huawei's lead relationship banker at ▮ an undisputed fact that will be a central part of the trial evidence—for the sole purpose of testing the witness's recollection.

The Court should overrule the government's objection. First, the government did not specify an objection to "facts not in evidence" during the deposition; the government only objected that "defense counsel [was] testifying." ▮ Depo. Tr. 108:21. The Court should treat the government's "facts not in evidence" objection as waived. *See* Fed. R. Crim. P. 15(g) (objecting party must "state the grounds for the objection during the deposition"); *Mohamed*, 2022 WL 3703200, at *1 (holding that objections are waived "if the party raising them did not object during the deposition itself").[7] Second, the government's "facts not in evidence" objection is premature. The government suggests that ▮ role within ▮ was not yet in evidence when defense counsel asked ▮ whether he remembered ▮ But the Court should not assess the propriety of the defense's questions or ▮ testimony in isolation. The purpose of a Rule 15 deposition is to preserve testimony "for trial." Fed. R. Crim. P. 15(a)(1). The relevant time for assessing specific testimony's admissibility is therefore *at trial*, when the parties offer their proposed designations and the Court can determine whether there is a sufficient factual foundation for the questions and testimony. *See Mohamed*, 2022 WL 3703200, at *6 (court noting that, based on possibility "that further factual foundation for defense counsel's question" might "be elicited at the trial," it would consider the admissibility of objected-to questions then). It would be inconsistent with the purpose of the rule to assess *during the deposition* whether the *trial record*—for a trial set to start nearly six months after the deposition—reflects the facts about

---

[7] Indeed, many of the government's briefed objections are either to questions and testimony that went without objection during the depositions, or that state grounds different than those raised during the witnesses' depositions. Both categories of objections should be treated as waived and overruled. *See Mohamed*, 2022 WL 3703200, at *1-3.

15

which a Rule 15 witness is testifying. Accordingly, the Court should overrule the government's objection. If and when Huawei offers ███ testimony on this point at trial, independent evidence will have established that ███ was ███ lead relationship banker on the Huawei account.

The government's contention that defense counsel testified by "assert[ing] a fact without requesting the witness to comment on it" is misplaced. Gov't Mot. at 22. Defense counsel's question was not posed to confirm ███ status as the global relationship banker, but to try to remind ███ who ███ was by identifying his former title at the bank. And ███ testified shortly after this line of questioning that ███ was "the GRB," or global relationship banker, for Huawei. ███ Depo. Tr. 110:07–10. Should the Court reach the government's waived objection, the Court should overrule it or defer ruling on it until trial.

> 3.   ███ testimony about Skycom accounts at ███ should be admitted (███ Depo. Tr. 111:03–08, 15–18).

The Court should admit defense counsel's questions and ███ testimony that he was not aware that Skycom was an ███ customer for more than a decade, ███ Depo. Tr. 111:03–07, and that Skycom and Huawei had been using ███ accounts to make Iran-related payments, *id.* at 111: 15–18. Again, these are undisputed facts that will be a central part of the trial evidence. This testimony is clearly relevant to undermine ███ credibility and should be admitted on that basis. *United States v. Quinto*, 582 F.2d 224, 233 (2d Cir. 1978) (explaining that evidence that bears on a witness's credibility is "always relevant").

The government's objection that the questions and testimony assumed facts not in evidence should be overruled. As to the first question—whether ███ was "aware that from 1998 through February 2013, Skycom was a ███ customer with ███ bank accounts"—the government did not object during the deposition and therefore cannot object now. *See* Fed. R.

Crim. P. 15(g); *Mohamed*, 2022 WL 3703200, at *1. As to both questions, as explained above, the government's objection that facts were not in evidence at the time defense counsel asked them is premature; the facts will be in evidence when the deposition is presented to the jury at trial. *See supra* at 15–16.



4.    ▮▮▮▮ testimony about his lack of familiarity with telegraphic transfer application forms should be admitted (▮▮▮▮ Depo. Tr. 111:20–112:15).

Telegraphic transfer application forms are forms that ▮▮▮▮ customers use to authorize wire transfers. *See* ▮▮▮▮ Depo. Tr. 112:09–11. During his deposition, ▮▮▮▮ testified that he was unfamiliar with ▮▮▮▮ telegraphic transfer application forms and had never seen such a form while working at ▮▮▮▮ *Id.* at 112:09–15.

The government did not object to this line of questioning and testimony at all during ▮▮▮▮ deposition. Accordingly, its objections to it are waived. *Mohamed*, 2022 WL 3703200, at *1. Instead, the government objected only to questions about the content of a specific form—DX 112. *See* Gov't Mot. at 23–24. But Huawei did not designate DX 112 and does not intend to admit that exhibit at trial. Huawei only intends to offer ▮▮▮▮ general claim that he lacked any knowledge about ▮▮▮▮ telegraphic transfer application form. That testimony is relevant to show ▮▮▮▮ lack of knowledge about basic ▮▮▮▮ policies and procedures.

The government's claim that this line of questioning fell outside the scope of ▮▮▮▮ direct examination is not only waived, *Mohamed*, 2022 WL 3703200, at *1, but it is an improper objection. Although the general rule is that the scope of cross-examination is limited to "the subject matter of the direct examination and matters affecting the witness's credibility," "[t]he court may allow inquiry into additional matters as if on direct examination." Fed. R. Evid. 611. At trial, courts often permit parties' cross-examinations to exceed the scope of direct, including where the witness will testify only once, or where the cross-examining party could call a witness

17

as a hostile witness during their own case presentation. *See, e.g.*, *Qorrolli v. Metro. Dental Assocs., D.D.S. - 225 Broadway, P.C.*, 2023 WL 3645136, at *2 (S.D.N.Y. May 25, 2023) ("The parties had agreed that each witness would testify only once during the trial, and therefore the 'cross examination' of Dr. Cohen and Orantes was not restricted by the scope of their direct examination."); *U.S. Bank Nat. Ass'n v. PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 143 (S.D.N.Y. 2015) ("I note that Gibson is on Phoenix's witness list as well; I insist that witnesses testify only once, so if Phoenix calls Gibson, U.S. Bank can elicit its rebuttal testimony from him on cross examination, even if the cross goes beyond the scope of the direct."); *United States v. Mahaffy*, 2007 WL 1213743, at *2 (E.D.N.Y. Apr. 24, 2007) (finding that "sustaining an objection on Rule 611(b) grounds to" cross-examination that exceeded the scope of direct "would be an empty formality, as the defendants could simply call [the witness] as a hostile witness during their own case presentations to testify about any relevant issues that exceed the scope of the government's direct examination"). And in the Rule 15 context, which requires that "the scope and manner" of cross-examination "be the same as would be allowed during trial," Fed. R. Crim. P. 15(e)(2), courts permit defendants to exceed the limited scope of the government's direct examination where the parties "disagree . . . as to what information" is "relevant to the examination." *United States v. Zaso*, 2024 WL 19212890, at *1 (W.D.N.Y. April 30, 2024).

Any of those rationales is reason to permit Huawei to exceed the scope of the government's limited direct examination here. Barring the defense from questioning a key government witness about a highly disputed topic (that the government would not raise itself) would be improper in the Rule 15 context, where the defense will have no other opportunity to question the witness, and where Huawei could have called ███ as an adverse witness at trial if

18

he was available to testify. Thus, the defense was entitled to secure testimony that the Court might determine is relevant and admissible.

5.    ██████ testimony regarding ████ sanctions policies is admissible (██████ Depo. Tr. 113:21–25, 114:13–115:04).

During trial, the evidence will show that for many years, ██████ internal policies permitted its customers to engage in certain Iran-related transactions, including sending euros directly from an ██████ account to a bank account in Iran. During his deposition, however, ██████ testified that he did not know whether ██████ policy at the end of October 2007 prohibited sending euros from an ██████ account to a bank in Iran. ██████ testimony is plainly relevant to show that ██████ lacked knowledge of ██████ policies generally, and whether Iran-related transactions were permitted during certain time periods specifically. It also undermines ██████ general suggestion that he understood ██████ policies regarding transactions involving sanctioned countries, ██████ Depo. Tr. 39:01–25; he clearly did not.

The government's argument that this testimony is irrelevant because it concerns conduct from a different time period and involving a different currency than the fraud allegations charged in the indictment is misplaced. First, the defense believes that the government intends to introduce evidence that Huawei engaged in euro transactions involving Iran at trial. *See, e.g.*, GX 20003 (collecting Huawei transactions processed through ██████ denominated in U.S. dollars and Euros); *see also* S-4 Indictment ¶ 62 (describing ██████ euro-clearing capabilities). Evidence suggesting that ██████ policy permitted those transactions tends to undermine the government's claims about their significance. Second, evidence that ██████ facilitated Iran-related euro transactions undermines later representations by ██████ relationship bankers that there were no Iran-related transactions in Skycom's accounts. Third, evidence from the period that immediately precedes the relevant conduct—including conduct underlying the fraud and

19

IEEPA charges—is often admitted as relevant context in a conspiracy case. *See United States v. Diaz*, 878 F.2d 608, 615–16 (2d Cir. 1989) (evidence that occurred before the charged conspiracy is admissible). Here, evidence that ▇▇▇ policy permitted certain euro transactions tends to negate that Huawei conspired to engage in transactions that violated ▇▇▇ policy. Finally, the government's scope objections are improper. *See supra* at 17–18.

      6.       <u>▇▇▇ testimony regarding the WOLF monitoring system is admissible (▇▇▇ Depo. Tr. 115:21–116:25).</u>

▇▇▇ WOLF system was an electronic monitoring system designed to screen payments that went through ▇▇▇ system for flags related to sanctions. *See* ▇▇▇ Depo. Tr. 116:01–04. During his deposition, ▇▇▇ provided a high-level description of the system but explained that he was "not familiar with the system," had never "operated it" himself, and had never received alerts from the WOLF system. *Id.* at 116:01–25. The government raises several objections to ▇▇▇ testimony but did not raise a single objection during the deposition. Its objections are therefore waived. *Mohamed*, 2022 WL 3703200 at *1. In any event, the government's objections fail on the merits.

The government claims that ▇▇▇ testimony is not relevant. But ▇▇▇ testimony regarding ▇▇▇ WOLF monitoring system (and his lack of familiarity with it), and that he never received a WOLF alert flagging Huawei's relationship with Skycom, is admissible to show ▇▇▇ lack of knowledge regarding ▇▇▇ most basic and accessible compliance systems, and to establish that Huawei—who presumably did not have any greater knowledge than ▇▇▇ lacked fraudulent intent.

The government argues that such testimony is inadmissible evidence of ▇▇▇ negligence. Gov't Mot. at 24–25. Huawei does not intend to offer this testimony to argue that ▇▇▇ was negligent. Rather, Huawei intends to show that ▇▇▇ alleged lack of knowledge

20

regarding Huawei's relationship with Skycom is not dispositive evidence that Huawei never provided that information, and that Huawei's admitted affiliation with Skycom as disclosed to ▮▮ bankers did not make it to ▮▮ risk and compliance personnel, including ▮▮ and shows that Huawei lacked fraudulent intent.

The government likewise argues that this testimony is beyond the scope of direct examination, but for the reasons explained above, the scope of direct examination does not limit cross-examination during a Rule 15 deposition of an unavailable witness. *See supra* at 17–18. In any event, ▮▮ processing of allegedly sanctioned transactions is squarely within the scope of direct.

> 7.    ▮▮ testimony regarding ▮▮ policies and public statements regarding work in Iran is admissible (▮▮ Depo. Tr. 119:10–25).

The Court should overrule the government's objections to questioning and testimony about ▮▮ 2007 policy regarding euro transfers and ▮▮ public representations in 2007 that it voluntarily discontinued all business with Iranian banks. ▮▮ Depo. Tr. 119:10–25. ▮▮ testimony that he did not know ▮▮ sanctions policies is relevant to ▮▮ credibility as ▮▮ at the bank, *Quinto*, 582 F.2d at 233, and calls into question whether an outside customer like Huawei would have been expected to know them. Defense counsel's question regarding ▮▮ prior representations about its business with Iranian banks is not hearsay because it is not being offered for the truth, but instead to show that the statement was made. *See* Fed. R. Evid. 801(c) adv. comm. notes ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

The government's objection that the questions and testimony concern a different time period and different currency fails for the reasons explained above. *See supra* at 19–20. And the

government's scope objections are improper for the reasons explained above. *See supra* at 17–18.

8.     testimony regarding █████ 2007 policy is admissible (█████ Depo. Tr. 120:01–121:12).

The Court should overrule the government's objections to ████ testimony about ████ public representations in 2007 that it voluntarily discontinued all business with Iranian banks. ████ Depo. Tr. 120:01–121:12. Defense counsel's questions and ████ answer regarding ████ 2007 policy is relevant to ████ credibility as █████████ ████ at the bank. *Quinto*, 582 F.2d at 233.

The government's hearsay objections are improper because Huawei introduced the statement to show that it was made, not for its truth. *See supra* at 21. The government's objections that the questions and testimony concern a different time period or exceed the scope of direct fail for the reasons explained above. *See supra* at 15–16, 17–18.

The Court's June 8 Order granting the government's motion to exclude Bank Prosecution Evidence does not bar this questioning and testimony. The Court held that the Bank Prosecution Evidence is inadmissible to impeach bank witnesses about their incentives and motives in blaming Huawei for the banks' own compliance failures. Dkt. 717 at 5–7. Here, defense counsel used the ████ for a different purpose entirely: to establish the fact of ████ public representations about the extent of its business in Iran, and to show that █████████ ████ was not familiar with ████ internal policies which, contrary to its public representations, permitted existing business in Iran to continue. This evidence impeaches ████ earlier testimony that ████ had disengaged from direct business involving sanctioned countries. *See* ████ Depo. Tr. 39:01–25. The Court's June 8 Order does not preclude this line of questioning.

9.      testimony regarding _____ Tehran office is admissible (____ Depo. Tr. 121:13–15).

The Court should overrule questioning and testimony regarding _____ Tehran office. The question and _____ testimony is relevant to undermine _____ credibility about _____ policies and business in sanctioned countries. *Quinto*, 582 F.2d at 233.

The government's form objection that defense counsel was testifying was not raised during the deposition and is therefore waived. *See* Fed. R. Crim. P. 15(g); *Mohamed*, 2022 WL 3703200 at *1. It also fails on its own terms. Defense counsel's leading question was permitted to probe the witness's recollection and did not seek to establish the truth of the underlying premise. To the extent the government objects to facts not in evidence or to the scope of cross-examination, those objections are improper in a Rule 15 deposition and should be overruled. *See supra* at 15–16, 17–18.

10.     _____ testimony and evidence regarding DX 218 is admissible (____ Depo. Tr. 122:3–123:15).

DX 218 is an October 2010 presentation by _____ to Fixed Income Investors. In the presentation, _____ touted its ongoing presence in Iran (along with other countries, including Lebanon, Palestine, and Iraq) as evidence that "[n]o international bank [can match] _____ presence in the Middle East." DX 218 at 15.

The government does not dispute that the presentation is admissible as a business record, only that defense counsel failed to establish a foundation through _____ Huawei will establish the connection and lay the requisite foundation at trial; the Court should thus overrule the government's objection to its admissibility. The government's claim that the statements within the presentation are second-level hearsay fails. Those statements, including the map and _____ statements about its work in the Middle East, are admissible for the fact that _____ was publicly touting that it had an office in Iran (among other countries), not for the truth of the matter

23

asserted. Moreover, this questioning and testimony are relevant to show ▮▮▮ lack of knowledge about ▮▮▮ claims to have an Iran office ▮▮▮▮▮▮ stating that the bank no longer maintained business in Iran, and to impeach ▮▮▮ claim earlier in the deposition that ▮▮▮ had disengaged from direct business involving sanctioned countries. *See* ▮▮▮ Depo. Tr. 39:01–25.

The government's scope objection is improper. Defense counsel was permitted to cross-examine ▮▮▮ on topics that exceed the limited scope of the government's direct given the parties' dispute about the relevance of the topic and because ▮▮▮ would only testify once. *See supra* at 17–18.

11.   ▮▮▮ additional testimony regarding ▮▮▮ Tehran office is admissible (▮▮▮ Depo. Tr. 123:23–126:08).

The Court should overrule the government's objections to ▮▮▮ additional testimony about DX 218 and ▮▮▮ Tehran office. *See supra* at 23–24. The Court should also overrule the government's scope objection for the reasons explained above. *See supra* at 17–18.

The government's objection to defense counsel's characterization of the map in DX 218 as an "office" instead of a "representative office" should also be overruled. ▮▮▮ Depo. Tr. 123:10–12, 23–25. Defense counsel had previously referred to ▮▮▮ office in Tehran as a "representative office." *See* ▮▮▮ Depo. Tr. 123:2–4. Counsel's subsequent shorthand reference to the Tehran "office" did not mischaracterize the map. And the government does not offer any support for its purported distinction between the terms "representative office" and "office" in this context. Moreover, the question was permissible because it was directed at the witness's understanding and recollection of ▮▮▮ presence in Tehran.

24

12.    Defense counsel's question regarding Skycom's ████ accounts is admissible (████ Depo. Tr. 127:17–22).

The Court should overrule the government's "facts not in evidence" objection to defense counsel's question whether ████ was "aware that Skycom . . . had accounts at ████ prior to the [2014 ████ meeting[.]" ████ Depo. Tr. 127:17–19. The government failed to contemporaneously object, so its objection is waived. *See* Fed. R. Crim. P. 15(g); *Mohamed*, 2022 WL 3703200 at *1. And its objection that the underlying facts were not in evidence at the time of ████ objection is improper; the trial evidence will establish the underlying facts, and Court should assess the government's objection if and when ████ testimony is offered. *See supra* at 15–16. In any event, defense counsel stated the facts to test ████ knowledge. The question is permissible for that purpose.

13.    Questions and testimony regarding HORIS is admissible (████ Depo. Tr. 127:23–131:06).

████ used its "HORIS" (head office reporting and information system) system to "track[] [████ customer relationships and revenue" across the globe. ████ Depo. Tr. 128:4–6. The evidence at trial will show that HORIS was a standard application available to all ████ employees that grouped the bank's customers into "mastergroups" that showed the relationship among ████ customers. During the relevant time period, ████ HORIS system reflected a Huawei mastergroup, and within that mastergroup HORIS linked affiliated companies, including Skycom and Canicula, to Huawei. ████ testified that he knew what HORIS was and that he could have asked an ████ employee to access the HORIS system and obtain information for him. *Id.* at 127:23–128:06, 128:22–128:01.  However, he testified that he was not aware of Skycom's and Canicula's affiliation with Huawei within HORIS, and that he never actually used HORIS to verify a customer's corporate affiliates. *Id.* at 130:01–08, 130:16–131:02.

25

▮▮▮ testimony is clearly relevant. It shows that during the relevant time period, ▮▮▮ had information from Huawei about its operations in Iran and its relationship to Skycom (and Canicula). Such testimony goes to central aspects of Huawei's defense against the fraud charges. Evidence that Huawei openly and consistently disclosed its relationship with Skycom to ▮▮▮ undermines the government's case that Huawei intended to defraud ▮▮▮ or had any motive to do so by purportedly concealing that same information.  This is a classic fraud defense. *See, e.g.*, *United States v. Rossomando*, 144 F.3d 197, 199 (2d Cir. 1998) ("an honest belief that all material information had been disclosed is a good defense, however inaccurate the statements may turn out to be"); *United States v. RW Prof. Leasing Services Corp.*, 452 F. Supp. 2d 159, 173 (E.D.N.Y. 2006) ("courts should 'look at the entire circumstances of defendant's conduct as an indication of the requisite criminal intent.'") (citing *United States v. Barrett*, 178 F.3d 643, 648 (2d Cir. 1999)).

It is also relevant to materiality. Evidence tending to show that ▮▮▮ already understood from Huawei the facts about its operations in Iran and relationship to Skycom undermine the government's theory that Huawei's purported misstatements about its relationship with Skycom were material. It also contradicts ▮▮▮ testimony that ▮▮▮ only continued its Huawei relationship because the bank did not learn those facts until 2017; in fact, ▮▮▮ maintained its relationship with Huawei for years notwithstanding the bank's knowledge about the nature of its relationship with Skycom. ▮▮▮ testimony is also relevant to impeach his credibility as a reliable and authoritative witness, because it shows that ▮▮▮▮▮▮ with access to this information through ▮▮▮ internal compliance checks made no attempt to access it, and that he was (at best) unfamiliar with one of the bank's most important tools.

For these reasons, the government's objection that ▮▮▮ testimony and evidence about

26

HORIS are irrelevant because they only support an inference of ▮▮▮▮ negligence should be overruled. The evidence does not establish, and Huawei does not intend to argue, that ▮▮▮ was "negligent." Rather, ▮▮▮▮ testimony about the HORIS system shows that Huawei lacked the requisite intent to defraud, and that its statements could not be material to ▮▮▮

The government's remaining objections also fail. ▮▮▮ testimony that he was not familiar with the HORIS system does not establish lack of foundation but instead shows precisely what Huawei set out to prove: that ▮▮▮▮▮▮▮▮▮▮▮▮▮ lacked credibility because he had no knowledge of one of ▮▮▮ most basic compliance systems. The government's "facts not in evidence" objection fails because, as stated above, Huawei expects the underlying facts to come out during trial. The Court should thus assess whether the facts are in evidence at the time ▮▮▮ testimony is introduced at trial.[8] *See supra* at 15–16. The Court should also overrule the government's scope objection for the reasons explained above. *See supra* at 17–18. Finally, the Court should overrule the government's Rule 403 objection. The government did not make the objection during ▮▮▮ deposition, so it is waived. And because the questions and testimony are not offered to suggest negligence by ▮▮▮ but instead to demonstrate lack of materiality and Huawei's lack of fraudulent intent, they carry no meaningful risk of unfair prejudice under Rule 403. Any minimal risk of confusion or misuse is substantially outweighed by their probative value in illuminating Huawei's state of mind and the context in which the relevant information was considered, or not considered, by ▮▮▮

14. Questions and testimony regarding DX 208_N are admissible (▮▮▮ Depo. Tr. 131:10–132:01, 132:22–133:23).

During ▮▮▮ deposition, Huawei introduced a report generated by ▮▮▮ HORIS

---

[8] To the extent the government made this objection during ▮▮▮ deposition in response to certain questions but not others, the government's unpreserved objections are waived. *Mohamed*, 2022 WL 3703200 at *1.

27

system that shows that Skycom and Canicula were part of Huawei's mastergroup. *See* DX 208_N ("Detailed Mastergroup Report" tab). The HORIS report and ▮▮▮▮ testimony are relevant for the reasons explained above. *See supra* at 25–27. The Court should overrule the government's objections to DX 208_N and ▮▮▮▮ related testimony.

The government's "counsel testifying" objection to defense counsel's lead-up to its question about the HORIS Report is misplaced. *See* ▮▮▮▮ Depo. Tr. 131:12–16. Defense counsel was not testifying but instead framing his question to move ▮▮▮▮ testimony along, which is acceptable. The government's foundation objection should likewise be overruled. Defense counsel sought to admit the document "subject to connection," ▮▮▮▮ Depo. Tr. 131:14–16, which may happen at trial, *McLeod*, 2021 WL 1669732, at *2.

Finally, there is no such objection as "improper impeachment as they did not contradict ▮▮▮▮ prior testimony." Gov't Mot. at 31. Cross-examiners are free to impeach witnesses in a variety of ways, including through evidence of bias, lack of knowledge, or any other fact that may make the witness's testimony less credible. At any rate, defense counsel did not ask ▮▮▮▮ whether the HORIS spreadsheet reflected an affiliation between Huawei, Skycom, and Canicula for purposes of contradicting his testimony, but instead to show that ▮▮▮▮ system showed a connection between the companies, and to undermine ▮▮▮▮ credibility about ▮▮▮▮ consideration of Huawei.

15.   Defense counsel's question about ▮▮▮▮ is admissible (▮▮▮▮ Depo. Tr. 137:08–12).

The Court should overrule the government's hearsay objection to defense counsel's question whether "▮▮▮▮ or ▮▮▮▮ mention[ed]" to the ▮▮▮▮ "that Skycom had been a ▮▮▮▮ customer." ▮▮▮▮ Depo. Tr. 137:08–12. The question does not call for hearsay, but instead calls for testimony tending to show whether ▮▮▮▮ and the ▮▮▮▮ had notice of the

28

underlying fact. This is the equivalent of a statement offered for its effect on the listener and not to prove the statement's truth. Such a statement is not hearsay, and neither is this question.

16.    Questions and testimony regarding ███████ internal alert and transaction monitoring systems are admissible (███ Depo. Tr. 137:13–139:08, 140:05–19).

The Court should overrule the government's objections to questions and testimony related to ██████ WOLF, IRIS, and CAMP systems. As partially explained above, these systems were either internal alert or transaction monitoring systems that ███████ compliance function used to capture potential sanctions or other issues. And as with the HORIS system, Huawei expects that evidence will show that ██████ personnel could have used these systems to identify Huawei's relationship with Skycom but did not.

Questions and testimony about these systems are relevant for the same reasons as ██████ testimony regarding the HORIS and WOLF systems: they undermine the government's materiality theory, show that Huawei lacked the requisite fraudulent intent, and show ██████ general lack of familiarity with ██████ most basic compliance systems. *See supra* at 25–27. The government's Rule 403 arguments fail because the probative value of the testimony and related evidence substantially outweigh any risk of confusion about the purpose of ██████ testimony. And the government's scope objection is improper for reasons explained above. *See supra* at 17–18.

17.    Questions and testimony regarding ██████ committees' considerations as reflected in the ████ and ██ Reports are admissible (██████ Depo. Tr. 151:23–152:17, 154:18–157:18, 160:21–25; 163:14–164:25, 165:07–12, 165:13–18, 165:22–166:01, 172:15–23, 173:01–13).

During its direct examination, the government moved to admit the ██████ and ████ Reports as business records without qualification and asked ██████ about specific statements that the government says are attributable to Huawei, for the purpose of establishing that the ██████

29

considered those statements—and only those statements—in assessing whether to continue its relationship with Huawei. *See* Huawei Rule 15 Mot. at 4. On cross-examination, defense counsel questioned ███ about other statements within the ███ and ███ Reports to show other information the ███ and ███ business unit had access to and considered in making its recommendation and decision to retain Huawei—such as Huawei's size and financial status, ███ status as Huawei's "number 1" bank, and prior settled allegations of trade secret theft. *See* ███ Depo. Tr. 154:21–155:18, 164:19–25.

As Huawei argued in its Rule 15 motion, if the Court admits the ███ and ███ Reports and the government's questioning and testimony about them, Huawei's additional designations are necessary context to ███ testimony about the role Huawei's alleged representations, work in sanctioned countries, and adverse news reports played in the bank's decision to retain its relationship with Huawei. *See* Huawei Rule 15 Mot. at 21–22; Fed. R. Evid. 106.

The government's hearsay objection fails. Huawei is not offering the statements in the ███ and ███ Reports for their truth, but instead for their effect on the listener, *i.e.*, ███ and the ███ ███ repeatedly testified that the ███ considered the specific factors highlighted by defense counsel in assessing the bank's relationship with Huawei. *See, e.g.*, ███ Depo. Tr. 154:18–157:18, 160:21–161:10.[9] The jury is entitled to know what those considerations were. But even if Huawei did offer the statements for their truth, they would be admissible under Rule

---

[9] Defense counsel's prompts eliciting whether and how ███ or the ███ considered representations in the ███ and ███ Reports at the time distinguish defense counsel's questions from the government's, which asked ███ about his current understanding of various statements and representations in those reports. *Compare* ███ Depo. Tr. 45:14–46:25 (government reading about allegations of Skycom and asking ███ whether ███ generally thought it important to receive truthful information from clients), *with id.* at 154:21–155:18 (defense counsel reading passage about ███ allegations, asking whether ███ "review[ed] this information in advance of the meeting," and ███ testifying that he did and describing the role it played in his decision-making).

106, which admits evidence necessary for context over a hearsay objection. *See* Fed. R. Evid. 106 (permitting admission for completeness "over a hearsay objection").

The government's claim that defense counsel invited ▓▓▓ to speculate about the importance of EU business versus Iran business to Huawei mischaracterizes defense counsel's question. Defense counsel did not ask ▓▓▓ to speculate, but instead asked ▓▓▓ to state his understanding of the ▓▓▓ understanding at the time. *See* ▓▓▓ Depo. Tr. 165:13–15 ("And in the ▓▓▓ the committee, understood at the time that Huawei considered its EU and other businesses more important than the Iranian business, right?"). That was a proper question.

18.  Questions and testimony regarding Skycom's omission from ▓▓▓ and ▓▓▓ Reports are admissible (▓▓▓ Depo. Tr. 168:05–10, 169:10–15, 169:16–170:09, 170:16–20).

During cross-examination, defense counsel asked ▓▓▓ whether, given his compliance background and prior role on the ▓▓▓ it would have been important to him for the individuals who prepared the ▓▓▓ and ▓▓▓ Reports to include accurate information about Skycom's relationship with Huawei. *See* ▓▓▓ Depo. Tr. 169:10–15. These were permissible hypothetical questions rooted in ▓▓▓ experience at ▓▓▓ Defense counsel did not ask ▓▓▓ "to put himself in the position of the persons who prepared" the reports, Gov't Mot. at 33, but instead asked whether ▓▓▓ believed they should have provided the ▓▓▓ with accurate information.

Defense counsel also asked ▓▓▓ whether information in the HORIS report showing the history of ▓▓▓ relationship with Huawei and Skycom would have been relevant to him. ▓▓▓ Depo. Tr. 169:10–13, 16–24, 170:16–19. These questions and others relating to the HORIS system are relevant for the reasons explained above. *See supra* at 25–27. The government's foundation objection likewise lacks merit; ▓▓▓ did not need substantive familiarity with HORIS to testify about whether the information in the report—information showing Huawei's relationship with Skycom—would have been relevant to him and the ▓▓▓

31

The government's scope objection is improper for the reasons explained above. *See supra* at 17–18.

> 19.    Questions and testimony regarding HORIS omission from ▮▮▮ Report are admissible (▮▮▮ Depo. Tr. 171:11–15, 171:21–23).

The government's additional objections to certain questions regarding the HORIS system fail. The government's foundation, relevance, scope, and facts-not-in-evidence objections fail for the reasons explained above. *See supra* at 15–16, 17–18, 25–27. And the government did not object to defense counsel's question and ▮▮▮ testimony regarding Skycom's status as an ▮▮▮ customer with ▮▮▮ bank accounts, so that objection is waived. *Mohamed*, 2022 WL 3703200 at *1.

> 20.    Questions and testimony about national security are admissible (▮▮▮ Depo. Tr. 173:14–21).

The Court should overrule the government's objection to counsel's questions clarifying whether then-recent news reports regarding the U.S. National Security Agency's infiltration of Huawei factored into the ▮▮▮ decision-making regarding whether to retain Huawei as a client. ▮▮▮ Depo. Tr. 173:14–21. In the days leading up to the ▮▮▮ March 2014 meeting to determine whether to continue its relationship with Huawei, the *New York Times* released an article reporting that the NSA had "create[d] its own backdoors—directly into Huawei's networks," enabling it to "monitor[] communications of the company's top executives" and "roam through [Huawei's] computer and telephone networks to conduct surveillance and, if ordered by the president, offensive cyberoperations." *See* DX 121 at 1. However, the NSA did not take any action after hacking Huawei's servers. *See id.* Contemporaneous documents reflect that, within days of that reporting, emails exchanged among confirmed March 2014 ▮▮▮ attendees concluded that, "[b]ased on what we know," there was "no reason" for ▮▮▮ not to

proceed with its impending bid to participate in "an imminent" loan deal with Huawei. *See* DX 120 at 3.

The government's objection that this line of questioning is irrelevant lacks merit. The testimony is relevant because it identifies a mitigating factor that the ████ likely considered in assessing ████ relationship with Huawei, and it is admissible under Rule 106 for the purpose of contextualizing the ████ deliberations and decision-making. *See* Fed. R. Evid. 106. The government's "facts not in evidence" objection was not raised at the deposition and so is waived, and in any event fails for the reasons explained above. *See supra* at 15–16. The government's Rule 403 argument was not raised at the deposition and so is waived. Fed. R. Crim. P. 15(g); *Mohamed*, 2022 WL 3703200, at \*1. On the merits, the question's use of the word "infiltrate" does not suggest that the U.S. government harmed Huawei, and the risk of that confusion is low when weighed against the probative value of the question and testimony.

21. <u>Questions regarding DX 107.6, DX 120, and ████ related testimony are admissible (████ Depo. Tr. 179:12–188:09).</u>

a. *DX 107.6 and related testimony*

During his cross-examination, ████ testified that among the "mitigants" the ████ considered in March 2014 in deciding to retain Huawei as a client was "[t]he fact that someone from ████ FSVC … had looked" at Huawei's national security risk. ████ Depo. Tr. 179:22–180:04. That "someone" was ████ ████ Depo. Tr. 184:02–04. Evidence shows that ████ was a former U.K. intelligence officer who worked at ████ and was a member of the bank's ████ which ████ described as a "sub committee (sic) of the board with experts in financial crime." ████ Depo. Tr. 182:05–18. According to DX 107.6, which is a version of minutes from the ████ March 2014 meeting with fewer redactions than the version offered by the government (GX 21621), ████ "had

33

engaged with the [UK] government who confirmed that they were comfortable with Huawei."
According to ████ the ████ viewed ████████ report about Huawei as a "mitigating factor."
████ Depo. Tr. 186:21–187:01.

The Court should overrule the government's objections to DX 107.6 and ████ related testimony. That exhibit and ████ statements about ████████ report discuss a factor that the ████ viewed as "mitigating," and that ████ testified weighed in favor of retaining Huawei as a customer. ████ Depo. Tr. 186:21–187:01. This testimony is clearly relevant. The government's contrary arguments rests on its claim that the testimony focuses on "[w]hether or not the U.K. government made such statements," but that mischaracterizes his testimony. Gov't Mot at 35. The actual focus was what ████████ *told the* ████ and the fact that the Committee considered ████████ statements as a mitigating factor. ████ Depo. Tr. 186:21–187:01. That testimony is highly probative, and the jury is entitled to hear it.

For the same reason, the government's Rule 403 argument is misplaced. The probative value of DX 107.6 and ████ testimony that the ████ relied on ████████ statement when deciding to retain Huawei far outweighs any speculative risk that the jury will be misled to think that the U.K. government approved Huawei's conduct, particularly where ████ testimony does not suggest as much. And the government's hearsay objection is misplaced. Huawei is not introducing ████████ or the U.K. government's statements for their truth, but for the effect of those statements on the listeners—████ and the ████ *See* ████ Depo. Tr. 186:21–187:01 (defense counsel asking "[a]nd that was viewed by you and the other committee members as a mitigating factor, right?").

Furthermore, DX 107.6 is admissible under the rule of completeness. As explained above, the government's version of the minutes from the March 2014 ████ meeting omitted important

34

context: both █████ redacted question prompting ████████ unredacted response, *see supra* at 10–11, as well as ███████ report to the █████ of a fact that the Committee viewed as mitigating. *See* GX 21621. The government would deprive the jury of the opportunity to review the minutes with this full context, but the Court should admit it: without it, the jury could be left with the misimpression that the only factors the █████ considered in deciding whether to retain Huawei as a client are those factors highlighted by the government during its direct examination of █████.

### b. *DX 120 and related testimony*

The Court should likewise reject the government's relevance, hearsay, and Rule 403 objections to DX 120, a March 28, 2014, email from ████████████████████████ ████████████████████████████████ to two █████ attendees requesting two agenda items for the March 2014 █████ meeting that were "of relevance to █████ DX 120 at 2. One of the items was that: "Conversely, only this week, stories have emerged" in the news "that USA NSA had been 'backdooring' into Huawei mainframe and reading Email traffic." *Id.* at 3; *see also* DX 121. According to █████ he saw "no reason" why █████ should not proceed with its then-impending bid to participate in "an imminent" loan deal with Huawei "[b]ased on what [█████ kn[ew]" at the time, including reports that the NSA took no action against Huawei after hacking its servers. DX 120 at 3.

Although the immediately preceding sentence is redacted, it is apparent that █████ use of "conversely" to describe the NSA hacking allegations was meant to convey that the story was a mitigating factor undermining any claim that Huawei presented security risks. In other words, the █████ which prepared the █████ Report and reported to the █████ about the Huawei relationship in March 2014, viewed the allegation about the NSA as a mitigating factor that weighed in favor of continuing—indeed, expanding—the Huawei relationship. And the █████

35

presumably conveyed its view to the ███. Its probative value thus far outweighs the government's unfounded concern that the jury will believe the government "infiltrated" Huawei, particularly because DX 120 does not state that as a matter of fact. And as with DX 107.6, the statement is not offered for the truth but for its effect on the listener.

22. Questions and testimony about Skycom revenue are admissible (███ Depo. Tr. 191:11–13, 192:19–25, 193:01–03, 13–17).

The Court should overrule the government's objections to defense counsel's questions about the reference to "Skycom revenue" in the March 2014 Meeting Minutes. The government's version of the minutes from the March 2014 ███ meeting (GX 21621) note that ███ ███ reported to the ███ about Huawei and its relationship with Skycom and made his pitch why ███ should retain Huawei as a client. GX 21621 at 1–2. According to the minutes, "███ advised that the CFO of Huawei had resigned from the Skycom board, the Huawei shareholding in Skycom had been sold and no new business [was] being conducted. The existing business is being serviced, the revenue for which is less than USD100m." GX 21621 at 2. The minutes state that ███ followed up by "not[ing] that the Skycom deal was a small percentage of the Huawei sales revenue." *Id.* The minutes say that following ███ comment at the meeting, "[t]he committee approved the request for the relationship to be maintained subject to receipt of evidence the shareholding [in Skycom] had been sold[.]" *Id.* Defense counsel then asked ███ whether he could recall why Skycom revenue's percentage as compared to Huawei's overall sales was relevant to the Committee. ███ Depo. Tr. 191:11–17.

The Court should overrule the government's objections. The government claims that defense counsel withdrew a question that allegedly mischaracterized GX 21621. Gov't Mot at 36. But defense counsel did not withdraw a question, and the record does not support the government's mischaracterization. *See* ███ Depo. Tr. 191:11–14.

The government's claim that defense counsel's question mischaracterized GX 21621 is likewise misplaced. The government argues that ███ reference in the minutes to the "Skycom deal" referred to ███ explanation that Huawei sold its Skycom shares. Gov't Mot. at 36–37. But that characterization makes no sense in the context of ███ statement in the minutes. ███ did not report anything at the meeting indicating how much the Skycom shares sold for or any other details about the transaction. Indeed, up to that point, the Committee had not even seen evidence that the Skycom shares had been sold; at that same meeting, the ███ requested confirmation of that very fact. GX 21621 at 2. The only statement that could give rise to ███ response about the size of the "Skycom deal" relative to Huawei's sales revenue was ███ report that Skycom's then-existing business was being serviced, and its revenue was "less than USD100m." *Id.* The *government's* interpretation—which ███ rejected during the government's unsuccessful attempt to establish its interpretation point on re-direct, *see* ███ Depo. Tr. 264:19–24 (███ testifying that he did not know whether the word "deal" in the minutes referred to revenue or proceeds generated by "the sale by Huawei of Skycom.")—badly mischaracterizes the document, and its objection should be overruled.

23.     <u>███ testimony regarding ███ review of the Skycom contract is admissible (███ Depo. Tr. 199:22–201:11).</u>

On cross-examination, defense counsel asked ███ whether he expected ███ to personally review the sales contract in which Huawei transferred its Skycom shares. ███ Depo. Tr. 199:15–16. After ███ claimed that he could not recall, defense counsel attempted to refresh ███ recollection by directing ███ to a 2017 interview with law enforcement where ███ stated that he "told ███ to 'go down there and see it personally to confirm what HUAWEI told you'." DX 12679 at 4. After reviewing this excerpt, ███ still claimed that he did not recall whether he instructed ███ to personally review the Skycom contract and would

37

not confirm or deny whether he told the government what was reflected in the notes from his 2017 interview. ██████ Depo. Tr. 200:01–201:11.

This was proper impeachment. It is hornbook law that if a witness does not recall a prior statement, the examiner must draw the witness's attention to the prior statement, here, the law enforcement interview report. If the witness either denies making the statement or does not recall, the examiner can introduce extrinsic evidence—*i.e.*, testimony of the interviewing agent—to introduce the substance of the statement. *See* Fed. R. Evid. 613(b); *see also United States v. Tory*, 52 F.3d 207, 210 (9th Cir. 1995) (deeming it an abuse of discretion to exclude witness's interview statement that defendant was wearing sweatpants after witness stated that she "did not remember describing them in that particular way"); 5 Handbook of Fed. Evid. § 613:3 (10th ed.). Defense counsel's examination followed that formula, and Huawei may introduce the substance of ██████ prior statement through testimony from a law enforcement agent at trial.

24. Defense counsel's question regarding ██████████ is admissible (██████ Depo. Tr. 202:06–15).

The Court should overrule the government's hearsay objection to defense counsel's question about ██████████ During cross-examination, defense counsel asked ██████ whether "██████████ one of the attendees at the [March 2014 ██████ meeting, inform[ed] the group that she had received a sanctions compliance report three weeks before the meeting . . . stating that Skycom is 100 percent owned by a subsidiary, Canicula limited." ██████ Depo. Tr. 202:06–15. This was a proper question that does not call for hearsay. Huawei did not ask the question to mine its truth or to invite a hearsay response. Rather, the question was intended to confirm or deny that ██████████ made a report to the Committee and to assess whether ██████ and the Committee had notice of the contents of that report.

38

25. Defense counsel's follow-up question about the HORIS system is admissible ( ██ Depo. Tr. 211:18–24).

The Court should overrule the government's "facts not in evidence" objection to defense counsel's question regarding information about Huawei's relationship with Skycom as reflected in ████ HORIS system. ████ Depo. Tr. 211:18–24. That objection was not raised at the deposition and so is waived, and in any event the objection is improper in a Rule 15 deposition and should be overruled. *See supra* at 15–16.

26. Questions and testimony regarding the timing of ████ termination decision are admissible ( ████ Depo. Tr. 212:18–214:07).

The Court should admit questions and testimony that ████ decided to terminate its relationship with Huawei *after* ████ was interviewed by law enforcement. These questions and testimony call ████ credibility into question and are admissible for that purpose.

Huawei preserves its designation of ████ testimony regarding the ████████ but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

27. Huawei preserves questions and testimony regarding the ████████ ( ████ Depo. Tr. 214:15–219:5).

Huawei preserves its designation of ████ testimony regarding the ████████ but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

28. Defense counsel's questions regarding ████ Termination Meeting are admissible ( ████ Depo. Tr. 220:24–221:02, 12–15).

Should the Court admit ████ testimony about the 2017 ████ Termination Meeting, *see supra* at 2–4, the Court should overrule the government's objection to defense counsel's follow-up questions regarding that meeting. Defense counsel's questions asking whether ████ understood the ████ Termination Meeting and minutes to be privileged did not call for a legal conclusion—████ offered his speculation that the minutes were privileged, and defense counsel asked questions to confirm the source of his understanding. Furthermore, defense counsel's cross

on this issue is relevant to ███ credibility and to show the jury why Huawei was unable to develop cross-examination on this topic. *See Quinto*, 582 F.2d at 233.

> ### 29.   Questions and testimony about DX 236 and call reports are admissible (███ Depo. Tr. 238:24–244:09).

During his cross-examination, ███ testified about DX 236, an ███ Functional Instructions Manual ("FIM"). Specifically, ███ testified about the portion of the FIM describing ███ "call reports" policy, which required ███ employees to contemporaneously document contact with clients "[t]o ensure that a formal record of all client contact is maintained and is accessible." DX 236 at 5. ███ testified that, as a general matter, ███ had a policy like the call reports policy in the FIM, that bankers did not always perfectly document client contact, and that the ███ and ███ Reports that the ███ reviewed, and which purported to document Huawei's statements, did not cite or include call reports or other contemporaneous memorialization of conversations in which Huawei allegedly made certain representations. ███ Depo. Tr. 238:24–244:09.

The Court should overrule the government's hearsay, relevance, and Rule 403 objections to this testimony. The FIM's call reports policy is not hearsay because Huawei did not offer it for the truth, but instead to test ███ understanding of the bank's documentation policy. Indeed, much of defense counsel's questions asked ███ about his *general understanding* of documentation policies like the call report policy reflected in the FIM, not whether the call report policy as documented in the FIM was accurate. *See, e.g.,* ███ Depo. Tr. 241:03–05 (defense counsel asking ███ about a documentation policy but "[n]ot referencing this particular policy"). ███ testimony about the call reports is relevant for the reasons explained in Huawei's Rule 15 motion: it suggests that Huawei never made the representations attributed to it in the ███ and ███ Reports because they were not reflected in contemporaneous call reports

40

that ▮▮▮ policy required its bankers to memorialize. *See* Huawei Rule 15 Mot. at 24. And the reports do not suggest that ▮▮▮ negligently failed to comply with its own policies, but instead calls into question whether Huawei made the alleged representations reflected in the ▮▮▮ and ▮▮▮ Reports at all. The testimony should thus not be excluded under Rule 403.

30.    ▮▮▮ "three lines of defense" testimony is admissible (▮▮▮ Depo. Tr. 244:06–247:08).

The Court should overrule the government's objection to ▮▮▮ "three lines of defense" testimony. ▮▮▮ Depo. Tr. 244:07–247:08. As the government explains, the three lines of defense model is a governance framework that divides bank's (and other organizations') operational and risk-management responsibilities into distinct organizational layers.

▮▮▮ testimony on this point is clearly relevant. His testimony highlights the tension that may sometimes arise between banks' compliance and business personnel in deciding whether and how to proceed in a banking relationship with a client. ▮▮▮ testimony is not offered to show that ▮▮▮ was negligent in failing to identify Huawei's relationship with Skycom, but rather to establish Huawei's lack of fraudulent intent, because it explains how information provided by Huawei about its relationship with Skycom could be overlooked, and that ▮▮▮ alleged lack of knowledge of that information is not dispositive evidence that Huawei did not provide it. The Court should overrule the government's relevance objection.

31.    DX 101 and related testimony are admissible (▮▮▮ Depo. Tr. 250:02–257:23).

DX 101 is an ▮▮▮ annual report from 2013 which reflects general information about ▮▮▮ as well as information about the bank's then-current financial status and business priorities. *See* DX 101 ("Annual Report"). During ▮▮▮ cross-examination, defense counsel asked ▮▮▮ several background questions about general information in the report. The Annual Report and ▮▮▮ testimony are relevant because they show ▮▮▮ organizational structure

41

and financial condition during the relevant period, which provides helpful context for the jury. And although the government moves to exclude unspecified statements within the Annual Report as "second-level hearsay," the government does not identify what those statements are. Because the government has failed to develop its argument, the Court should overrule its objection. In any event, evidence and testimony about ███████ background was not offered for the truth, but to provide context for the jury. The government's hearsay objection therefore fails on its own terms.

32.  <u>Huawei preserves its arguments about questions regarding ███████ and ███████████ (█████ Depo. Tr. 258:11–259:12, 14–262:21).</u>

Huawei preserves its designation of █████ testimony regarding the ███████ but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

## II.  The Court Should Sustain Huawei's Objections and Overrule the Government's Objections to ███████████ Deposition Testimony and Exhibits

### A.  The Court should sustain Huawei's objections to ███████ testimony and related exhibits.

1.  <u>Huawei withdraws its objection to the government's question regarding materials reviewed by ███ compliance and risk committees (███████ Depo. Tr. 17:21–25).</u>

Huawei has withdrawn its asked-and-answered objection.

2.  <u>███████ testimony regarding ███ compliance committee members and relationship managers is inadmissible (███████ Depo. Tr. 18:14–19:07).</u>

The Court should exclude ███████ testimony explaining whether ███████ members or relationship managers maintain client relationships. The government failed to establish the basis for ███████ testimony on this topic or that he had personal knowledge regarding each ███████████████████████████████████████████████████ committee members' client engagement practices. The government claims that ███████ years of experience in ████ compliance function was sufficient foundation for this testimony. But ███████ served in ████ compliance function—not in any business capacity—and was only on the ███████ for a few

years, from approximately 2004 until 2007, *see* ▮▮▮▮ Depo. Tr. 14:21–24, in a limited secretarial role, not in a voting capacity, *id.* at 14:14–16. His perspective on the Committee is therefore limited, and the government failed to develop testimony establishing that he had the requisite personal knowledge and experience to testify about the roles of other ▮▮▮▮ members or the bank's relationship managers.

3. ▮▮▮▮ testimony about client role in completing sanctions questionnaires is inadmissible (▮▮▮▮ Depo. Tr. 22:20–23:03).

During direct examination, ▮▮▮▮ testified that one of the ways the bank identified clients with links to sanctioned countries was through a sanctions questionnaire. According to ▮▮▮▮ "had a sanctions questionnaire which [the bank] expected the relationship manager to complete *for the client*, . . ." ▮▮▮▮ Depo. Tr. 22:13–15 (emphasis added). The government then asked a follow-up question that mischaracterized ▮▮▮▮ testimony: "You mentioned that the relationship manager would complete the questionnaire *with the client*. …" *Id.* at 22:20–21 (emphasis added). That was not ▮▮▮▮ testimony, and it is a material misstatement because it suggests that the client personally participated in completing the questionnaires by reviewing their contents. That was not the case: ▮▮▮▮ testified that the client generally never saw these questionnaires. ▮▮▮▮ Depo. Tr. 162:09–15, 164:18–25.

The government's mischaracterization is important. The government will attempt to attribute statements in compliance and sanctions questionnaires to Huawei by stating that Huawei completed the questionnaires or conveyed information in the questionnaires directly to the banks' relationship managers. But Huawei is entitled to rebut that theory by showing—consistent with ▮▮▮▮ testimony—that relationship managers completed the questionnaires themselves for the client, and that they included information from sources other than the client. The Court should thus sustain Huawei's objection.

4.  ████████ testimony regarding dollar clearing is inadmissible (████████ Depo. Tr. 24:08–25:11, 26:03–26:12, 27:09–27:12, 29:13–29:23).

During his deposition, ████████ testified about his understanding of U.S. dollar clearing—*i.e.*, the process by which U.S.-dollar denominated transactions initiated outside of the United States were processed through correspondent banks within the United States—and whether multinational corporations that engaged in U.S. dollar transactions could expect to use dollar-clearing services in the U.S. *See, e.g.*, ████████ Depo. Tr. 24:08–25:11. But the government failed to lay an adequate foundation for this testimony. Specifically, the government failed to provide context for his knowledge. ████████ statement that he was familiar with dollar clearing (followed by an equivocal statement that he learned about the concept "to some degree" through compliance experience as ████████ Depo. Tr. 25:12–15), was not enough to establish that ████████ had the requisite knowledge to testify about this complex topic, let alone that he could testify about what multinational companies knew about the dollar-clearing process.

5.  ████████ dollar-clearing testimony and the government's repetitive questions are inadmissible (████████ Depo. Tr. 29:13–29:23).

The Court should sustain Huawei's "asked-and-answered" objection to the government's questions regarding whether ████████ had encountered a multinational company engaging in a U.S. dollar clearing transaction. ████████ Depo. Tr. 29:13–29:23. The government claims that the question it asked earlier in the deposition was different than its second, but the questions were identical. *Compare* ████████ Depo. Tr. 26:13–18 ("Based on your experience would it be reasonably foreseeable—well, have you ever encountered a situation where a dollar clearing for a multinational did not occur at least in part in the US?"), *with id.* at 29:13–23 ("I want to go back to the dollar clearing issue for a moment. Based on your experience at the bank, have you ever encountered a situation where a multinational company engaged in dollar clearing activity that did not occur at least in part in the US?"). Huawei's objection should be sustained, and the

44

government should be limited to introducing ███████ response to the government's first question.

      6.    <u>GX 22306-2 and ███████ related testimony are inadmissible (███████ Depo. Tr. 32:13–34:10, 35:09–36:21).</u>

The Court should exclude testimony and evidence related to GX 22306-2 and its embedded statements. Even assuming GX 22306-2 is admissible as a business record,[10] the contents of that document contain multiple levels of unexcepted hearsay that should be excluded.

The government claims that the embedded statement that "recent news reported in the Washington Times . . . by quoting the US senators' words suggested that Huawei might have close connection with the Iranian military due to its role in supplying telecom equipments (sic)," ███████ Depo. Tr. 35:14–18, was introduced for its effect on ███████ and is therefore not hearsay. But the government did not elicit testimony about how the statement affected ███████ it instead asked ███████ whether he "remember[ed] having general concerns about Huawei's ties to the Iranian military." *Id.* at 35:19–20. That statement is therefore excludable hearsay.

Even if the document and ███████ testimony can overcome hearsay hurdles, the Court should exclude it under Rule 403 because any probative value is outweighed by the risk of prejudice stemming from the documents' indirect quote of an unnamed U.S. Senator. *See* GX 22306-2. That statement is nothing more than an unverified statement that is likely to prejudice

---

[10] Since ███████ deposition, and after failing to lay an adequate foundation for admission of ██ Compliance Submissions as business records through ███████ testimony, the government has produced a "certification" under Federal Rule of Evidence 902(11) for those documents. *See* Gov't Exh. G. However, the certification is a boilerplate document that neither establishes that the underlying documents satisfy Rule 803(6), nor that the embedded hearsay statements are themselves admissible. Huawei reserves the right to challenge the adequacy of that certification, including to test whether the certifier is "qualified" to attest to the facts required under Rule 803(6) and whether that rule's requirements are, in fact, met. *See* Fed. R. Evid. 902(11) (requiring that the person who completes the certification be "qualified" and certify that the document "meets the requirements of Rule 803(6)(A)–(C)").

Huawei and induce the jury to convict on grounds other than Huawei's alleged guilt in this case.

The Court should also exclude the government's question to ███████ asking whether he remembered having general concerns about Huawei's ties to the Iranian military. The government's question was vague and free-floating: it was not tied to any specific issue or time period.

> 7.    GX 22306-1 and ███████ related testimony is inadmissible (███████ Depo. Tr. 36:22–41:03).

The Court should sustain Huawei's objections to the *Washington Times* article (GX 22306-1) and related testimony. ███████ did not recall the article at the time of his deposition, so he lacked any personal knowledge. *See* ███████ Depo. Tr. 36:18–19, 36:23–37:02. Beyond that, the *Washington Times* article is replete with inflammatory and unsubstantiated statements by current and former U.S. senators about Huawei's alleged work with various military arms of foreign states, including the Iranian Revolutionary Guard Corps, "Saddam Hussein's Iraq," "Taliban-ruled Afghanistan," and the "Chinese military." *See* GX 22306-1 at 1–4. ███████ read these portions of the article into the record. ███████ Depo. Tr. 38:25–40:12. The Court should exclude the article and ███████ testimony as hearsay and under Rule 403.

The government claims that the article itself is self-authenticating. Even assuming that is right, the article is primarily composed of embedded statements by U.S. senators, as well as domestic and foreign government officials commenting on the senators' statements, for which the government has not established a hearsay exception. The government suggests generally that the embedded statements are not hearsay because they are not offered for the truth but instead to prove "effect on the listener." Assuming that listener is ███████ the government did not use his testimony about the *Washington Times* article to assess its effect on him; none of the government's questions asked whether he reviewed the article's specific statements—███████

46

testified that he did not recall whether he reviewed the article, ▓▓▓▓ Depo. Tr. 37:23–38:05— and, if so, how he reacted to it at the time. Instead, the government asked ▓▓▓▓ to read multiple inflammatory statements about the article—only one of which had to do with the allegations in this case—and asked him a single question: "[w]hat sort of risk is inherent in banking a client with ties to the Iranian military?" ▓▓▓▓ Depo. Tr. 40:20–21. That question was not intended to elicit ▓▓▓▓ real-time reaction to the statements within the article. And assuming the listener is the author of GX 22306-2, that document likewise does not reflect any reaction to the specific statements in the article; it just notes that the allegations about Iran warrant escalation to the ▓▓▓▓ Even if that line is enough to admit the specific statement about Iran, it is not enough to admit statements about Huawei's alleged national security risk, sales of telecommunications goods to foreign militaries in Iraq and Afghanistan, or ties to the Chinese military, none of which were cited in GX 22306-2 as grounds for additional action.

In any event, the statements are unquestionably prejudicial and risk the jury convicting Huawei based on unsubstantiated claims about Huawei's work in Iraq and Afghanistan and its alleged ties to the Chinese military. On the flip side, the article has no probative value. None of the allegations in the article are verified or substantiated; they are speculative statements about Huawei by politically motivated actors. The Court should exclude the article.

The Court should also sustain Huawei's vagueness objection to the government's question to ▓▓▓▓ following his reading of the *Washington Times* article: "What sort of risk is inherent in banking with a client with ties to the Iranian military?" ▓▓▓▓ Depo. Tr. 40:20–21. The question is facially vague: it does not specify what type of risk—business, legal, or reputational—the government is referring to or tether the question to the witness's role and

47

function at ▮▮▮ Huawei stands on its "speaks for itself" and "asked-and-answered" objections for the reasons explained in its Appendix. *See* Appx. B at 4.

        8.     GX 22306-3 and ▮▮▮▮ related testimony are inadmissible (▮▮▮▮ Depo. Tr. 41:04–52:05).

The Court should exclude GX 22306-3 and ▮▮▮▮ related testimony. The government's claim that the information was introduced for its effect on the listener is facially false. As with prior attempts to introduce hearsay statements for this same purpose, the government did not ask about specific statements' effect on ▮▮▮▮ or any other listener at the time; he instead asked ▮▮▮▮ to explain the statements' general significance to the bank. *See* ▮▮▮▮ Depo. Tr. 45:04–05 (asking ▮▮▮▮ generally what "risk does that activity . . . entail for the bank"); *id.* at 47:22–23 (asking ▮▮▮▮ to explain what the hearsay statement "means").

The government's claim that the Huawei attributed statements are admissible as statements of a party opponent under Federal Rule of Evidence 801(d)(2) likewise lacks merit. The government does not identify which of the party-opponent exceptions applies, but any of them would fail because the government has not established that Huawei made the statement at all. GX 22306-3 does not contain a statement by an identified Huawei representative. *See* ▮▮▮▮ Depo. Tr. 45:19–25. Even where the document references potential Huawei statements, they are vague affirmations of broad propositions unattributed to any individual. *See* GX 22306-3 at 1 ("[t]he client also verbally indicated that Huawei Technologies Co., Ltd…"). However, the same document makes clear that ▮▮ employees conducted an "investigation" and "analysis" of unknown scope on which they relied in drafting it. *Id.* On these facts, the government has not established that any of the party-opponent exceptions apply here.

The Court should also exclude the document under Rule 403. Its probative value is minimal: the alleged Huawei "misrepresentations" reflected in the document are not attributed to

Huawei, but the jury might believe that they were. Furthermore, the document references Huawei's business dealings with entities in other sanctioned countries. That evidence is likely to taint the jury with the misconception that Huawei's business in multiple sanctioned countries— not just the ones at issue in this case—are suggestive of its guilt of the charged crimes.

Huawei stands on its vagueness, foundation, and Rule 701 objections as explained in the appendix to its Rule 15 motion. *See* Appx. B at 5.

9. <u>GX 22301 and ███████ related testimony are inadmissible (█████ Depo. Tr. 52:15–60:22).</u>

The Court should sustain Huawei's objection to GX 22301, an email that ████████ drafted in January 2011. The government offered GX 22301 as a recorded recollection under Federal Rule of Evidence 803(5). *See* ████████ Depo. Tr. 56:21–23. That rule permits the witness to read from the exhibit upon a showing that the witness's memory of the events detailed in the record are impaired, the witness prepared the record near the time of the events, and the record correctly reflected the witness's knowledge of the reported events. Fed. R. Evid. 803(5). If each of the pre-conditions is satisfied, the witness may read the record into evidence, but the exhibit "may not itself be received as an exhibit." *Id.*

GX 22301 does not satisfy these requirements for several reasons. First, ████████ testimony did not confirm that the email reflected what was in his mind at the time. Indeed, in response to the government's attempt to establish this fact, ████████ stated: "I can't remember what was in my mind at the time," though he believed he "would ordinarily write what was in [his] mind." ████████ Depo. Tr. 56:08–11. ████████ testimony was therefore not sufficient to establish GX 22301 as a recorded recollection. Assuming it was, ████████ could only read its contents into the record. To the extent the government intends to offer GX 22301 as an exhibit in this trial, the Court should exclude it. Fed. R. Evid. 803(5).

Huawei stands on its leading and vagueness objections for the reasons explained in the appendix to its Rule 15 motion. *See* Appx. B at 5, 6 (regarding ███████ Depo. Tr. 54:04–54:15 and 59:11–59:15).

> 10.    GX 22602 and ███████ related testimony are inadmissible (███████ Depo. Tr. 69:02–75:11).

The Court should exclude the contents of GX 22602 and ███████ testimony. GX 22602 is a sanctions questionnaire with information from ███ employees about Huawei's business in sanctioned countries. The government asked ███████ to read various excerpts into the record. *See* ███████ Depo. Tr. 71:09–72:21, 74:15–75:07. Both the exhibit and ███████ testimony are inadmissible. The government's claim that the statements within the exhibit are admissible for their effect on the listener fail for the reasons explained above: the document itself does not reflect any real-time effect on the listener, and the government's questions to ███████ were not intended to ask about specific statements' effect on ███████ or other individuals who read and considered the statements. *See, e.g.*, ███████ Depo. Tr. 72:25–73:2 (asking whether certain representations were "important to the bank"). And the government has not established that any of the alleged Huawei statements were made by Huawei or its representatives.

> 11.    GX 22605 and ███████ related testimony are inadmissible (███████ Depo. Tr. 75:12–82:06).

The Court should exclude the contents of GX 22605 and ███████ related testimony. GX 22605 is a call note purporting to memorialize a call between ███████ an ██ relationship manager, and ███████ who the document describes as a ███████ ███████ on behalf of [Huawei]." GX 22605. Within the document, ████ states that Huawei made various representations about ███ sanctions compliance policies. *Id.* The statements within the note are unexcepted hearsay for which the government has failed to establish an exception. The government never established that ███████ previously heard the embedded

statements or elicited testimony to get at any real-time reaction, but instead asked about those statements' general importance to the bank. ▮▮▮ Depo. Tr. 80:06 ("Are these representations important to the bank?"). And although the call note reflects that ▮▮▮ had a call with ▮▮▮ the purported Huawei statements do not appear to have been made by ▮▮▮ at all, but instead appear to be a combination of statements obtained or passed down over a period of time among ▮▮▮ relationship team about the nature of Huawei's sanctions policies and compliance acknowledgement. *See* GX 22605 at 1 (stating that Huawei's acknowledgement of ▮▮▮ sanctions policies "has (sic) been supervised by Huawei's internal ▮▮▮ relationship team"). Nor are they statements by ▮▮▮ but instead appear to be ▮▮▮ own characterizations of ▮▮▮ statements.

Huawei stands on its foundation (▮▮▮ Depo. Tr. 76:10–15) and asked-and-answered (▮▮▮ Depo. Tr. 76:16–77:01) objections as stated in the appendix to its Rule 15 motion. Appx. B at 6.

12.   GX 22601 and ▮▮▮ related testimony are inadmissible (▮▮▮ Depo. Tr. 82:07–83:25, 85:01–94:17).

The Court should exclude GX 22601, a client review form that was prepared for the ▮▮▮ ahead of committee meetings, as well as ▮▮▮ related testimony. The contents of GX 22601 contain unexcepted hearsay and should be excluded. None of the statements were introduced for their real-time effect on the listener, but instead to elicit ▮▮▮ understanding of their general importance to the bank, *see* ▮▮▮ Depo. Tr. 86:22–25, 87:21, 88:20, 89:19, and ▮▮▮ understanding of the significance of various terms, *id.* at 89:25. Nor are the statements admissible as party-opponent statements. GX 22601 generically attributes certain statements to "the client" or "Huawei," but the document does not contain enough information to establish that Huawei actually made the statements. Rather, the statements are characterizations of purported

51

Huawei statements by ▌ employees. Further, the document contains statements that are copied nearly verbatim year after year. *Compare* GX 22601 in 2015 ("Client confirmed that they only sign contracts / conduct business with commercial distributors, operators, and sell to mass public smart phones and telecommunication devices that promotes better social connectivity"), *with* GX 22603 in 2017 ("Huawei Group confirmed that they only sign contracts / conduct business with commercial distributors, operators, and sell to mass public smart phones and telecommunications devices that promotes better social connectivity"), *and* GX 22604 in 2016 ("Client confirmed that they only sign contracts / conduct business with commercial distributors, operators, and sell to mass public smart phones and telecommunication devices that promotes better social connectivity").

Huawei stands on its vagueness (▌ Depo. Tr. 92:22–25) and speculation (▌ Depo. Tr. 94:08–12) objections as stated in the appendix to its Rule 15 motion. Appx. B at 6.

13.   GX 22600 and ▌ related testimony are inadmissible (▌ Depo. Tr. 94:18–96:05, 97:20–101:13).

The Court should exclude GX 22600 and ▌ related testimony. GX 22600 is an adverse media form that compiles news about Huawei from various media sources. The exhibit is full of hearsay statements, including adverse news statements which themselves are embedded with hearsay, for which the government has failed to establish an exception. None of the statements from GX 22600 were introduced for their effect on ▌ or the relevant compliance committee, but instead to get ▌ understanding of their general importance to the bank. *See* ▌ Depo. Tr. 100:25–101:03. And the government has failed to establish that any statements purportedly attributable to Huawei were actually made by Huawei. As ▌ acknowledged, statements within adverse media forms like GX 22600 "come[] from media

sources and not from the client." ████████ Depo. Tr. 97:14–16.

Additionally, as explained in Huawei's Rule 15 motion, the Court should exclude this document under Rule 403. The document is replete with prejudicial reports and allegations about Huawei that have nothing to do with this case.

> 14. <u>GX 22603 and ████████ related testimony are inadmissible (████████ Depo. Tr. 101:14–104:18, 105:13–109:21).</u>

The Court should sustain Huawei's objection to the contents of GX 22603 and ████████ related testimony for the reasons explained above: the government has not established that the statements allegedly attributed to Huawei were made by Huawei at all, and that the statements are introduced not to show the real-time effect on the listener, but to establish the statements' general importance to the bank. ████████ Depo. Tr. 106:02, 106:19, 108:10.

> 15. <u>GX 22302 and ████████ related testimony are inadmissible (████████ Depo. Tr. 116:23–119:01, 120:05–124:05).</u>

The Court should sustain Huawei's objection to the contents of GX 22302 and ████████ related testimony for the reasons explained above: the government has not established that the statements allegedly attributed to Huawei were made by Huawei at all, and the statements are introduced not to show the effect on the listener, but to establish the statements' general meaning and the importance of "trust" to the bank. *See* ████████ Depo. Tr. 123:08–10.

Huawei maintains its objections to ████████ reading from a document not yet in evidence (████████ Depo. Tr. 117:12–16), and its vagueness and speculation objections (████████ Depo. Tr. 121:22–122:05, 123:08–123:21) for the reasons explained in the appendix to its Rule 15 motion. *See* Appx. B at 6–7.

**B.     The Court should overrule the government's objections regarding  testimony.**

1.     <u>GX 22607 and  related testimony are admissible (</u><u>Depo. Tr. 60:23–66:21).</u>[11]

As explained in Huawei's Rule 15 motion, GX 22607 is a draft ▮▮ report to the ▮▮▮▮▮▮ an internal risk committee, that the government represented as—and that ▮▮▮▮▮ testified was—the final report that the ▮▮▮▮▮ considered in assessing its banking relationship with Huawei. Huawei Rule 15 Mot. at 17–18; ▮▮▮▮ Depo. Tr. 60:23–63:03. The Draft ▮▮ Report contained information about Huawei's relationship with Skycom that, as was brought out by the defense on cross-examination, was omitted from the version of the document that was considered by the Committee. Huawei Rule 15 Mot. at 17–18; ▮▮▮▮ Depo. Tr. 197:10–200:03, 201:02–203:06, 210:23–212:12. That exhibit and ▮▮▮▮ testimony are highly relevant to undermine ▮▮▮▮ credibility concerning his knowledge regarding what the Committee viewed as important considerations. *Quinto*, 582 F.2d at 233. In addition, as explained below, GX 22607—along with the corresponding defense exhibit (DX 367.1)—and the remaining materials related to the March 2013 ▮▮▮▮ committee meeting are inextricably linked to exhibits the government seeks to affirmatively admit.

The government's claim that Huawei does not intend to designate this exhibit and ▮▮▮▮ related testimony is mistaken. Huawei fully maintains its designations, which (again) go to ▮▮▮▮ credibility and are necessary to contextualize ▮▮▮▮ testimony about the Committee's practices generally, about Huawei, and about the ▮▮ Submission Documents that

---

[11] The government's position with respect to this exhibit reflects a recurring problem in its approach to the Rule 15 depositions: the government selectively deems admissible any evidence it views as favorable while attempting to exclude responsive defense evidence on grounds that would preclude the government's evidence too. The Court should not permit the government to employ a one-sided evidentiary approach that deprives the jury of relevant, probative context and undermines the fairness of the proceedings.

the government intends to introduce at trial. To the extent the Court admits any exhibits or testimony regarding the types of information considered material to the ▮▮▮▮▮ or suggesting that the ▮▮▮▮▮ viewed Huawei's relationship with Skycom as an important and negative factor, Huawei is permitted to introduce GX 22607 and ▮▮▮▮▮ related testimony suggesting otherwise.

2.    ▮▮▮▮▮ <u>testimony about the law enforcement report is admissible</u> (▮▮▮▮▮ <u>Depo. Tr. 127:03–134:25).</u>

Huawei does not seek to admit this excerpt (▮▮▮▮▮ Depo. Tr. 127:03–128:15) at trial.

The Court should overrule the government's objection to defense counsel's questions regarding ▮▮▮▮▮ familiarity with a report from his 2018 interview with law enforcement. The government claims that Huawei cannot impeach ▮▮▮▮▮ with the report because he never saw the report. But using a law enforcement report is a common way to set up testimony or impeachment, even where the witness never saw the report. For example, defense counsel can use the report to try to refresh ▮▮▮▮▮ recollection about what he told law enforcement in 2018, or elicit ▮▮▮▮▮ testimony confirming or denying the report's representations about his statements, at which point extrinsic evidence might be appropriate to confirm ▮▮▮▮▮ prior statement. *See Tory*, 52 F.3d at 210. The government's preemptive attempt to rule out impeachment efforts on this ground is meritless, and its objection should be overruled.

3.    ▮▮▮▮▮ <u>testimony about the basis for his testimony should be admitted</u> (▮▮▮▮▮ <u>Depo. Tr. 135:09–177:11).</u>

During his deposition, ▮▮▮▮▮ testified that he had no independent recollection of many of the documents and events that he was asked about. *See, e.g.,* ▮▮▮▮▮ Depo. Tr. 136:20–138:20. His testimony about his lack of recollection is admissible, and the government's various objections to that line of questioning should be overruled.

55

     *a.* ███████ *Depo. Tr. 136:11–138:20*

The government did not object to questions and testimony regarding ████████ prior knowledge of Skycom (███████ Depo. Tr. 138:06–20) during the deposition and has not made a specific argument regarding that excerpt. Its objections are therefore waived. Fed. R. Crim. P. 15(g); *Mohamed*, 2022 WL 3703200, at *1.

The government's remaining objections to questions and testimony establishing that ████████ had no independent recollection of Huawei should be overruled. ████████ testified that his "recollection" was based on a review of the documents provided to him by the government. *See, e.g.*, ████████ 136:20–137:12 (████████ testifying that he knew about allegations that Huawei worked with the government of Iran "from the documents" and that he would not "have remembered it without the investigation"). This necessarily undermines his credibility and the reliability of his testimony. *Quinto*, 582 F.2d at 233.

Defense counsel's questions on this topic did not mischaracterize ████████ testimony but instead asked ████████ to confirm whether his testimony about Huawei—which he admitted he had limited engagement with, *see* ███████ Depo. Tr. 29:03–12—was based on his own recollection or on documents the government gave him to review ahead of his testimony. This is not inconsistent with ████████ testimony.

     *b.* ███████ *Depo. Tr. 139:04–140:13*

Huawei does not seek to admit this excerpt at trial.

     *c.* ███████ *Depo. Tr. 140:14–142:05, 157:06–157:20, 165:13–15*

Huawei preserves its designation of ███████ testimony regarding the ███ prosecution documents but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

d. ██████ *Depo. Tr. 153:07–10, 154:02–10, 154:11–155:03, 156:06–157:05*

During direct examination, ██████ testified about his many years as ██████ ██████ at ██ and about how his work often involved U.S. sanctions and the determination whether clients' compliance with sanctions was sufficient to maintain their banking relationship with ██ *See, e.g.,* ██████ Depo. Tr. 16:01–17:13 (describing the ██████ consideration of ██ clients' "[c]ompliance with sanctions requirements"); *id.* at 21:07–22 (describing the ██████ consideration of ██ clients' compliance with sanctions); *id.* at 48:06–49:17 (explaining ██ "would be comfortable with" clients' activity in a sanctioned country "if that activity was compliant with sanctions, as there are legitimate ways to deal with a sanctioned country"); *id.* at 73:06–73:17 (explaining that "within sanctions laws there is the ability to conduct business with sanctioned countries legitimately"); *id.* at 81:03–22 (explaining the witness' understanding that "the sanctions established by US Treasury are complicated and differ on the target of that sanction," and that it was permissible to conduct business in Iran in certain circumstances). On cross-examination, Huawei tested ██████ understanding of the U.S. sanctions regime targeting Iran. Huawei's questions and ██████ testimony are clearly relevant to the fraud and IEEPA charges: they show that ██████ viewed the Iranian sanctions as confusing and cumbersome, which tends to rebut the government's claim that they were clear and straightforward (and that Huawei knowingly and willfully violated them).

The government did not state the bases for its objections to this line of question during ██████ deposition, so they are waived. Fed. R. Crim. P. 15(g); *Mohamed*, 2022 WL 3703200, at *1. To the extent they are not, they fail on the merits. The government's scope objection fails; Huawei was entitled to ask ██████ questions regarding ██████ understanding of sanctions laws and what "compliance" with those laws meant, topics first raised by the government during

57

its direct examination. To the extent Huawei's cross-examination exceeded the scope of the government's direct, Huawei was entitled to do so to advance its defense, particularly where Huawei would have only one chance to examine ███████ and where the parties disagree about the contours of the witness's testimony. *See supra* at 17–18. There was also an adequate foundation for ███████ testimony, as ███████ testified about his many years as ███████ ███████ at ███ and about his work involving U.S. sanctions. ███████ Depo. Tr. 40:20–41:3.

Counsel's question regarding whether U.S. sanctions law had changed over time (███████ Depo. Tr. 154:02–10) was not vague and does not risk confusing the jury; indeed, it was clear enough for the witness to understand and respond to. ███████ Depo. Tr. 154:08, 10, 17. The jury will also understand the question. In any event, counsel clarified his question and the witness answered. *See* ███████ Depo. Tr. 154:11–17.

Defense counsel's questions regarding ███████ understanding of whether all U.S. dollar transactions implicate U.S. sanctions (███████ Depo. Tr. 156:06–157:05) were not confusing, and the witness ultimately answered the question. Nor does the question call for a legal conclusion but instead asks ███████████████████████ whether, based on his years of experience, U.S. dollar transactions necessarily raised sanctions issues at the bank, something that he testified to throughout his testimony, including on direct. *See, e.g.,* ███████ Depo. Tr. 87:10–88:06.

e.    ███████ *Depo. Tr. 158:01–159:06, 163:09–15*

For reasons like those stated above, the Court should admit defense counsel's question and ███████ testimony that U.S. sanctions do not prohibit foreign businesses from engaging in business in Iran. *See* ███████ Depo. Tr. 158:16–159:06. This testimony from ███████ ███████████████ is highly relevant: it confirms why ███ (and other banks) were willing to engage in business with Huawei knowing that the company operated in sanctioned countries, and

undermines any bank officials' testimony that the alleged victim banks had no tolerance for customers that engaged in business in sanctioned countries. Defense counsel did not ask ███████ "how companies may legally operate in Iran," Gov't Mot. at 60, so the government's foundation objection should be overruled. Nor did ███████ testimony call for a legal conclusion (Gov't Mot. at 60): defense counsel merely asked whether, based on his understanding of sanctions law as ███████████████████ ███████ understood the basic principle that U.S. sanctions against Iran did not bar all business activity involving Iran. The government elicited similar testimony on direct examination, asking ███████ to "explain how ████████████ could be comfortable with a client that had some… business… in a sanctioned country"; ███████ replied that ████ "would be comfortable… if that activity was compliant with sanctions, as there are legitimate ways to deal with a sanctioned country[.]" ███████ Depo Tr. 48:21–49:09. Given the probative value of ███████ testimony to the fraud and IEEPA charges and the minimal risk of jury confusion, the government's Rule 403 objection should be overruled. The Court should also overrule the government's scope objection for the reasons explained above. *See supra* at 17–18.

Finally, the Court should overrule the government's objection to counsel's withdrawn question. ███████ Depo. Tr. 163:09–15. Huawei does not seek to admit this excerpt at trial.

<blockquote>f.    ███████ <em>Depo. Tr. 171:09–174:07, 175:03–04, 175:09–10, 16–19, 176:03–09, DX-366</em></blockquote>

DX-366 are minutes from a March 2013 meeting of the ███████ that summarize the Committee's action (*i.e.*, continue relationship, end relationship, etc.) with respect to multiple entities, including Huawei. ███████ Depo. Tr. 171:09–172:04; DX-366. During ███████ cross-examination, ███████ testified to facts establishing that DX-366 was a business record and testified generally about some of that document's contents. The Court should admit DX-366.

The government does not (and cannot) dispute that it is a business record but claims that its statements about Huawei constitute unexcepted hearsay. However, Huawei does not intend to introduce statements within DX-366 for their truth, but instead to show their effect on the Committee. For example, after the Committee reviewed "3 aspects of reputational risk" that related to Huawei, the Committee "considered the difficulty in interpreting the evidence" and decided to continue the relationship. DX-366 at 2. The Court should overrule the government's hearsay objections.

        4.      DX-367, DX-367.1, and ▆▆▆▆▆ related testimony are admissible (▆▆▆▆▆ Depo. Tr. 181:14–182:12, 183:07–187:20).

The Court should likewise admit DX-367.1 and ▆▆▆▆▆ related testimony. DX-367.1 is a report to the ▆▆▆▆▆ by ▆▆ business personnel in China which reflects that, notwithstanding allegedly adverse news events regarding Huawei, ▆▆ personnel recommended retaining business with Huawei. The government does not lodge a specific objection but contends that Huawei does not intend to offer the exhibit at trial. Again, not so. As with GX 22607, DX-367.1 is relevant to clarify what the ▆▆▆▆▆ and other ▆▆ personnel considered in assessing the bank's relationship with Huawei. Furthermore, some of the government's own exhibits are intrinsically related to this one. For example, GX 22601, the 2015 Committee Review memorandum that the government sought to admit during ▆▆▆▆▆ direct examination, attaches the minutes from this 2013 ▆▆▆▆▆ meeting, and multiple ▆▆▆▆▆ meetings and reports incorporate statements in this report. *See, e.g.*, GX 22603 at 31 (explaining that "Huawei was tabled in ▆▆▆▆▆ meeting in March 2013, and was determined at a BAU status with monthly development briefing by GAM team" and attaching the March 2013 ▆▆▆▆▆ meeting minutes); GX 22600 at 6 ("[w]e have tabled a few Huawei Reputational cases to ▆▆▆▆▆ committee in March 2013 and obtained ▆▆▆▆▆ support to maintain BAU status with Huawei

60

Group on a continued monitoring efforts"). Accordingly, if the government's requested ███

Submission Documents are admitted, DX-367.1 should also be admitted.

The Court should also overrule the government's objection to lack of foundation for DX-367. DX-367 is an email transmitting DX-367.1. The government claims that defense counsel failed to lay an adequate foundation for admission of the email as a business record under Rule 803(6), namely, that the email was made at or near the time of the underlying events—the transmission of the updated ███████ summary. But a comparison of the dates on the two exhibits shows that it was. *Compare* DX-367 (email transmitted on February 25, 2013), *with* DX-367.1 (updated ███████ summary dated February 25, 2013). In any event, Huawei will be able to admit this document through another ███ witness at trial.

5.    DX-367.3 and ███████ related testimony are admissible (███████ Depo. Tr. 188:23–191:18).

During ███████ cross-examination, defense counsel sought to introduce the portion of GX 22607—a government exhibit—that described the recommendation that ███ maintain a relationship status with Huawei based on specific "risks and mitigants." ███████ Depo. Tr. 188:24–189:03. The government's objection to this should be overruled. To the extent the government is permitted to introduce certain risks that the Committee purportedly considered in deciding whether to retain Huawei as a client, Huawei is entitled to introduce not only other considerations, but also the relevant committee's ultimate decision with respect to those risks and mitigants. *See* Fed. R. Evid. 106; Huawei Rule 15 Mot. at 21–22. For this reason, the government's hearsay objections to this this excerpt fail: ███████ testimony is admissible to contextualize the ███████ considerations and conclusions and is admissible "over a hearsay objection." Fed. R. Evid. 106.

The Court should also overrule the government's objections to DX-367.3, a ███

61

Corporate Group Account Plan for Huawei that reflects financial and commercial data for the company. Defense counsel laid an adequate foundation through ▇▇▇▇ testimony and in any event will lay a sufficient foundation to admit the document at trial. And the contents of DX-367.3 are not excludable hearsay because Huawei does not intend to introduce the financial and commercial data for their truth, but instead as evidence regarding ▇▇ and its employees' motives to retain Huawei as a client.

6. DX-367.3, DX-371, DX-371.1, DX-371.2, and ▇▇▇▇ related testimony are admissible (▇▇▇▇ Depo. Tr. 192:02–204:24).

The Court should overrule the government's objections to DX-371 (a cover email sending ▇▇▇▇ meeting materials), DX-371.1 (a ▇▇▇▇ committee meeting summary), DX-371.2 (a ▇▇ Corporate Group Account Plan for Huawei), and DX-367.3 for the reasons explained above. *See supra* at 60–62. And the Court should admit defense counsel's statement reading from DX-367.3. Counsel read the document to relieve the witness from having to read the relevant excerpt, and the witness confirmed that what defense counsel read was accurately reflected in the document. *See* ▇▇▇▇ Depo. Tr. 195:18–19.

7. DX-371.2 and ▇▇▇▇ related testimony are admissible (▇▇▇▇ Depo. Tr. 205:06–213:14).

The Court should admit DX-371.2 (a ▇▇ Corporate Group Account Plan for Huawei) and ▇▇▇▇ related testimony for the reasons explained above. *See supra* at 60–62. Furthermore, the questions and testimony regarding the ▇▇▇▇ general process for preparing and transmitting reports and agendas (▇▇▇ Depo. Tr. 205:06–15) is independently relevant and admissible background for the jury and should be admitted.

8. DX-366, DX-373 and ▇▇▇▇ related testimony are admissible (▇▇▇▇ Depo. Tr. 206:22–213:14).

The Court should overrule the government's objection to DX-366 for the reasons

62

explained above. *See supra* at 60.

The Court should also overrule the government's objection to DX-373, an agenda for a March 2013 ▮▮▮▮▮ meeting. As the government concedes, DX-373 is a business record. The government's hearsay objection to DX-373's contents fails because Huawei seeks to introduce the statements about the Committee's consideration, not for their truth, but for the same reason as DX-366: for their effect on the listener. *See* DX-373 at 15–19.

9.    Documents and testimony concerning ▮▮▮▮ de minimis rule and Huawei's corporate status are admissible.

a.    ▮▮▮▮▮ *Depo. Tr. 216:15–217:20*

During ▮▮▮▮▮ direct examination, the government elicited testimony about ▮▮▮ so-called "de minimis" policy: that ▮▮▮ tolerated customers' business in sanctioned countries that remained below a certain threshold percentage of the company's overall business. *See* ▮▮▮▮▮ *Depo. Tr.* 47:09–50:04, 102:25–103:14, 122:06–14. Yet it tries to preclude defense counsel's questions on that same topic. The Court should overrule the government's objection. ▮▮▮▮▮ testimony about the de minimis rule is relevant to his credibility and knowledge about a rule related to his role as ▮▮▮▮▮▮▮ The jury is entitled to hear it, and there is no risk that the jury will be confused by counsel's questions or ▮▮▮▮▮ testimony.

b.    ▮▮▮▮ *Depo. Tr. 219:03–05*

Huawei does not seek to admit this excerpt at trial.

c.    ▮▮▮▮ *Depo. Tr. 219:24–222:09, GX 22306-4, 22306-5*

The Court should overrule the government's objection to GX 22306-4, a ▮▮ due diligence form for Huawei, GX 22306-5, a ▮▮ Account Plan detailing the Huawei Group's financial history and ▮▮▮ intent to expand its business relationship with the Huawei Group, and ▮▮▮▮ related testimony. GX 22306-4 and GX 22306-5 were attached to GX 22036-2, a

63

document that the government seeks to admit as a business record, and are among the documents considered by compliance committees in assessing their relationship with Huawei. The government's objection to embedded hearsay should be overruled because they are admissible to show their effect on the listener, *i.e.*, the relevant committees that considered those statements.

        10.      <u>Huawei does not seek to admit this testimony (███ Depo. Tr. 222:10–224:10).</u>

Huawei does not seek to admit this excerpt at trial.

        11.      <u>GX 22608 and ███ related testimony are admissible (███ Depo. Tr. 225:03–231:21).</u>

GX 22608 is an internal █ risk committee memorandum concerning Huawei. The document states that the "purpose" of the memo is "to seek approval" to maintain a business-as-usual banking relationship with Huawei. GX 22608 at 1. The memorandum outlines a "summary" of then-recent adverse news, █ view of Huawei's response ("Huawei took an open and transparent attitude to address the concerns of the US government"), and the bank's assessment of the risk of the news event and it's "material[ity]," among other things. GX 22608 at 1–3. The document is admissible evidence of the effect of purportedly adverse news on the bank's view of Huawei.

The government's foundation objection is baseless. ███ testified that this memorandum was kept in the regular course "like all of the other documents that [he had] looked at." ███ Depo. Tr. 225:11–226:24. And GX 226208 is facially a business record that will be admissible at trial. If the Court admits the █ Compliance Submissions, the Court should admit GX 22608. Similarly, the government's embedded hearsay objections fail because Huawei does not offer GX 22608's contents for their truth, but for their effects on the authors of the memoranda and the relevant compliance committees. Given the probative value of the document, the Court should not exclude it under Rule 403.

64



The Court should reject the government's remaining objections. Huawei did not ask ▮▮▮▮ to speculate about others' beliefs regarding the importance of media engagement in the abstract, but asked, based on his review of a ▮▮ document, ▮▮▮▮ understanding of the importance of Huawei engaging with the media.

> 12.    ▮▮▮▮ testimony about Huawei's remedial measures is admissible (▮▮▮▮ Depo. Tr. 232:05–236:03, 236:19–238:17).

▮▮▮▮ testified about a portion of a compliance submission (which the government has sought to admit as a business record) where Huawei allegedly represented to ▮▮ that it had undertaken various remedial measures to avoid compliance issues. To the extent the government lodged a hearsay objection during ▮▮▮▮ deposition, these statements are admissible for their effect on the listener, *i.e.*, that these representations were among the considerations the bank relied on in assessing its relationship with Huawei. They are not hearsay.

The Court should also overrule the government's objection regarding defense counsel's question eliciting the fact that ▮▮ website reflects its own commitment to compliance. *See* ▮▮▮▮ Depo. Tr. 235:09–236:03. This statement is relevant to the bank's understanding of Huawei's purported statement regarding its own commitment to compliance. And the government's foundation objection is misplaced: defense counsel's question focused on the bank's commitment to compliance generally, not specifically what ▮▮ website stated as the bank's commitment to compliance.

> 13.    ▮▮▮▮ testimony regarding GX 22607 is admissible (▮▮▮▮ Depo. Tr. 240:9–25).

The Court should admit this excerpt about GX 22607 for the reasons explained above. *See supra* at 54–55.

14. ████████ testimony regarding GX 22600 is admissible (████████ Depo. Tr. 242:17–243:18).

During cross-examination, ████████ reviewed the portion of GX 22600—the adverse media form that the government selectively elicited testimony regarding—where the author of the report explained its view of the impact of various adverse news events on the author's assessment of Huawei as a client. *See* ████████ Depo. Tr. 242:17–243:18. Those excerpts made clear that, "[o]n the basis of the media search and information in hand," including adverse media that was the focus of the government's direct examination, "the reputation of the customer is positive and the adverse media does not impact on that reputation." GX 22600 at 6; ████████ Depo. Tr. 242:17–23.

This information is relevant: it shows that, notwithstanding the government's efforts to portray adverse news media as a factor that caused ████ substantial concern, the bank did not consider it all that important. And the statements are not hearsay because they are offered to show their effect on the listener, namely, the authors of the adverse media report. The Court should accordingly overrule the government's relevance, hearsay, and Rule 403 objections.

15. DX-364 and ████████ related testimony are admissible (████████ Depo. Tr. 244:04–248:15).

DX-364 is a 2012 ████ annual report that detailed the bank's overall performance and operations, its business strategy, and other information about ████ The Court should admit this document. It is clearly a business record, and Huawei expects to establish a foundation for its admission at trial. And the embedded statements that Huawei elicited about the bank's background were not offered for their truth, but to provide important context about the bank for the jury. The Court should also overrule the government's scope objection for the reasons explained above. *See supra* at 17–18.

66

16. <u>Huawei does not intend to offer the objected-to question (██████ Depo. Tr. 249:13–251:17).</u>

Huawei does not seek to admit this excerpt at trial.

17. <u>DX-368, DX-368.1, and ██████ related testimony are admissible (██████ Depo. Tr. 252:10–253:05, 253:18–255:17).</u>

The Court should overrule the government's objections to DX-368, DX-368.1, and ██████ related testimony. DX-368.1 is an internal ██ spreadsheet that lists the bank's customers and shows their relationships. During ██████ cross-examination, defense counsel showed ██████ row 4466 in tab 10 titled "Data Mar10," which lists "Huawei" under the column "Client Group," and lists "Skycom Tech Co Limited" as the associated "Client." This document is clearly relevant: it shows that Huawei disclosed information that caused ██ to know about Huawei's relationship with Skycom, which undermines the government's theories about materiality and Huawei's intent to defraud ██

The government's foundation objection should be overruled; the defense established the document as a business record, *see* ██████ Depo. Tr. 254:19–255:14, and in any event can establish a foundation at trial. And as explained above, the document does not show that ██ was negligent in failing to discover alleged fraud but instead suggests that ██ did not view news of Skycom to be material, and that Huawei did not deprive ██ of information regarding its relationship with Skycom. Finally, the content of DX-368.1 is not hearsay because it is offered to show Huawei's lack of fraudulent intent and ██ notice of Huawei's relationship with Skycom.

18. <u>DX-369 and ██████ related testimony are admissible (██████ Depo. Tr. 256:15–256:20, 257:04–259:17).</u>

DX-369 is an internal ██ email among ██ and Huawei employees, where Huawei asked ██ to confirm Skycom's then-closed account balance at the end of the three preceding

years. As with DX-368.1, DX-369 shows that Huawei clearly conveyed its relationship with Skycom to ███ stating that "[w]e," *i.e.*, Huawei, held the Skycom account. DX-369-6. This admission shows that Huawei lacked fraudulent intent and undermines the government's claim that subsequent news events about Huawei's relationship with Skycom were material to ███

The Court should overrule the government's foundation objection: Huawei may establish the requisite foundation and connection at trial. And its hearsay objections are meritless because the statements are offered to show Huawei's transparency with ███ and the absence of materiality.[12]

19.    DX-368.1, DX-370, and ███████ related testimony are admissible (███████ Depo. Tr. 260:14–263:03).

The Court should overrule the government's objections to DX-368.1 and ███████ related testimony for reasons explained above. *See supra* at 67. The Court should also overrule the government's objection to DX-370—another ███ spreadsheet that shows Huawei's corporate relationship with Skycom—for the reasons explained above. *See id.* Huawei will lay the requisite foundation for the exhibit at trial before offering ███████ testimony.

20.    Huawei preserves its arguments that testimony and exhibits concerning the Bank Prosecution Evidence are admissible (███████ Depo. Tr. 263:18–271:12, DX-358, 359, 351, 360, 361, 362, 363 352, 352.1, 353, 354, 355, 356, 357, 365).

Huawei preserves its designation of ███████ testimony regarding the ███ prosecution documents (DX-358, 359, 351, 360, 362, 363 352, 352.1, 353, 354, 355, 356, 357) but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

---

[12] The email may also be admissible under Federal Rule of Evidence 806, which permits admission of a hearsay statement to attack an out-of-court declarant's credibility. One of the recipients on this email chain was ███████████ ███ relationship manager for Huawei, who authored or contributed to many of the reports that the government seeks to admit as exhibits. To the extent any of those reports suggest that Huawei was less than forthcoming about its relationship with Skycom, DX-369 is admissible to demonstrate otherwise.

DX-365 is a 2019 annual report that is admissible for the same reasons as the 2012 report (DX-364) described above. *See supra* at 66. The Court should overrule the government's objections to this document.

> 21.  testimony regarding compliance generally is admissible (█████ Depo. Tr. 271:22–278:23).

Huawei preserves its designation of █████ testimony regarding the █ prosecution documents but will not re-hash its arguments regarding its admissibility (█████ Depo. Tr. 271:22–273:01, 273:13–18). *See supra* at 13–14.



The remainder of █████ testimony, however, concerned his discussions with other banks regarding best practices for compliance programs, the importance of compliance to █ █ iterative attempts to improve its own compliance programs, and the inherent imperfection of banks' compliance programs. This testimony is clearly relevant to █████ understanding of █ compliance function. None of counsel's questions called for, and none of █████ testimony provided, hearsay statements from other bank officials, but instead focused on whether conversations among banks' compliance officials happened at all. Likewise, counsel's question asking █████ to confirm that several █ documents he viewed over the course of the deposition reflected █ "working with Huawei and talking with Huawei about their compliance programs," █████ Depo. Tr. 278:17–20, is a permissible summary of the documents that █████ reviewed (and that █████ confirmed was correct, *see* █████ Depo. Tr. 278:21). The Court should overrule the government's objection.

> 22. Huawei preserves its arguments that testimony and exhibits concerning the Bank Prosecution Evidence are admissible (█████ Depo. Tr. 279:04–12).

Huawei preserves its designation of █████ testimony regarding the █ prosecution documents but will not re-hash its arguments regarding its admissibility. *See supra* at 13–14.

## CONCLUSION

For the foregoing reasons, the Court should sustain Huawei's objections to the

government's designations and overrule the government's objections to Huawei's objections.

Respectfully submitted,

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

/s/ Doug A. Axel
Douglas A. Axel
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
Melissa Colón-Bosolet
Daniel J. Hay
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

/s/ Brian M. Heberlig
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device Co., Ltd.,*
*Huawei Device USA Inc., and Futurewei Technologies, Inc.*

70