UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
UNITED STATES OF AMERICA,

v.

HUAWEI TECHNOLOGIES Co., Ltd., *et al.*,

Defendants.
------------------------------------------------------------------x

**MEMORANDUM & ORDER**

18-CR-457
(Donnelly, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge**

On August 10, 2026, the Government moved, pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, to quash certain trial subpoenas that Defendants Huawei Technologies Co., Ltd., Huawei Device Co., Ltd., Huawei Device USA, Inc., and Futurewei Technologies, Inc. (collectively, "Huawei") recently served on non-party banks. *See* Dkt. No. 773 at 1, 5-7. In the same motion, the Government moved to compel Huawei to "provide the [G]overnment and the Court with (i) a full accounting of any other Rule 17(c) subpoenas served in the case, and (ii) a copy of any materials received in response to Rule 17(c) subpoenas." *Id.* at 1, 7. On August 14, 2026, Huawei opposed the Government's motion. *See* Dkt. Nos. 781, 784.[1]

The Honorable Ann M. Donnelly, United States District Judge, referred the Government's August 10, 2026 motion to the undersigned. *See* Referral Order, dated Aug. 11, 2026. For the reasons set forth below, the Court grants in part and denies in part the Government's motion.

## I. Relevant Background

The Court presumes the parties' familiarity with the underlying facts alleged in this criminal matter. *See, e.g.*, *United States v. Huawei Techs. Co.*, No. 18-CR-457 (AMD) (JAM),

[1] Dkt. No. 784 is an identical, but redacted, version of the sealed Dkt. No. 781. Unless otherwise stated, the Court refers to Dkt. No. 784 herein.

2026 WL 2099020, at *1-4 (E.D.N.Y. July 21, 2026); *United States v. Huawei Techs. Co.*, 824 F. Supp. 3d 227, 231 (E.D.N.Y. 2026); *United States v. Huawei Techs. Co.*, No. 18-CR-457 (AMD) (CLP), 2024 WL 4665264, at *1 (E.D.N.Y. Nov. 4, 2024).

As an initial matter, the Court addresses what subpoenas are at issue here. In its August 10, 2026 motion, the Government identifies three materially identical trial subpoenas that were served on three non-party victim banks in or around April and May 2026. *See* Dkt. No. 773 at 1-2. Copies of those subpoenas were provided to the Court and to Huawei. *Id.* at 1 n.1. The Government seeks to quash these subpoenas "and any other similar subpoenas issued" by Huawei. *See id.* at 4. In Huawei's opposition, it notes that Huawei also "served a fourth, materially identical trial subpoena" on a fourth bank. *See* Dkt. No. 784 at 1 n.1. The Court will refer to these four materially identical trial subpoenas collectively as the "Challenged Subpoenas."

The Challenged Subpoenas request as follows:

1. Documents sufficient to show All Funds Transfers processed by [the subpoenaed bank] during the Relevant Time Period where a Huawei Entity was the originator or beneficiary of the Funds Transfer. This can be an extract from your core banking or other systems provided that such extract would include the following details for each Funds Transfer: value date, value, originator, originating bank, intermediary bank(s), beneficiary bank, and beneficiary.

2. Documents sufficient to show the total amount of fees [the subpoenaed bank] received to process, facilitate, or otherwise provide services related to the Funds Transfers identified in response to Request No. 1.

3. Documents reflecting any Correspondent Banking Agreements between [the subpoenaed bank] and the non-US originating and/or beneficiary banks identified in response to Request No. 1.

4. Documents sufficient to show the standard or customary fees [the subpoenaed bank] charged for processing, facilitating, or otherwise providing services for domestic and international Funds Transfers during the Relevant Time Period.

> 5. Documents sufficient to show any Settlement Service Instructions and/or Settlement Service Agreements among an originating bank, a beneficiary bank, and/or an intermediate bank for Fund Transfers identified in response to Request No. 1.

The Challenged Subpoenas have the following definitions: (1) both "[a]ll" and "[a]ny" "shall be construed as encompassing any and all"; (2) "[r]elated to" or "relating to" means, "without limitation, the following concepts: concerning, constituting, regarding, referring to, describing, discussing, embodying, evidencing, memorializing, mentioning, recording, studying, analyzing, evaluating, estimating, reflecting, pertaining to, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, supporting, refuting, responsive to, or otherwise involving, in whole or in part"; (3) "Funds Transfers" means "[a]ny electronic transfer of funds denominated in U.S. dollars between bank accounts, including such transfers that are processed via Fedwire Funds Service ('Fedwire'), Society for Worldwide Interbank Financial Telecommunication ('SWIFT'), Clearing House Interbank Payment System ('CHIPS'), ISO 20022 MX format, or other equivalent systems and formats"; and (4) "Huawei Entity" is defined as thirteen separate corporate entities.

The General Instructions define the "Relevant Time Period" as the time period from January 1, 2018 through March 31, 2026 for two of the subpoenas, and the time period from January 1, 2019 through March 31, 2026 for a third subpoena.[2] The Challenged Subpoenas specify that they "seek all responsive documents created or generated during the Relevant Time Period, as well as responsive documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period." Further, "[q]uestions regarding the interpretation of these Requests should be resolved in favor of the broadest possible construction."

[2] The Court has not received a copy of the "fourth, materially identical trial subpoena" identified by Huawei. *See* Dkt. No. 784 at 1 n.1.

As set forth in the Government's August 10, 2026 motion, the Government reports that "the Challenged Subpoenas command banks that the [G]overnment has identified as victims in this case to produce more than eight years of funds-transfer records—together with related fee information, correspondent banking agreements, and settlement instructions—for every transaction in which any of thirteen 'Huawei Entit[ies]' was an originator or beneficiary." Dkt. No. 773 at 1. According to the Government, the Challenged Subpoenas "seek disclosure of broad swathes of irrelevant information, in terms defined in Exhibit A [of the Challenged Subpoenas] in the broadest conceivable manner." *Id.* at 2.

Huawei opposed the Government's motion on August 14, 2026. Dkt. No. 784. The Government filed a reply on August 17, 2026. Dkt. No. 786.

Trial in this matter is scheduled to commence on September 8, 2026. *See* Minute Entry, dated Apr. 23, 2026.

## II. <u>Discussion</u>

### A. The Government's Motion to Quash the Challenged Subpoenas

#### i. Standing

As a threshold matter, the Court must consider whether the Government has standing to move to quash the Challenged Subpoenas. While noting that the banks have not moved to quash the Challenged Subpoenas, Huawei does not explicitly challenge the Government's standing to file a motion to quash. *See* Dkt. No. 784 at 3-4. Ultimately, the Court finds that the Government possesses standing to move to quash the Challenged Subpoenas.

"Courts in the Second Circuit have acknowledged that the government has standing to challenge a Rule 17(c) subpoena directed to a non-party when the subpoenaed party authorizes the government to assert his or her rights by request, by indicating its joinder in a motion to quash, or

by forwarding responsive material to the government." *United States v. Bergstein*, No. 16-CR-746 (PKC), 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017) (citation omitted). Additionally, "[c]ourts in the Circuit have generally agreed that a party may also demonstrate standing to challenge a Rule 17(c) subpoena directed to a non-party based on the movant's legitimate interests." *Id.* (citations omitted); *see also United States v. Cole*, No. 19-CR-869 (ER), 2021 WL 912425, at *2 (S.D.N.Y. Mar. 10, 2021) (noting that generally, "the Government has standing to quash a subpoena of a non-party 'only if the alleged victim has asked it to, or if the Government can assert legitimate interests of its own in quashing the subpoenas'" (citations omitted)).

Here, as there is no indication that the subject banks asked the Government to file the present motion, the Court looks to whether the Government has asserted legitimate interests of its own in seeking to quash the Challenged Subpoenas. The Government has indeed asserted its own legitimate interests. As the Government explains, the Government "has an interest in preventing the improper disclosure of materials that concern those potential witnesses [(representatives of those banks that the Government has identified as victims of the charged offenses)] and in ensuring that they are not subject to undue harassment." Dkt. No. 773 at 4 (collecting cases). Case law across this Circuit has indicated that the Government has standing to move to quash under similar circumstances. *See, e.g.*, *United States v. Vasquez*, 258 F.R.D. 68, 71-72 (E.D.N.Y. 2009) (finding that "the Government has a legitimate interest in preventing [the defendant] from using a subpoena to obtain discovery materials that would otherwise be protected from disclosure" (citation omitted)); *United States v. Giampa*, No. 92-CR-437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) ("The Government clearly has an interest in preventing any undue lengthening of the trial, any undue harassment of Mr. D'Arco and his family, and any prejudicial over-emphasis

on Mr. D'Arco's credibility, which could arguably result if the subpoenas are not quashed or modified.").

Accordingly, the Government has adequately demonstrated that it has standing to seek to quash the Challenged Subpoenas. The Court next turns to the merits of the Government's motion.[3]

**ii. Legal Standards**

Rule 17(c) of the Federal Rules of Criminal Procedure provides that

> [a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1). "On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

Rule 17(c) "was not intended to provide a means of discovery for criminal cases"; "its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698-99 (1974) (footnote and citation omitted); *see also United States v. Maxwell*, No. 20-CR-330, 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021) (Nathan, J.) ("[C]ourts must be mindful not to allow the Rule 17(c) process to

[3] Even if the Government did not have standing, "a number of courts within this Circuit have proceeded to consider the merits of a motion to quash irrespective of any determination on standing because of an independent duty of the court to ensure the propriety of Rule 17(c) subpoenas." *Bergstein*, 2017 WL 6887596, at *3 (collecting cases); *see also United States v. Gogic*, No. 22-CR-493 (JMA), 2025 WL 2371008, at *2 (E.D.N.Y. Aug. 14, 2025) (explaining that "[r]egardless of whether the Government has standing, [the Court has] an independent duty to ensure that subpoenas are issued only for proper purposes and that they are in compliance with Rule 17." (internal quotation marks and citations omitted)); *United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020) ("[A district court] can resolve the propriety of a Rule 17(c) subpoena on the Government's motion even if the Government lacks standing because it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." (internal quotation marks and citations omitted)).

become a 'broad discovery device' that would undermine the discovery procedures set forth in Rule 16." (citation omitted)). As the United States Supreme Court explained in *Nixon*,

> in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Nixon*, 418 U.S. at 699-700 (footnote omitted); *see also United States v. Pierre*, No. 22-CR-19 (PGG), 2023 WL 7004460, at *15 (S.D.N.Y. Oct. 24, 2023) (same).

In short, "[u]nder the *Nixon* standard, a party seeking the issuance of subpoenas must show (1) relevancy, (2) admissibility, and (3) specificity." *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (citing *Nixon*, 418 U.S. at 700); *see also United States v. Chirico*, No. 25-CR-365 (JLR), 2026 WL 1760129, at *3 (S.D.N.Y. June 18, 2026) ("The Supreme Court has held that a Rule 17(c) subpoena is properly issued where the defendant 'clear[s] three hurdles: (1) relevancy; (2) admissibility; [and] (3) specificity.'" (quoting *Nixon*, 418 U.S. at 700)); *United States v. Sun*, No. 24-CR-346 (BMC), 2025 WL 2841646, at *3 (E.D.N.Y. Oct. 7, 2025) (applying the *Nixon* standard). "[I]ssuance of a Rule 17(c) subpoena is appropriate only where the proponent has demonstrated strict compliance with the *Nixon* factors." *Pierre*, 2023 WL 7004460, at *18. Finally, "[e]nforcement of a pretrial subpoena *duces tecum* must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *Nixon*, 418 U.S. at 702; *see also Pierre*, 2023 WL 7004460, at *15 (same).

In opposition to the Government's motion, Huawei argues "that the proper framework for evaluating a defendant's Rule 17 third-party subpoena" is established in *United States v. Weigand*, 520 F. Supp. 3d 609 (S.D.N.Y. 2021) (Rakoff, J.), which held that the district court may quash a

Rule 17(c) subpoena if compliance would be "unreasonable or oppressive." Dkt. No. 784 at 4 (citing 520 F. Supp. 3d at 611-13). The court in *Weigand* followed the test "articulated by Judge [Shira A.] Scheindlin in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008)," in which "Judge Scheindlin explained that the *Nixon* standard is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense." *Weigand*, 520 F. Supp. 3d at 612 (quoting *Tucker*, 249 F.R.D. at 66). "A defendant in such a situation need only show that the request is (1) reasonably construed as 'material to the defense,' and (2) not unduly oppressive for the producing party to respond." *Id.* (quoting *Tucker*, 249 F.R.D. at 66).

The Court, however, finds that *Nixon*, not *Tucker*, controls. While the Supreme Court in *Nixon* did not decide whether its "test applies to subpoenas served on third-parties in particular, courts in the Second Circuit have almost unanimously applied *Nixon* to subpoenas served on third-parties." *United States v. Skelos*, No. 15-CR-317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (citations omitted), *aff'd*, 988 F.3d 645 (2d Cir. 2021); *see also Bergstein*, 788 F. App'x at 746 (noting that the Second Circuit has "applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, as have district courts in this Circuit" (citations omitted)). In fact, case law across this Circuit "is replete with rejections of *Tucker*." *Chirico*, 2026 WL 1760129, at *3 (citations omitted); *see, e.g.*, *United States v. Alexander*, No. 24-CR-676 (VEC), 2026 WL 366857, at *2 (S.D.N.Y. Feb. 9, 2026) (collecting cases, and noting that the "*Tucker* standard 'has been repudiated by most courts in this district'" (collecting cases)); *United States v. Ho*, No. 25-CR-3 (JAV), 2026 WL 184622, at *3 (S.D.N.Y. Jan. 23, 2026) (noting that the *Tucker* "standard is not the practice of the 'overwhelming majority' of courts in the Second Circuit, which have 'almost unanimously' applied *Nixon* to subpoenas served on third-parties" (citations

omitted)); *United States v. Shestakov*, No. 23-CR-16 (JHR), 2025 WL 507523, at *1 n.2 (S.D.N.Y. Feb. 14, 2025) (noting that the "Second Circuit has routinely applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant, and *Tucker* has not generally been followed in this Circuit," and declining to follow *Tucker* (collecting cases)).

Notably, the United States Court of Appeals for the Second Circuit—albeit in an unpublished summary order—recently applied the *Nixon* test when affirming a district court's denial of a Rule 17(c) subpoena request. *See United States v. Conde*, No. 23-6327, 2026 WL 1045500, at *5 (2d Cir. Apr. 17, 2026) (noting that, "[t]o show entitlement to documents under a Rule 17(c) subpoena, a party must demonstrate '(1) relevancy; (2) admissibility; [and] (3) specificity'" (quoting *Nixon*, 418 U.S. at 700)). Huawei has not shown any reason why the Court should deviate from the well-established case law supporting the application of the *Nixon* test under these circumstances.

At bottom, the Court applies the *Nixon* test here. *See Ho*, 2026 WL 184622, at *3 ("Ultimately, enforcement of a Rule 17(c) subpoena remains within the sound discretion of the Court." (citing *Nixon*, 418 U.S. at 702)).

**iii. Discussion**

The Court grants the Government's motion to quash the Challenged Subpoenas. Huawei fails to clear the "three hurdles" of the *Nixon* test: (1) relevancy; (2) admissibility; and (3) specificity. *See Chirico*, 2026 WL 1760129, at *3 (quoting *Nixon*, 418 U.S. at 700).

**a. Specificity**

The Challenged Subpoenas are "broadly drawn and unspecific," and therefore must be quashed for those reasons alone under Rule 17(c). *See United States v. Tepedino*, No. 25-CR-562 (RMB), 2026 WL 923840, at *2 (S.D.N.Y. Apr. 6, 2026). While the specificity requirement is

intended to provide the challenger having standing "with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility, this requirement also ensures that a Rule 17(c) subpoena will not be used as a fishing expedition to see what may turn up." *Pierre*, 2023 WL 7004460, at *15 (internal quotation marks and citation omitted).

To meet the specificity requirement, the "Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up." *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 513 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also United States v. Barnes*, No. 04-CR-186 (SCR), 2008 WL 9359654, at *4 (S.D.N.Y. Apr. 2, 2008) ("In order to satisfy the specificity requirement of *Nixon*, the party seeking production of the materials must 'reasonably specify the information contained or believed to be contained in the documents sought' rather than 'merely hope . . . that something useful will turn up.'" (citation omitted)). "[S]ubpoena requests designed as 'fishing expedition[s] to see what may turn up,' should be denied." *Conde*, 2026 WL 1045500, at *5 (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)). "Speculation that the targeted party might have such materials is not sufficient." *Pierre*, 2023 WL 7004460, at *24 (collecting cases).

Here, the Challenged Subpoenas fail the specificity requirement for several reasons. First, the Challenged Subpoenas' use of the terms "any" and "all"—each being defined "as encompassing any and all"—indicates that Huawei seeks a large quantity of documents that is more akin to a discovery device rather than a mechanism for obtaining specific admissible evidence. "The use of the terms 'all' and 'any' 'do not evince specificity.'" *Maxwell*, 2021 WL 1625392, at *2 (citation omitted); *see also Mendinueta-Ibarro*, 956 F. Supp. 2d at 513 ("Subpoenas

seeking 'any and all' materials without mention of 'specific admissible evidence,' justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*." (quoting *United States v. Louis*, No. 04-CR-203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005))); *Barnes*, 2008 WL 9359654, at *4 ("The Defendant blindly seeks 'all' documents and recordings that fall into several categories for an approximate 23-month period rather than identifiable pieces of evidence. The fact that the subpoena is crafted to encompass such a broad swath of items indicates that the subpoena was intended as a discovery device rather than as a mechanism for obtaining specific admissible evidence."); *United States v. RW Pro. Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005) (Spatt, J.) ("Rather, the Defendant asks for '[a]ll documents relating or referring to . . . .' In essence this could amount to a massive search for countless documents, at great expense to CIT, in order to attempt to properly comply. This burden is unreasonable and oppressive."); *Louis*, 2005 WL 180885, at *5 ("The subpoena seeks 'any and all' documents relating to several categories of subject matter (some of them quite large), rather than specific evidentiary items, thus clearly indicating that Defendant seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose—to secure the production for a court proceeding of specific admissible evidence." (footnotes omitted)). Instead of requesting specific evidentiary items, the Challenged Subpoenas seek, *inter alia*, any and all documents reflecting the electronic transfer of funds associated with each of the thirteen identified Huawei Entities processed by each bank over a seven- or eight-year period, the fees associated with each of those transfers, "Correspondent Banking Agreements," each bank's "standard or customary fees" for such transfer services, and "Settlement Service Instructions and/or Settlement Service Agreements" among potentially related banks—which all amount to information that is more "akin to discovery requests in civil litigation"

rather than what is permissible under Rule 17(c). *See Maxwell*, 2021 WL 1625392, at *2 (citation omitted).

Next, other broad definitions from the Challenged Subpoenas, such as "[r]elated to" which is defined by over two dozen terms, confirm that Huawei seeks to obtain large quantities of documents—again, more akin to a discovery request than a trial subpoena seeking specific admissible evidence. *See Louis*, 2005 WL 180885, at *5 & n.8 (finding that "[r]elating to," which was defined as "referring to, concerning, discussing, describing, mentioning, noting, studying, reflecting, evaluating, evidencing, constituting, analyzing, or being relevant to," was overly broad); *see also United States v. Sun*, No. 24-CR-346 (BMC), 2025 WL 2977804, at *2 (E.D.N.Y. Oct. 22, 2025) ("A Rule 17(c) subpoena may not be used as a discovery device, and the Court suspects that is what's happening here.").

Further, two of the Challenged Subpoenas seek documents from January 1, 2018 through March 31, 2026—a span of more than eight years—and the third of the Challenged Subpoenas seeks documents from January 1, 2019 through March 31, 2026—a span of more than seven years. The operative indictment alleges that the latest charged acts occurred in February 2020, Dkt. No. 689 ¶ 89, meaning that a substantial majority of the period for which Huawei seeks records post-date the relevant events—that is, six out of seven or eight years. And Huawei further seeks documents generated even outside of this defined "Relevant Time Period," as the Challenged Subpoenas seek "all responsive documents created or generated during the Relevant Time Period, as well as responsive documents created or generated outside the Relevant Time Period, but which contain information concerning the Relevant Time Period." This expansive, and unlimited, time frame also demonstrates that the Challenged Subpoenas fail the specificity requirement. *See Maxwell*, 2021 WL 1625392, at *2 ("And while the requested subpoenas are limited to the period

between 2015 and 2021, the timeframe is still overly broad. These requests are precisely the kind of 'fishing expedition' that the specificity requirement is designed to prevent. Indeed, the requests are akin to discovery requests in civil litigation. But Rule 17(c) subpoenas are not tools of discovery." (citations omitted)); *United States v. Salvagno*, 267 F. Supp. 2d 249, 253 (N.D.N.Y. 2003) (holding that a Rule 17(c) subpoena that seeks documents from a "time frame [that] far exceeds the conduct charged by the Indictment" is overbroad).

Moreover, the lack of specificity in the Challenged Subpoenas is evinced where Huawei appears to concede that it does not "have visibility into every intermediary bank that clears its dollar transactions, much less into the fees those banks collected, the correspondent banking agreements among those banks, or the settlement instructions governing the transfers." Dkt. No. 784 at 5. As Huawei argues, "[t]hat information resides with the banks, and only the banks can provide it." *Id.* Such a contention further supports the conclusion that the Challenged Subpoenas are merely an attempted fishing expedition as to what precisely may be within the requested documents and their relevancy. *See United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014) (affirming order quashing subpoena because moving party "proferr[ed] only speculation"); *United States v. Bergstein*, No. 16-CR-746 (PKC), 2018 WL 9539856, at *2 (S.D.N.Y. Jan. 22, 2018) (noting that a request seeking "a potentially vast number of unspecified payments or transactions" is "prototypical of [a] 'fishing expedition[]'").

That the banks have not themselves moved to quash the Challenged Subpoenas does not change the result here. *See* Dkt. No. 784 at 4. As previously stated, the Court has an independent obligation to "ensure the propriety of Rule 17(c) subpoenas." *See Bergstein*, 2017 WL 6887596, at *3 (collecting cases). In any event, it cannot be said that the banks have all willingly and fully complied with the Challenged Subpoenas, as Huawei seems to suggest. Huawei concedes that one

bank "produced responsive materials to the first request, subject to ongoing negotiations about narrowing the remaining requests," while also stating that another bank notified Huawei that, in light of the Government's motion to quash, "it would thus not make any productions at present," although Huawei asserts that this bank "has never complained about the scope of" the Challenged Subpoenas. Dkt. No. 784 at 3. A third bank reportedly "has represented that it intends to make a production" but has yet to do so. *Id.* A fourth bank "has communicated its intention to produce responsive documents and has not objected to the subpoena's scope or the burden of production." *Id.* at 1 n.1. Regardless of whether the banks were to eventually comply with Huawei's requests by their own accord, the Challenged Subpoenas fail to "reasonably specify the information contained or believed to be contained in the documents sought." *See Mendinueta-Ibarro*, 956 F. Supp. 2d at 513 (citation omitted).

Accordingly, the Challenged Subpoenas before this Court fail to clear the *Nixon* specificity hurdle.

**b. Relevance and Admissibility**

Huawei argues that the subpoenaed records are relevant and admissible because "[e]vidence that three global banks continued to process U.S.-dollar fund transfers for the Huawei Entities—after the Indictment placed them on notice of everything the [G]overnment contends was concealed by Huawei—is evidence from which a reasonable jury could conclude that the alleged misstatements were not material to a reasonable bank's dollar-clearing decisions." Dkt. No. 784 at 6 (citing *United States v. Binday*, No. 12-CR-152 (CM), 2017 WL 4326063, at *3 (S.D.N.Y. Aug. 29, 2017)). Meanwhile, the Government argues that "[t]he fact that the victim financial institutions may have processed correspondent banking transactions relating in some way to Huawei after the charged period is irrelevant to whether the defendants conspired to, or did,

defraud those victim institutions." Dkt. No. 773 at 6. According to the Government, "[a] victim can be defrauded and then continue a relationship with the fraudsters for reasons entirely separate from the fraud." *Id.* (first citing *United States v. Corsey*, 723 F.3d 366, 373 n.3 (2d Cir. 2013); and then citing *United States v. Litvak*, 889 F.3d 56, 66 (2d Cir. 2018)).

As Huawei has failed to satisfy the specificity prong of the *Nixon* test, the Challenged Subpoenas must be quashed for that reason alone. The Court need not do a fulsome analysis of the relevance and admissibility prongs because, even if Huawei had demonstrated that the Challenged Subpoenas sought relevant and admissible records, *Nixon* compels that the Government's motion to quash be granted. *See, e.g.*, *Shestakov*, 2025 WL 507523, at *3 (holding that seeking "through the subpoena to acquire voluminous materials in the hope that a review of them will uncover some evidence that will be helpful to his defense" is insufficient (citations omitted)); *United States v. Boyle*, No. 08-CR-523 (CM), 2009 WL 484436, at *2 (S.D.N.Y. Feb. 24, 2009) (quashing Rule 17(c) subpoenas as "overly broad fishing expeditions" even through some evidence "may be relevant to the case at bar, [because] the bulk of materials sought by defendant would be inadmissible at defendant's trial and, therefore, not obtainable through a Rule 17(c) subpoena").

Therefore, the Court grants the Government's motion to quash the Challenged Subpoenas.

**B. The Remainder of the Government's Motion**

The Government also requests that the Court compel Huawei to "provide the [G]overnment and the Court with (i) a full accounting of any other Rule 17(c) subpoenas served in the case, and (ii) a copy of any materials received in response to Rule 17(c) subpoenas." Dkt. No. 773 at 1, 7. Huawei argues that the Government's "sweeping request" would require Huawei to "disclose

every Rule 17(c) subpoena it has served in this case and to turn over all materials received in response, all within three business days." Dkt. No. 784 at 7.

As an initial matter, as discussed above, Huawei has already identified to the Court and to the Government a materially identical subpoena served on a fourth bank (Dkt. No. 784 at 1 n.1), which would appear to render the Government's request largely moot. In any event, the Court will not grant the Government "a blanket ruling" that Huawei disclose all issued Rule 17(c) subpoenas and any responses received to date. *See Sun*, 2025 WL 2841646, at *3 (noting that "[t]here are no other Rule 17(c) subpoenas presently before the Court"). The Court therefore denies, without prejudice, the Government's request for a full accounting of all Rule 17(c) materials and a copy of all materials received in response to those subpoenas.

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part the Government's motion. The Challenged Subpoenas are quashed.

Dated: Brooklyn, New York
August 18, 2026

**SO ORDERED.**

*/s/ Joseph A. Marutollo*
JOSEPH A. MARUTOLLO
United States Magistrate Judge