**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:AAS
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 6, 2026

By ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

Consistent with the Court's September 4, 2026, order, the government respectfully submits this letter to address three issues that recently and unforeseeably developed and that require prompt judicial resolution, as set forth below. Notably, in the past months, the parties have engaged in good-faith discussions to raise, discuss, and resolve as many issues as possible without the Court's intervention.

I. Meng's Statement of Facts

The defense seeks to introduce unnecessary and confusing "surrounding context" regarding Huawei Chief Financial Officer Wanzhou Meng's statement of facts, ostensibly for the purpose of assisting the jury in determining what weight to assign to Huawei's adoptive admission. The Court should not permit such testimony, which would result in a needless and confusing minitrial on Meng's extradition and deferred prosecution agreement ("DPA").

This issue first surfaced when the defense responded to a stipulation proposed by the government shortly in advance of trial to admit Meng's statement of facts. Consistent with the Court's order permitting introduction of the statement of facts as an adoptive admission, the government sought to avoid witness testimony about the circumstances of the admission and instead proceed by stipulation. *See* ECF No. 717 at 18 ("[B]ecause the statement speaks for itself, there is no 'need to call prosecutors and defense attorneys as necessary fact witnesses.' The Court would not permit such testimony in any event because it would waste time and would be unnecessarily confusing."). In or about late August 2026, the defense informed the government that it will not agree to a stipulation that did not include so-called "surrounding context." The government requested clarification regarding the context defense seeks to admit, which the defense provided on September 3, 2026. The defense advised that it will seek to introduce, *inter alia*, the details of Meng's DPA (including that it resolved a pending criminal case against her), her arrest

and home detention in Canada, and subsequent release to China without pleading guilty to a criminal charge. Later, immediately after the court appearance on September 4, 2026, the defense notified the government that it intends to discuss such information during its opening statement. The government promptly sought to raise this issue with the Court the same afternoon.

After a court has made a preliminary finding of admissibility, a party is entitled to "introduce before the jury evidence that is relevant to the weight or credibility of [the] evidence." Fed. R. Evid. 104(e). However, such evidence must still be relevant, and the dangers such as juror confusion and undue delay must not substantially outweigh the evidence's probative value. Fed. R. Evid. 403. Here, the defense's intended evidence is irrelevant and would cause a lengthy and confusing minitrial about whether Meng meant what she said in a sworn statement to the Court. Whether Meng's statement of facts was attendant to a guilty plea or a DPA has no bearing on the weight of Huawei's adoptive admission. In either case, Meng appeared in court and made the statement under oath. The only conceivable relevance of the evidence the defense seeks to admit would be to suggest that Meng's counseled and sworn admissions—made while serving as Huawei's sitting CFO—were somehow untruthful or obtained under duress. But asking the jury to infer that Huawei's CFO lied to the court based on Huawei's description of her alleged incentives to do so invites impermissible speculation, at great cost to the efficiency of the trial. "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Any argument based on duress or fraud would have no basis in fact and instead rest merely on innuendo, particularly where Huawei and Meng were contemporaneously represented by the same law firm. Moreover, evidence of the government's charging and plea decisions with respect to Meng would invite nullification by suggesting that, because Meng was permitted to avoid a conviction or prison sentence, Huawei likewise should not be convicted.

If the defense's intended evidence were allowed, the government would need to rebut with, *inter alia*, evidence of Huawei's celebration of Meng's return to China, the representation of Meng and Huawei by the same law firm, Huawei's advocacy on behalf of Meng to the U.S. and Canadian governments, as well as the international diplomatic dispute involving three sovereigns, including the Chinese government's detention, and subsequent release upon Meng's return, of two Canadian citizens. In the Court's words, any such collateral sideshow "would waste time and would be unnecessarily confusing." ECF No. 717 at 18. In summary, if Huawei wants to introduce the circumstances of its adoptive admission, such evidence should be limited to Huawei's words and deeds, in the context of Meng's sworn admissions before this Court. No more is necessary for the jury to properly assess the weight of Huawei's admission. *See* Fed. R. Evid. 801(d)(2)(B) Advisory Comm. Notes ("When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue.").

II. Witness 1

Following the September 4 hearing, the government disclosed its anticipated witnesses for the first week of trial. The defense subsequently notified the government that it intends to object to the anticipated testimony of the government's first witness ("Witness 1") regarding his understanding that: (1) the Iranian regime indirectly owns the two major Iranian telecommunications operators (one of which is his former employer) and (2) the technical

requirements for broadband surveillance were established by "Zaiem," which is the technical arm of the Iranian intelligence apparatus. Although this issue is resolved through a straightforward application of Federal Rule of Evidence 602, the defense requested the government's consent to brief the issue. Accordingly, the government promptly sought to raise this issue with the Court.

Witness 1's anticipated testimony is based on his experience working in the Iranian telecommunications industry, including review of pertinent ownership documentation. Huawei incorrectly asserts that he lacks personal knowledge as to both areas of expected testimony and that any testimony regarding ownership constitutes an improper legal conclusion. *First*, "personal knowledge of a fact 'is not an absolute' to Rule 602's foundational requirement, which 'may consist of what the witness thinks he knows from personal perception.'" *United States v. Cuti*, 720 F.3d 453, 458-59 (2d Cir. 2013) (quoting Fed. R. Evid. 602 Advisory Committee's Note). Witness 1 worked in telecommunications in Iran and was included on communications that referenced "Zaeim." Indeed, the Court has already deemed admissible a series of correspondence involving Zaeim, Huawei, and Witness 1's employer that copies Witness 1. *See* Aug. 19, 2026 Sealed Order at 8-11, 19-20. Witness 1 may properly testify about his understanding of what the term "Zaiem" meant, and the defense of course may cross-examine him on that topic. *Second*, Witness 1 is not purporting to offer expert testimony on a complicated legal question, but rather his understanding of ownership based on his experience in the industry and review of pertinent documents. *See Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 111 (2d Cir. 2002). Likewise, his testimony as to his own understanding of who owned a company in Iran does not constitute an impermissible legal conclusion.

III. <u>Witness 2</u>

On June 5, 2026—following the motion *in limine* deadline—the government interviewed a witness ("Witness 2"), who is expected to testify in approximately mid-September.[1] The interview was recorded by the Royal Canadian Mounted Police (the "RCMP"), but the recording has not been provided to the U.S. government, which did not itself record the interview. Instead, an FBI agent took notes during the interview, which were later memorialized in a report. The government in recent weeks disclosed to the defense those notes, the FBI report, and a related *Giglio* disclosure. On August 28 and September 2, the government also asked that the RCMP provide a copy of the interview recording and advise as to timing for such a production. To date, the RCMP has neither confirmed whether it will produce the recording nor any timeframe for doing so. In correspondence on August 29, 2026, the defense advised that it will object to Witness 2's testimony absent production of the RCMP's recording. Given that the recording is not in the government's possession, the government has satisfied its discovery obligations by disclosing the notes, the report, and a *Giglio* disclosure. *See United States v. Ahemeid*, No. 20-CR-502 (BMC), 2025 WL 1952203, at *2 (E.D.N.Y. July 16, 2025). The defense appears to suggest that the government's ability to call a witness could hinge on the decision of a foreign government about whether and when to disclose materially duplicative items in its possession, notwithstanding the absence of a reason to impute those materials to the government. But that is not the law.

[1] This issue is time sensitive, given the logistics involved with coordinating travel for an international witness, including the need to coordinate with Canadian authorities.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN J. NAUVEL
Acting Chief, Counterintelligence and Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron Jennen
Trial Attorney

cc: Clerk of the Court (by ECF and Email)
Defense counsel of record (by Email)