**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:AAS
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 14, 2026

By ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

Consistent with the Court's September 11, 2026, order the government respectfully submits this letter to address the following issues: (1) whether the defense is obligated under Rule 26.2 of the Federal Rules of Criminal Procedure to disclose to the government statements of current and former Huawei employees whom the defense intends to call as witnesses at trial; and (2) whether documents produced to the government by third parties are rendered inauthentic within the meaning of Rule 901 of the Federal Rules of Evidence by virtue of redactions implemented by the third parties.

I. Rule 26.2

In recent written correspondence, the defense has informed the government that it will not produce statements of current and former Huawei employees who testify as defense witnesses, claiming the exclusionary language regarding statements of a testifying witness "other than the defendant" in Rule 26.2(a) applies to the testimony of all current and former employees of the Huawei defendants. This reading is incorrect and would effectively relieve corporate defendants of their disclosure obligations for statements of employee trial witnesses. As discussed below, the Fifth Amendment protections codified into the exclusionary language of Rule 26.2 do not apply to corporate defendants, which do not enjoy the Fifth Amendment privilege against self-incrimination.

As relevant here, Rule 26.2 contemplates the production, on motion of the opposing party "[a]fter a witness other than the defendant has testified on direct examination," of "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Rule 26.2(a). Rule 26.2 was created to provide a procedure for ensuring that the defense produced relevant prior statements of all defense witnesses after their testimony. According to the 1979 Advisory Committee notes, Rule 26.2 was promulgated "consistent with

the reasoning" of *United States v. Nobles*, 422 U.S. 225 (1975), a case that rejected the Fifth Amendment privilege claim of a defendant who had been ordered to release witness interview notes. In *Nobles*, the defense sought to introduce the testimony of a defense investigator who had interviewed prospective prosecution witnesses and prepared a report of their conversations. When the defendant called the investigator to impeach eyewitness testimony identifying the defendant as the robber, the trial judge granted the prosecution the right to inspect the portions of the investigator's report relating to the witnesses' statements, as a potential basis for cross-examination. After the defense declined to produce the report, the trial judge refused to permit the investigator to testify. The Supreme Court upheld the trial court's actions, concluding that "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial." *Id.* at 234. As Rule 26.2 codified *Nobles*, the exclusion of statements of "the defendant" from the rule was designed to protect and to recognize the individual defendant's right against self-incrimination under the Fifth Amendment. *Id.*

The basis for the Rule thus has no application to corporations, which do not enjoy this Fifth Amendment privilege. Indeed, under the collective entity doctrine, "no artificial organization may utilize the personal privilege against compulsory self-incrimination." *Bellis v. United States*, 417 U.S. 85, 90, 94 (1974). "The reason underlying the restriction of this constitutional privilege to natural individuals acting in their own private capacity is clear. The scope and nature of the economic activities of incorporated and unincorporated organizations and their representatives demand that the constitutional power of the federal and state governments to regulate those activities be correspondingly effective." *United States v. White*, 322 U.S. 694, 700 (1944). Applying this doctrine, the Supreme Court has held, for example, that corporate representatives or custodians of record cannot assert their personal Fifth Amendment privilege against self-incrimination regarding corporate records. *See Braswell v. United States*, 487 U.S. 99, 113 (1988).

So too here. There is no legal basis to extend the limited protections of Rule 26.2 to preclude production of witness statements belonging to a defendant's employees, particularly where the Fifth Amendment shield against self-incrimination does not apply to corporations. Moreover, the extreme application of Rule 26.2 which the defendants advocate would sanction bizarre results. As here, corporations could pursue a trial-by-ambush strategy for all employee witnesses in complex criminal prosecutions by which they could make essentially no disclosures, whereas the effect for a natural person defendant— the intended beneficiary of the rule—is inherently limited to one witness: himself or herself.

## II. <u>Authentication of Redacted Documents</u>

In response to the government's written notice of intent to rely on authenticity certifications of custodians of record for certain materials, *see* Fed. R. Evid. 902(11), the defense has indicated that it intends to challenge the authenticity for documents originally produced to the government by third parties that bear privilege or privacy redactions. The records in question

appear to consist primarily of emails produced by several international financial institutions.[1] For the reasons discussed below, privilege or privacy redactions do not render the records inauthentic.

As is the case here, documents may be self-authenticating, where "[t]he original or a copy of a domestic record . . . meets the requirements of Rule 803(6)(A)-(C), as shown by a certification of the custodian or another qualified person that complies with a federal statute or a rule prescribed by the Supreme Court." Fed. R. Evid. 902(11). "A record of regularly conducted business activity would be eligible for admission as self-authenticating under Rules 902(11) and 803(6) if the record is accompanied by a written declaration of its custodian" who certifies that the criteria for business records under Rule 803(6) apply. *United States v. Komasa*, 767 F.3d 151, 154-55 (2d Cir. 2014). "Rules 902(11) and 803(6) are thus designed to work in tandem." *Id.* at 155; *see United States v. Conde*, 134 F.4th 82, 87-88 (2d Cir. 2025) (same).

For materials that are not self-authenticating, Rule 901(a) of the Federal Rules of Evidence provides that a proponent "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." "The bar for authentication of evidence is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007); *see also United States v. Tin Yat Chin*, 371 F.3d 31, 37 (2d Cir. 2004) (Rule 901 "does not erect a particularly high hurdle."). The proponent need not "rule out all possibilities inconsistent with authenticity, or [] prove beyond any doubt that the evidence is what it purports to be." *United States v. Pluta*, 176 F.3d 43, 49 (2d Cir. 1999) (internal quotation marks and citation omitted). Rather, "the standard for authentication is one of 'reasonable likelihood,' and is 'minimal.'" *Gagliardi*, 506 F.3d at 151. "Proof of authentication may be direct or circumstantial." *United States v. Al-Moayad*, 545 F.3d 139, 172 (2d Cir. 2008). "Rule 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." *Id.* at 173 (internal quotation marks omitted).

The question of authenticity does not depend on the veracity of the evidence, nor on susceptibility to hypothetical tampering, because such attributes go to weight rather than admissibility. *See*, *e.g.*, *United States v. Hamilton*, 334 F.3d 170, 186-87 (2d Cir. 2003) ("Once [proffered evidence] has been sufficiently authenticated, any question as to the veracity of the [evidence] . . . goes to the evidence's weight rather than to its admissibility."); *United States v. Reid*, 650 F. Supp. 3d 182, 196 (S.D.N.Y. 2023) ("Chain of custody and arguments concerning the susceptibility of evidence to tampering go to the weight, not admissibility, of evidence." (collecting cases)). "The ultimate determination as to whether the evidence is, in fact, what its proponent claims is thereafter a matter for the jury." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). In other words, authentication "merely renders [evidence] admissible, leaving the issue of [its] ultimate reliability to the jury." *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001). "Thus, after the proponent of the evidence has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be, the opposing party 'remains free

[1] On September 13, 2026, the government disclosed email and header records it received two days earlier from a media outlet containing the media outlet's redactions for journalistic privilege; the government also received and produced an authenticity certification. The government expects that the arguments set forth herein apply with equal force to the media emails.

to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the evidence—not to its admissibility." *Vayner*, 769 F.3d at 131 (internal quotation marks omitted); *see also United States v. Harvey*, 117 F.3d 1044, 1049 (7th Cir. 1997) ("Only a prima facie showing of genuineness is required; the task of deciding the evidence's true authenticity and probative value is left to the jury.").

As an initial matter, the government is unaware of any authority standing for the proposition that redactions made by a nonparty witness because of foreign privacy law or privilege somehow invalidate an applicable certificate of authenticity, or render documents somehow inauthentic. Indeed, it appears uncontroverted that the materials in this case—primarily email content produced by several global financial institutions—meet the business record requirements of Rule 803(6) and were in part (as to header information and electronic copies) "generated by an electronic process or system that produces an accurate result." Fed. R. Evid. 901(13).

Even assuming *arguendo* that the records at issue were not self-authenticating, Rule 901(b) provides a non-exhaustive list of ways in which proponents can meet the "not particularly high" standard for authentication. *See Gagliardi*, 506 F.3d at 151. Most notably, under Rule 901(b)(4), authenticity can be established by a record's "distinctive characteristics," such as "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" that demonstrate an item's authenticity. These "circumstances" can include, for instance, the circumstances surrounding the acquisition or discovery of the documents, such as the production from a third party or a certificate of authenticity. *See, e.g.*, *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 637 F. App'x 645, 649 n.7 (2d Cir. 2016) ("[T]he document's substantive detail regarding ATEC's business, *see* Fed. R. Evid. 901(b)(4), as well as the fact that it was produced by ATEC itself, made it 'reasonably likely' that it is, as GPECS maintains, a third-party consultant's report."); *Audino v. Glob. IVR Sols., LLC*, No. 16-CV-796V(F), 2020 WL 9848454, at *9 (W.D.N.Y. Jan. 22, 2020) ("The payroll records and W-2 statements also contain self-authenticating metadata, which consists of a client number, run-date, and payroll company insignia on each document, supporting the conclusion that the exhibits entered are copies of authentic payroll records and W-2 statements produced by a third-party professional payroll company pertaining to Plaintiff, satisfying the requirements under Fed. R. Evid. 901(b)(4) for authenticating electronic documents."); *Am. Honda Fin. Corp. v. Route 57 Dev., LLC*, No. 7:13-CV-0260 (GTS/ATB), 2016 WL 843377, at *13 (N.D.N.Y. Mar. 1, 2016).

Coupled with the other surrounding circumstances, the appearance, contents, substance, and distinctive characteristics of the materials satisfy the requirements of Rule 901(b)(4). The emails bear the email addresses of Huawei and the producing entities' employees; the substance of the communications pertains to Huawei's misrepresentations to global financial institutions regarding its Iran-based business; and the signature lines of the interlocutors often indicate their employment with either Huawei or the producing entities. Further lending support to the documents' authenticity are the applicable certificates of authenticity from the producing entities, as well as the production by the third parties to the government. *See AT Engine Controls Ltd.*, 637 F. App'x at 649 n.7. In sum, the materials in question are authentic on their face under the rules, and the Court should permit the government to authenticate them without requiring the testimony of the producing parties' custodians of record. To the extent that the defense has

objections to particular redactions or to admissibility of particular documents or parts of documents on hearsay or other grounds, those objections have no bearing on authenticity—the simple proposition that the documents are what the government purports them to be.

## III. Conclusion

For the foregoing reasons, the Court should rule that (1) the defense is obligated under Rule 26.2 of the Federal Rules of Criminal Procedure to disclose to the government statements of current and former Huawei employees who will testify for the defense; and (2) documents produced to the government by third parties are not rendered inauthentic within the meaning of Rule 901 of the Federal Rules of Evidence by virtue of redactions by the third parties.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN J. NAUVEL
Acting Chief, Counterintelligence and Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron Jennen
Trial Attorney

cc: Clerk of the Court (by ECF and Email)
Defense counsel of record (by Email)