# Exhibit D

BAKER & McKENZIE

Baker & McKenzie LLP
Two Embarcadero Center, 11th Floor
San Francisco, California 94111-3802, USA

Tel: +1 415 576 3000
Fax: +1 415 576 3099; 576 3098
www.bakernet.com

Asia Pacific
Bangkok
Beijing
Hanoi
Ho Chi Minh City
Hong Kong
Jakarta
Kuala Lumpur
Manila
Melbourne
Shanghai
Singapore
Sydney
Taipei
Tokyo

Europe & Middle East
Almaty
Amsterdam
Antwerp
Bahrain
Baku
Barcelona
Berlin
Bologna
Brussels
Budapest
Cairo
Dusseldorf
Frankfurt / Main
Geneva
Kyiv
London
Madrid
Milan
Moscow
Munich
Paris
Prague
Riyadh
Rome
St. Petersburg
Stockholm
Vienna
Warsaw
Zurich

North & South America
Bogota
Brasilia
Buenos Aires
Caracas
Chicago
Chihuahua
Dallas
Guadalajara
Houston
Juarez
Mexico City
Miami
Monterrey
New York
Palo Alto
Porto Alegre
Rio de Janeiro
San Diego
San Francisco
Santiago
Sao Paulo
Tijuana
Toronto
Valencia
Washington, DC

March 17, 2011

Mr. Thomas Meade
Office of Foreign Assets Control
United States Department of Treasury
1500 Pennsylvania Avenue, N.W.
Washington, D.C. 20220

John F. McKenzie
Tel: +1 415 576 3033
john.mckenzie@bakermckenzie.com

**RE: <u>Chengdu Huawei Symantec Technologies Co., Ltd.: Voluntary Self-Disclosure</u>**

Dear Mr. Meade:

As you will recall, pursuant to an e-mail dated December 28, 2010, you requested certain commercial documents pertaining to two (2) transactions that were the subject to a voluntary self-disclosure letter, dated February 26, 2010, that we filed with the Office of Foreign Assets Control ("OFAC") on behalf of Chengdu Huawei Symantec Technologies Co. Ltd., a Chinese corporation ("H-S"). In response to your December 28, 2010 e-mail request, by this letter I am pleased to furnish the H-S documents that you requested. I apologize for the delay in furnishing these materials to you, which was occasioned by the holidays in the United States and then the Chinese New Year Holiday in China.

**1. <u>Introduction</u>**

As a threshold matter, I do want to confirm that you have a complete set of the documents and materials that make up to the H-S voluntary self-disclosure. In that context, I note that your e-mail references the February 26, 2010 voluntary self-disclosure letter. Please note, however, that we supplemented that February 26, 2010 letter with additional letters to OFAC dated April 20, 2010 and May 17, 2010, respectively. For the avoidance of doubt, I enclose as **Exhibit No. 1** to this letter copies of those April 20, 2010 and May 17, 2010 supplemental letters.

I do particularly wish to call your attention to a May 12, 2010 letter to H-S from the Commerce Department's Office of Export Enforcement, which was attached to the May 17, 2010 letter that we sent on behalf of H-S to OFAC. For your ease of reference, I enclose a duplicate of the Office of Export Enforcement May 17, 2010 letter as **Exhibit No. 2** to this letter. As you will note, the Office of Export Enforcement concluded that the transactions that were the subject to the voluntary self-disclosure (both to the Office of Export Enforcement and to OFAC) did ***not*** constitute violations of the Export Administration Regulations, because (i) the H-S products in question were incorporated into complete telecommunications systems by H-S OEM partner, Huawei Technologies Co. Ltd. ("Huawei"); and (ii) the H-S products constituted only a minimal portion of the total Huawei telecommunications systems, well below the 10 percent *de minimis* threshold specified in section 734.4 of the Export Administration Regulations.

DEFENSE EXHIBIT
DX-03654.1
18 CR 457 (AMD)

As explained in our May 17, 2010 letter to OFAC, the finding of no violation by the Office of Export Enforcement, on the basis of a *de minimis* analysis, supports the conclusion that the H-S transactions reported to OFAC in the February 26, 2010 voluntary self-disclosure letter were also outside the jurisdictional scope of the OFAC trade sanctions directed at Iran, in accordance with sections 560.205(b) and 560.420 of the Iranian Transactions Regulations.

2. **<u>MTN Irancell Transaction</u>**

In the February 26, 2010 voluntary self-disclosure letter, we reported that H-S had determined that, in the autumn of 2008, it had sold certain OceanStor S-3100 data storage devices to Huawei, under the OEM agreement between H-S and Huawei, which Huawei incorporated into complete telecommunications systems that were sold to a Huawei reseller in the United Arab Emirates apparently for eventual resale to MTN Irancell, an Iranian entity. We also explained that that OceanStor S-3100 device, although manufactured by H-S in China, may contain certain United States origin parts, components, materials and software, and may, therefore, be subject to United States export control jurisdiction. H-S has classified that OceanStor S-3100 data storage device for United States export control purposes, therefore, under ECCN 4A994 on the Commerce Control List.

H-S sells the OceanStor S-3100 data storage devices or components therefor to Huawei "in bulk" on an OEM basis, which Huawei then incorporates into its telecommunications systems, which are resold by Huawei to various customers and resellers around the world. H-S is, therefore, unable to identify the specific OceanStor S-3100 units or components that were incorporated into individual Huawei systems and were sold, either directly or through a reseller, to any particular end-user (such as MTN Irancell). It is not, therefore, possible to identify the particular Huawei purchase orders and corresponding H-S invoices for the specific OceanStor S-3100 data storage devices that were incorporated into the Huawei systems that were ultimately supplied to MTN Irancell.

Nonetheless, in order to respond to your request, attached to this letter as **Exhibit No. 3** are copies of the purchase orders submitted by Huawei to H-S for OceanStor S-3100 devices in the autumn of 2008. To the best of H-S' knowledge, the OceanStor S-3100 data storage devices that Huawei incorporated into the systems ultimately supplied by a Huawei reseller to MTN Irancell were included among the products supplied by H-S to Huawei in the transactions reflected in the commercial documents attached to this letter as **Exhibit No. 3**.

I note that you also requested copies of shipping documents for the MTN Irancell transaction in your December 28, 2010 e-mail. As the OceanStor S-3100 devices were delivered by H-S to Huawei at the Huawei facility in Shenzhen, China, and as H-S had no involvement in, or visibility to, Huawei's supply of the complete telecommunications system

to its reseller, H-S does not have any shipping documents reflecting the shipment of the Huawei systems (including the OceanStor S-3100 products) from Huawei to its reseller, or from that reseller to MTN Irancell. For your reference, however, attached to this letter as **Exhibit No. 4** are copies of H-S' delivery notes, confirming delivery to Huawei of the OceanStor S-3100 units covered by the Huawei purchase orders attached as **Exhibit No. 3**.

H-S believes that the purchase orders and delivery notes attached hereto as Exhibits Nos. 3 and 4 correspond to the OceanStor devices that Huawei ultimately sold, as part of Huawei systems, to a reseller in the United Arab Emirates because of the "H-S contract" notation appearing on each of the delivery notes. As you will see, the H-S alphanumeric contract notation includes the letters "UAE" as the country code for the country to which the H-S products in question were destined.

In connection with a request from the Office of Export Enforcement, H-S obtained an analysis from Huawei about the OceanStor S-3100 data storage device as a component of the complete Huawei telecommunications systems. In that analysis, Huawei represented that: (i) the OceanStor S-3100 device was the only component of the Huawei telecommunications systems that were supplied to MTN Irancell that was subject to United States export control jurisdiction; and (ii) the OceanStor S-3100 device constituted only 2.79 percent of the total value of the Huawei telecommunication system in which it is incorporated. A copy of that Huawei *de minimis* analysis was included as an attachment to our April 20, 2010 supplemental letter to OFAC. For your ease of reference, however, I attach a duplicate of that Huawei *de minimis* analysis as **Exhibit No. 5** to this letter.

**3. <u>Loan of H-S Product to International Turnkey Systems</u>**

The other H-S transaction that we reported to OFAC in the February 26, 2010 voluntary self-disclosure letter involved the ***loan*** of an OceanStor S-3100 data storage device to International Turnkey Systems ("ITS"), a company based in the United Arab Emirates. H-S had reason to suspect that that OceanStor S-3100 may have been temporarily transferred by ITS to Sudan.

Because the product was loaned to ITS for testing purposes only, for a limited 6 month period, there are, of course, no purchase and sale documents (*i.e.*, purchase order, sales acknowledgement, commercial invoice, etc.) reflecting that loan transaction. Instead, the terms and conditions under which H-S loaned that OceanStor S-3100 device to ITS were memorialized in a Product Loan Agreement between the parties, dated February 16, 2009.

In accordance with your request, attached to this letter as **Exhibit No. 6** is a copy of that February 16, 2009 Product Loan Agreement (another copy of that Product Loan Agreement was previously furnished to OFAC as an attachment to our April 20, 2010 letter). As you will note, under section 3.4 of the Product Loan Agreement, ITS was required to return that OceanStor S-3100 device to H-S upon expiration of that six month testing period.

BAKER & MCKENZIE

In accordance with that requirement, the OceanStor S-3100 device was returned by ITS to H-S on or about December 9, 2009. In confirmation of the return of that product, attached to this letter as **Exhibit No. 7** is a copy of the certificate of Mr. Tad Lebeck, the H-S Chief Technology Officer, confirming that he personally verified the return of the OceanStor S-3100 to H-S representatives in Dubai, United Arab Emirates.

**4. Conclusion**

I hope that the foregoing information and the attached materials are responsive to your needs. I do wish to reconfirm that H-S is committed to full cooperation with OFAC's inquiries and investigation into the matters reported in the February 26, 2010 voluntary self-disclosure letter. To that end, if you should have any questions about the attached materials, or if you require any additional information to complete your review of those matters, please do not hesitate to contact me (telephone number +1 415 576 3033; e-mail address: john.mckenzie@bakermckenzie.com).

Sincerely yours,

John F. McKenzie
Attorney for Chengdu Huawei Symantec Technologies Co., Ltd.

JFM/ldh
Attachments

cc: Michelle C. VonderHaar, Esq., Chengdu Huawei Symantec Technologies Co., Ltd.
Dr. Angela Ling, Chengdu Huawei Symantec Technologies Co., Ltd.

*This letter and its Exhibits contain H-S proprietary and confidential information and trade secrets, which are exempt from public disclosure under the Freedom of Information Act (FOIA), 5 U.S.C. sec. 552(b)(4). Such H-S proprietary and confidential information is also protected by the Trade Secrets Act, 18 U.S.C. sec. 1905. Any disclosure of any H-S proprietary and confidential information could adversely affect H-S' financial or competitive position and the normal course of H-S' business. Accordingly, we respectfully request that this letter, its accompanying Exhibits and the information contained herein be maintained in confidence, and withheld in the event of any demand or request for release or disclosure. We further request that, in the event of any such demand or request for release or disclosure, the Office of Foreign Assets Control provide H-S with prompt notice of that demand and the opportunity to be heard prior to any such release or disclosure.*

**Exhibit No. 5**

1、 华为解决方案：

MTN和Syria Tel项目采用如下流程，在用户经华为接入设备连线到华为解决方案，用户完成消费后将计费及日志信息存放到OceanStor设备。

（关键词：接入设备 Access equipment/计费 Charging/日志 log）



2、 微量例外测算结果：

经华为内部相关员工对交付的内贸合同BOQ进一步确认，在前期华赛VSD中所指的在伊朗MTN和叙利亚Syriatel两个项目，除华赛产品外，没有其他的美国产品；

De Minimis calculation as follows:

| 合同号 | 项目名 | 合同总金额 | 产品名称 | 产品总价 | 比率 |
|---|---|---|---|---|---|
| 0003640807029A | MTN Irancell | 378199.21 | S3100 | 10549.236 | 2.79% |

| 合同号 | 项目名 | 合同总金额 | 产品名称 | 产品总价 | 比率 |
|---|---|---|---|---|---|
| 0007600806150A | Syriatel | 17824367.16 | S3100 | 671786 | 3.77% |

1. Huawei Solution

MTN and Syria Tel projects adopt the following process: users are connected to Huawei Solutions via Huawei access equipment; and after their use, the charging information and log information will be saved in OceaStor equipment.
(Key words: Access equipment / Charging / Log)




2. *De Minimis* Exception Evaluation Result:

As further confirmed by the relevant employee of Huawi through studying the delivered domestic trade contract BOQ, in the Iran MTN project and the Syriatel project referred to in the previous Huawei-Symantec VSD, there is no US product other than the products of Huawei-Symantec:

De Minimis calculation as follows:

| Contract Number | Project Name | Total Contract Amount | Product Name | Price of the Product | Percentage |
|---|---|---|---|---|---|
| 0003640807029A | MTN Irancell | 378,199.21 | S3100 | 10,549.236 | 2.79% |

| Contract Number | Project Name | Total Contract Amount | Product Name | Price of the Project | Percentage |
|---|---|---|---|---|---|
| 0007600806150A | Syriatel | 17,824,367.16 | S3100 | 671,786 | 3.77% |