SIDLEY JENNER&BLOCK LLP Steptoe

October 5, 2026

**Via ECF**
The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *United States v. Huawei Technologies Co., Ltd*, No. 18-457 (S-4) (AMD) (JAM)
Motion to Cross-Examine Agent Sweeney Regarding Ms. Meng's DPA

Dear Judge Donnelly:

This week, the government will introduce Ms. Wanzhou Meng's Statement of Facts—which the Court has admitted against Huawei as an adoptive admission—through Leigh Ann Sweeney, a former FBI Agent. However, the government plans to do so using a series of exhibits that omit critical facts, including circumstances relevant to the jury's assessment of whether Huawei adopted the Statement and, if so, what weight the adoption is due. Huawei therefore seeks to (a) cross-examine Agent Sweeney regarding the existence and relevant terms of the DPA, and (b) admit unredacted versions of the DPA and the transcript of Ms. Meng's arraignment hearing before the Court. Those documents will tend to show the jury that Huawei did not adopt the Statement. Even if the jury believes it did, the jury might believe that the admission should not be given significant weight in assessing Huawei's guilt. For example, the jury could conclude that the Statement was not a clear confession to criminal wrongdoing, or that Huawei adopted the Statement under circumstances in which disavowing it risked placing Ms. Meng in breach of the terms of her DPA. The limited but necessary context Huawei seeks to introduce will permit the jury to fairly assess what weight, if any, to assign to the adoption.

Huawei does not seek to relitigate this Court's determination that the Statement is admissible as an adoptive admission. Nor does Huawei seek to litigate what Ms. Meng intended when she signed the Statement. Rather, Huawei seeks to introduce limited evidence, including through narrow cross-examination and the DPA itself, reflecting the circumstances surrounding Ms. Meng's agreement to the Statement and Huawei's adoption so that the jury can fairly assess the weight to give that evidence. This request is fully consistent with the Court's prior rulings on the admissibility of the Statement of Facts, which is relevant to this case only to the extent the jury agrees with the government that Huawei adopted it. If the jury rejects that premise, it is irrelevant hearsay. Non-hearsay evidence relevant to whether Huawei adopted the Statement, to what extent, and under what circumstances is plainly relevant and critical to Huawei's defense.

## BACKGROUND

As the Court is aware, in September 2021, Ms. Meng entered a DPA with a Statement of Facts in which she admitted that certain representations she made to HSBC regarding Huawei's relationship with Skycom "were untrue." *See* GX-25003 (Ex. A) at 10. As part of the DPA, the government agreed to defer prosecution of then-pending fraud and IEEPA charges against Ms.

Meng, who had been detained in Canada and was contesting potential extradition to the United States. GX-25003 (Ex. A) at 4. The DPA also provided that, so long as Ms. Meng complied with standard conditions of release (from her home in China) and signed the Statement of Facts, the charges against her would be dismissed and she would not be required to return to the United States to participate in any future proceedings. *Id.* at 5-6. Following Ms. Meng's agreement to the DPA, she was permitted to return home to China and be reunited with her family. *See* DX-03726 (Ex. B).

Before trial, the Court made a preliminary determination that the government could introduce Ms. Meng's Statement of Facts against Huawei as the company's adoptive admission under Federal Rule of Evidence 801(d)(2)(B). Dkt. 730 at 8-18; *see* Fed. R. Evid. 104(b). The Court later held that Huawei could not describe the circumstances of Ms. Meng's Statement or Huawei's supposed adoption of it in its opening statement. Tr. 185:1-21. In doing so, the Court did not foreclose evidence regarding the circumstances of the DPA, nor prevent Huawei from disputing the import the government would ask the jury to assign the Statement. Rather, the Court ruled that Huawei could elicit evidence and testimony on these topics—either from Ms. Meng or from someone qualified to "testify about the circumstances under which the statement is alleged to be adopted"— in a "non-hearsay way." *Id.* at 185:17-20.

The competing views of the Statement of Facts have been central from day one of this case. In its opening statement, the government emphasized Ms. Meng's Statement of Facts as substantial evidence of Huawei's guilt. It explained that Ms. Meng "appeared by video in this very courthouse in Brooklyn and admitted under oath that" her representations to HSBC about Huawei's relationship with Skycom were "false," that Huawei used U.S. banks to engage in Iran-related transactions, and that Huawei violated sanctions in doing so. *Id.* at 217:16-23, 221:2-8. The defense argued that, although the government would ask the jury to "treat Ms. Meng's statement as a confession that Huawei committed crimes," *id.* at 238:24-239:1, the Statement "contains no admission by Ms. Meng that she intended to deceive anyone or commit fraud," and Huawei "did nothing to adopt" Ms. Meng's Statement, *id.* at 240:7-9, 14-15.

The government recently notified Huawei that this week, it intends to elicit testimony from Agent Sweeney regarding Ms. Meng's Statement of Facts. It also intends to introduce two related exhibits. The first is a heavily redacted transcript of Ms. Meng's 2021 arraignment at which she entered the DPA. GX-25000-R-1 (Ex. C) (blue boxes indicate proposed redactions). According to its proposed exhibit, the government intends to redact all portions of the transcript except those portions showing that (a) the relevant proceeding was a "criminal cause for a change of plea hearing," (b) the Statement was translated to Ms. Meng in Mandarin, (c) Ms. Meng understood the DPA and Statement and entered into them voluntarily, and (d) Ms. Meng fully understood the nature of the proceedings against her. *See* GX-25000-R-1 at 1, 3-4, 13-14, 16-17, 19 (Ex. C).[1] The government also intends to introduce a version of the Statement of Facts that redacts the paragraph explaining that the agreement was entered as part of, and incorporated into, the DPA, and that Ms. Meng was charged alongside Huawei in these criminal proceedings. *See* GX-25002-1 at 1 (Ex. D).

---

[1] The government has advised Huawei that it intends to make minor revisions to its proposed redactions. Those revisions are not expected to affect the issues raised in this letter.

The government does not intend to introduce the DPA itself or to tell the jury that the Statement was incorporated into a negotiated deferred prosecution agreement.

To fairly contextualize the circumstances under which Huawei supposedly adopted the Statement, Huawei seeks to admit three exhibits through Agent Sweeney: (a) an unredacted version of the DPA (DX-03727 (Ex. E)); (b) an unredacted version of Ms. Meng's arraignment hearing (GX-25000 (Ex. F)); and (c) Huawei's press release regarding Ms. Meng's agreement (DX-03726 (Ex. B)). These exhibits will provide the jury with facts needed to understand how Huawei perceived and understood the Statement, the circumstances in which it was made, and why Huawei responded to the Statement with the press release it issued. Without this context, the jury would be presented with a distorted account suggesting that the Statement arose from a stand-alone admission of wrongdoing, rather than as one component of a negotiated agreement that resolved criminal charges against Ms. Meng and secured substantial benefits for her.

## ARGUMENT

### I. Huawei is Entitled to Present Evidence of the DPA.

It is well-established that where a court has determined that a statement is admissible as an adopted admission, that determination is "preliminary to a decision as to what inference should be drawn from it, which [is] ultimately a question for the jury to assess …." *United States v. Tocco*, 135 F.3d 116, 129 (2d Cir. 1998) (citing Fed. R. Evid. 104(b) and 8 Weinstein's Federal Evidence § 801.21[3] (2d ed. 1997)). As the Weinstein treatise explains, "[t]he judge should make admissibility determinations under Rule 104(b), by making a preliminary finding that there is sufficient evidence of a statement's admissibility as an adopted admission, then pass[] the final determination to the jury." 5 Weinstein's Federal Evidence § 801.31[2] (2026). The jury is then entitled to decide what weight to give the statement, which necessarily depends on the circumstances in which it was made. *Tocco*, 135 F.3d at 129. The Supreme Court has likewise established that after a court makes a threshold determination that a confession is voluntary and admissible, the defendant is entitled to introduce evidence showing the "circumstances" of that supposed confession. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also United States v. Morel*, 751 F. Supp. 2d 423, 430 (E.D.N.Y. 2010); *cf.* 18 U.S.C. § 3501(a). This entitlement flows from a defendant's right to a "meaningful opportunity to present a complete defense." *Crane*, 476 U.S. at 690. Thus, Huawei's actions surrounding Ms. Meng's Statement are relevant for the jury to decide what weight to give the government's evidence.

Here, Huawei should be permitted to introduce evidence and elicit testimony regarding the existence and terms of Ms. Meng's DPA to permit the jury to assess not only whether Huawei adopted Ms. Meng's Statement, but if so, what weight to give Huawei's supposed adoption. The unredacted DPA and arraignment transcript go directly to those circumstances. They show that:

- There was no reason for Huawei to disavow the Statement or dispute any of its particulars because the Statement was not a confession that Ms. Meng (or Huawei) committed a crime. Ms. Meng did not agree to the Statement as part of a guilty plea or other resolution that attached any criminal liability or criminal penalties such as

imprisonment or fines. Nor did the DPA include an admission of guilt or state that the government would be able to establish guilt were the charges against Ms. Meng to go to trial. *See* DX-03727-0001 to 0002. Instead, the Statement was part of a negotiated agreement that deferred prosecution altogether, without any admission or finding of guilt.

- Huawei's alleged adoption occurred at a time when disavowing the Statement risked placing Ms. Meng in breach of the terms of her DPA. *See* DX-03727-0003 at ¶ 7. The DPA expressly barred Ms. Meng or her "representative" from "contradicting" the Statement. *Id.* Had Huawei issued a press release that expressly disavowed the Statement, the government likely would have taken the position that Ms. Meng was in breach, thereby exposing Huawei's CFO to prosecution and potential imprisonment. Put simply, Huawei had a compelling reason not to dispute the Statement even if it disagreed with the Statement's contents.

Based on these facts, the jury could reasonably find that Huawei's failure to disclaim Ms. Meng's DPA and Statement did not constitute an adoption at all. Or the jury could conclude that Huawei's response was too ambiguous to carry significant weight and, at a minimum, does not support treating the alleged adoption as conclusive evidence of Huawei's guilt. Or it could decline to give Ms. Meng's statement substantial weight in assessing Huawei's guilt. Whatever the ultimate determination, the questions of whether Huawei adopted Ms. Meng's Statement and, if so, what weight the alleged adoption deserves rest with the jury. *Tocco*, 135 F.3d at 129; *Crane*, 476 U.S. at 690. The jury is therefore entitled to hear the surrounding circumstances to fairly assess those questions.

By presenting a redacted Statement without the limited backdrop of even the *existence* of the DPA, the government asks the jury to conclude that Huawei adopted the Statement without hearing other reasons that the jury could infer drove Huawei to act as it did. That presentation is highly misleading and, without the context of the DPA that incorporated the Statement, could lead the jury to believe that the Statement was a confession of guilt. *See* Fed. R. Evid. 106. That risk is enhanced by the government's argument in its opening statement that Ms. Meng "appeared by video in this very courthouse in Brooklyn and admitted under oath" that she made "false" statements and that "Huawei violated U.S. sanctions." Tr. 217:16-23. If the jury hears only that Ms. Meng signed a sworn statement that the government characterizes as a confession, and that she did so in connection with judicial proceedings before the very Court overseeing a criminal trial against Huawei, jurors will inevitably conclude precisely what the government wrongly intends to imply: that Ms. Meng pleaded guilty to a crime. To dispel this misimpression and defend against the government's characterization of the Statement, Huawei must be allowed to introduce evidence that the Statement was entered as part of a DPA, not a guilty plea, and that Huawei had little reason to contradict the Statement—and indeed, strong reasons not to do so—even if it disagreed with parts of the Statement. Testimony explaining what a DPA is, how Ms. Meng's operated, and the provisions that accompanied her assent to the Statement and Huawei's response are therefore necessary to permit the jury to fairly evaluate whether Huawei adopted the Statement and, if so, what weight to give Huawei's adoption.

## II. The Court's Pre-Opening Ruling Does Not Prohibit the Limited Evidence Huawei Seeks to Admit.

Huawei is mindful of the Court's pretrial ruling that the defense could not describe the circumstances of Ms. Meng's Statement or Huawei's supposed adoption of it except through Ms. Meng or another witness capable of speaking to those circumstances. Tr. 185:1-21. Huawei's request is not in tension with that ruling.

Huawei's request to elicit limited testimony and evidence regarding the existence and provisions of the DPA is much narrower than the Court's ruling contemplated. Huawei seeks only to introduce the DPA in order to fairly frame the circumstances under which Huawei purportedly adopted the Statement. This evidence does not go to the voluntariness of Ms. Meng's agreement to the DPA and Statement, nor does it ask the jury to second-guess Ms. Meng's state of mind. *See* Tr. 185:1-21. Rather, it goes directly to whether, given the highly relevant circumstances, Huawei adopted the Statement and, if so, how the jury should weigh that adoption.

Furthermore, Agent Sweeney is an appropriate witness through which to introduce this limited evidence and testimony. The government intends to introduce the Statement and portions of the arraignment transcript through her. The DPA and arraignment transcript are part of the same transaction and provide the factual context necessary for the jury to assess what, if anything, Huawei's subsequent conduct signified. Such objective evidence reflecting the circumstances surrounding the Statement is well within Agent Sweeney's purview as a former long-time FBI agent and need not necessarily come in through a Huawei employee directly involved in the negotiations. Tr. 185:14-21; *cf. Crane*, 476 U.S. at 686 (permitting defendant to cross-examine police officers regarding circumstances of confession); *Morel*, 751 F. Supp. 2d at 430 (similar). Agent Sweeney, as the witness through whom the government intends to introduce the Statement and related materials, is a proper witness through whom to introduce the accompanying documents needed to evaluate that evidence fairly.

Finally, evidence concerning the DPA and Statement of Facts would not constitute inadmissible hearsay because it is not being offered for its truth but instead to show the effect of the evidence on Huawei. *See* Tr. 185:14, 21. It would not require a third-party account describing Ms. Meng's state of mind when she entered the DPA. *Cf.* Tr. 185:11-14. It instead would involve in-court testimony from Agent Sweeney generally describing the existence and terms of the DPA. In addition, provisions of the DPA reflecting commitments made by the Department of Justice constitute statements of a party opponent under Rule 801(d)(2). *See, e.g.*, DX-03727-0001 ¶ 2. And provisions reflecting commitments imposed on Ms. Meng would not be offered for their truth, but rather to show the circumstances under which Ms. Meng agreed to the Statement of Facts and Huawei's state of mind when responding to the DPA through its press release. *See, e.g.*, DX-03727-0003 ¶ 7. The limited evidence Huawei seeks to introduce therefore presents no hearsay obstacle.

**CONCLUSION**

For these reasons, the Court should permit Huawei to cross-examine Agent Sweeney regarding the existence and relevant terms of the DPA, and to admit an unredacted version of the agreement.

Respectfully submitted,

/s/ David Bitkower
David Bitkower
Matthew S. Hellman
Katya Jestin
JENNER & BLOCK LLP
1099 New York Avenue, NW
Washington, D.C. 20001
(202) 639-6048
dbitkower@jenner.com

/s/ Douglas A. Axel
Douglas A. Axel
Melissa Colón-Bosolet
Michael A. Levy
Ellyce R. Cooper
Frank R. Volpe
SIDLEY AUSTIN LLP
787 7th Avenue
New York, NY 10019
(212) 839-5300
daxel@sidley.com

/s/ Brian M. Heberlig
Brian M. Heberlig
Ryan P. Poscablo
Julia Gatto
William L. Drake
Jessica I. Rothschild
STEPTOE LLP
1114 Avenue of the Americas
New York, NY 10036
(212) 506-3900
rposcablo@steptoe.com

*Counsel for Huawei Technologies Co., Ltd., Huawei Device USA Inc., Huawei Device Co., Ltd., and Futurewei Technologies, Inc.*