**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

NJM:MS
F. #2017R05903

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 7, 2026

By ECF

The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Huawei Technologies Co., Ltd., et al.
Criminal Docket No. 18-457 (S-4) (AMD)

Dear Judge Donnelly:

The government respectfully submits this letter in opposition to the defendants' motion to admit evidence of Huawei Chief Financial Officer ("CFO") Wanzhou Meng's Deferred Prosecution Agreement ("DPA"). *See* ECF No. 894. This is simply the latest effort by the defense to relitigate whether they can admit evidence of a deferred prosecution agreement with a non-party in this trial. The Court already precluded the defendants from raising Ms. Meng's DPA in their opening arguments. *See* Tr. 185. The analysis has not changed since then. Evidence of the DPA (and related additional "context," referred to in this motion as evidence of the DPA) remains irrelevant, unfairly prejudicial, and an invitation for jury nullification. And it would require the government to introduce substantial additional evidence re-contextualizing the DPA and the statement of facts. One of the lead defendant's principal officers confessed before this Court, after assuring the Court that her statements were voluntary and truthful, and the defendants' efforts to argue that those assurances were the product of coercive forces should be rejected. For the reasons that follow, the defendants' latest motion should be denied.

*First*, evidence of Ms. Meng's DPA is irrelevant. Whether Ms. Meng made her sworn statement as part of her DPA, as part of a guilty plea, or untethered to any criminal resolution at all does not bear on the weight to be afforded her statement. It is the *words* of her sworn statement that determine its evidentiary value in the first instance—not the criminal resolution that led to it. The defendants are free to argue that the language of her statement does not evidence "a clear confession to criminal wrongdoing." Mot. at 1. But that has nothing to do with the DPA. Indeed, the only conceivable relevance of the DPA would be for the defense to argue (or otherwise prompt the jury to infer) that Ms. Meng was lying in her testimony to this Court. For obvious reasons—including that Ms. Meng remains the sitting CFO and rotating Chairperson of Huawei—the defendants do not actually suggest that she committed perjury. Instead, the defendants vaguely

allude to "circumstances" and "context," without explaining how that indicates her words do not mean what they say.

The defendants fall back on the argument that the DPA is relevant to "contextualize the circumstances" under which Huawei adopted Ms. Meng's statement. Mot. at 3. But the defendants confuse relevance under Rule 401 with the definition of hearsay under Rule 801. They incorrectly assert that Ms. Meng's statement is "relevant to this case only to the extent the jury agrees with the government that Huawei adopted it." Mot. at 1. Not so. Ms. Meng's statement is *non-hearsay* to the extent Huawei adopted it.[1] *See* Fed. R. Evid. 801(d)(2)(B). It is *relevant* because it is the sitting CFO of the company admitting to central allegations in the case about which she had personal knowledge and, in doing so, "conced[ing] the elements of counts four through seven of the fourth superseding indictment." Order, ECF No. 717 at 10. To be sure, in the typical case of an adoptive admission, the weight of the admission turns in large part on the extent to which it was adopted. *See, e.g.*, *United States v. Tocco*, 135 F.3d 116, 129 (2d Cir. 1998) (holding that it was a jury question what weight should be afforded to the defendant's nod in response to inculpatory statement). For that reason, "most adoption issues are Rule 104(b) questions of conditional relevancy (e.g., whether the party heard a statement and had a chance to reply)." 5 Weinstein's Federal Evidence § 801.31[2] (2026). But in such cases, the initial declarant typically cannot, by herself, implicate the defendant. Here, however, because Ms. Meng is the sitting CFO of the lead defendant, her statement has independent relevance and weight, regardless of how clearly it was adopted.

The defendants' related arguments regarding relevance fall equally short. To the extent the defendants contend there was "no reason for Huawei to disavow the Statement . . . because the Statement was not a confession that Ms. Meng (or Huawei) committed a crime," Mot. at 3, again, they can make that argument based on the language of the statement itself. The existence of the DPA has no bearing on whether the words of the statement establish the elements of any crime. Nor is the DPA relevant because it prohibited Ms. Meng's personal representatives from contradicting the statement. Mot. at 4. The defendants vigorously contested and litigated the charges in this case—including during the pendency of Ms. Meng's DPA. They clearly did not believe that doing so risked breaching her DPA. Nor did the government, for its part, seek to breach Ms. Meng based on Huawei's defense against the charges.

*Second*, even if there were some bare relevance to the DPA (and there is not), any such relevance would be substantially outweighed by the danger of unfair prejudice to the government. *See* Fed. R. of Evid. 403. Introducing the DPA would be an invitation for jury nullification in multiple respects. It could suggest to the jury that, because the charges against Ms. Meng were resolved via deferred prosecution rather than a guilty plea, the defendants here similarly deserve leniency and should not be found guilty. Alternatively, it could suggest that, because Ms. Meng was charged with a crime at all, the company does not also need to be held

[1] Even aside from adoption, the government maintains its position that the statement is also non-hearsay as a statement of Huawei's agent and employee (and, in this case, sometimes-principal). ECF No. 590 at 18-23. Because the Court found the statement to be an adoptive admission, it did not reach this alternative argument. *See* ECF No. 717 at 13 n.10 (declining to address the argument).

criminally responsible for its conduct. All of this is improper nullification. In reality, there are many considerations that influence whether and how the Department of Justice makes charging and plea decisions, including "timing issues, the availability and allocation of law enforcement resources and prosecutorial priorities." *United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6999912, at *6 (E.D.N.Y. Dec. 20, 2019) (quotation omitted). For these reasons, courts in this Circuit routinely preclude defendants from introducing evidence or eliciting testimony about government charging decisions pursuant to Rules 401 and 403, and this case should be no exception *See*, *e.g.*, *United States v. Boyle*, No. 08-CR-523 (CM), 2009 WL 5178525, at *3 (S.D.N.Y. Dec. 23, 2009); *United States v. Carneglia*, No. 08-CR-76 (JBW), 2009 WL 185725, at *1 (E.D.N.Y. Jan. 27, 2009); *United States v. Rodriguez*, 852 F. Supp. 2d 486, 486 (S.D.N.Y. 2008).

*Third*, if the DPA were admitted, it would result in a wide-ranging sideshow about the facts surrounding the resolution of Ms. Meng's case. The government would need to rebut the defendants' arguments with, *inter alia*, evidence of Huawei's celebration of Ms. Meng's return to China, the representation of Ms. Meng and Huawei by the same law firm, and Huawei's advocacy on behalf of Ms. Meng to the U.S. and Canadian governments. To the extent the defense wished to introduce evidence establishing that Ms. Meng received a favorable disposition in the form of her DPA, the government would also need to introduce evidence of the international diplomatic dispute involving Canada, the United States, and China, including the Chinese government's detention, and subsequent release upon Ms. Meng's return, of two Canadian citizens. Failure to do so would permit the defense to miscontextualize the statement of facts and Ms. Meng's and the defendants' approach to it, as if Huawei had no leverage and the government nevertheless agreed to forgo prosecution of a key defendant in the case.

The Pandora's Box of nullification arguments and collateral evidentiary issues that would be necessitated by admission of the DPA "would waste time and would be unnecessarily confusing." ECF No. 717 at 18. Conversely, admission of the bare statement of facts[2]—facts that the defendants' officer agreed to in Court, and which the defendants adopted—carries none of those concerns. The statement of facts reflects a negotiated admission that the defendants cannot adopt when it is convenient and then repudiate when it is not.

[2] The defense motion notes that the government's proposed redactions permit the jury to learn that there was a "change of plea hearing" in Ms. Meng's case. *See* Def. Mot. at 2 & Ex. C. The government would not object to redacting the words "This is criminal cause for a change of plea hearing, Docket Number 18-CR-478, USA versus Wanzhou Meng," so that the jury would not improperly infer that Ms. Meng had been criminally charged or entered any guilty plea in the case.

For these reasons, the government respectfully requests that the defendants' latest effort to shoehorn Ms. Meng's DPA into this case be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By: /s/
Alexander A. Solomon
Meredith A. Arfa
Robert Pollack
Matthew Skurnik
Matthew F. Sullivan
Assistant United States Attorneys
(718) 254-7000

MARGARET A. MOESER
Chief, Money Laundering, Narcotics and Forfeiture Section,
Criminal Division,
U.S. Department of Justice

Taylor G. Stout
Morgan Cohen
Jasmin Salehi Fashami
Trial Attorneys

CHRISTIAN J. NAUVEL
Acting Chief, Counterintelligence and Export Control Section,
National Security Division,
U.S. Department of Justice

Aaron Jennen
Trial Attorney

cc: Clerk of the Court (by ECF and Email)
Defense counsel of record (by Email)